UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

THE EXPORT-IMPORT BANK OF                     :
THE REPUBLIC OF CHINA,                        :     06 CV 2469 (HB)(AJP)
                                              :
            Plaintiff/Judgment Creditor,      :
                                              :
        -against-                             :     ORAL ARUGMENT REQUESTED
                                              :
GRENADA,                                      :
                                              :
            Defendant/Judgment Debtor.        :
-----------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
## FOR CONTEMPT SANCTIONS AND TO COMPEL

Paul E. Summit (PS 6263)
Andrew T. Solomon (AS 9200)
Emily A. Samuels (ES 0302)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Floor
New York, NY 10104
(212) 660-3000

*Attorneys for Plaintiff/Judgment Creditor*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................... 1

PROCEDURAL HISTORY ................................................................................. 2

ARGUMENT ....................................................................................................... 7

    I.   Grenada is in Contempt of the March 1 Order ...................................... 8

    II.  This Court Should Compel Grenada to Comply with Outstanding Discovery ................. 10

        A.  The Motion to Compel is Necessary ............................................... 10

        B.  Grenada's Responses to the Outstanding Discovery are Incomplete and Must be Supplemented ................................................. 10

    II.  Ex-Im Bank is Entitled to Attorneys' Fees ......................................... 18

CONCLUSION .................................................................................................... 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Banco Central Del Paraguay v. Paraguay Humanitarian Foundation, Inc.*,
No. 01 Civ. 9649 (JFK), 2007 WL 747814 (S.D.N.Y. Mar. 12, 2007) ................................18

*Bank of Credit and Commerce International. (Overseas) Ltd. v. Tamraz*,
No. 97 Civ. 4759 (SHS), 2006 WL 1643202 (S.D.N.Y. June 13, 2006)............................8, 10

*British International Insurance Co. Ltd. v. Seguros La Republica, S.A.*,
No. 90 *Civ.2370 (JFK)(FM)*, 2000 WL 713057 (S.D.N.Y. June 2, 2000) ...........................18

*Cunningham v. Hamilton County, Ohio*, 527 U.S. 198 (1999)......................................................8

*Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) .........................................8

*First City, Texas-Houston, N.A. v. Rafidain Bank*, 68 F. Supp. 2d 377 (S.D.N.Y. 1999)...............8

*First City, Texas Houston N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002) ............................7

*Lamar Finance Corp. v. Adams*, 918 F.2d 564 (5th Cir. 1990).....................................................9

*Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559 (S.D.N.Y. 1977).....................................7

*Matthews v. USAIR, Inc.*, 882 F. Supp. 274 (N.D.N.Y. 1995) ...................................................18

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) .....................8

*Riley v. United Air Lines, Inc.*, 32 F.R.D. 230 (S.D.N.Y. 1962) .................................................10

*United States v. United Mine Workers*, 330 U.S. 258 (1947)........................................................9

*Willy v. Coastal Corp.*, 503 U.S. 131 (1992)...............................................................................8

## FEDERAL STATUTES

28 U.S.C. 1961 ...........................................................................................................................9

Fed. R. Civ. P. 33........................................................................................................................1

Fed. R. Civ. P. 37(a)(1)..............................................................................................................10

Fed. R. Civ. P. 37(a)(3)(B)(iii) ...............................................................................................1, 10

Fed. R. Civ. P. 37(a)(4)................................................................................10

Fed. R. Civ. P. 37(a)(5)................................................................................18

Fed. R. Civ. P. 37(b)....................................................................................8

Fed. R. Civ. P. 37(b)(2)................................................................................1

Fed. R. Civ. P. 37(b)(2)(a)(i)-(vii)................................................................8

Fed. R. Civ. P. 37(b)(2)(C)......................................................................8, 18

Fed. R. Civ. P. 69........................................................................................1

Fed. R. Civ. P. 69(a)(2)..............................................................................2, 7

The Export-Import Bank of the Republic of China ("Ex-Im Bank"), by its attorneys,

Sullivan & Worcester LLP, submits this Memorandum of Law in support of its (a) Motion for

Contempt Sanctions against judgment debtor Grenada ("Grenada') pursuant to Fed. R. Civ. P.

37(b)(2) and (b) Motion to Compel Grenada's complete responses to Ex-Im Bank's outstanding

discovery pursuant to Fed. Rules Civ. P. 33, 37(a)(3)(B)(iii), and 69.

## INTRODUCTION

Grenada has failed to pay a dollar of the $25 Million judgment against it. Although

ordered by this Court to pay $10,000 of attorneys' fees, it has failed to pay that as well. Ex-Im

Bank brings this motion after trying repeatedly to obtain Grenada's compliance with its post-

judgment discovery. Grenada has defied its obligations under the Federal Rules of Civil

Procedure; it has failed to provide meaningful answers to numerous interrogatories; and it has

failed utterly in its obligations pursuant to a Rule 30(b)(6) deposition. It has even defied an

explicit and targeted order of this Court, the Order of March 1, 2010.

