Paul E. Summit (PS 6263)
Andrew T. Solomon (AS 9200)
Emily A. Samuels (ES 0302)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Floor
New York, NY 10104
(212) 660-3000

*Attorneys for Plaintiff/Judgment Creditor*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                 :

THE EXPORT-IMPORT BANK OF           :        **06 CV 2469 (HB) (AJP)**
THE REPUBLIC OF CHINA,

                       :

            Plaintiff/Judgment Creditor,  :

                       :       **DECLARATION OF PAUL E.**
         -against-            :       **SUMMIT IN SUPPORT OF**
                       :       **PLAINTIFF'S MOTION FOR**
GRENADA,                     :       **CONTEMPT SANCTIONS**
                       :       **AND TO COMPEL**

           Defendant/Judgment Debtor. :
------------------------------------------------------------X

PAUL E. SUMMIT, pursuant to 28 U.S.C. § 1746, declares:

    1.     I am a partner at the law firm of Sullivan & Worcester LLP, attorneys for

plaintiff, The Export-Import Bank of the Republic of China ("Ex-Im Bank"). I submit this

Declaration in support of Ex-Im Bank's Motion for Contempt Sanctions and to Compel against

defendant Grenada ("Grenada").

    2.     By way of background, Ex-Im Bank commenced this action on March 29, 2006 to

enforce four loan agreements against Grenada. On March 16, 2007, the Court entered an

amended judgment granting Ex-Im Bank's motion for summary judgment in the following

amounts: $21,586,057.38, plus prejudgment interest of $3,323,586.90, disbursements of

$5,727.56, and attorneys' fees of $82,225.  To date, Grenada has not paid anything against this judgment.

3.     In October 2007, Ex-Im Bank served Post-Judgment Interrogatories (the "Interrogatories") on Grenada.  A copy of the Interrogatories is attached hereto as Exhibit A.

4.     Grenada failed to respond to the Interrogatories.  As a result, on March 20, 2008, Ex-Im Bank moved to compel Grenada's response to the Interrogatories.  On April 9, 2009, this Court granted Ex-Im Bank's motion to compel and ordered Grenada to respond to the Interrogatories within ten (10) days of the service of the Order and pay Ex-Im Bank's reasonable attorneys' fees in the amount of $10,000 (the "April 2009 Order").  A copy of the Order is attached hereto as Exhibit B.

5.     After Grenada failed to comply with the April 2009 Order, Ex-Im Bank moved for an order of contempt sanctions against Grenada.  Grenada retained new counsel to represent it and submitted an opposition to the motion for contempt sanctions.

6.     On July 2, 2009, the Court denied Ex-Im Bank's motion for contempt sanctions, finding that "Grenada's retention of new counsel and correspondence with Plaintiff's counsel suggests Grenada's intent to respond to the Interrogatories with requisite diligence."  A copy of the Court's July 2, 2009 Order is attached hereto as Exhibit C.

7.     On September 4, 2009, Grenada finally responded – in part – to the Interrogatories.  It failed, however, to respond to many of the individual Interrogatories.  A copy of Grenada's response is attached hereto as Exhibit D.

8.      Below is a brief chronology of events since Grenada provided its initial response on September 4, 2009, which demonstrates Ex-Im Bank's numerous attempts to obtain Grenada's voluntary compliance with the Interrogatories.

9.     First, after reviewing Grenada's deficient response, I sent a letter to Grenada's counsel, Brian Maas of Frankfurt Kurnit Klein & Selz PC, on October 22, 2009 that highlighted the missing information and requested Grenada's compliance.  A copy of the letter is attached hereto as Exhibit E.

10.     On November 5, 2009, Grenada responded, by letter, stating its intent to respond to Ex-Im Bank's concerns.   A copy of the letter is attached hereto as Exhibit F.

11.     Despite this letter, no additional information was forthcoming.  As a result, I spoke with Mr. Maas on November 20, 2009 and again on November 23, 2009 regarding Grenada's compliance.  While he promised that he would consult with his client, Mr. Maas was unable to provide me with any substantive response or assurance of future performance.  Instead, he requested additional time to consult with his client.  Ex-Im Bank agreed to provide Grenada with an additional week to respond.

12.     On December 9, 2009, I received an email from Grenada's counsel, which purported to provide additional information in response to the Interrogatories.  The email, however, merely further obfuscated and delayed.  A copy of the email is attached hereto as Exhibit G.

13.     For example, the email stated that Grenada is a member of the Eastern Caribbean Currency Union, which "maintains a common pool of foreign exchange reserves of which Grenada has a share."  As with many of its initial responses to the Interrogatories, Grenada's answer hinted at assets but failed to provide Ex-Im Bank with details.  For example, what is Grenada's share of the foreign exchange reserves?

14.     In response to the email, I sent another letter to Mr. Maas on December 14, 2009 informing him that Grenada's very limited communication had not provided Ex-Im Bank with an adequate response to the Interrogatories.  A copy of the letter is attached as Exhibit H.

15.     Mr. Maas responded with a longer – though similarly unavailing – letter on December 21, 2009.  A copy of the letter is attached as Exhibit I.

16.     Grenada's December 21 letter purported to respond to my letter of October 22, 2009 (see Exhibit E), which set out in detail the deficiencies in Grenada's response to the Interrogatories.  As with Grenada's other communications, however, this response failed to provide either an adequate response to the Interrogatories or a valid objection.

