UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
THE EXPORT-IMPORT BANK OF THE    :
REPUBLIC OF CHINA,
    :   06 Civ. 2469 (HB) (AJP)
          Plaintiff/Judgment Creditor,   :
    :
  -against-    :
    :
GRENADA,    :
    :
          Defendant/Judgment Debtor.  :
-------------------------------------------------------X


## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR CONTEMPT SANCTIONS AND TO COMPEL

Brian E. Maas
Lia N. Brooks
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue
New York, New York 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175
bmaas@fkks.com
lbrooks@fkks.com
*Attorneys for Defendant/Judgment Debtor Grenada*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................... 3

    Grenada's Precarious Economic Situation.............................................................. 4

    Grenada's Responses to Taiwan's Discovery Demands......................................... 5

    The 30(b)(6) Deposition ......................................................................................... 8

ARGUMENT .................................................................................................................... 9

I.      THE MOTION TO COMPEL SHOULD BE DENIED ....................................... 9

    A.    Grenada Has Already Provided All Relevant, Available Information in its
          Responses.................................................................................................... 9

II.    GRENADA HAS COMPLIED WITH ITS OBLIGATIONS AND CONTEMPT
      SANCTIONS ARE UNWARRANTED AND UNJUST .................................. 12

    A.    Grenada Has Complied with the March 1 Order .................................. 12

    B.    Application of the Factors Cited By Plaintiff Do Not Favor a Contempt
          Award ........................................................................................................ 13

          1.    Taiwan Will Not Suffer Any Prejudice From Non-Compliance .............. 14

          2.    A Monetary Sanction Will Not Cause Grenada to Submit the
              Requested Information.............................................................................. 14

          3.    The Imposition of a Financial Sanction Will Substantially
              Prejudice Grenada.................................................................................... 15

          4.    The Government of Grenada Did Not Willfully Disobey This
              Court's March 1 Order.............................................................................. 16

III.   ATTORNEYS' FEES SHOULD NOT BE AWARDED .................................. 17

CONCLUSION................................................................................................................ 17

## TABLE OF AUTHORITIES

Page

### Federal Cases

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,*
  885 F.2d 1 (2d Cir. 1989)...................................................................... 17

*Carey v. Klutznick,*
  653 F.2d 732 (2d. Cir. 1981)................................................................ 15

*Cunningham v. Hamilton Cty., Ohio,*
  527 U.S. 198, 207 (1999)...................................................................... 15

*Daval Steel Prods. v. M/V Fakredine,*
  951 F.2d 1357 (2d Cir. 1991)............................................................... 13

*Fils S.A. v. Carousel Handbags,*
  592 F.2d 126 (2d Cir. 1979)................................................................. 17

*King v. Allied Vision, Ltd.,*
  65 F.3d 1051 (2d. Cir. 1995)................................................................ 16

*Minpeco, S.A. v. Conticommodity Servs., Inc.,*
  116 F.R.D. 517 (S.D.N.Y. 1987) ......................................................... 16

### Federal Rules

Fed. R. Civ. P. 33 ............................................................................... 1, 3
Fed. R. Civ. P. 37 ................................................................................. 13
Fed. R. Civ. P. 37(a)(3)(B)(iii) ............................................................... 1
Fed. R. Civ. Proc. 37(a)(5)..................................................................... 17
Fed. R. Civ. Proc. 37(b)(2)(C) ............................................................... 17
Fed. R. Civ. Proc. 69.............................................................................. 1

### Other Authorities

"Grenada Picks China Over Taiwan," BBC News, January 1, 2005,
  http://news.bbc.co.uk/2/hi/asia-pacific/4190295.stm ................................................................ 3

Unicef Statistics For Grenada,
  http://www.unicef.org/infobycountry/grenada_statistics.html ................................................. 15

Defendant/Judgment Debtor Grenada ("Grenada"), by its attorneys, Frankfurt Kurnit Klein & Selz, P.C., submits this Memorandum of Law in Opposition to Plaintiff/Judgment Creditor, The Export-Import Bank of the Republic of China's ("Plaintiff", "Taiwan" or "Ex-Im Bank") Motion for Contempt Sanctions and to Compel pursuant to Fed. R. Civ. P. 33, 37(a)(3)(B)(iii) and 69.

