UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THE EXPORT-IMPORT BANK OF  :
THE REPUBLIC OF CHINA,   :
　　　　　　　　　　　　　　　　　　　　:  06 CV 2469 (HB)(AJP)
　　　　　　　　　　　　　　　　　　　　:
　　　　　　Plaintiff/Judgment Creditor,  :
　　　　　　　　　　　　　　　　　　　　:
　　-against-　　　　　　　　　　　　　　:  ORAL ARGUMENT REQUESTED
　　　　　　　　　　　　　　　　　　　　:
GRENADA,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　Defendant/Judgment Debtor.  :
-------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION FOR CONTEMPT SANCTIONS AND TO COMPEL**


　　　　　　　　　　　　　　　　　　Paul E. Summit (PS 6263)
　　　　　　　　　　　　　　　　　　Andrew T. Solomon (AS 9200)
　　　　　　　　　　　　　　　　　　Emily A. Samuels (ES 0302)
　　　　　　　　　　　　　　　　　　SULLIVAN & WORCESTER LLP
　　　　　　　　　　　　　　　　　　1290 Avenue of the Americas, 29th Floor
　　　　　　　　　　　　　　　　　　New York, NY 10104
　　　　　　　　　　　　　　　　　　(212) 660-3000

　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff/Judgment Creditor*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................3

A. Grenada Has Flouted the Court's March 1 Order On Cinnamon 88 and
   Levera Development Ltd. ..........................................................................................3

B. Grenada Failed to Fulfill Its Rule 30(b)(6) Deposition Obligations .........................5

C. Grenada Failed to Provide Complete Responses to the Outstanding Post-Judgment
   Interrogatories ............................................................................................................6

D. Grenada's Bare Policy Argument ..............................................................................9

CONCLUSION .....................................................................................................................10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A.I. Credit Corp. v. Gov't of Jamaica*, 666 F.Supp. 629 (S.D.N.Y. 1987) ..................................... 9

*Carr. v. Queens-Long Island Med. Grp., P.C.*, Nos. 99Civ.3706NRBJCF,
    02Civ.1676NRBJCF, 2003 WL 169793 (S.D.N.Y. Jan. 24, 2003) ........................................ 4

*Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. People's Republic of the Congo*,
    729 F.Supp. 936 (S.D.N.Y. 1989) ........................................................................................ 10

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850 (2d Cir. 1997) ............... 10

*Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253 (2d Cir. 1999) ...................................................... 5

*S.E.C. v. Morelli*, 143 F.R.D. 42 (S.D.N.Y. 1992) ......................................................................... 5

*Senat v. City of New York*, 255 F.R.D. 338 (E.D.N.Y. 2009) ........................................................ 4

### FEDERAL STATUTES

Fed. R. Civ. P. 30(b)(6) ............................................................................................................. *passim*

Fed. R. Civ. P. 33 ............................................................................................................................ 1

Fed. R. Civ. P. 33(b)(4) ................................................................................................................... 4

Fed. R. Civ. P. 37(a)(3)(B)(iii) ....................................................................................................... 1

Fed. R. Civ. P. 37(b)(2) .................................................................................................................. 1

Fed. R. Civ. P. 69 ............................................................................................................................ 1

The Export-Import Bank of the Republic of China ("Ex-Im Bank") submits this Reply Memorandum of Law in further support of (a) its Motion for Contempt Sanctions against judgment debtor Grenada ("Grenada') pursuant to Fed. R. Civ. P. 37(b)(2) and (b) its Motion to Compel Grenada's complete responses to Ex-Im Bank's outstanding discovery pursuant to Fed. Rules Civ. P. 33, 37(a)(3)(B)(iii), and 69.

## INTRODUCTION

Grenada continues to defy this Court's Order of March 1, 2010 (the "March 1 Order") by refusing to identify, with any specificity or coherence, Cinnamon 88 and Levera Development Ltd. ("Levera"), the two real estate entities that owe it over $19 million dollars. Grenada also continues to ignore its obligation to provide complete responses to outstanding discovery including interrogatories (first served almost three years ago), and a Rule 30(b)(6) deposition.

