UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

THE EXPORT-IMPORT BANK OF
THE REPUBLIC OF CHINA,

                    Plaintiff/Judgment Creditor,

          -against-

GRENADA,

               Defendant/Judgment Debtor.
----------------------------------------------------------------X

06 CV 2469 (HB)(AJP)

**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT SANCTIONS AND TO COMPEL**

The Export-Import Bank of the Republic of China ("Ex-Im Bank") submits this Supplemental Memorandum of Law in accordance with the Court's order of September 30, 2010 and in further support of (a) its Motion for Contempt Sanctions against judgment debtor Grenada ("Grenada') pursuant to Fed. R. Civ. P. 37(b)(2) and (b) its Motion to Compel Grenada's complete responses to Ex-Im Bank's outstanding discovery pursuant to Fed. Rules Civ. P. 33, 37(a)(3)(B)(iii), and 69.

During the hearing of September 30, 2010, this Court asked the parties to provide a brief memorandum setting forth:

> what this sovereign nation is able to prevent in the way of this kind of what we used to call … supp pro proceeding and whether in any way I am inhibited because of the [fact that] Grenada is a sovereign nation from holding them in contempt, to say nothing of anything else which we've tried to no avail.[1]  Hearing Transcript dated September 30, 2010 at pages 23-24 (hereafter "Transcr., at p. __).

This Court has the authority to hold Grenada in contempt for its contumacious behavior in refusing to comply with the Court's March 1, 2010 Order (the "March 1 Order").

---

[1] This Court has previously issued non-contempt orders requiring Grenada's compliance with the long-standing discovery requests, and there is no question that it has the power to do so.  We therefore direct our comments to the more specific issue of the contempt sanction.

This case is ripe for contempt.  Grenada admits that it has the required relevant information; but states bluntly that it will not comply with the March 1 Order.  Grenada's counsel Brian Maas admitted that the decision to defy the Court's March 1 Order was "made at the highest levels of the Grenadian government" and that:

> On Levera and Cinnamon 88, the government of Grenada cannot provide additional information, will not provide it about the identity of the developers.

Transcr. at pp. 11-12 and 17.  (emphasis added).[2]

This Court's jurisdiction over Grenada arises from the Foreign Sovereign Immunities Act ("FSIA").   Under the FSIA, Grenada is subject to jurisdiction because it waived sovereign immunity:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case – (1) in which the foreign state has waived its immunity either explicitly or by implication … 28 U.S.C. § 1605(a)(1).

Grenada explicitly waived immunity in its loan agreements with Ex-Im Bank at issue in the underlying litigation.  (See Grenada's Answer ¶ 1, Docket No. 5, admitting the waiver) (the "Answer").[3]  Moreover, Grenada has never objected to this Court's jurisdiction (either subject

---

[2] We will not review Grenada's response to Ex-Im Bank's post-judgment discovery in detail, but its behavior has been egregious.  Ex-Im Bank propounded post-judgment interrogatories to Grenada in October 2007. After Ex-Im Bank moved to compel Grenada's response, and sought contempt sanctions, Grenada finally responded – in part – to the Interrogatories.  In its response on September 4, 2009, Grenada stated that it was owed over $19 million dollars by two real estate entities (Cinnamon 88 and Levera), but failed to provide any identifying information.  On March 1, 2010, this Court ordered Grenada to answer the interrogatories concerning these two entities completely by March 12, 2010.  Grenada's response of March 12 failed utterly to comply with the Court's order.  For example, Grenada has refused to produce a single document related to the debts; and has refused even to state where the entities are located or the names of the principals.  A Rule 30(b)(6) deposition, although targeted (in part) specifically to the Cinnamon 88 and Levera debts, yielded nothing but further obstruction.  Years after a confidentiality objection would have been due under the Rules (and, moreover, after arguing about Cinnamon 88 and Levera *to this Court* without any mention of confidentiality), Grenada suddenly interposed a confidentiality objection at the Rule 30(b)(6) deposition, with, essentially, no proof at all.

