UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THE EXPORT-IMPORT BANK OF THE REPUBLIC : 
OF CHINA :
 :
                        Plaintiff, :       06 Civ. 2469 (HB)
 :
    against- :
 :       OPINION &
 :       ORDER
GRENADA, :
                        Defendant. :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**[1]

      For over three years Plaintiff, the Export-Import Bank of the Republic of China ("Plaintiff" or the "Bank") has sought satisfaction of a judgment against defendant Grenada for $25 million. Plaintiff now seeks contempt sanctions of $10,000 per day based on Grenada's alleged failure to comply with a court order regarding post-judgment discovery, and an additional $10,000 in attorneys' fees.[2] Plaintiff also seeks an order compelling complete responses to interrogatories and a second Rule 30(b)(6) witness.

      Following oral argument, the parties submitted supplemental briefing on the propriety of imposing sanctions on a sovereign nation. For the reasons below, I conclude that sanctions are appropriate and Plaintiff's motion is GRANTED in part and DENIED in part.

### FACTUAL AND PROCEDURAL BACKGROUND

      The Court entered summary judgment against the sovereign nation of Grenada on February 6, 2007. Plaintiff served interrogatories on October 3, 2007. Grenada did not respond. On Plaintiff's motion, the Court on April 9, 2009 ordered an answer be served within ten days. When the time to answer passed without a response, Plaintiff moved for contempt seeking

---

[1] Jason Douglas Barnes, a second-year student at New York University School of Law and a 2010-2011 intern in my Chambers, provided substantial assistance in researching this Opinion.

[2] On Reply, Plaintiff softens its position and asks for an order providing Grenada 10 days to come into compliance, and imposing sanctions of $10,000 per day should Grenada fail to do so by the end of that period.

sanctions. A newly-installed Grenadian government retained new counsel, and on July 2, 2009 the Court denied the motion for sanctions, accepting that the new administration intended to respond to the interrogatories diligently. On September 4, 2009, Grenada responded to the interrogatories.

Unsatisfied with Grenada's responses, Plaintiff sought leave to move to compel compliance in January 2010. On March 1, 2010, during a telephone conference, the Court issued an order (the "Order") requiring Grenada to provide information on two developers, Cinnamon 88 and Levera, listed in Grenada's response to Interrogatory 6 as owing Grenada approximately $15 million and $3 million, respectively. On March 12, 2010, Grenada provided a letter with information related to the two developers. The alleged inadequacy of this response forms the basis for the present sanctions motion.

Plaintiff refrained from seeking further Court intervention in the hope that a scheduled 30(b)(6) deposition would supplement the deficient responses. The deposition occurred, but Plaintiff found it also deficient. Grenada admits that its 30(b)(6) witness was not prepared to answer all questions. It has professed some level of willingness to address these concerns, but has failed to do so. Grenada claims it has complied with its discovery obligations, and in any case further discovery is futile because it has no money to satisfy the judgment. Its general thesis is that it fully intends to comply with the judgment as soon as financial conditions allow.

### DISCUSSION

**1. The motion for sanctions based on noncompliance with the March 1, 2010 Order.**

A district court has discretion to impose contempt sanctions for violations of post-judgment discovery orders. *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991).[3] However "courts should proceed with care in pursuing the assets of foreign governments and their instrumentalities." *First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002). I have carefully considered the propriety of jurisdiction, whether it includes the power to impose sanctions, and whether sanctions are appropriate.

---

[3] This Court has held that civil contempt is appropriate where there is a "clear and unambiguous order, noncompliance is proved clearly and convincingly, and the defendant has not been reasonably diligent and energetic in attempting to accomplish what was ordered. [] For an order to be sufficiently specific to warrant a finding of contempt, the party alleged to have disobeyed the order must be able to ascertain from the four corners of the order what acts are required or forbidden." *Red Ball Interior Demolition Corp. v. Palmadessa*, 947 F.Supp. 116, 121 (S.D.N.Y. 1996) (*quoting Drywall Tapers, Local 1974 v. Local 530,* 889 F.2d 389, 394-95 (2d Cir.1989)).

