UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE EXPORT-IMPORT BANK OF THE REPUBLIC OF CHINA,

Plaintiff/Judgment Creditor,

-against-

GRENADA,

Defendant/Judgment Debtor.

06 CV 2469 (HB)(AJP)

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO IMPLEMENT SANCTION**

Paul E. Summit (PS 6263)
Andrew T. Solomon (AS 9200)
Emily A. Samuels (ES 0302)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Floor
New York, NY 10104
(212) 660-3000

*Attorneys for Plaintiff/Judgment Creditor*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

The Chronology of Non-Compliance on Cinnamon 88 and Levera; on Interrogatory Answers; and on the Rule 30(b)(6) Deposition ........ 2

Grenada Also Breaches the Court Order as to the Interrogatories ........ 9

The Rule 30(b)(6) Deposition ........ 11

Ex-Im Bank is Entitled to an Award of Attorneys' Fees ........ 13

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Cases** **Page**

*AF-CAP, Inc. v. Republic of Congo*,
462 F.3d 417 (5th Cir. 2006) ........................................ 2

*Banco Central de Paraguay v. Paraguay Humanitarian Found., Inc.*,
No. 01 Civ. 9649 (JFK), 2007 WL 747814 (S.D.N.Y. Mar. 12, 2007) ........................ 13

*Fidelity Partners, Inc. v. First Trust Co. of New York*,
58 F.Supp.2d 55 (S.D.N.Y. 1999) ........................................ 2

*First City, Texas-Houston N.A. v. Rafidain Bank*,
281 F.3d 48 (2d Cir. 2002) ........................................ 2

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992) ........................................ 2

**Rules And Laws**

Fed. Rules Civ. P. 26(e)(1)(A) ........................................ 11

Fed. Rules Civ. P. 30(b)(6) ........................................ *passim*

Fed. Rules Civ. P. 37 ........................................ 13

The Export-Import Bank of the Republic of China ("Ex-Im Bank") submits this Memorandum of Law in support of its motion to implement this Court's Opinion & Order of December 29, 2010 (the "Sanctions Award").[1]

**INTRODUCTION**

This motion is to implement the Court's Sanctions Award due to Grenada's failure to purge its contempt.

In the Sanctions Award, this Court held that sanctions were warranted against Grenada for Grenada's failure to comply with a post-judgment discovery order. (See Declaration of Paul E. Summit, Ex. 1).[2] The Court gave Grenada 14 days to purge its contempt by producing the outstanding information. If the contempt were not purged, sanctions would "automatically accrue at a rate of $1,000 per day."[3] *Id.*

Despite the Court's leniency in giving Grenada a final opportunity---namely, the 14-day cure period---to avert the imposition of sanctions, Grenada has failed to comply with its obligations. But this is no surprise, as Grenada has exhibited a pattern of defiant conduct throughout the post-judgment period, as the Court already noted with some understatement:

> Grenada has had an inordinate amount of time to comply with post-judgment discovery, has provoked three motions to compel, and required regular attention from this Court. Its efforts have hardly been a model of reasonable diligence or energetic compliance with court orders. (Summit Decl. Ex. 1, Sanctions Award, page 6).

---

[1] In accordance with the Sanctions Award, we are filing a redacted version and will provide the Court with both a redacted and an un-redacted copy.

[2] The Declaration of Paul E, Summit shall hereafter be referred to as the "Summit Decl. ¶ __".

[3] The Court also granted Ex-Im Bank's motion to compel, requiring Grenada to supplement certain interrogatories by January 28, 2011; and to fully comply with its obligations under Rule 30(b)(6) by providing an adequate witness by January 28, 2011. As detailed further below, Grenada has failed to meet these obligations as well.

Indeed, the Court has been abundantly fair to Grenada, extending time deadlines repeatedly.[4] However, Grenada continues to flout the Court's orders, to defy its obligations, and to fail to produce the outstanding discovery.[5]

**The Chronology of Non-Compliance on Cinnamon 88 and Levera; on Interrogatory Answers; and on the Rule 30(b)(6) Deposition**

Grenada has compiled a lengthy record of defiance.