In January 2010, after months of fruitless discussion with Grenada's counsel, Ex-Im

Bank requested permission to file a motion to compel Grenada's complete responses to Post-

Judgment Interrogatories (the "Interrogatories"). In its moving papers, Ex-Im Bank highlighted

the numerous deficiencies in Grenada's responses. Notably, Ex-Im Bank showed that Grenada's

responses included a statement that it was owed over $19 Million Dollars from two real estate

entities: Cinnamon 88 and Levera Development Ltd. ("Levera"), but that Grenada had failed to

provide any identifying information about these substantial assets.

The Court held a telephone conference on March 1, 2010 and ordered Grenada to comply

fully with its discovery obligations regarding Cinnamon 88 and Levera by March 12, 2010 (the

"March 1 Order").

Grenada flouted the Court's order.  On March 12, 2010, the deadline, Grenada provided Ex-Im Bank with a letter which was bereft of particulars, or, for that matter, even simple coherence.  Moreover, Grenada did not produce a single document and did not provide a single name or address associated with either debtor.  The entities doing the real estate development, and owing these large sums to Grenada, were identified only generically, each as "the Developer."  In other words, Grenada did not say where these entities were located, who ran them, or provide a single fact that would enable Ex-Im Bank to follow up with these entities.

Even then, Ex-Im Bank made further attempts to work with Grenada, advising Grenada that it would wait until after a Rule 30(b)(6) deposition had taken place before moving for contempt or to compel.  As set forth below, the deposition has now taken place, and was, in fact, a mockery of the deposition process.  Thus Ex-Im Bank has no choice but to move for an order (a) finding Grenada in contempt of this Court's March 1 Order and imposing sanctions and (b) compelling Grenada to provide complete responses to the outstanding discovery.

## PROCEDURAL HISTORY

Ex-Im Bank brought this action against Grenada to enforce four defaulted loan agreements.  Summit Dec. ¶ 2.[1]  On February 6, 2007, the Court granted summary judgment against Grenada  (*see* Order, Docket No. 11) for $24,997,596.84 (*see* Amended Judgment, Docket  No. 15).  To date, Grenada has paid nothing to Ex-Im Bank.  Summit Dec. ¶ 2.

A judgment creditor has discovery rights, of course, against a judgment debtor.  Fed. R. Civ. P. 69(a)(2).  In October 2007, Ex-Im Bank served the Interrogatories on Grenada.  Summit

---

[1] "Summit Dec. ¶__" refers to the Declaration of Paul E. Summit in Support of Ex-Im Bank's Motion for Contempt Sanctions and to Compel.

Dec. ¶ 3, Ex. A.  Grenada did not respond in any fashion.[2]  Ex-Im Bank then moved for an order

compelling compliance.  In an April 9, 2009 Amended Order, this Court ordered Grenada to

answer the Interrogatories within ten days of the service of the Order.  (*See* Docket No. 23);

Summit Dec. ¶ 4, Ex. B.  The Amended Order further required Grenada to pay Ex-Im Bank's

reasonable attorneys' fees in the amount of $10,000.  *Id.*

When Grenada failed to respond to the Interrogatories within the required ten days, Ex-

Im Bank filed a motion for contempt seeking sanctions.  *Id.* at ¶ 5.  Grenada then retained new

counsel and filed an opposition to the motion for contempt.  *Id.*  In a July 2, 2009 Order, the

Court denied Ex-Im Bank's motion for sanctions, finding that "Grenada's retention of new

counsel and correspondence with Plaintiff's counsel suggests Grenada's intent to respond to the

Interrogatories with requisite diligence."  (*See* July 2009 Order, Docket No. 33); Summit Dec. ¶

6, Ex. C.

On September 4, 2009, Grenada finally responded to the Interrogatories.  Grenada's

response failed to completely answer many of the individual Interrogatories.  *Id.* at ¶ 7, Ex. D.

Since September 4, 2009, Ex-Im Bank has been trying to obtain the missing information.  A

complete history of Ex-Im Bank's extensive efforts is set forth in the Declaration of Paul E.

Summit.

After four months of fruitless dialogue with Grenada, in January 2010, Ex-Im Bank

sought the Court's permission to move – once more – for an order compelling Grenada's

compliance.  Summit Dec. ¶ 19.  The Court held a telephone conference on March 1, 2010 to

address Ex-Im Bank's request.  *Id.* at ¶ 23.  During the teleconference, the Court ordered

---

[2] A description of Ex-Im Bank's service of the Interrogatories and attempt at procuring Grenada's
compliance is set forth in the Samuels Declaration in Support of Plaintiff's Motion to Compel Post-Judgment
Interrogatories, dated March 20, 2008.  (See Docket No. 20).