17.     For example, the letter stated that "in no instance was any information that was not provided relevant to your client's efforts to collect its judgment."  But this is simply not the case.  As evidenced by the example in paragraph 13 above, Grenada's responses omitted key information that Ex-Im Bank could potentially use to collect its judgment.

18.     Thus on December 29, 2009, I, once more, reiterated Ex-Im Bank's position that Grenada had failed to adequately respond to the Interrogatories and that Ex-Im Bank had no choice but to seek the Court's assistance.  A copy of the letter is attached as Exhibit J.

19.     After Grenada still failed to provide complete responses, in January 2010, Ex-Im Bank sought the Court's permission to move for an order compelling Grenada's compliance.  A copy of the request letter (without the enclosures) is attached hereto as Exhibit K.

20.     On January 29, 2010, after Ex-Im Bank had submitted its letter to the Court, Grenada provided additional information, by email, concerning bank accounts in Grenada and bank accounts of Grenada's overseas missions and further stated that "our client is currently seeking additional information related to Interrogatories 3, 6, and 15.  To the extent that the

information exists and is accessible, we will provide as soon as it becomes available." A copy of the email is attached hereto as Exhibit L.

21.     Grenada responded to Ex-Im Bank's request to the Court by letter dated February 1, 2010 stating its belief that "Ex-Im Bank's time and resources would be better spent discussing" settlement over pursuing discovery. A copy of the letter is attached as Exhibit M.

22.     Ex-Im Bank submitted an additional letter to the Court on February 4, 2010 emphasizing, once more, that "Grenada's response has been slow and partial" and explaining that "until Grenada complies with discovery, Ex-Im Bank is not able to evaluate any settlement offer because it does not have a clear picture of Grenada's assets and liabilities". A copy of the letter is attached as Exhibit N.

23.     On March 1, 2010 the Court held a telephone conference addressing Ex-Im Bank's request for an order compelling Grenada's compliance with the outstanding discovery. During the teleconference, the Court ordered Grenada, as a first step, to provide all of the information that Ex-Im Bank had requested about Cinnamon 88 and Levera Development Ltd. (listed by Grenada in response to Ex-Im Bank's Post-Judgment Interrogatory Number 6 as debtors owing $15 million and $4,416,798.56) by March 12, 2010 (the "March 1 Order").

24.     On March 4, 2010, Ex-Im Bank served a Notice of Deposition for Grenada pursuant to FRCP 30(b)(6). A copy of the Notice and attachments is attached as Exhibit O.

25.     On March 12, 2010, Grenada provided its response to the March 1 Order. Grenada's response was neither complete nor intelligible. A copy is attached as Exhibit P.

26.     By email dated March 18, 2010, Grenada set forth its intention to produce Michael Sylvester, identified as "the Permanent Under Secretary of the Ministry of Finance," as its 30(b)(6) witness and stated that "he has been the Government Official most centrally involved

in researching the status of investment projects such as Cinnamon 88 and Levera." A copy of the email is attached as Exhibit Q.

27.     As set out in Ex-Im Bank's March 22, 2010 letter to Grenada, Grenada's response to the March 1 Order was deficient as it failed to (a) produce any documents concerning the debts and (b) failed to provide a single name or address associated with either debtor. Ex-Im Bank agreed, however, to hold off seeking the Court's intervention until after the Rule 30(b)(6) deposition had taken place with the understanding that Grenada would supplement its responses during the deposition. A copy of Ex-Im Bank's March 22 letter is attached as Exhibit R.

28.     Ex-Im Bank deposed Mr. Sylvester on May 5, 2010. Mr. Sylvester, however, had virtually no information on Cinnamon 88 or Levera and also, for the first time, asserted some sort of confidentiality concerning both entities – this despite not having even read the relevant contracts. A copy of the deposition transcript is attached as Exhibit S.

29.     After the deposition, on June 10, 2010, Ex-Im Bank sent a letter to Grenada highlighting, once more, Grenada's insufficient response and again seeking the requested information. A copy of the letter is attached as Exhibit T.

30.     Despite further correspondence and discussion among the parties, Grenada has yet to provide the missing and required information. Moreover, despite promises to do so, Grenada has failed to identify a supplemental 30(b)(6) witness. Copies of correspondence dated June 18, 2010, June 22, 2010, July 6, 2010, July 6, 2010, and July 7, 2010 are attached as Exhibit U.

31.     As yet a further example of Grenada's refusal to cooperate:  on June 25, 2010, I spoke with Mr. Maas. During the call, he said that he had arranged a conference for July 2nd with the Attorney General, the Finance Minister, and other top Government officials, to gather

information and commitments to meet our demands. It has been over a month since our conversation and we have yet to learn the results of any such meeting. (See Exhibit U).

32.     As set out above, in its initial responses to the Interrogatories, Grenada identified Cinnamon 88 and Levera Development Ltd. as debtors owing more than $19 million dollars. Since then, Grenada has back-peddled, refusing to provide the specifics concerning those debtors.

33.     Thus, despite Ex-Im Bank's numerous efforts, Grenada has failed to fully respond to the Interrogatories and its counsel remains unable to provide Ex-Im Bank with any sort of assurance that Grenada intends to fully respond to the outstanding Interrogatories and, in fact, continues to withhold relevant information.

34.     The undersigned certifies, therefore, that Sullivan & Worcester LLP has, in good faith, attempted to confer with Grenada's attorney in an unsuccessful effort to secure the requested information without court action.


I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York, on August 25, 2010.



                                        /s/_____
                                        Paul E. Summit (PS 6263)

7