## PRELIMINARY STATEMENT

Taiwan's motion portrays Grenada as a rogue nation flouting its duties to this Court and hiding information about substantial resources from which Taiwan could recover its judgment. Nothing could be further from the truth. In fact, Grenada's substantial good faith responses to Taiwan's discovery demands confirmed what is well known to the international community – including Taiwan – Grenada has historically been and remains a poor nation that relies on foreign assistance to provide basic services to its citizens. As Taiwan well knows, Grenada historically complied with its foreign debt obligations, including those to Taiwan, until two devastating hurricanes in 2004 and 2005 made it necessary for Grenada to restructure that debt. In fact, this lawsuit and Taiwan's judgment exist because Taiwan is the only member of the international community that did not participate in Grenada's IMF-sanctioned efforts to restructure its debt.

Grenada does not deny its financial obligation to Taiwan and intends to satisfy that obligation. In fact, it made a settlement offer more than one year ago to repay Taiwan *all* of the principal due under the four loans at issue, plus interest on terms similar to those that were agreed to by all other creditor nations. *See* Maas Decl., ¶ 3, Ex. 1.[1] Taiwan has ignored this proposal and has instead pursued this harassing discovery campaign despite the fact that

---

[1] "Maas Decl., ¶ __, Ex. __" refers to the September 23, 2010 Declaration of Brian E. Maas in Support of Grenada's Opposition to the Motion for Sanctions and to Compel.

Grenada's Interrogatory Answers and its 30(b)(6) witness made clear that Grenada does not have assets available from which any meaningful current payment can be made.

Contrary to Taiwan's complaints on this motion, Grenada's Interrogatory Responses, as supplemented in writing, by the testimony at the 30(b)(6) deposition, and by the documents produced by Grenada, provide more than adequate detail about Grenada's assets and liabilities. As explained in the Declaration of Grenada's Minister of Finance, V. Nazim Burke, submitted as part of this opposition, Grenada does not have the human or financial resources necessary to search for and gather the additional details sought by Taiwan and regardless, any additional information that may be found will not change the basic fact that Grenada does not have resources from which Taiwan could satisfy its judgment.

Taiwan's primary focus in this motion is Grenada's alleged failure to comply with this Court's oral order of March 1, 2010 (the "March 1 Order") to provide information about the Cinnamon 88 and Levera development projects. In fact, Grenada's written response to the March 1 Order made clear that both of these projects, which were listed on the initial Interrogatory Responses as having substantial obligations to Grenada, are, in fact, inactive projects whose developers have not raised the financing necessary even to begin construction and cannot pay any of the amounts due to Grenada. Therefore, the developers' obligations (on paper) to Grenada do not constitute an asset that could provide a source of funds for attachment or execution and the production of additional information about those projects will not change this reality.

Grenada takes its obligations as a judgment debtor seriously, and has provided Taiwan with all the information that could assist Taiwan with its post-judgment collection efforts. It also remains committed to reaching a fair repayment schedule of the unpaid debt. None of the information that Taiwan continues to seek is material to its judgment enforcement efforts.

Moreover, as discussed below, the information requested cannot be located without putting an untenable strain on Grenada's governmental resources or, as in the case of information about the Cinnamon 88 and Levera developers, creating a real danger of causing the developers to abandon their efforts to raise financing for their projects, thereby costing the Grenadian people essential jobs and revenues. Thus, none of the complaints raised by Taiwan on this motion warrants the imposition of sanctions.