On March 1, 2010, the Court ordered Grenada to answer the interrogatories on Cinnamon 88 and Levera completely by March 12. Grenada's March 12 response was a travesty. (Summit Dec. Ex. P).[1]  Instead of identifying people and places, it used generic terms to *hide* identity (the "present developer", the "new developer"). It failed to produce any of its documents about these multi million dollar debts to Grenada, substituting vague descriptions of contracts ("The arrangement requires the developer to furnish to government evidence of financing for the construction of the luxury hotel by July 1 2009. This has not happened"). (Id.). It failed to say where Cinnamon 88 or Levera were located, or the names of the principals of Cinnamon 88 or Levera. In other words, Grenada defied the March 1 Order, and crafted a response that was designed to frustrate any action by Ex-Im Bank to actually collect its debt.

---

[1] "Summit Dec. ¶__, Ex. ___" refers to the Declaration of Paul E. Summit in Support of Ex-Im Bank's Motion for Contempt Sanctions and to Compel dated August 25, 2010.

There was not a word about any supposed "confidentiality."

Grenada's present opposition to Ex-Im Bank's Motion for Sanctions and to Compel (the "Motion") is audacious. Even now, in blatant defiance of this Court's March 1 Order, it fails to produce a single document. Even now, it refuses to identify any of the principals of Levera or Cinnamon 88, hiding again behind generic descriptions. (*See* Phillip Dec. ¶¶ 3&6)[2] ("the private company that is the developer of this project", "a predecessor-in-interest to the current developer defaulted…."). And, in the teeth of this Court's order, it admits its reason for defying the order:

> Grenada is concerned that *if it provides information about the [Levera] developer* to Ex-Im Bank, enforcement steps will be taken that will either undermine the negotiations to restructure the arrangement or will cause the developer to decide not to go forward with the project. Given the importance of development projects like Levera to the Grenadian economy, *the Government cannot risk that result*…. Phillip Dec. ¶ 10 (emph. added).

And elsewhere:

> While the projects are inactive and the developers have been unsuccessful to date, the Grenadian government still considers both projects to be crucial to the financial well-being of Grenada and continues to work with the developers as they continue to try to raise money. …. Thus, under these circumstances, *the Grenadian government will not do anything that will jeopardize its relationship with the developers of these two projects or in any way interfere with the possibility that the money will be raised that can compensate the Grenadian citizens* and allow for the development of these projects. Burke Dec. ¶12 (emph. added).[3]

These quotes really say it all. The Government of Grenada has decided that it is not in its financial interest to make the disclosures that this Court ordered on March 1. And thus: it won't.

Grenada attempts to divert attention to its economic difficulties and debt restructuring efforts with others. All this is irrelevant. Grenada borrowed money and failed to repay it; and

---

[2] "Phillip Dec. ¶ __" refers to the Declaration of Rohan A. Phillip in Support of Grenada's Opposition dated September 22, 2010.

[3] "Burke Dec. ¶ __" refers to the Declaration of V. Nazim Burke in Support of Grenada's Opposition dated September 22, 2010.

2

Ex-Im Bank obtained a judgment now worth over $28 million dollars. In the years since then, Grenada has not paid a dollar of the judgment. Ex-Im Bank sought discovery; Grenada defied its obligations. The only issues before this Court are: a) should Grenada be sanctioned for failing to comply with a discovery order? and b) should Grenada be compelled to provide all of the information that it is withholding? The answer to both is yes.

## ARGUMENT

### A. Grenada Has Flouted the Court's March 1 Order On Cinnamon 88 and Levera Development Ltd.

Grenada is in contempt of this Court's March 1 Order for refusing to provide Ex-Im Bank with the required information about Cinnamon 88 and Levera. Its response to the March 1 Order was a vague and willfully opaque letter. (Summit Dec. Ex. P). Ex-Im Bank then gave Grenada a chance to cure its defiance by means of a 30(b)(6) deponent; but the deponent was utterly unresponsive as to Levera and Cinnamon 88. (Summit Dec. Ex. S (pp. 38-39, 42-43)). Grenada had yet another and final chance to comply in its Opposition to this motion. Grenada blew off all these chances. Ex-Im Bank still has not seen a single document concerning Cinnamon 88 and Levera, including the relevant contracts; still does not know the name of any developer or principal associated with either project; still does not know the address or telephone number or even nationality of a single developer. In other words, Grenada has held back all information that might actually *assist* Ex-Im Bank in acting to obtain payment to Ex-Im Bank of these multimillion dollar debts in satisfaction of Grenada's obligations. Grenada's goal is not to comply with the Court's order, but to avoid the "real danger of causing the developers to abandon their efforts to raise financing for their projects". Opp. Mem. at 3.[4]

---

[4] "Opp. Mem. at ___" refers to Grenada's Memorandum of Law in Opposition to the Motion dated September 23, 2010.