[3] Grenada states that "The New National Party did not respond to the lawsuit and Taiwan obtained a judgment by default in early 2007." (Grenada's Memorandum of Law in Opposition to Ex-Im Bank's Motion for Contempt Sanctions and to Compel, dated September 23, 2010, at page 3).  That is false.  Grenada did not default.  It fully participated in the action leading to a judgment.  It was represented by counsel; it filed its Answer; and it participated in court conferences.  Ex-Im Bank moved for and was granted summary judgment.

matter or personal).  Pre-judgment, Grenada answered and participated in proceedings before this

Court.  Post-judgment, it participated in hearings and submitted briefs to this Court.

Once a sovereign is subject to jurisdiction, the Court has the authority to enter any

necessary orders, including post-judgment contempt orders.  The Second Circuit Court of

Appeals has not hesitated to uphold contempt orders against sovereigns or their instrumentalities.

In *First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002), plaintiff sought

to collect on a $53.2 million default judgment obtained against Iraq's state-owned bank, Rafidain

Bank ("Rafidain").  Rafidain ignored discovery orders and was held in civil contempt, with a

daily financial sanction until it purged the contempt.  The Second Circuit noted first that:

> because jurisdiction under the FSIA existed to decide the
> underlying litigation involving a loan agreement and letters of
> credit, the FSIA continues to confer jurisdiction for proceedings in
> aid of that money judgment.

*First City,* 281 F.3d at 49.  It continued:

> The waiver by a foreign state under section 1605(a)(2), rendering it
> a party to an action, is broad enough to sustain the court's
> jurisdiction through proceedings to aid collection of a money
> judgment rendered in the case, including discovery pertaining to
> the judgment debtor's assets.  Otherwise, the FSIA would in some
> cases confer jurisdiction to do no more than render an
> unenforceable, permanently unsatisfied judgment.  No doubt,
> courts should proceed with care in pursuing the assets of foreign
> governments and their instrumentalities, and in dealing with such
> allegations as fraudulent transfers.  But Rafidain is challenging the
> court's subject matter jurisdiction, not its discretion.  We think that
> where subject matter jurisdiction under the FSIA exists to decide a
> case, jurisdiction continues long enough to allow proceedings in
> aid of any money judgment that is rendered in the case.  In this
> case, that includes discovery regarding a possible alter ego of
> Rafidain that may have assets sufficient to satisfy First City's
> judgment.

281 F.3d at 53-54. (emphasis added).

And it reviewed the broad discovery rights available to any judgment creditor ("Under Rule 69(a), the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor") (internal citations and quotations omitted). 281 F.3d at 54.

The Second Circuit is squarely in the mainstream. The Seventh Circuit has stated, for example:

> Once a court is entitled to exercise subject matter jurisdiction over the suit, it has the full panoply of powers necessary to … enforce whatever judgments it has entered. From our common-law ancestors forward, one of the most important of those powers is the power to punish contempt of court. … Nothing in the text of the FSIA comes close to suggesting that the FSIA was designed to abrogate or limit this essential power…

*Autotech Technologies LP v. Integral Research & Development Corp.*, 499 F.3d 737, 744 (7th Cir. 2007), *cert. denied,* 552 U.S. 1231 (2008).[4]

At the September 30, 2010 hearing, Grenada raised several challenges to the propriety of a contempt order. These are makeweight. First, Grenada referred to the plaintiff from time to time as "Taiwan", and then suggested that this case was somehow unique because it concerned an action between two sovereigns. Putting aside the factual flaw (the Ex-Im Bank is not the Republic of China), the issue is in any event irrelevant. U.S. policy supports creditors, foreign or