*a. Jurisdiction is based on waiver*

A foreign sovereign may waive its immunity from suit under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605(a) (listing various grounds for waiver). Waiver may be effected "either explicitly or by implication." 28 U.S.C. § 1605(a)(1). Grenada waived its sovereign immunity explicitly in its loan agreements, in which it subjected itself to the jurisdiction of this Court, *see* Complaint ¶ 27; Answer, at ¶ 1, and implicitly by participating in these proceedings without objection.

*b. Jurisdiction includes the power to impose sanctions*

Once a court may exercise jurisdiction, it may issue contempt orders. "The waiver by a foreign state under [the FSIA's waiver provisions], rendering it party to an action, is broad enough to sustain the court's jurisdiction through proceedings to aid collection of a money judgment rendered in the case, including discovery pertaining to the judgment debtor's assets." *First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 53 (2d Cir. 2002). In *Rafidain* the Second Circuit affirmed the district court's order of civil contempt imposing a $1,000 per day fine to compel Rafidain, Iraq's state-owned commercial bank, to comply with discovery demands intended to assist a judgment creditor collect an unsatisfied default judgment.[4]

Grenada argues in a footnote that any waiver should be construed narrowly and not extend to the imposition of contempt sanctions. It notes that "in general, explicit waivers of sovereign immunity are narrowly construed 'in favor of the sovereign' and are not enlarged 'beyond what the language requires.'" *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002) (citing *Library of Cong. v. Shaw*, 478 U.S. 310 (1986)). However, Grenada points to no language limiting its waiver, and its mere consent to jurisdiction here provides the Court with discretion to impose contempt sanctions. *See Rafidain*, 281 F.3d at 53. *See also Autotech Techs.*, 499 F.3d at 744 (upholding contempt sanction where party was found to have waived immunity based on commercial activities exception of FSIA).

---

[4] Other circuits are in accord. *See Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 744 (7th Cir. 2007), *cert. denied*, 552 U.S. 1231 (2008) (involving company wholly owned by Belarus) ("once a court is entitled to exercise subject matter jurisdiction over the suit, it has the full panoply of powers necessary."); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) (affirming discovery sanctions against corporation that was an arm of People's Republic of China, it waived objection based on state secrecy laws by failing to raise it). *See also Fidelity Partners, Inc. v. First Trust Co.*, 58 F.Supp.2d 55, 58-59 (S.D.N.Y. 1999) (noting prior contempt sanction against a Philippine government entity for refusing to comply with a discovery order).

Grenada reasons that its waiver of immunity extended only to suit in connection with the loan agreements with the Bank and does not compromise its immunity from contempt sanctions. It cites a Fifth Circuit case holding that a waiver of sovereign immunity for commercial activities does not include a waiver of the immunity that a sovereign otherwise enjoys from the imposition of fines or collection of penalties from its assets. *See Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 429-29 (5th Cir. 2006), *cert. dismissed*, 549 U.S. 1275 (2007). Grenada's arguments are unpersuasive. In *Af-Cap* the court found no waiver at all because no language in the parties' agreements waived immunity and the relevant pleadings "consistently raised an immunity defense." *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 427 (5th Cir. 2006), *cert. dismissed*, 549 U.S. 1275 (2007). In contrast, as noted above Grenada has not raised an immunity defense and has submitted to jurisdiction in its loan agreements. *See* Complaint ¶ 27; Answer, at ¶ 1. Moreover, *Af-Cap* found sanctions inappropriate in part based on a request from the United States government as *amicus curiae*, *see id.* at note 8, and no such request has been lodged in this case. Finally, the *Af-Cap* court concluded that monetary sanctions are inappropriate under the FSIA, and was apparently untroubled by the notion that the FSIA "allows rights without remedies." *Id.* at 428. Controlling precedent in this circuit disagrees. *See Rafidain*, 281 F.3d at 51, 54 (affirming the imposition of a $1,000 per day fine until state bank purged its contempt, and noting that without such power "the FSIA would in some cases confer jurisdiction to do no more than render an unenforceable, permanently unsatisfied judgment.").