Here is the relevant chronology:

1. March 16, 2007: Amended Judgment entered against Grenada for $24,997,596.84.[6]

2. October 2007: Service of post-judgment interrogatories on Grenada.

3. April 9, 2009: This Court orders Grenada to answer the interrogatories within ten days; and requires Grenada to pay attorneys' fees of $10,000.[7]

4. June 5, 2009: Ex-Im Bank moves for sanctions for failure to answer the interrogatories.

5. July 2, 2009: This Court denies Ex-Im Bank's motion for sanctions based principally on the hiring of new counsel by Grenada.

---

[4] Ex-Im Bank refers the Court to its Memorandum of Law dated August 25, 2010 [docket entry # 36] and the Declaration of Paul E. Summit executed August 25, 2010 [docket entry # 37] for a detailed history of Grenada's failure to comply with its discovery obligations and contempt of this Court's prior orders.

[5] In the Sanctions Award, this Court held that "Grenada's status as a sovereign does not by itself preclude contempt sanctions." (Summit Decl. Ex. 1, Sanctions Award, page 6). *See First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002) (upholding contempt sanction against a sovereign); *Fidelity Partners, Inc. v. First Trust Co. of New York*, 58 F.Supp.2d 55, 58-59 (S.D.N.Y. 1999) (noting a prior contempt sanction against Philguarantee, a Philippine government entity, for refusing to comply with a discovery order); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) (affirming district court order of contempt imposing discovery sanctions of $10,000 a day against a sovereign); *But see AF-CAP, Inc. v. Republic of Congo*, 462 F.3d 417 (5th Cir. 2006), *cert. dismissed*, 549 U.S. 1275 (2007) (declining to award sanctions). Thus, an order implementing the Sanctions Award is appropriate.

[6] There has never been any payment on this judgment.

[7] There has never been any payment on the attorneys' fees.

6. September 4, 2009: Grenada partially responds to the interrogatories, failing to adequately answer many of them.

7. March 1, 2010: In a telephone conference, this Court orders Grenada to provide all of the information sought by Ex-Im Bank as to Cinnamon 88 and Levera by March 12, 2010.

8. March 12, 2010: Grenada responds on Cinnamon 88 and Levera by letter. (Summit Decl. Ex. 2). Grenada produces no documents. The narrative in the letter fails to identify either debtor, among numerous other deficiencies. However, Grenada does give a few historical particulars by name or address about the projects; and states that the documents informing the narrative (none of which were produced) had been located in "un-indexed files in various ministries throughout the government."

9. May 5, 2010: Ex-Im Bank deposes Mike Sylvester, Grenada's Deputy Permanent Secretary of the Ministry of Finance, pursuant to Rule 30(b)(6). Mr. Sylvester's testimony is a mockery of the Rule 30(b)(6) process. For example: even though Cinnamon 88 and Levera were prominently featured among the Rule 30(b)(6) annotated topics (and there had been no objection by Grenada), Mr. Sylvester testifies that he knows essentially nothing about Cinnamon 88 or Levera.

10. August 25, 2010: Ex-Im Bank moves for contempt sanctions and to compel.

11. September 30, 2010: In oral argument, Grenada's counsel reveals candidly why Grenada has refused to comply with discovery on Cinnamon 88 and Levera:

> "MR. MAAS: The government of Grenada has determined that in its own internal public interest, its internal needs, that the risk, for its purposes, its needs of its people, and the risk the producing the type of information that your Honor and Mr. Summit are talking about –
>
> THE COURT: The names and identity of the developers?

> MR. MAAS: Because what will happen, your Honor, is that Export-Import Bank will then commence discovery proceedings with respect to those developers.
>
> THE COURT: Yeah.
>
> MR. MAAS: And what happens in the development world is there's a finite amount of money and the developers can go to Grenada, they can go to St. Lucia, they can go to St. Vincent's. They can go to the other islands. And if developing on Grenada embroils them in legal trouble, the concern of the government, and this is a decision made at the highest levels of the Grenadian government, is that in the face of that risk, producing information about a valueless situation, there is no resource there.
>
> And I'm asking your Honor in deciding what the appropriate result is to realize you've gotten declarations from the attorney general of Grenada and the finance minister of Grenada, both of whom have told you - - the attorney general has told you of the steps that were taken to foreclose essentially on the Cinnamon 88 developers because they're in default. And they're trying to work with them because their primary interest is in seeing these developments built to get jobs and resources for Grenada, but they're in default. Levera, although they haven't taken formal steps to foreclose, is equally insolvent and defunct." (Summit Decl. Ex. 3) (emph. added).