Grenada, as a first step, to provide all of the information that Ex-Im Bank had requested about Cinnamon 88 and Levera, and set a deadline of March 12, 2010. *Id.*

On March 12th, Grenada responded with a letter that was neither complete nor intelligible.  Summit Dec. ¶¶ 25, 27, Ex. P.  The letter lacks any particulars, fails to produce documents (as required by the Interrogatories), fails to identify by name or address either debtor, and is internally inconsistent.  For example, Grenada's counsel states that "[w]hen the National Democratic Party took over the government in July 2008, these projects were dormant and had substantial financial and legal difficulties."  But, in its bare bones "description" of the Cinnamon 88 transaction, Grenada references payments made *after* July 2008 ("With respect to the payment of interest on the $16.5 million owed on the sale of the lands. [*sic*]  Government has not received these payments since March 2009.")  *Id.*  Thus, some time after the current government came into power, it was receiving interest payments from Cinnamon 88.  And yet Grenada claims an inability to identify Cinnamon 88 other than as the "Developer".

The description of Levera is equally incoherent and inconsistent.  For instance, Grenada writes: "The present developer bought additional land from the former government for which the government took the money but without paying the former owners, thus carrying on the said debts of more than US$3 Million to the future.  The new developer has been trying for more than one year to raise the financing, so far without success due to the crisis, though with the support of Government.  A debt to equity exchange is being proposed so that this project can commence."  *Id.*  Thus, Grenada indicates on the one hand that the project is dormant, but on the other hand that the government is currently working with the (unnamed, unidentified) "developer" on the project.  The "developer" is never named; the "supporter of the Government"

is never specified; not a single written document is supplied; indeed, the information provided is worthless.

After further conversations with Grenada's counsel, Ex-Im Bank agreed to hold off seeking the Court's intervention until a 30(b)(6) deposition had been taken (the notice had been served on March 4, 2010) with the understanding that Grenada would supplement its responses during the deposition. Summit Dec. ¶ 27. The deposition notice required testimony on the following topics:

- Accounts or monies in any financial institution maintained by Grenada or by any Instrumentality of Grenada;

- Liquid Assets owned by Grenada or by any Instrumentality of Grenada;

- Tangible Assets owned by Grenada or by any Instrumentality of Grenada,;

- Entities, persons or States who owe a debt to Grenada, or an Instrumentality of Grenada, and documents concerning the owed debts;

- Creditors of Grenada, or an Instrumentality of Grenada;

- Foreign investments in Grenada, or in an Instrumentality of Grenada, by any entities, persons or States;

- Present disposition and location of the monies received by Grenada under the Loan Agreements;

- Foreign assistance that Grenada, or an Instrumentality of Grenada, receives from any Foreign entity;

- Commercial contracts, agreements, or relationships with any Foreign entity concerning Grenada's tourism industry;

- Contracts, agreements, or relationships between Grenada, or any Instrumentality of Grenada, and a Foreign entity by which such Foreign entity invests in any way in Grenada, or in an Instrumentality of Grenada;

- Investment projects in Grenada by Peter de Savary, Cinnamon 88, Levera Development Ltd., Terra LLC, International Design Consultants, The Morganti Group, Grace's Distinctive Properties, Consolidated Contractors Company, and/or Consolidated Contractors International S.A.L., including, but not limited to, Mount Cinnamon, Levera Resort, Port Louis Project, or the Cinnamon 88 investment project;

- Relationships, contracts, or other agreements between Grenada or any Instrumentality of Grenada and Peter de Savary, Cinnamon 88, Levera Development Ltd., Terra LLC, International Design Consultants, The Morganti Group, Grace's Distinctive Properties, Consolidated Contractors Company, and/or Consolidated Contractors International S.A.L;

- Transfers of funds that have taken place under any contract, agreement, or relationship with Grenada, as well as any bank or financial institution that participated in the transfer of the funds; and

- Transfers of funds intended to take place within the next five (5) years under any contract, agreement, or relationship with Grenada, as well as any bank or financial institution that will participate in the transfer of funds.

Summit Dec. ¶ 24, Ex. O. Ex-Im Bank's cover letter stated: "Please note also that the witness is required to bring with him all documents that should have been, but have not been, produced in response to Plaintiff's First Set of Post-Judgment Interrogatories, dated October 3, 2007." *Id.* On March 18, 2010, Grenada identified Michael Sylvester (the Permanent Under Secretary of the Ministry of Finance) as its witness. *Id.* at ¶ 26.