## BACKGROUND

This case was filed by Taiwan in March 2006, after two devastating hurricanes made it impossible for Grenada to meet its repayment obligations on its public and private debt, including that owed to Taiwan. While the rest of the world agreed to restructure Grenada's debt obligations, Taiwan, with which Grenada cut diplomatic ties in 2005 after recognizing the People's Republic of China, chose to bring this lawsuit.[2]

At the time the lawsuit was filed, Grenada was ruled by the New National Party, as it had been since 1995. Burke Decl., ¶ 1. The New National Party did not respond to the lawsuit and Taiwan obtained a judgment by default in early 2007. Summit Decl., ¶ 2.[3] In October 2007, Taiwan propounded the Interrogatories, but the administration did not respond. *Id.*, ¶¶ 3-4. In 2008, the New National Party was defeated and the New Democratic Party came into power, bringing with it an entirely new government. The current administration of Grenada did not even learn of this lawsuit until 2009, almost two years after Taiwan obtained its judgment. Burke Decl., ¶ 2. Upon learning of the lawsuit, Grenada immediately hired new counsel and within

---

[2] *See* "Grenada Picks China Over Taiwan," BBC News, January 1, 2005, http://news.bbc.co.uk/2/hi/asia-pacific/4190295.stm (last visited September 21, 2010).

[3] "Summit Decl, ¶ ___" refers to the August 15, 2010 Declaration of Paul E. Summit in Support of Plaintiff's Motion for Contempt Sanctions and to Compel.

ninety days, responded to the Interrogatories, and presented Taiwan with a comprehensive settlement proposal. Maas Decl., ¶¶ 2-3, Ex. 1.

Taiwan has now spent the past year complaining that Grenada failed to respond completely to its discovery demands, rather than responding to Grenada's settlement offer. Regardless, the basic facts have not changed – as Grenada's Interrogatory Responses made clear – Grenada has no assets from which Taiwan can recover, and no additional information will alter this reality.

### Grenada's Precarious Economic Situation

Grenada is a poor country that depends on international aid to provide basic services to its citizens. Burke Decl., ¶ 2. Grenada's domestic economy is strongly focused on agriculture and relies heavily on tourism and foreign development projects for jobs and tax revenues. *Id.* Grenada's export earnings are less than $30 million while its import bill exceeds $300 million. *Id.* The total Gross Domestic Product of Grenada is less than $1 billion and its annual government expenditures are approximately $250 million. Of this amount, almost 10% is spent on providing social safety net services to the most vulnerable citizens of Grenada. *Id.*

The hurricanes in 2004 and 2005 inflicted almost $1 billion of damage to Grenada and devastated its already fragile economy. *Id.*, ¶ 4. Grenada was forced to commit resources to rebuild the country's infrastructure, which prevented Grenada from meeting its most basic operating requirements such as wages for government employees, public assistance and interest payments on its public and private debt. *Id.* In 2006, through the International Monetary Fund, Grenada sought debt relief/restructuring from government creditors including the "Paris Club" (the U.S. and Western Europe), and Taiwan. The Paris Club creditors, as well as most other government creditors, granted relief by reducing the debt service due to them by over 90%. Taiwan responded by commencing this litigation. *Id.*

Under the terms of the debt restructuring, Grenada must maintain inter-creditor equity and thus cannot treat any creditor more favorably than the terms of the IMF-sponsored agreements. *Id.*, ¶ 5. In August 2009, Grenada made a settlement offer to Taiwan in which Grenada offered to repay its debt on terms that are consistent with its inter-creditor equity obligations. *See* Maas Decl., ¶ 3, Ex. 1. Taiwan has not responded in any fashion to Grenada's offer and has instead pursued a litigation strategy allegedly designed to uncover Grenada's assets. However, as is clear from the information and documents that Grenada has produced, no such assets exist that would allow Taiwan to receive money any faster than it would be paid under the proposed terms of the settlement agreement.

**Grenada's Responses to Taiwan's Discovery Demands**

On September 4, 2009, Grenada provided Taiwan with written responses to the Interrogatories, as well as detailed appendices containing the name, account number and value of Grenada's foreign and domestic bank accounts, and listings of Grenada's liquid assets, debts owed by Grenada, and debts owed to Grenada. *See* Summit Decl., Ex. D. The schedules made clear that Grenada maintained no attachable assets in the United States and no liquid assets elsewhere on which Taiwan could potentially execute. *Id.*

Rather than accept Grenada's answers as to its lack of current assets, Taiwan sent a letter nearly two months later demanding additional details and historical financial information. *See* Summit Decl., Ex. E. Despite its lack of resources and the extreme burden created by searching for historical information, Grenada supplemented its responses in December 2009 and January 2010. *See* Summit Decl., Exs. G, I.