Grenada's supposed confidentiality argument is nonsense. First: Grenada waived the argument when it failed to respond timely to the interrogatories in November 2007. Then Grenada failed to raise confidentiality when it finally answered the interrogatories, on September 4, 2009. Then Grenada actually argued to this Court, on March 1, 2010, about Cinnamon 88 and Levera, and even then failed to raise confidentiality. Then Grenada responded with its letter of March 12: *still* no mention of confidentiality. (Indeed, the precise opposite, this promise by counsel: "[o]ur client is still searching for relevant records…to the extent that anything additional is learned, *it will be forwarded to you immediately*." (Summit Dec. Ex. P)) (emph. added). So any claim to confidentiality has been waived multiple times.[5]

And even if the claim had not been waived: there is *no* proof that Levera is confidential.[6] As to Cinnamon 88, the only "proof" is a fragment apparently lifted from an (unproduced, unidentified) "agreement between Grenada and the current [unidentified] Cinnamon 88 developer." (Phillip Dec. ¶ 7). And the fragment of language that Grenada cites reveals that any confidentiality is subject to one of the standard exceptions, that is, if a "Party has to reveal such information by law…." (Id.).

---

[5] The Federal Rules of Civil Procedure require "timely" objections: "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). *See Senat v. City of New York*, 255 F.R.D. 338, 340 (E.D.N.Y. 2009) (defendant waived objections, other than privilege, "by the failure to respond timely to" discovery); *Carr. v. Queens-Long Island Med. Grp., P.C.*, Nos. 99Civ.3706NRBJCF, 02Civ.1676NRBJCF, 2003 WL 169793, at *5 (S.D.N.Y. Jan. 24, 2003) ("The failure to provide discovery responses in a timely fashion is a basis for deeming objections waived.").

[6] Grenada nevertheless asserted, at the Rule 30(b)(6) deposition of Mr. Sylvester, that it would not produce Levera documents because "[t]he government of Grenada believes that in its dealings with potential develop --- people interested in doing potential development, that their confidential relationships are essential, and they're not at the present time willing to jeopardize their relationships…by providing the underlying documents to this failed project…." Summit Dec. Ex. S (pp. 83-84).

Ex-Im Bank thus requests a coercive sanction of no less than $10,000 per day. In order to be meaningful the amount must be substantial. Grenada raises the state of its economy as a defense to the imposition of contempt sanctions. But Grenada can easily avoid this financial sanction by simply providing the missing information. We respectfully suggest an order providing Grenada with an additional 10 days in which to provide all the missing information. If Grenada fails to comply by the end of the period, the $10,000 a day sanction would begin.

**B.   Grenada Failed to Fulfill Its Rule 30(b)(6) Deposition Obligations**

In addition to violating the Court's March 1 Order, Grenada also failed to produce a 30(b)(6) witness who could provide Ex-Im Bank with the requested information. A party served with a Rule 30(b)(6) notice is required to "make available such number of persons as will be able to give complete, knowledgeable and binding answers on its behalf." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999). The subpoenaed party is also required to "prepare those persons in order that they can answer fully, completely, unevasively, the questions posed … as to the relevant subject matters." *S.E.C. v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992) (internal citations and quotations omitted).

Ex-Im Bank demonstrated that Mr. Sylvester, Grenada's 30(b)(6) deponent, did not give complete or knowledgeable answers. He admitted without equivocation that he had no knowledge of Cinnamon 88 or Levera, and had not read the relevant contracts (despite having copies of them). (Summit Dec., Ex S (pp. 38-39, 42-43)). In reality, he was plainly unprepared to answer the majority of the questions posed. For instance, he could not provide any additional information about Grenada's other stated assets: funds at the Eastern Caribbean Currency Union, an account receivable of $8 million dollars listed in documents for the Grenada Port Authority, and information about Grenada's share certificates. Mr. Sylvester's chief response was "I don't know" or, in response to whether he requested additional information, "no." (For