---

[4] Other courts in New York and around the country have also issued contempt sanctions against sovereign entities in FSIA cases. *See Fidelity Partners, Inc. v. First Trust Co. of New York*, 58 F.Supp.2d 55, 58-59 (S.D.N.Y. 1999) (noting a prior contempt sanction against Philguarantee, a Philippine government entity, for refusing to comply with a discovery order); *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) (affirming district court order of contempt imposing discovery sanctions of $10,000 a day against a sovereign). Research has disclosed but one case, from the Fifth Circuit, declining to do so; there, the United States had intervened as amicus curiae to oppose the contempt. *See AF-CAP, Inc. v. Republic of Congo*, 462 F.3d 417 (5th Cir. 2006), *cert. dismissed,* 549 U.S. 1275 (2007). And research indicates no case that follows the reasoning of *Af-Cap*. Indeed, the decision was severely questioned by the Seventh Circuit in *Autotech Technologies LP*, 499 F.3d at 745 ("We would need much more clear guidance from Congress than we have before we could conclude that a court had no jurisdiction to entertain contempt proceedings in an action brought under the FSIA for which subject matter jurisdiction has been established").

domestic, seeking to enforce foreign sovereign debt instruments when a loan's situs is in the U.S.[5]  Second, Grenada's counsel opined at the hearing that Ex-Im Bank is pursuing this debt only because, at some point, according to counsel, Grenada switched its allegiance from the Republic of China to the People's Republic of China.  Even if there were record proof of this (and there is not a shred), Ex-Im Bank's motivation would be irrelevant,[6] and proof of it barred by the parol evidence rule.[7]

Finally, this Court inquired at the September 30 hearing whether Grenada had sought assistance or guidance from the United States State Department.  Grenada responded that it had not done so.  The reality is that, in the many years since Ex-Im Bank filed its complaint, and Grenada answered, we have never been contacted by any arm of the United States Government about this case.

Without a Court ordered sanction, Grenada will continue to willfully defy the March 1 Order.  This Court should exercise its authority to sanction Grenada for its contumacious behavior.

---

[5] Courts are unwavering in their commitment to this policy.  *See Intelsat Global Sales and Marketing, Ltd. v. Community of Yugoslav Posts Telegraphs and Telephones*, 534 F.Supp.2d 32 (D.D.C. 2008) (permitting UK plaintiff jurisdictional discovery under the FSIA against defendant, a potential organ of a sovereign nation); *Banco Cafetero (Panama) S.A. v. Republic of Peru*, 94 Civ.3569(JSM), 1995 WL 494573 (S.D.N.Y. Aug. 18, 1995); *Allied Bank Intern. v. Banco Credito Agricola de Cartago*, 757 F.2d 516 (2d Cir. 1985).

[6] *See Refinemet Int'l Co. v. Eastbourne N.V.*, 815 F.Supp. 738, 742 (S.D.N.Y. 1993) (motivation is irrelevant when there is a right to terminate a contract); *SATCOM Int'l Group PLC. V. ORBCOMM Int'l Partners, L.P.*, No. 98CIV.9095(DLC), 2000 WL 729110, at * 21 n. 15 (S.D.N.Y. June 6, 2000) (same).

[7] Since the underlying loan agreements state that they are the entire agreement of the parties, evidence of motivation is inadmissible parol evidence.  *See Ixe Banco, S.A. v. MBNA America Bank, N.A.*, No. 07 Civ.0432(LAP), 2008 WL 650403 (S.D.N.Y. Mar. 7, 2008) (parol evidence excluded based on merger clause); *Red Rock Commodities, Ltd. v. Standard Chartered Bank*, 140 F.3d 420 (2d Cir. 1998) (parol evidence excluded when unambiguous agreement incorporates all other documents).

DATED:  New York, New York
            October 12, 2010

SULLIVAN & WORCESTER LLP

By: /s/ _____
    Paul E. Summit (PS 6263)
    Andrew T. Solomon (AS 9200)
    Emily A. Samuels (ES 0302)
    1290 Avenue of the Americas, 29th Floor
    New York, New York 10104
    (212) 660- 3000

*Attorneys for the Plaintiff/Judgment Creditor*