Next, Grenada points to the Restatement (Third) of the Foreign Relations Law of the United States for the proposition that courts "should not ordinarily impose sanctions of contempt… for order[s] of production" where the information is located outside the United States and its production 'is prohibited by a law, regulation, or… other authority of the state in which the information is located." Restatement 3d § 442(2)(b). However, Grenada concedes that the Second Circuit has not adopted this particular provision. Def.'s Suppl. Memo. Opp. Mot. for Contempt at 3. Moreover, Grenada does not cite the laws or other authority that allegedly prohibit the disclosure.[5] While the agreement between Grenada and the Cinnamon 88

---

[5] Grenada does argue that disclosure of the development contracts at issue here would chill interest in Grenada as a site for future development, and therefore disclosure would harm vital economic interests and violate Grenada's duty to promote the welfare of its people. This is certainly a valid concern in theory, but is unpersuasive in terms of the actual effect disclosure would have, and without more carries insufficient weight to prevent the imposition of sanctions. Additionally, maintaining strict confidentiality throughout disclosure can mitigate these concerns.

developer contains a confidentiality clause, it allows for an exception where a party "has to reveal such information by law." Decl. Rohan A. Phillip ¶ 7. In any case confidentiality concerns can be respected through a confidentiality order governing production. Thus even were Restatement 3d § 442(2)(b) applicable in this Circuit, it would not be implicated in this case because disclosure violates no law or other authority.

Failing application of the Restatement standard, Grenada argues under the principle of comity that the Court must engage in a balancing test, under which the most important considerations are the competing interests of the nations whose laws are in conflict. *See Madanes v. Madanes*, 186 F.R.D. 279, 286 (S.D.N.Y. 1999). Comity requires respect for the laws of another nation, unless doing so would prejudice the interests of the U.S. *See Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 457 (2d Cir. 1985).

The interest of the United States here is limited to "fully and fairly adjudicating matters before its courts." *First American Corp. v. Price Waterhouse* LLP, 98 F. Supp. 353, 364 (S.D.N.Y. 1998).[6] Grenada argues that this interest is weakened by the facts that the litigation involves no U.S. entities as litigants, no federal statutory schemes, and no assets in the U.S. While this may be true, it is significant that the U.S. provides a neutral forum for resolution of the dispute between the Export-Import Bank of China and the nation of Grenada. Moreover, U.S. policy supports foreign and domestic creditors seeking to enforce foreign sovereign debt when the "creditors [are] entitled to payment in the United States in United States dollars under contracts subject to the jurisdiction of United States" *See Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 521-22 (2d Cir. 1985). Here the loan agreements provided that payments to the Bank were to be made in U.S. Dollars at a New York bank. *See* Complaint ¶ 19. Moreover, the loan agreements contained forum selection clauses subjecting the parties to the jurisdiction of New York state and federal courts. *See* Complaint ¶ 27. Because Grenada has cited no Grenadian law that would be abrogated, has chosen to avail itself of the laws, currency, and banks here, questions of Grenadian law do not in this case lend weight to Grenada's arguments in the balancing test required by comity.

---

[6] While Grenada pits its interests against the United States in this analysis, it does not address whether China's interests should also be considered.

On the basis of the foregoing I conclude that Grenada's status as a sovereign does not by itself preclude contempt sanctions.

 c. *Sanctions are appropriate in this case*

Grenada acknowledges that the Order required information by March 12, 2010 concerning "the alleged $15 million Cinnamon 88 asset and the $4,416,798.56 Levera asset listed in Grenada's Interrogatory Responses." Def.'s Memo. Opp. Mot. for Contempt Sanctions at 12. However, it argues that it satisfied that obligation. According to Grenada, its March 12, 2010 submission detailed "the troubled and unsuccessful history of both projects and made clear that both the Cinnamon 88 and Levera 'assets', which were listed in the interrogatories . . . are actually worthless." Def.'s Memo. Opp. Mot. for Contempt Sanctions at 13. However, the March 12, 2010 submission lacks any particulars, fails to produce documents, and fails to identify by name or address either the Cinnamon 88 developer or the Levera developer. *See* Summit Decl. Ex. P. While Grenada may have provided certain information, it provided no information that would aid Plaintiff in ascertaining the existence of any funds, in direct contravention of my March 1, 2010 Order. Grenada has had an inordinate amount of time to comply with post-judgment discovery, has provoked three motions to compel, and required regular attention from this Court. Its efforts have hardly been a model of reasonable diligence or energetic compliance with court orders. *See Red Ball Interior Demolition Corp. v. Palmadessa*, 947 F.Supp. 116, 121 (S.D.N.Y. 1996). Sanctions are appropriate.

 d. *Amount of Sanctions*

The parties agree on the applicability of the standard for determining the appropriate amount of a civil contempt sanction: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order. *Lamar Fin. Corp. v.* Adams, 918 F.2d 564, 567 (5th Cir. 1990) (*citing United States v. United Mine Workers*, 330 U.S. 258 (1947)).