12. December 29, 2010: This Court imposes sanctions of $1,000 a day on Grenada, but with a 14-day period to purge its contempt. As to Cinnamon 88 and Levera, this Court writes:

> [Grenada's] March 12, 2010 submission lacks any particulars, fails to produce documents, and fails to identify by name or address either the Cinnamon 88 developer or the Levera developer. ... While Grenada may have provided certain information, it provided no information that would aid Plaintiff in ascertaining the existence of any funds, in direct contravention of my March 1, 2010 Order. (Summit Decl. Ex. 1, Sanctions Award, page 6) (emph. added).

As to Plaintiff's motion to compel answers to interrogatories, Grenada is ordered to provide complete responses to Interrogatories 6, 13, 15, 16 and 18 by January 28, 2011.

As to the Rule 30(b)(6) witness, Grenada is ordered to provide a supplemental witness by January 28, 2011.

13. December 31, 2010: Ex-Im Bank writes to Grenada (Summit Decl. Ex. 4), detailing the information that must be produced on Cinnamon 88 and Levera to comply with the Court order.[8] Ex-Im Bank also proposes January 24-26 for the scheduling of the continued Rule 30(b)(6) deposition.

14. January 7, 2011: Having heard nothing substantive, Ex-Im Bank writes to Grenada's counsel again requesting a date for the Rule 30(b)(6) deposition.

15. January 12, 2011:

**[REDACTED]**

16. January 14, 2011: Ex-Im Bank reminds Grenada that the deposition must be completed by January 28, and once again demands scheduling information (Summit Decl. Ex. 5).

17. January 25, 2011: With no commitment to the deposition, and 3 days to go before the deadline expires, Ex-Im Bank writes to Grenada to say it has no choice but to go back to the Court in connection with the Rule 30(b)(6) deposition (Summit Decl. Ex. 6). Counsel for

---

[8] The letter says,

> "In summary, we need, by January 12, a thorough, detailed understanding of the entire history of the projects, including but not limited to: all contracts and other relevant documents concerning the projects; the physical location of the projects; the physical location of the development offices of the projects; who owes what to whom; efforts by Grenada (or a third party) to enforce the debts; jurisdictions that may hold additional information; names, addresses, and telephone numbers for each debtor; names, addresses, and telephone number for each principal of each debtor; names, addresses, and telephone numbers of individuals who may have further information about either Cinnamon 88 or Levera; and a detailed understanding of the present status of the projects, including copies of all correspondence, court filings, etc. by which the Government of Grenada has attempted to collect the very substantial debts owed by Cinnamon 88 and Levera, or has attempted to enforce its rights in any way as to Cinnamon 88 and Levera."

Grenada then emails, stating that Mr. Antoine, their designated witness, has scheduling conflicts preventing compliance with the Court-ordered deadline, but will be available in late February. Ex-Im Bank reluctantly agrees to the 3-week extension, even though it is beyond the Court-ordered date, assuming all document production and interrogatory supplementation will be supplied in advance (Summit Decl. Ex 7).

18. January 28, 2011: Pursuant to the Sanctions Award, Grenada ostensibly attempts to supplement the interrogatories in a two-page letter (Summit Decl. Ex. 8). In substance, the response is hopelessly inadequate, as detailed below.

19. February 4, 2011: Ex-Im Bank writes a 7-page single-spaced letter to Grenada (Summit Decl. Ex. 9) detailing (a) the numerous ways in which the [REDACTED] has failed to meet Grenada's court-ordered production requirements, (b) the numerous ways in which the interrogatory supplementation of January 28, 2010 has failed, and (c) reminding Grenada of the topics that the newly designated witness (Mr. Antoine) would have to be prepared to answer. The letter is a conscientious, detailed roadmap alerting Grenada to what it must do immediately to purge its contempt, and to bring itself into compliance (although belatedly) with the Sanctions Award. Among other things, the letter of February 4 points out that:

**[REDACTED]**

**[REDACTED]**

In other words, we told Grenada precisely how to purge the contempt.