As set out further in Section II.B. below, Mr. Sylvester's testimony was a mockery of the process. Notably, he knew essentially nothing about Cinnamon 88 or Levera; indeed, for the first time, he claimed some sort of confidentiality preventing disclosure about the two entities. (Even though he had not even read the relevant contracts; *Id.* at ¶ 28, Ex. S). Ex-Im Bank once more highlighted Grenada's insufficient response in a letter dated June 10, 2010. *Id.* at ¶ 29, Ex. T.

Grenada's response of June 18, 2010, which asked for additional time to respond, confirmed the deficiencies:

> I also recognize that Mr. Sylvester was not able to address all of your questions and that his testimony requires supplementation in some areas. I had hoped to have discussed these issues with my clients by now, but the Government ministers with whom I deal have had obligations this week that has prevented our having a meaningful conversation. I fully expect to be able to have the necessary conversation next week and would request that you defer any action that you are

considering until I have been able to get instructions as to how my client wishes
to proceed.

Summit Dec. ¶ 30, Ex. U.

Since then, Grenada has failed to provide any additional information or proposals to

supplement, nor has it produced a supplemental 30(b)(6) witness, despite its repeated promises to

do so.  *Id.*  And, in fact, Grenada recognizes that its answers are not complete but fails to provide

any timetable for compliance.  For example, in an email dated July 6, 2010, counsel for Grenada

writes:

> I fully expect to be able to address your concerns in a meaningful way but cannot
> give you a precise timetable for a response

And later in the same email, discussing Cinnamon 88 and Levera:

> In our conversation on Friday, my clients and I discussed the fact that we needed
> to do something more than we have to date to clarify the situation.

*Id.*

Ex-Im Bank initiated discovery <u>almost three years ago</u>.   Grenada's conduct is an outrage.

Ex-Im Bank – once more – is forced to ask the Court for its assistance.

## ARGUMENT

A judgment creditor can employ all the discovery devices available under the Federal

Rules of Civil Procedure.  Fed. R. Civ. P. 69(a)(2).  *See Magnaleasing, Inc. v. Staten Island

Mall*, 76 F.R.D. 559, 560 n.1 (S.D.N.Y. 1977) (Rule 69(a) "quite clearly entitles a judgment

creditor to utilize the full panoply of federal discovery measures…").[3]

---

[3] Because this Court heard the underlying action, it has continuing jurisdiction to enforce Ex-Im Bank's post-judgment discovery, including the authority to issue sanctions. *See First City, Texas Houston N.A. v. Rafidain Bank,* 281 F.3d 48, 53-54 (2d Cir. 2002) (court's jurisdiction over a sovereign bank continued "through proceedings to aid collection of a money judgment rendered in the case, including discovery pertaining to the judgment debtor's assets.")

## I.      Grenada is in Contempt of the March 1 Order

Grenada violated the March 1 Order by failing to provide the required additional information about Cinnamon 88 and Levera.  Failure to comply with a post-judgment discovery order is subject to the sanctions of Fed. R. Civ. P. 37(b)(2).  *Bank of Credit and Commerce Intern. (Overseas) Ltd. v. Tamraz*, No. 97 Civ. 4759 (SHS), 2006 WL 1643202, *2 (S.D.N.Y. June 13, 2006).  Sanctions are available for violations of both written and oral orders.  *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991).  Specifically, with respect to a failure to comply with a court's discovery order, Fed. R. Civ. P. 37(b)(2)(A)(vii) authorizes the Court to issue "just orders" including "treating as contempt of court the failure to obey any order …."  In addition, the Court is also authorized to require the offending party to pay the "reasonable expenses, including attorney's fees caused by the failure…."  Fed. R. Civ. P. 37(b)(2)(C).

The decision to impose Rule 37 sanctions is within the Court's broad discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976); *Daval Steel Prods.*, 951 F.2d at 1365 ("A district court has wide discretion in imposing sanctions, including severe sanctions, under Rule 37(b)(2), and will only be reversed if its decision constitutes an abuse of discretion.").  Here, Ex-Im Bank requests that the Court hold Grenada in civil contempt[4] for its failure to comply with the March 1 Order.  The purpose of civil contempt is "to force the contemnor to comply with an order of the court."  *Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198, 207 (1999) (quoting *Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992)).

---

[4] Though Rule 37(b) provides several alternative forms of sanction, *see* Fed. R. Civ. P. 37(b)(2)(a)(i)-(vii) (listing available sanctions), when the violation is to a post-judgment discovery order to a sovereign entity, a daily fine is an appropriate sanction. *See, e.g., First City, Texas-Houston, N.A. v. Rafidain Bank*, 68 F. Supp. 2d 377, 379 (S.D.N.Y. 1999)(imposing a per-day sanction, plus interest, against sovereign bank for failing to comply with post-judgment subpoena).

In considering the appropriate amount of a civil contempt sanction, the court must consider the following factors:

> (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order.

*Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (citing *United States v. United Mine Workers*, 330 U.S. 258 (1947)).