Rather than being satisfied with the supplemental responses, Taiwan returned to Grenada's original Interrogatory Responses and demanded more information about two items

listed in the Responses as "Real Estate Divestments" in response to Interrogatory 6 about debts owed to Grenada:

| | |
|---|---|
| Cinnamon 88 | $15,000,000.00 |
| Levera Development Ltd. | $ 4,416,798.56 |

As to these purported assets, Taiwan demanded that Grenada provide more information, including the identity of the developer of each project and a copy of the contract. On March 1, 2010, this Court ordered Grenada to provide additional information concerning the projects. On March 12, Grenada provided additional information concerning both projects in a summary memorandum (the "March 12 Summary").

With respect to the Cinnamon 88 project, the March 12 Summary described both the failed history of the project as well as the fact that the current developer of Cinnamon has defaulted on its contract with Grenada for failure to make payments on the land that was divested by Grenada to the developer, among other things. As described in the attached Declaration of Grenada's Attorney General Rohan A. Phillip, Grenada has notified the developer of its default and the developer has failed to cure. Phillip Decl., ¶ 3. Thus, Grenada has asserted its right to reclaim the property it previously divested to the developer. *Id.*

As a result of the developer's financial difficulty and the default notice that is in place, Grenada no longer expects to receive the $15 million in payments – the cost of the land – listed in the Interrogatory Responses. Phillip Decl., ¶ 2. Moreover, even if the current developer were to raise the funds necessary to complete the project, the payments due to Grenada for the land have two encumbrances that are superior to any claim to the funds that Taiwan may have as a result of its judgment. *Id.*, ¶ 5. First, the lands comprising the Cinnamon 88 project were obtained by compulsory acquisition by the Government and the Government still owes nearly $1.85 million plus interest for compensation for the acquisition. *Id.* As Attorney General Phillip

6

explains, under the Grenadian Constitution, the Government is obligated to make prompt payment of these funds and the Constitutional obligation creates a priority claim by the former property owners against any funds due to Grenada. *Id.*

Second, a predecessor-in-interest to the current developer defaulted on a $7,500,000 obligation to Fortis Bank that had been guaranteed by the Government of Grenada. *Id.*, ¶ 6. The obligation on this guarantee was paid by Grenada and the Government has the right to recoup those funds from any future payments received from the Cinnamon 88 developers, if ever. *Id.*

The Levera project has a similarly problematic history and is also defunct as the developer has been unable to obtain necessary funding. *Id.*, ¶ 8. As with the Cinnamon 88 project, the land for the Levera project was compulsorily acquired from property owners and the compensation for the land has not yet been determined by the Grenadian court. *Id.* Moreover, the current developer paid the previous government more than $3,000,000 for additional land without the previous government compensating the landowners. *Id.* Thus, the Government still has that obligation and is constitutionally obligated to pay the landowners should the Levera developer ever make any payments to the Government. *Id.* As with Cinnamon 88, there is no expectation that the amount listed in the Interrogatory Responses will ever be paid. *Id.*, ¶ 2.

As Finance Minister Burke explains in his declaration, while both development projects are inactive and the developers have been unsuccessful to date, the Grenadian government still considers both projects to be crucial to the financial well-being of Grenada and continues to work with the developers in their ongoing efforts to raise money. Burke Decl., ¶ 12. Thus, under these circumstances, the Grenadian government will not do anything that will jeopardize its relationship with the developers of these two projects or in any way interfere with the possibility that the money will be raised that can compensate the Grenadian citizens and allow for the development of these projects. *Id.*

7

**The 30(b)(6) Deposition**

In addition to responding to the Interrogatories and supplementing its responses at the request of Taiwan, Grenada also made Mike Sylvester, Deputy Permanent Secretary of the Ministry of Finance of Grenada, available for a 30(b)(6) deposition.  Before the deposition, Grenada produced four telephone-book sized compilations that set forth all of Grenada's estimated and actual revenues and expenditures for the years 2007, 2008, 2009 and 2010, in addition to other documents representing the revenues and expenditures of instrumentalities of Grenada.  Maas Decl., ¶ 4.[4]