5

example, see Summit Dec., Ex. S (p.p. 12-13, 18, 21, 26-29, 31, 38-40, 58, and 85)).  In fact, Grenada has *already admitted* that Mr. Sylvester failed to fulfill Grenada's Rule 30(b)(6) obligations.  (Summit Dec., Ex. U) ("I…recognize that Mr. Sylvester was not able to address all of your questions and that his testimony requires supplementation in some areas…."; letter of June 18, 2010 from Mr. Maas, counsel for Grenada, promising to have "the necessary conversation next week" with the requisite Government officials, a "conversation" that apparently never took place).  But now, following months in which it failed to keep its promise to supplement, Grenada makes the absurd claim that it is "impossible even to discuss supplementation as it is clear that nothing will satisfy" Ex-Im Bank.  Opp. Mem. at 8.  Ex-Im Bank was asking Mr. Sylvester (among other things) about assets that, if fully collectible, would total almost $40,000,000 dollars.[7]  Grenada must be compelled to produce a real 30(b)(6) witness.[8]

C.  **Grenada Failed to Provide Complete Responses to the Outstanding Post-Judgment Interrogatories**

This Court should also compel Grenada to provide complete responses (finally) to the outstanding Interrogatories.  Other than its opaque disclosures about Cinnamon 88 and Levera, Grenada has provided no additional responsive information since the March 1 Order.  The following are the Interrogatories that require supplementation.

---

[7] According to the limited information provided, at minimum Grenada has assets in the approximate amount of $38,995,648 consisting of: share certificates valued at approximately $10,891,881; advances owed to the government by other countries in the amount of $686,968; $15,000,000 owed for Cinnamon 88; $4,416,798 owed for Levera; and an accounts receivable listed as owing to the Grenada Port Authority in the amount of $8,000,000.  Summit Dec. Exs. D and S

[8] In support of its opposition papers, Grenada submits two declarations: one from the Attorney General and one from the Minister of Finance.  Where were these two individuals when Mr. Sylvester was testifying that he had no knowledge about the very topics these gentlemen now seem to know so much about?  And why were neither of these gentlemen listed as individuals with knowledge in Grenada's responses to the Interrogatories?

Grenada provided minimal information for Interrogatory 1, which requested information about its bank accounts. It failed to disclose the most critical fact: the amount of its share of the "common pool of foreign exchange reserves" maintained by the Eastern Caribbean Currency Union. Summit Dec. ¶¶ 12-13, Ex. G. Grenada now asserts that this information "would not be relevant to [Ex-Im Bank's] efforts as these reserves are held at the Currency Union's headquarters, in St. Kitts and would not be available for attachment in this proceeding." Opp. Mem. at 10. The location of the assets, of course, is irrelevant. Ex-Im Bank is willing to enforce its judgment in St. Kitts, but it needs the information sought in order to do it.

Interrogatory 3 asked for information about Grenada's liquid assets. Grenada provided a list of companies, an amount of shares and an estimated share value, as of an unknown date, and totaling an estimated EC$29,408,081 (US $10,891,881.93). See Summit Dec., Ex D (Appendix 2). Again: while intriguing, this mere list was of no assistance to Ex-Im Bank's ability to collect. Grenada continues to refuse to identify the form, location, and custodian of the shares identified. Grenada claims that Mr. Sylvester, the 30(b)(6) deponent, "attempted to ascertain the additional information … from both the Government and the companies in which the positions are held, but was not able to confirm the custodian of the shares or locate share certificates that would yield the requested information." Opp. Mem. at 10. Does Grenada seriously contend that this limp non-response discharges its obligation?

Grenada's response to Interrogatory 6 identified the Cinnamon 88 and Levera debts. Section A, above, and the March 1 Order address Grenada's woeful response.

Interrogatory 8 asked about the disposition of the funds that Grenada received from Ex-Im Bank. In light of Grenada's refusal to provide information concerning Cinnamon 88, Levera, or its reserve accounts at the Eastern Caribbean Currency Union, its response here that this

7

information is unnecessary because it "has provided complete information about its bank accounts, investment accounts, and debtors" is makeweight. Opp. Mem. at 10.

Interrogatory 10 sought information concerning Grenadian officials residing in the United States. Grenada states that it does not need to provide this information since it made a settlement offer;[9] and since it identified individuals in Grenada who have information. Opp. Mem. at 10-11. Neither statement is responsive. Ex-Im Bank is looking for individuals in the United States.

In Interrogatory 13, Ex-Im Bank asked about any contracts concerning the tourism industry. Grenada responded that there were no such contracts. But in its next response, Grenada identified Peter de Savary as an investor in Grenada's tourism industry. Even now, when challenged, Grenada still fails to explain this inconsistency.