Plaintiff asserts that the noncompliance has prevented it from pursuing satisfaction of its judgment; that a strong sanction is likely to coerce compliance; that Grenada is a nation and while it may have trouble satisfying the entire judgment, "it certainly has the ability to pay" the sanction of $10,000 per day until it complies with its obligations. Fourth, Grenada's non-compliance is willful, as shown by the fact that it has acknowledged that its answers are

incomplete. Plaintiff asserts that $10,000 per day would be substantial enough to encourage Grenada to purge its contempt, yet not so onerous so as to constitute a penalty. Grenada pleads substantial hardship based on a series of hurricanes and its general economic difficulty, and asserts that $10,000 a day would constitute a substantial prejudice. It also disputes that noncompliance was willful.

Given Grenada's financial difficulties it will have a 14-day opportunity to purge its contempt. If at the end of the 14th day from entry of this Order Grenada has not complied with my March 1, 2010 Order and provided information on Cinnamon 88 and Levera that is fully responsive to Interrogatory 6, sanctions will automatically accrue at a rate of $1,000 per day. The documents exchanged will remain strictly confidential, marked "For Attorneys Eyes Only" and be accessible to the parties' counsel but not the parties. Any reference to the confidential information shall be redacted from all future documents filed publicly, and the parties are directed to provide Chambers with both redacted and unredacted copies. Any release will be on notice and pursuant to further order of this Court.

**2. Motion to compel compliance with outstanding discovery.**

Plaintiff's motion to compel centers on Grenada's allegedly inadequate Rule 30(b)(6) witness and answers to interrogatories. As noted above, Grenada acknowledges some of the shortcomings of its 30(b)(6) witness, but points out that it provided a large number of requested documents in connection with the deposition, and that the witness did testify to a wide range of topics. Defendants are ordered to provide a supplemental 30(b)(6) witness to cure any deficiencies in its previous witness's deposition, and do so within 30 days following the date of this Order.

Plaintiff points to inadequate interrogatory answers with respect to the following subjects: bank accounts, liquid assets, debtors, disposition of the money originally loaned by Plaintiff, potential deponents, foreign aid, other foreign or international business contracts, and financial record keeping. Grenada meets many of Plaintiff's allegations point by point, arguing that in fact it has provided adequate answers. From the papers it appears that some but not all answers were deficient. Grenada is therefore ordered to provide within 30 days following the date of this Order complete responses to Interrogatories 6, 13, 15, 16 and 18.

### 3. Attorneys Fees.

Finally, Plaintiff seeks an additional $10,000 in attorneys fees under Fed. R. Civ. P. 37, based on Grenada's non-responsiveness and non-compliance with the Order. Grenada responds that an award of attorneys' fees would be unjust because (1) it has made good faith efforts to comply with the Order and other discovery obligations, and (2) it has significant financial difficulties. It argues it has not willfully disobeyed the Court or ignored discovery obligations, and attorneys' fees are thus inappropriate. At this juncture I decline to award attorneys fees, but this issue will be revisited should Grenada fail to comply with this Order.

### CONCLUSION

For the foregoing reasons, the motion for sanctions and to compel is granted in part and denied in part. Grenada is ordered to provide, within 14 days and in accordance with the confidentiality protocol described above, all information requested in connection with Cinnamon 88 and Levera. Should it fail to do so, sanctions will automatically begin to accrue at the rate of $1,000 per day starting on the 15th day from the date of this Order. Grenada is further ordered to provide complete responses to Interrogatories 6, 13, 15, 16 and 18, and produce a supplemental 30(b)(6) witness for deposition, all within 30 days from the date of this Order.

SO ORDERED
December 29, 2010
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.