20. February 9, 2011: Grenada responds by letter (Summit Decl. Ex. 10). Even in the context of Grenada's 3-year campaign of defiance, the letter is startling.

**[REDACTED]**

Instead, Grenada offers a litany of defiance.

Grenada *accuses Ex-Im Bank of "harassment*", notwithstanding the Court's findings against Grenada. Grenada says our inquiries are *"burdensome and unproductive"*, when the Court has found that Grenada has acted in "direct contravention" of court orders. Grenada says our demands for a complete production are an example of "no good deed goes unpunished" --- as if

**[REDACTED]**

, and under threat of contempt, is a "good deed." Grenada says it will not "mine its archives" to find and produce documents ---

**[REDACTED]**

Grenada says plaintiff should be focusing its efforts on settlement, rather than discovery, as if that is a choice that Grenada can make for the Bank.

In its February 9 letter, Grenada basically says: "We have produced a little discovery; that is what we choose to do; we will do no more."

21. February 15, 2011: Plaintiff writes to Grenada specifying yet again all the ways in which their compliance with the Sanctions Award has been utterly deficient; and advising that Plaintiff would not go forward with the Antoine deposition under these circumstances. (Summit Decl. Ex. 11).

There has been no further substantive communication from Grenada since Plaintiff's letter of February 15, 2011. As to Cinnamon 88 and Levera, what has been said is enough.

Notwithstanding the 14-day period to purge contempt, Grenada has refused to produce a single additional document or fact in response to plaintiff's extensive list of deficiencies.[9]

**Grenada Also Breaches the Court Order as to the Interrogatories**

The Sanctions Award ordered Grenada "to provide within 30 days following the date of this Order complete responses to Interrogatories 6, 13, 15, 16 and 18." (Summit Decl. Ex. 1, Sanctions Award, page 7).

**[REDACTED]**

9 **[REDACTED]**

**[REDACTED]**

**[REDACTED]**

Grenada's job is not to speculate or make relevancy determinations. Grenada must produce all of the missing information.

**The Rule 30(b)(6) Deposition**

The requirements of a witness testifying pursuant to a Rule 30(b)(6) deposition are too familiar to require elaboration. The witness must investigate those topics specified in the deposition notice with which he is not personally familiar, such that he can be prepared, at the deposition, to responsibly answer questions with regard to those topics.

In light of the utterly inadequate performance of Mr. Sylvester, this Court ordered Grenada to produce another witness for deposition by January 28, 2011. After repeated demands by plaintiff (see above), Grenada finally identified Timothy Antoine, the Permanent Secretary of the Ministry of Finance, as a supplemental witness, but failed to meet the Court's deadline, finally asserting (at the end of January) various scheduling contingencies. Ex-Im Bank reluctantly agreed to a three-week extension, on the assumption that by then Grenada would comply with the Sanctions Award by providing all of the Cinnamon 88 and Levera documents; providing all of the other outstanding documentary and interrogatory discovery; and that Mr. Antoine would be properly prepared to comply with the Rule 30(b)(6) requirements.

On February 9, 2011, any remaining hope of such an orderly and responsible discovery process was dashed. Grenada's February 9 letter (Summit Decl. Ex. 10) left no doubt that the

**[REDACTED]**

were, in its unilateral judgment, the only documents plaintiff would get, regardless of Court orders; and it was not going to "mine its archives" for further relevant documents