All of the *United Mine Workers* factors favor a substantial sanction against Grenada. *First*, Grenada's noncompliance is preventing Ex-Im Bank from discovering its assets, thus thwarting the bank's ability to collect a judgment now worth in excess of $28 Million Dollars. In its initial responses to the Interrogatories, Grenada identified debtors owing more than $19 million dollars. Since then, Grenada has stonewalled, refusing to provide the specific information necessary for Ex-Im Bank to follow up with those debtors. *Second*, a strong sanction is likely to encourage compliance. Grenada's behavior demonstrates that Grenada wants to avoid sanctions –Grenada's responses, though woefully deficient, have been generally timely according to the Court's orders. Moreover, since the post-judgment federal interest rate is so low (*see* 28 U.S.C. 1961), Grenada has little incentive to pay off the judgment, much less aid Ex-Im Bank's enforcement efforts. After all, the judgment is effectively financing Grenada at a rate of interest far below what it could get in the financial markets.[5] A stern sanction would make Grenada's noncompliance more expensive and, hence, coerce compliance. *Third*, Grenada is a nation. While it may have difficulty paying a $25 million judgment (now with substantial interest) in full, it certainly has the ability to pay a sanction until it complies with its lawful

---

[5] According to Standard & Poor's, in 2007 Grenada had a below-investment grade credit rating. *See* http://www2.standardandpoors.com/spf/pdf/products/Soveriigns_Caribbean_2007.pdf

obligations to provide court-ordered discovery.  *Fourth*, Grenada's noncompliance is

unquestionably willful.  Grenada even acknowledges that it has not yet responded to the

outstanding requests.  Summit Dec. ¶ 30, Ex. U.

An appropriate coercive sanction should be no less than $10,000 per day, which would

correspond to approximately 14.5% percent per annum interest.  That rate would be substantial

enough to encourage Grenada to purge its contempt, yet not so onerous to constitute a penalty.

*Cf. Tamraz*, 2006 WL 1643202 at * 4-5 (ordering arrest of judgment debtor for non-compliance

with post-judgment discovery order after $500 per day penalty failed to coerce compliance).

## II.   This Court Should Compel Grenada to Comply with Outstanding Discovery

In addition to imposing sanctions, this Court should enter an order compelling Grenada

once and for all to fully and completely respond to all outstanding discovery.

### A.   The Motion to Compel is Necessary

When, as here, a party fails to respond to an interrogatory request, or provides an answer

that is "evasive or incomplete," the requesting party may move for an order compelling

discovery.  Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iii), and (a)(4).  An order to compel will be granted

when the party's response is incomplete and fails to adequately respond to the information

requested. *See Riley v. United Air Lines, Inc.*, 32 F.R.D. 230 (S.D.N.Y. 1962).  This Court should

enter an order compelling Grenada to properly respond to the Interrogatories and all other

outstanding discovery because its responses are, as set forth below, woefully deficient.

### B.   Grenada's Responses to the Outstanding Discovery are Incomplete and Must be Supplemented

As set out above, despite the March 1 Order and despite Ex-Im Bank's attempts at

seeking Grenada's voluntary compliance, Grenada has still only provided limited additional

information and a host of vague promises for answers some time in the future.  The following are

some examples of the deficiencies:

First, Grenada completely failed to provide an adequate witness for its 30(b)(6)

deposition.  Grenada produced Michael Sylvester, deputy permanent secretary Ministry of

Finance.  Mr. Sylvester was chosen, according to Grenada, because

> Mr. Sylvester has played a central role in the gathering of information for the
> initial interrogatory responses as well as the supplemental responses that have
> been provided and is believed to be the person most knowledgeable about the
> liquid and illiquid assets of the Commonwealth as well as its contractual relations,
> its debts and the debts owed to it.

Summit Dec. ¶ 26, Ex. Q.  Grenada also stated that "To the extent that Mr. Sylvester does not

have information about these projects and information about these projects are relevant to proper

judgment collection efforts, we will endeavor to determine if there is anyone else in the

Government with greater knowledge." *Id.*

Mr. Sylvester's deposition was a travesty.  Mr. Sylvester provided *no* additional

information on Cinnamon 88 or Levera, despite the March 1 Order.   The following excerpt from

his deposition sums it up nicely:

| | |
|---|---|
| Question: | Was it your understanding at the time you verified these responses, that something called Cinnamon 88 owed the government of Grenada $15 million, U.S. dollars? |
| Answer: | Yes. |
| Question: | What is Cinnamon 88? |
| Answer: | To the best of my knowledge, a development company. |
| Question: | Located where? |
| Mr. Maas: | Object to the form. |
| Answer: | I am not sure where they are. |
| Question: | Do you have any information as to where they are physically located? |
| Answer: | No. |
| Question. | You have no idea at all -- |
| Answer: | No. |
| Question: | -- where Cinnamon 88 is located? |
| Answer: | No. |
| Question: | Do you know who the principals of Cinnamon 88 are? |

- 11 -

| | |
|---|---|
| Answer: | No. |
| Question: | Have you made any effort to determine -- at any time to determine who the principals of Cinnamon 88 are? |
| Answer: | No |

Summit Dec. ¶ 28, Ex. S (pp. 38-39).  Not surprisingly, counsel for Ex-Im Bank, therefore,

assumed that Mr. Sylvester had not seen any contracts or documents concerning Cinnamon 88.