Mr. Sylvester testified on a wide range of topics, including the steps taken to find information to answer the Interrogatories, location of Grenada's assets, the organization and content of the budget books, and the names and titles of other Grenadian officials with knowledge of the topics contained in the Interrogatories.  Summit Decl., Ex. S.  Although Mr. Sylvester did not have comprehensive knowledge or full recall about all aspects of the Grenadian government and its finances, and some supplementation of his answers may be appropriate, Taiwan's characterization of the deposition in its papers is a gross exaggeration of the situation and makes it impossible even to discuss supplementation as it is clear that nothing will satisfy Taiwan.

---

[4] These budget books are too voluminous to include as exhibits to the Maas Declaration, but can be made available for the Court's review.

# ARGUMENT

## I.

## THE MOTION TO COMPEL SHOULD BE DENIED

### A.   Grenada Has Already Provided All Relevant, Available Information in its Responses

In addition to its position on the adequacy of Grenada's responses with respect to the Cinnamon 88 and Levera projects, Taiwan takes issue in this motion with most of Grenada's other Interrogatory Response as well.  However, as shown below, Grenada has provided more than adequate information about each category of asset that is the subject of an Interrogatory.  In fact, as explained above, Grenada produced copies of its entire budget for the years 2007, 2008, 2009 and 2010 before the 30(b)(6) deposition,, thereby explicitly showing Taiwan its severe financial limitations.  Maas Decl., ¶ 4.

In order to understand the types of information already provided and the irrelevance of the information still being sought, the information provided by Grenada as to each of the Interrogatories about which Taiwan is complaining is summarized below:

Interrogatory 1 requested information about Grenada's bank accounts.  Grenada responded to the Interrogatory on September 4, 2009 by providing a schedule of all bank accounts owned by Grenada, the account number, location, and value as of June 30, 2009, and August 31, 2009.  *See* Summit Decl., Ex. D.  Due to overdrafts, the net total balance of the accounts as of June 30, 2009 was -$42,737,909.65.  *Id.*  Despite this information Taiwan still seeks a "detailed description of the account activity for each account from 1990 to the present," but does not even try to explain to the Court how a twenty-year history of the inflows and outflows of Grenada's operating accounts would assist it with its putative goal; i.e., to identify current assets for execution purposes.  Similarly, the information sought concerning Grenada's

9

currency reserves located at the Eastern Caribbean Currency Union would not be relevant to Taiwan's efforts as these reserves are held at the Currency Union's headquarters, in St. Kitts and would not be available for attachment in this proceeding. *See* Summit Decl., Ex. S at 119.

Interrogatory 3 requested information regarding Grenada's liquid assets. Grenada provided a schedule of its equity holdings as part of its responses to the Interrogatories. *See* Summit Decl., Ex. D. In preparation for his 30(b)(6) testimony (and contrary to Taiwan's exaggerations about his efforts in this regard), Mr. Sylvester attempted to ascertain the additional information requested by Taiwan from both the Government and the companies in which the positions are held, but was not able to confirm the custodian of the shares or locate share certificates that would yield the requested information. However, Mr. Sylvester explained the nature of each stock that was held and the fact most were illiquid or not transferrable.

Interrogatory 8 requested information about the disposition of the money under the Loan Agreements at issue in this case. Taiwan states that this information is relevant to Taiwan's collection efforts because Grenada "may have saved the money, or loaned it to a third party, or invested it." Pl. Br. at 14. This is preposterous. First of all, as Taiwan well knows, Grenada needs foreign loans for the general operations of the government, not for "saving" or "investing". Moreover, Grenada has provided complete information about its bank accounts, investment accounts, and debtors. If Grenada had indeed "saved, invested, or loaned" the money, this fact would have been made clear by the account data that Grenada supplied in its Responses or in the documents Grenada supplied.