Interrogatory 14 asked Grenada for detailed information about Peter de Savary, a wealthy investor, and about two investment projects of his in Grenada. It demanded, for example: the name and purpose of the projects; the description, location and custodian of any contracts; and fund transfer details. Here is Grenada's hopelessly inadequate response, in full:

> Grenada objects to this request on the ground that it seeks information that is not within Grenada's custody or control. Mr. Peter de Savory [sic] is a private investor in Grenada, particularly within the tourism industry. Grenada has granted Mr. de Savory [sic] certain incentives, particularly, waiver of duties and taxes on the basis of the economic benefits (income generation, foreign exchange and employment) that such projects can bring to the Country.

Summit Dec. Ex. D. It is obvious that Grenada had substantial dealings with de Savary; yet Grenada failed to provide any information that Ex-Im Bank could use to collect its judgment.

---

[9] The settlement offer is, of course, irrelevant to any issue here. Since Grenada bases its Opposition largely upon it, however, we note briefly that, under Grenada's settlement offer, Grenada would not pay a dollar of principal for *five more years,* and the contractual default interest rate would be waived. Ex-Im Bank has informed Grenada that until Grenada complies with discovery, Ex-Im Bank is not able to meaningfully evaluate any settlement offer because it does not have a clear picture of Grenada's assets and liabilities.

8

Now Grenada claims confidentiality and states that it "will not breach its contracts with Mr. de Savary" (not that it has no information). Opp. Mem. at 11. But Grenada waived confidentiality and is obligated to respond.

Interrogatory 15 asked for information about contracts between any foreign entity and Grenada. Grenada failed to include the requested descriptions of fund transfers. Grenada's response that the information "provided was the only information reasonably available to Grenada under its circumstances" (Opp. Mem. at 11) is not sufficient.

Interrogatory 16 asked Grenada to identify the five persons most knowledgeable about its assets and liabilities while Interrogatory 18 asked Grenada to identify names and titles of individuals who participated in preparing the responses. Grenada identified two individuals in its response to 16 and a list of offices for 18. Grenada's failure to supplement this list, especially in light of the useless deposition, is unacceptable. And why did Grenada fail to list the two Government officials who provided declarations in support of their Opposition as knowledgeable individuals?

Ex-Im Bank is entitled to all this information from its judgment debtor. Grenada should be compelled finally to respond immediately and fully to the outstanding interrogatories.

**D.      Grenada's Bare Policy Argument**

Grenada tries to hide from disclosure behind makeweight policy arguments. It alleges that it is financially distressed; and that Ex-Im Bank refused to engage in its debt restructuring program or accept its settlement proposal. But difficulty in repaying a debt neither excuses the debt nor justifies failure to comply with a court order or outstanding discovery.[10] And courts

---

[10] *See A.I. Credit Corp. v. Gov't of Jamaica*, 666 F.Supp. 629, 633 (S.D.N.Y. 1987) (granting summary judgment to a creditor despite Jamaica's concerns about financial impact of the decision, holding that "it is not the

9

have consistently held that debt restructuring programs are voluntary; and that a creditor has no obligation to engage in settlement discussions.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. People's Republic of the Congo*, 729 F.Supp. 936, 944 (S.D.N.Y. 1989) (participation in debt rescheduling agreements voluntary; foreign governments may not impose debt restructuring agreements on unwilling private creditors); *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 855 (2d Cir. 1997) (United States maintains that creditor participation in debt negotiations should be strictly voluntary).

## CONCLUSION

In its response to post-judgment discovery, Grenada lists assets of almost $40 million dollars but refuses to provide relevant information to sufficiently identify these assets; or enable Ex-Im Bank to collect on them.  This Court should sanction Grenada for its contemptuous behavior; compel Grenada's compliance with the March 1 Order; and compel Grenada's response to all outstanding discovery.

| | |
|---|---|
| DATED:  New York, New York<br>            September 28, 2010 | SULLIVAN & WORCESTER LLP<br><br>By: /s/_____<br>     Paul E. Summit (PS 6263)<br>     Andrew T. Solomon (AS 9200)<br>     Emily A. Samuels (ES 0302)<br>     1290 Avenue of the Americas, 29th Floor<br>     New York, New York 10104<br>     (212) 660- 3000<br><br>*Attorneys for the Plaintiff/Judgment Creditor* |

---

function of a federal district court in an action such as this one to evaluate the consequences to the debtor of its inability to pay nor the foreign policy or other repercussions of [the country's] default.").