**[REDACTED]**

Thus, we knew that we would not have the documents and facts necessary for a meaningful deposition of Mr. Antoine. Even beyond this, Grenada indicated loud and clear that Mr. Antoine, like Mr. Sylvester, would not abide by the Rule 30(b)(6) deposition rules. Grenada stated that Mr. Antoine would be prepared to provide information on "the financial affairs of the Government of Grenada that are relevant to Ex-Im Bank's proper efforts to enforce his [sic] judgment." (emph. added). (Summit Decl. Ex. 10). Since when does a Rule 30(b)(6) witness make relevance judgments about "proper" efforts (whatever that means) to enforce? And Grenada was still defending Mr. Sylvester's woeful performance, claiming that he had provided "a clear picture of Grenada's financial situation" at his deposition. Even if he had done so (which he did not), that was not his duty under the rules. He failed dismally as a Rule 30(b)(6) witness because he had no knowledge of Cinnamon 88 and Levera, and had done virtually nothing to gather information from Grenada's various governmental departments on that and a host of other enumerated topics. In other words, Mr. Sylvester had admitted to flagrant violations of his duties as a Rule 30(b)(6) witness. Grenada's obligation was to produce a witness who, through his own knowledge, or through adequate prior investigation, could fully address each of the topics specified in the Rule 30(b)(6) notice.[10]

[10] It certainly bears noting that Grenada never objected to any aspect of the Rule 30(b)(6) deposition notice, originally served on March 4, 2010. In other words, it accepted fully the obligation of the witness under the Federal Rules of Procedure to prepare and testify fully as to each of the enumerated topics.

Thus it was clear that the Antoine deposition would be another fruitless exercise; and that Mr. Antoine would refuse to testify (or, conveniently, would have no information) on those topics that he, or his counsel, found to be "not relevant" to Ex-Im Bank's "proper" efforts to enforce its judgment. And Ex-Im Bank was not going to indulge Grenada in another aborted Rule 30(b)(6) deposition exercise when Ex-Im Bank had been denied the documents and interrogatory answers to which it was entitled after years of effort and Court orders. Thus, Ex-Im Bank advised Grenada that it would not go forward with Mr. Antoine's late February deposition, and that it would return to this Court for implementation of the Sanctions Award.[11]

**Ex-Im Bank is Entitled to an Award of Attorneys' Fees**

In addition to the $1,000 per day sanction, commencing on January 13, 2011, Ex-Im Bank also seeks an award of attorneys' fees. In the Sanctions Award, the Court held that: "At this juncture I decline to award attorneys fees, but this issue will be revisited should Grenada fail to comply with this Order." (Summit Decl. Ex. 1, Sanctions Award, page 8). It is time to revisit this issue. *See, e.g., Banco Central Del Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01 Civ. 9649 (JFK), 2007 WL 747814 (S.D.N.Y. Mar. 12, 2007) (awarding attorneys' fees to judgment creditors under Rule 37). Both Fed. R. Civ. P. 37(a)(5) and Fed. R. Civ. P. 37(b)(2)(C) provide that the non-responsive, or disobedient, party must (with few stated exceptions) pay the reasonable expenses incurred by the moving party in making the motion. Ex-Im Bank seeks an order requiring Grenada, the disobedient party, to pay the attorneys' fees

[11] Ex-Im Bank's motion for sanctions, that led to the Sanctions Award, sought $10,000 a day in sanctions. The Court ordered sanctions of $1,000 a day. That should have a salutary effect. However, Grenada's conduct since the Sanctions Award is far from reassuring as to the extent to which $1,000 a day may have the desired effect. Assuming that the Court now implements the Sanctions Award, we shall monitor Grenada's conduct to see the impact of the award. Should Grenada continue with its stubborn defiance, we note here that we shall return to the Court at the appropriate time to request an increase in the Sanctions Award.

and expenses Ex-Im Bank incurred in bringing this motion. We ask the Court to fix those fees at $10,000.

**CONCLUSION**

In its response to post-judgment discovery, Grenada lists assets of almost $40 million dollars but continues to fail to provide relevant information to sufficiently identify these assets; or enable Ex-Im Bank to collect on them. This Court recognized Grenada's contemptuous behavior for what it is and entered the Sanctions Award. With this motion, Ex-Im Bank respectfully respects that this Court now implement its $1,000 per day sanction award against Grenada commencing on January 13, 2011 for its willful failure to comply with the Court's orders.

DATED: New York, New York
February 25, 2011

SULLIVAN & WORCESTER LLP

By: /s/ ______________________
Paul E. Summit (PS 6263)
Andrew T. Solomon (AS 9200)
Emily A. Samuels (ES 0302)
1290 Avenue of the Americas, 29th Floor
New York, New York 10104
(212) 660- 3000

*Attorneys for the Plaintiff/Judgment Creditor*