This was not the case.  For, although he could provide no details about Cinnamon 88 and stated

"I have not read the contracts" (*Id.* at p.43), he also stated:

| | |
|---|---|
| Question: | You've never seen these documents; is that right, these contracts? |
| Answer: | I have. |
| Question: | You have seen them? |
| Answer: | Uh-huh. |
| Question: | When did you see them? |
| Answer: | The last couple weeks, I believe. |
| Question: | These were the Cinnamon 88 contracts with the government of Grenada? |
| Answer: | I believe so. |
| Question: | Who showed them to you? |
| Answer: | I got -- I received them via E-mail from the Minister of Legal Affairs. |
| Question: | E-mail from the minister of? |
| Answer: | In following up on these questions, I got an E-mail from the Ministry of Legal Affairs with, I believe, contracts and correspondences in respect of Cinnamon 88. |

*Id.* (pp. 42-43).  Thus, Mr. Sylvester – having been given the key documents concerning

Cinnamon 88 . . .  chose not to read these documents before his deposition, despite the fact that

Grenada has been ordered by this Court to provide this very information to Ex-Im Bank.

Grenada counsel then asserted that the agreements relating to Cinnamon 88 and Levera

were confidential, and instructed Mr. Sylvester not to answer.  *Id.*  The assertion of

confidentiality was simply frivolous.  Grenada had already made (partial) disclosure in its

interrogatory responses, without a word about confidentiality.  Indeed, Grenada had argued to

this Court about its discovery obligations on Cinnamon 88 and Levera, again without a word

- 12 -

about confidentiality.  And even to this day, Grenada has provided *no evidence* of a

confidentiality clause.  Grenada has waived any confidentiality if indeed it ever had any; and is

estopped from trying to prove it up now.

The following is a list of some of the additional deficiencies in the testimony:

- Mr. Sylvester testified that he was "not sure" that he had a responsibility to gather information on subjects as a Rule 30(b)(6) witness. Summit Dec. Ex. S, p. 12 to 13.

- In supposed preparation for his Rule 30(b)(6) deposition, he claims to have written to "the accountant general department" and the "audit department" requesting information for topic number one (p. 19), but got no feedback except that they were "working on it." *Id.* at p. 21.

- When individuals informed Mr. Sylvester that they could not provide the information by the time of the deposition, he essentially took no action at all. *Id.* at pp. 26 to 29.

- When asked whether he had any idea about Grenada's share of a common pool of foreign exchange reserves at the Eastern Caribbean Currency Union he responded "None whatsoever." *Id.* at p. 120.

- He had no knowledge about an account receivable of $8 million U.S. Dollars as of 2008 listed in documents for the Grenada Port Authority. *Id.* at pp. 91-92.

- When asked whether Grenada had included information about the assets and liabilities of certain statutory bodies, such as the Port Authority, in the response to the Interrogatories he said no. *Id. at* pp. 91-97.

These are merely examples of the woeful quality of this Rule 30(b)(6) deposition.  To date, no

additional witness has been produced or identified.

In addition, since January 29, 2010 (other than its deficient statement about Cinnamon 88

and Levera), Grenada has provided no additional information responsive to the Interrogatories.

Examples of the missing information are set out below.

Ex-Im Bank's Interrogatory 1 asked Grenada to identify and describe bank accounts.

Grenada failed to include much of the required information,  such as a detailed description of the

account's activity from January 1, 1990 to the present date.  In addition, although Grenada's

counsel later wrote that Grenada is a member of the Eastern Caribbean Currency Union, which

"maintains a common pool of foreign exchange reserves of which Grenada has a share," Grenada

fails to state the amount of its share in this pool.  Summit Dec. ¶¶ 12-13, Ex. G.

Ex-Im Bank's Interrogatory 3 asked Grenada to: "Identify and describe the location,

ownership (including name and address), and purpose of any and all Liquid Assets owned by

Grenada or by any Instrumentality of Grenada, located within or without Grenada."  Grenada's

response only partially answers the question and simply refers Ex-Im Bank to two attached

appendixes.  Appendix I, lists only bank accounts while Appendix II is merely a list of

companies, an amount of shares and an estimated share value, as of an unknown date.  *Id.* at Ex.