Interrogatory 10 requested that Grenada identify every Grenadian official who resides in the United States, allegedly because this information "may lead to information concerning Grenada's ability to repay the outstanding loans and the location of its assets." Again, this dubious reasoning belies Taiwan's motivations. First, Grenada has actually already offered to

pay *all* of the outstanding loans in the settlement agreement. Maas Decl., ¶ 3, Ex. I. The settlement offer was put together by officials from the Ministry of Finance, who have specific knowledge of Grenada's ability to pay. *Id.* Second, in both its Responses and in Mr. Sylvester's 30(b)(6), Grenada identified other individuals who had knowledge of Grenada's finances and assets. All of them were officials located in Grenada, not the United States. *See, e.g.*, Summit Decl., Ex. S at 20-21.

Interrogatory 11 requested that Grenada identify and describe all foreign assistance that Grenada receives. In its Responses, Grenada did just that. *See* Summit Decl., Ex. D at 6. Moreover, any foreign assistance received would have been in Grenada's detailed revenue and expenditure books that were provided to Taiwan at the 30(b)(6). Taiwan's complaints are meritless.

Interrogatory 14 requested information about the relationship between Mr. de Savary and Grenada. Grenada has provided a description of its relationship with Mr. de Savary and also noted that its agreements with Mr. de Savary are confidential. Summit Decl., Ex. D at 8-9. Grenada will not breach its contracts with Mr. de Savary. Mr. de Savary is a well-known international property developer. It is telling that over three years after obtaining its judgment, Taiwan has not subpoenaed Mr. de Savary for documents or testimony.

Interrogatory 15 requests information about contracts Grenada has with foreign entities. In its Responses, Grenada provided a detailed description of a contract. Summit Decl., Ex. D at 9-11. The information provided was the only information reasonably available to Grenada under its circumstances.

Interrogatory 16 and 18 request information about individuals who are most knowledgeable about Grenada's assets and who assisted in preparing the Responses to the Interrogatories. Grenada identified the offices within the government of Grenada that were

involved, and the names and roles of the various ministers and staff in those offices were further explained by Mr. Sylvester in his deposition.  Summit Decl., Ex. D at 12, Ex. S at 20-21.  It is hard to understand exactly what more Taiwan wants from Grenada in this regard.

Interrogatory 17 requests that Grenada describe books and records that concern Grenada's assets and liabilities.  At Mr. Sylvester's deposition, Grenada produced documents representing all of Grenada's estimated revenues and expenditures for the years 2007, 2008, 2009 and 2010, in addition to other documents representing the revenues and expenditures of instrumentalities of Grenada.  Maas Decl., ¶ 4.  Taiwan's quarrel with Grenada on this point seems to be that Grenada did not accurately *describe* these books in its initial Responses. Taiwan somehow disregards the fact that Grenada actually produced the documents full of information about projected revenue streams – exactly what Taiwan claims to be seeking.

As can be seen, Grenada has fully described its limited assets and substantial liabilities. None of the information being pursued by Taiwan will change this snapshot nor will it provide Taiwan with a means of satisfying its judgment.  At this point, Taiwan's informational scavenger hunt will only impose unwarranted burdens on Grenada without leading to any information that could assist Taiwan in its judgment enforcement efforts.  Under these circumstances, Grenada should not be required to provide any additional information to Taiwan..

II.

**GRENADA HAS COMPLIED WITH ITS OBLIGATIONS AND
CONTEMPT SANCTIONS ARE UNWARRANTED AND UNJUST**

**A.**     **Grenada Has Complied with the March 1 Order**

On March 1, 2010, this Court ordered that Grenada provide Taiwan with information concerning the alleged $15 million Cinnamon 88 asset and the $4,416,798.56 Levera asset listed in Grenada's Interrogatory Responses by March 12.  On that day, Grenada provided a

memorandum to Taiwan that reported the results of Grenada's research into the history and the current status of both projects. This memorandum set out the troubled and unsuccessful history of both projects and made clear that both the Cinnamon 88 and Levera "assets", which were listed in the Interrogatories as "Real Estate Divestments" without other clarification, are actually worthless. Neither the Cinnamon 88 nor the Levera developers have raised any financing to continue the projects and both projects have been inactive for years. Burke Decl., ¶ 9, Phillip Decl., ¶ 2.