D.  Grenada was obligated to, but did not, identify the form, location, and custodian of the shares

identified.  Again, in its December 9, December 21, and January 29 correspondence, Grenada

states that it is either looking for or will provide this information;  it has failed to do so.  *Id.* at

Exs. G, I, & L.  Notably, Mr. Sylvester did not provide this information.

Interrogatory 6 asks Grenada to "identify and describe any entities, persons or states, who

owe a debt to Grenada, or an Instrumentality of Grenada."  Grenada's answer was woefully

deficient and led to the March 1 Conference.  *Id.* at ¶¶ 19, 22, & 23, Exs. K, N.  Please see

above.

Interrogatory 8 asks Grenada to  "Describe in detail the present disposition and location

of the monies received by Grenada under the Loan Agreements."  Grenada's response fails to

answer the question posed or identify the stated funds.  In its December 21 letter, Grenada states

that it is not able to provide any additional information and that the information is "only

marginally related to this issue."  *Id.* at ¶¶ 15-17, Ex. I.  But how the loaned funds were spent is

relevant and pertinent to Ex-Im Bank's collection efforts.  For instance, Grenada may have saved

the money, or loaned it to a third party, or invested it.

Interrogatory 10 asks Grenada to "Identify every Grenadian official who resides, temporarily or permanently, within the United States." Grenada objects on supposed irrelevance. Obviously these officials may have information concerning Grenada's ability to repay the outstanding loans and the location of its assets. And the interrogatory is even more vital following the feckless 30(b)(6) deposition. Ex-Im Bank is entitled to discover whether such officials possess this information.

Interrogatory 11 asks Grenada to "Identify and describe all Foreign assistance that Grenada, or an Instrumentality of Grenada, receives from any Foreign entity (including any foreign nation, business, corporation, consortium, or person)." Grenada's response fails to include any level of specificity that would permit Ex-Im Bank to identify the foreign assistance received. Notably Grenada fails to set out what assistance, or how much assistance it receives. (Grenada's comment in its December 21 letter that it identified and described all foreign assistance is baffling). *Id.* at Ex. I. Moreover, while Grenada again states that it is seeking to obtain information about the Consolidated Revenue Fund (identified in its response), to date, Ex-Im Bank has not received any such information. *Id.* Once more Grenada's evasive answer continues to deprive Ex-Im Bank of knowledge concerning a potential revenue stream.

Interrogatory 13 asks Grenada to "Identify and describe any commercial contract, agreement or relationship with any Foreign entity (including any foreign nation, business, corporation, consortium, or person), concerning Grenada's tourism industry." Grenada states, "No such contracts exist." Grenada then contradicts its response in Interrogatory 14 (below), where it states, "Mr. Peter de Savory [*sic*] is a private investor in Grenada, particularly within the tourism industry." *Id.* at Ex. D. As set forth in more detail below, Mr. de Savary is a foreign

individual and in its December 9 email, Grenada states that there is a contract with Mr. de Savary. *Id.* at Ex. G.

For Interrogatory 14, Ex-Im Bank asked Grenada to "Identify and describe Peter de Savary's investment projects in Grenada, including, but not limited to, the Port Louis project and Mount Cinnamon." Grenada responded that it

> objects to this request on the ground that it seeks information that is not within Grenada's custody or control. Mr. Peter de Savory [*sic*] is a private investor in Grenada, particularly within the tourism industry. Grenada has granted Mr. de Savory [*sic*] certain incentives, particularly, waiver of duties and taxes on the basis of the economic benefits (income generation, foreign exchange and employment) that such projects can bring to the Country.

*Id.* at Ex. D. Once more, Grenada's objection is not well-founded. In its December 9 email and December 21 letter, Grenada acknowledges a contract with Mr. de Savary but states that it is subject to a confidentiality clause. *Id.* at Exs. G, I. Grenada, however, did not object on confidentiality grounds in its response to the Interrogatories nor has it made a motion for a protective order. This is relevant and important information for Ex-Im Bank and if Grenada granted Mr. de Savary certain incentives, Grenada should be required to disclose the written record of these incentives and contracts. Grenada must, therefore, answer the interrogatory to the extent it has information concerning the location and custodian of any contracts or agreements, descriptions of contracts, transfers of funds, and the nature of its own interest – whether in the form of equity, debt, revenue sharing, and the like – in any of the investment projects sponsored by Mr. de Savary, or his affiliates.