Thus, although it is technically true that that the Cinnamon 88 developer and the Levera developer owe Grenada approximately $15 million and $4.4 million, respectively, for the land that was given to the developers (or their failed predecessors) for the projects, neither developer has resources from which any amount of this obligation could be paid. Phillip Decl., ¶ 2. In addition, as the March 12 Summary explained and as Attorney General Phillip discusses in his Declaration, even if Grenada were to be able to collect on these obligations, all of the Levera funds and most of the Cinnamon 88 funds that are due to Grenada under the current agreements are substantially encumbered by constitutionally-mandated obligations that the Grenadian government owes to the landowners from whom the land for the projects was initially taken. Phillip Decl., ¶ 2.

**B.**     **Application of the Factors Cited By Plaintiff Do Not Favor a Contempt Award**

The decision to hold a party in contempt or award other sanctions for failing to obey a discovery order is within the broad discretion of the Court. Fed. R. Civ. P. 37, *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991). Here, the Court should exercise its discretion and not impose sanctions on Grenada, because application of the *United Mine Workers* factors: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose;

and (4) the willfulness of the contemnor in disregarding the court's order – does not support the imposition of contempt sanctions.

### 1.    Taiwan Will Not Suffer Any Prejudice From Non-Compliance

The first factor is whether the moving party has suffered any prejudice from the non-compliance. Grenada complied with the March 1 Order by providing sufficient information about the history and status of the projects to make clear to Taiwan that the Cinnamon 88 and Levera projects were now defunct and the $19 million listed in the original Interrogatory Responses was now illusory. While Taiwan may have hoped for different information as to the value of the purported assets, the information that Taiwan still seeks about the developers and the contracts will not change the fact that the developers have not raised any money and cannot pay these obligations. Taiwan's position vis-à-vis its unsatisfied judgment would be the same; there still would be no significant assets on which Taiwan could execute.

### 2.    A Monetary Sanction Will Not Cause Grenada to Submit the Requested Information

Plaintiff argues that a $10,000 per day sanction here would be effective because Grenada has little incentive to pay off the judgment now because the current statutory post-judgment interest rate is so low. This argument ignores two important points: first, Grenada has offered to pay the principal and interest on the loans – this is not a case where a judgment debtor is attempting to shirk its responsibilities for its debt.[5] Rather, Grenada has proposed a workable payment plan to satisfy its obligations. Maas Decl., ¶ 3, Ex. 1. Second, Taiwan is mixing apples and oranges. The only legitimate purpose of sanctions would be to coerce Grenada to provide

---

[5] Again, it is hard to understand why Taiwan, if it was truly interested in recovering the most it could, would want to punish Grenada with monetary sanctions, which would create even less of a stable financial situation for Grenada, and take away from the pool of money available to repay Taiwan.

information, not to cause it to satisfy the Judgment, as Plaintiff suggests. *See Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198, 207 (1999) (The purpose of sanctions is to "force the contemnor to comply with an order of the court.") (quoting *Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992)). In this case, there is absolutely no connection between providing information and satisfying the judgment, because Cinnamon 88 and Levera are not a possible source of asset execution for Taiwan.

### 3. The Imposition of a Financial Sanction Will Substantially Prejudice Grenada

Plaintiff is urging the Court to impose a $10,000 *per day* fine on Grenada, yet offers no evidence for its conclusory assertion that Grenada "certainly" has the ability to pay the sanction. In fact, forcing Grenada to pay a fine like this would cripple the country. Burke Decl., ¶ 14. Requiring Grenada, a nation that depends on foreign grants to meet the basic needs of its citizens, to pay $10,000 per day to a bank that refuses to even engage in settlement discussions is ludicrous. *See Carey v. Klutznick*, 653 F.2d 732, 739 (2d. Cir. 1981) (holding that severity of sanctions for failure to comply with a discovery order should be tempered by consideration of equities involved).