Interrogatory 15 asks Grenada to "Identify and describe any contract, agreement, or relationship between Grenada or any Instrumentality of Grenada and a Foreign entity (including any foreign nation, business, corporation, consortium, or person), other than those described in Interrogatory Number 14, by which such Foreign entity invests in any way in Grenada, or an

Instrumentality of Grenada." While Grenada provides certain information concerning one such contract (*See* Summit Dec. Ex. D), it fails to provide an answer to (e) or (f), which requests descriptions of any and all fund transfers. In its December 21 letter, Grenada represents that it will confirm that there are no scheduled transfers of funds within the next five years. *Id.* at Ex. I. And in its January 29 letter, Grenada indicates that it is still looking for responsive information. *Id.* at Ex. L. Again, this missing information is still not forthcoming. Nor has Grenada offered to, or provided, relevant details concerning prior fund transfers. Thus, once more, Grenada fails to provide Ex-Im Bank with the very information that could assist Ex-Im Bank in collecting its judgment.

Interrogatories 16 and 18 ask Grenada to identify certain individuals. Grenada provides some information, but not enough for Ex-Im Bank to sufficiently identify the stated individuals. Grenada identifies only two individuals and describes purportedly relevant offices. Surely the department heads have deputies possessed of relevant information. These answers thus fail to respond to the interrogatory posed. Grenada's response in its December 21 letter, that Ex-Im Bank may contact these individuals through its law firm, is simply unresponsive. *Id.* at Ex. I.

Interrogatory 17 asks Grenada to "Identify and describe any books or records maintained by Grenada, or an Instrumentality of Grenada, that concern Grenada or an Instrumentality of Grenada's Liquid Assets, Tangible Assets, accounts or monies in any financial institution, monies, debts owed to Grenada, or an Instrumentality of Grenada, Grenada's creditors, and foreign investments in Grenada or in an Instrumentality of Grenada." Grenada's response is unavailing:

> All Public Sector bodies are required to prepare financial statements. These statements are audited by external auditors and submitted to the Parliament of Grenada, the highest decision making body in the Country.

Summit Dec. Ex. D.  This response, which refers only generally to Grenada's records, is not

sufficient.  *See Matthews v. USAIR, Inc.*, 882 F.Supp. 274, 275-276 (N.D.N.Y. 1995) (upholding

magistrate's order to produce records, the court held that responses to interrogatories that

referred to an "undifferentiated mass of business records which may or may not answer the

interrogatory" is not a proper response) (internal citations and quotations omitted).

As set forth above, Grenada's answers to most of the Interrogatories are deficient and

must be supplemented, notwithstanding extensive efforts by Ex-Im Bank (stretching over almost

a 4-year period) to work with Grenada.  Full responses to the Interrogatories are essential to Ex-

Im Bank's enforcement of its judgment against Grenada.  *See British Int'l Ins. Co. Ltd. v.

Seguros La Republica, S.A.,* No. 90 Civ.2370 (JFK)(FM), 2000 WL 713057, at *9 (S.D.N.Y.

June 2, 2000) ("unless [judgment creditor] secures information concerning [judgment debtor's]

Mexican assets, it will not be able to enforce its judgment.").  Ex-Im Bank's only recourse is to

bring this motion.

### III.    Ex-Im Bank is Entitled to Attorneys' Fees

Grenada should also be ordered to pay Ex-Im Bank's attorneys' fees in connection with

this motion.  *See, e.g., Banco Central Del Paraguay v. Paraguay Humanitarian Found., Inc.,*

No. 01 Civ. 9649 (JFK), 2007 WL 747814 (S.D.N.Y. Mar. 12, 2007) (awarding attorneys' fees

to judgment creditors under Rule 37).   Both Fed. R. Civ. P. 37(a)(5) and Fed. R. Civ. P.

37(b)(2)(C) provide that the non-responsive, or disobedient, party must (with few stated

exceptions) pay the reasonable expenses incurred by the moving party in making the motion.

Ex-Im Bank seeks an order requiring Grenada to pay the attorneys' fees and expenses Ex-Im

Bank incurred in bringing this motion.  We ask the Court to fix those fees at $10,000.

## CONCLUSION

Grenada has had over <u>five months</u> to comply with the Court's March 1 Order and almost <u>three years</u> to respond to the Interrogatories.  As demonstrated above, it continues to provide only evasive and incomplete responses.  Absent a severe contempt sanction, Grenada will continue in this manner.  Therefore, for the reasons set forth above and in the accompanying Declaration of Paul E. Summit, Ex-Im Bank requests that the Court issue a civil contempt sanction against Grenada and an order compelling Grenada to provide complete responses to the Interrogatories and provide a real 30(b)(6) deponent.  The sanction should include a fine of $10,000 per day until such time as Grenada purges the contempt, and attorneys' fees of $10,000.

DATED:  New York, New York  
        August 25, 2010

SULLIVAN & WORCESTER LLP

By: /s/_____  
   Paul E. Summit (PS 6263)  
   Andrew T. Solomon (AS 9200)  
   Emily A. Samuels (ES 0302)  
   1290 Avenue of the Americas, 29th Floor  
   New York, New York 10104  
   (212) 660- 3000

*Attorneys for the Plaintiff/Judgment Creditor*