There is no dispute that Grenada is a poor country. Taiwan, ironically, admits in its papers that Grenada may have difficulty paying off the judgment. Grenada's per capita gross national income is $US 5,710 *per year*. *See* Unicef Statistics For Grenada, http://www.unicef.org/infobycountry/grenada_statistics.html (last visited September 22, 2010). As such, every payment Grenada makes on its internal obligations and external debts has been carefully provided for and projected for in Grenada's budget. Grenada does not have uncommitted funds available to pay fines or for that matter, for the defense of this proceeding. This unavailability of resources is the very reason why, soon after the Government learned of

this lawsuit, the Ministry of Finance to put together a settlement proposal that offered full repayment of principal, plus interest, but deferred the commencement of the repayment of principal for five years in the same way as Grenada had been forced to restructure the repayments of its other foreign debt that it cannot afford to service currently.  Burke Decl., ¶ 14.

**4.    The Government of Grenada Did Not Willfully Disobey This Court's March 1 Order**

The final factor to consider in determining whether contempt sanctions are appropriate is the willfulness of the party accused of contempt.  Grenada has not willfully disobeyed an order of this Court.  Grenada has provided substantial information in its Interrogatory Responses and the March 12 Summary provided an ample background and current information demonstrating that the Cinnamon 88 and Levera debts were not real.  Moreover, as Minister Burke explains, the additional information being sought by Taiwan about the developers and the contracts is precluded from disclosure as to Cinnamon 88 by a contractual confidentiality order and in the judgment of the Grenadian government, cannot be produced as to either project without putting at great risk Grenada's relationships with these developers and the development community. *See* Burke Decl., ¶ 12.  Thus, Grenada is legitimately protecting the interests of its people and this court, under the principle of comity, should not second guess that decision.  *See, e.g., Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 533 (S.D.N.Y. 1987).  Grenada's response to this Court's order, as well as the balance of its compliance with Taiwan's discovery demands has been reasonable, not wrongful, and the motion for sanctions should be denied.  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d. Cir. 1995).

16

## III.

## ATTORNEYS' FEES SHOULD NOT BE AWARDED

In addition to its motion for contempt sanctions, Plaintiff also requests attorneys' fees in the amount of $10,000 in connection with its motion. Fed. R. Civ. Proc. 37(a)(5) and 37(b)(2)(C) allow a court to award attorneys' fees when a party has not complied with discovery obligations unless the opposing party's conduct was substantially justified or other circumstances make the award of fees unjust. For the reasons explained above, this is a situation in which an award of attorney's fees is unjust, because as explained above, in addition to its significant financial difficulties, Grenada has made good faith efforts to comply with both the March 1 Order, and with its post judgment discovery obligations in general. These efforts demonstrate that Grenada has not willfully disobeyed the Court or ignored its discovery obligations, and thus no attorneys' fees should be awarded. *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979) (holding that in order to award attorneys' fees for contempt, the violation must be willful); *see also Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 8 (2d Cir. 1989) (holding that even if defendant's conduct demonstrated a "callous disgregard" for the rights of the plaintiff and the mandates of the federal courts, because its conduct was not willful, district court was correct in denying application for attorneys' fees).

## CONCLUSION

As Finance Minister Burke stated in his declaration, "Grenada has every intention of meeting its obligations to Taiwan consistent with the inter-creditor equity principles that govern Grenada's agreements to pay-off its debts to all of the other major bilateral partners. That Taiwan chose to commence litigation rather than join Grenada's other creditors in restructuring Grenada's debt cannot force Grenada to breach its obligations under these debt restructuring

17

agreements or its obligations to its citizens to maximize the possibility that the Cinnamon 88 or the Levera developers will be able to raise money to move those projects forward." Burke Decl., ¶ 13. For these reasons and for those stated above, Defendant/Judgment Debtor Grenada respectfully requests this Court deny Plaintiff/Judgment Creditor's motion for contempt and to compel, and grant Grenada such other and further relief as is just and proper.

Dated: New York, New York
       September 23, 2010

                       FRANKFURT KURNIT KLEIN & SELZ, P.C.

                       By: _____
                             Brian E. Maas
                             Lia N. Brooks

                       488 Madison Avenue
                       New York, New York 10022
                       Tel.: (212) 980-0120
                       Fax: (212) 593-9175
                       bmaas@fkks.com
                       lbrooks@fkks.com

                       *Attorneys for Defendant/Judgment Debtor Grenada*