UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
THE EXPORT-IMPORT BANK OF THE :
REPUBLIC OF CHINA, :
                               :   06 Civ. 2469 (HB) (AJP)
         Plaintiff/Judgment Creditor, :
                               :
   -against- :
                               :
GRENADA, :
                               :
         Defendant/Judgment Debtor. :
-------------------------------------------------------X

**DEFENDANT/JUDGMENT DEBTOR GRENADA'S
MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GRENADA'S
MOTION FOR ORDER (1) DECLARING FUNDS IMMUNE FROM ATTACHMENT
OR (2) FIXING CHARGING LIEN AND DIRECTING MONEY JUDGMENT FOR
<u>LEGAL SERVICES RENDERED BY FRESHFIELDS BRUCKHAUS DERINGER</u>**

Brian E. Maas
Khianna N. Bartholomew
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue
New York, New York 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175
bmaas@fkks.com
kbartholomew@fkks.com

*Attorneys for Defendant/Judgment Debtor Grenada*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................................... 1

FACTS ................................................................................................................................................... 2

ARGUMENT ......................................................................................................................................... 6

I.    THE FUNDS ARE IMMUNE FROM ATTACHMENT UNDER THE FOREIGN
      SOVEREIGN IMMUNITIES ACT ............................................................................................ 6

II.   IN THE ALTERNATIVE, FRESHFIELDS HAS A VALID CHARGING LIEN
      AGAINST THE FUNDS ............................................................................................................. 8

CONCLUSION ...................................................................................................................................... 12

# TABLE OF AUTHORITIES

Page

## Federal Cases

*Aurelius Capital Partners, LP v. Republic of Argentina,*
584 F.3d 120 (2d Cir. 2009)..................................................................................... 6, 7, 8

*Beadwear, Inc. v. Media Brands, LLC.,*
No. 00 CIV 5483 (AGS), 2001 WL 1622207 (S.D.N.Y. Dec. 18, 2001)................................ 11

*Corigliano v. Catla Const. Co.,*
231 F. Supp. 245 (S.D.N.Y. 1964) ...................................................................... 11, 12

*Data-Stream AS/RS Techs., LLC v. China Int'l Marine Containers, Ltd.,*
No. 02 CIV 6530 (JFK), 2004 WL 830062 (S.D.N.Y. Apr. 13, 2004) .................................... 10

*EM Ltd. v. Republic of Argentina,*
473 F.3d 463 (2d Cir. 2007)...................................................................................... 7, 8

*In re E.C. Ernst, Inc.,*
4 B.R. 317 (Bankr. S.D.N.Y. 1980)........................................................................... 9, 10

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.,*
140 F.3d 442 (2d Cir.1998)........................................................................................ 8, 9

*NML Capital, Ltd. v. Banco Cent. de la Republica Argentina,*
652 F.3d 172 (2d Cir. 2011)......................................................................................... 6

*Sequa Corp. v. GBJ Corp.,*
156 F.3d 136 (2d Cir. 1998)........................................................................................ 11

*Spielvogel v. Harkins & Maeger Ltd.,*
639 F. Supp. 1397 (S.D.N.Y. 1986)............................................................................ 10, 11

## State Cases

*Aetna Cas. and Sur. Co. v. Atom Foreign Auto Parts, Inc.,*
455 N.Y.S.2d 531 (Sup. Ct. Nassau Cty. 1982)................................................................ 11

*LMWT Realty Corp. v. Davis Agency,*
649 N.E.2d 1183 (N.Y. 1995)................................................................................. 11, 12

## Rules

22 U.S.C. § 1650a................................................................................................... 4

28 U.S.C. § 1609................................................................................................................. 6
28 U.S.C. § 1610........................................................................................................... 1, 6, 7
28 U.S.C. § 1611................................................................................................................. 6
28 U.S.C. § 1330................................................................................................................. 1
28 U.S.C. §§ 1602-1611 .................................................................................................. 1, 6

**Treatises**

New York Judiciary Law § 475 (McKinney's 1997)............................................................*passim*

Pursuant to the Court's order dated January 25, 2012, Defendant Grenada respectfully submits this Memorandum of Law in support of its motion (the "Motion") for an order (1) declaring funds immune from attachment under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602-1611 ("FSIA"), or, in the alternative, (2) fixing a charging lien pursuant to New York Judiciary Law § 475 (McKinney's 1997) in favor of, and directing money judgment for, Freshfields Bruckhaus Deringer US LLP ("Freshfields") for the legal services that it has provided to Grenada but which remain unpaid.[1]

## PRELIMINARY STATEMENT

This Motion is submitted in support of Defendant Grenada's entitlement to $300,486.69 deposited by Grenada with the Clerk of the Court on December 8, 2011 (the "Funds"), or, in the alternative, the entitlement of Freshfields to the Funds pursuant to a statutory attorney's lien. The Funds represent the proceeds of an order entered in favor of Grenada in an international arbitration proceeding before the International Centre for the Settlement of Investment Disputes ("ICSID"), an international organization under the aegis of the World Bank, which was subsequently confirmed by the United States District Court for the Southern District of New York.

The Funds are protected from attachment and execution by virtue of FSIA. In particular, Section 1610(a) of the FSIA provides that property of a sovereign nation located in the United States is immune from attachment unless, *inter alia*, that property has been "used for a commercial activity in the United States." 28 U.S.C. § 1610. Here, as shown below, the funds were seized to satisfy an award of attorneys' fees and costs in an arbitration that occurred outside the United States and, therefore, have not been used for "commercial activity."

---

[1] The deposit of funds with the Court was agreed to by the parties to this litigation in anticipation of the parties making competing claims to the funds.

In the alternative, the vast majority of the Funds are subject to an attorneys' charging lien in favor of Freshfields pursuant to Section 475 of the New York Judiciary Law. N.Y. Judiciary Law § 475 (McKinney's 1997). Freshfields has authorized Grenada to present this claim, which, as explained below, is superior to any competing claims of Plaintiff, to the Court.

## FACTS

The Funds are the product of Defendant's efforts to collect upon an international arbitration award rendered in Defendant's favor. The particulars of that international arbitration are as follows. On January 15, 2010, claimants Rachel S. Grynberg, Stephen M. Grynberg, Miriam Z. Grynberg and RSM Production Corporation filed a Request for Arbitration against Grenada. *See* Declaration of Rohan Phillip, Attorney General of Grenada ("Phillip Decl."), ¶ 3; *see also id.* at Ex. E, ¶ 1.1.1. In that Request for Arbitration, the claimants—a Texas corporation and U.S. citizens—alleged that Grenada breached the Treaty between the United States of America and Grenada concerning the Reciprocal Encouragement and Protection of Investment, which entered into force on March 3, 1989 (the "Treaty"). *Id.* at Ex. A; *see also id.* at Ex. E, ¶ 1.2.1.

The Request for Arbitration claimed that Grenada breached a number of its Treaty obligations to the claimants by reason of its dealings with the claimants in relation to a written petroleum exploration agreement between one of the claimants, RSM Production Corporation, and Grenada, dated July 4, 1996. *Id.* at Ex. E, ¶ 1.4.1. In summary, that agreement permitted RSM Production Corporation to apply for, and Grenada to grant, a petroleum exploration license for Grenada's sovereign resources within 90 days of the agreement's effective date, amongst other conditions. *Id.* at ¶ 1.4.2. RSM Production Corporation eventually applied for a petroleum exploration license; however, Grenada denied the application as untimely and subsequently terminated the agreement. *Id.*

2

RSM Production Corporation initiated a first, contractual arbitration against Grenada, pursuant to the dispute resolution clause in the petroleum exploration agreement, which called for ICSID arbitration. *Id.* at ¶ 1.4.3. On March 13, 2009, the arbitral tribunal constituted in that proceeding dismissed all of RSM Production Corporation's substantive claims. *Id.* Then, on January 15, 2010, RSM Production Corporation and its three sole shareholders—Rachel S. Grynberg, Stephen M. Grynberg, and Miriam Z. Grynberg—initiated an arbitration against Grenada as required by the Treaty to be heard at ICSID, *id.*, Ex. A. This is the relevant arbitration for present purposes. The four claimants alleged that Grenada, as a sovereign, breached the Treaty in five ways: by expropriating the claimants' investment in Grenada; by engaging in arbitrary, discriminatory and illegal conduct; by contravening international law; by breaching its obligation to provide the claimants' investment with full protection and security; and by engaging in unfair and inequitable conduct. *Id.* at ¶¶ 3.2.1–3.2.8. Grenada was represented by Freshfields Bruckhaus Deringer in both the contract and Treaty arbitrations.

On August 5, 2010, a tribunal was constituted to hear the arbitration under the Treaty. The tribunal comprised Professor Pierre Tercier, a Swiss national and Emeritus Professor of Law at the University of Fribourg (appointed by Grenada), Edward W. Nottingham, a former United States District Judge, District of Colorado (appointed by the claimants), and J. William Rowley QC, Chairman Emeritus of the Canadian firm McMillan LLP and a member of 20 Essex Street barristers chambers, London (appointed President of the tribunal). *Id.*, Ex. E, ¶ 1.2.5.

On the date that the tribunal was constituted, August 5, 2010, Grenada filed: (*a*) a Request for Security for Costs; and (*b*) a Preliminary Objection under Rule 41(5) of the ICSID Arbitration Rules, which provides for the early dismissal of cases that are "manifestly without legal merit." *Id.*, Ex. E, ¶¶ 1.3.1 and 2.1.1; *see also id.* Ex. C. The tribunal denied Grenada's security for costs application on October 14, 2010. *Id.*, Ex. E, ¶ 1.3.5. However, on December

3

10, 2010, the tribunal granted Granada's Preliminary Objection, declaring the case to be "manifestly without legal merit" on the basis, *inter alia*, of the operation of the doctrine of collateral estoppel (the "Award"). *Id.*

Both Grenada and the claimants claimed indemnity fees in their favor. *Id.* at ¶ 8.1.1. The tribunal therefore requested the parties to submit their respective statements of fees and costs and to submit comments, if desired, on each other's submissions. *Id.* at ¶ 8.1.3. Pursuant to the applicable ICSID Arbitration Rules, the parties' agreement that indemnity fees should be awarded to the prevailing party, and the circumstances of the case, the tribunal concluded that it was "appropriate that Respondent should be fully indemnified for all of its costs, reasonably incurred or borne, in this proceeding." *Id.* at ¶ 8.3.4. Thus, the "Tribunal has reviewed with care Respondent's statement of costs, and determines that its legal costs in the amount of US$ 205,126.83 are reasonable and should be reimbursed by Claimants." *Id.* at ¶ 8.3.5. The tribunal accordingly awarded Grenada its full legal costs, plus the unrefunded advance it had paid towards the costs of ICSID, being USD$ 93,605.62, plus interest at a rate of 3.25 percent compounded from the date of the Award until payment. *Id.* at ¶ 9.1.

On February 18, 2011, Freshfields, representing Grenada as Arbitration Award Creditor, filed with the United States District Court for the Southern District of New York an application under 22 U.S.C. § 1650a for the recognition and enforcement of the Award by its entry as a judgment in the District Court. *Id.* at Ex. F. On April 29, 2011, Judge Batts, sitting in Part I, entered judgment in favor of Grenada, ordering that the pecuniary obligations contained in the Award be recognized and entered as a judgment of the United States District Court for the Southern District of New York, and ordering payment in favor of Grenada of $298,732.45, plus post-Award interest at a rate of 3.25 percent, compounded semi-annually from December 10, 2010. *Id.* at Ex. G.

On or about July 1, 2011, Freshfields, representing Grenada, assisted by Freidel Dykes, PC (Grenada's Colorado attorneys) ("Freidel Dykes"), succeeded in restraining funds held by Arbitration Award Debtor Miriam Z. Grynberg at JP Morgan Chase Bank, N.A. in Colorado ("JP Morgan Chase Bank"). *Id.* at ¶ 13. On October 6, 2011, the United States District Court for the District of Colorado issued an order, *inter alia*, approving Grenada's Notice to Garnishee, Application of Funds to Judgment, and Release of Funds to Judgment Creditor, and ordered that a Writ of Execution be executed upon garnishee JP Morgan Chase Bank. *Id.*, Ex H. On November 2, 2011, the United States District Court for the District of Colorado issued a subsequent order, *inter alia*, granting Grenada's Motion to Accept and Disburse Funds and ordering the Clerk's Office to accept funds in the amount of $303,986.69 and to disburse those funds to Grenada's counsel in Colorado. *Id.* Ex I.

Following Grenada's restraint of the funds held at JP Morgan Chase Bank, Plaintiff in the present proceedings, the Export-Import Bank of the Republic of China ("Ex-Im of China"), served restraining notices on, *inter alia*, JP Morgan Chase Bank, Freshfields and Freidel Dykes on or about July 27 and July 28, 2011. *Id.* at ¶ 16. Plaintiff and Defendant subsequently agreed, by stipulation dated August 30, 2011, to deposit the Funds into Court, and to have any rights to the Funds determined by the Court in the present proceeding. *Id.* Ex. J. Plaintiff subsequently released its restraints, and on or about November 17, 2011, Grenada received a net amount of $300,486.69 from the account of Miriam Z. Grynberg (Plaintiff and Defendant agreed to deduct $3,500 from the recovered funds as the fees owing to Freidel Dykes, without prejudice). *Id.* at ¶ 18. On December 8, 2011, pursuant to an Order of the Court dated November 22, 2011 (docket entry #65), Grenada deposited the Funds into Court.

Grenada brings the present Motion to seek the release of the funds either to Grenada, based on the immunity of the Funds pursuant to the FSIA or to Freshfields based on its assertion,

through Grenada, of its charging lien pursuant to New York Judiciary Law § 475 (McKinney's

1997) for the legal services it provided for Grenada to create this fund and which remain unpaid.

As explained in the Declaration of Rohan Phillip, Attorney-General of Grenada, Freshfields'

unpaid legal fees in connection with the Treaty arbitration and the associated collection

proceedings in this Court total, at present, $281,797.77.  Ex. D, *id.* at ¶ 20.

## ARGUMENT

### I.

### THE FUNDS ARE IMMUNE FROM ATTACHMENT
### UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT

The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611, provides, *inter alia,*

that the property of a foreign sovereign located within the United States is immune from

attachment or execution to satisfy a judgment debt, 28 U.S.C. § 1609, unless the property is

subject to one of the limited exceptions set forth in FSIA § 1610, 28 U.S.C. § 1610.[2]  *NML*

*Capital, Ltd. v. Banco Cent. de la Republica Argentina*, 652 F.3d 172, 186-87 (2d Cir. 2011).

Relevantly, execution against property of a foreign sovereign is permitted where the

following cumulative conditions are met: (*i*) the property is located in the United States; (*ii*) the

foreign state has waived immunity; and (*iii*) the property sought to be executed upon "must have

been used for a commercial activity *at the time* the writ of attachment or execution is issued."

*Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 130 (2d Cir. 2009)

(emphasis in original).  Thus, "[e]ven when a foreign state completely waives its immunity from

execution, courts in the U.S. may execute only against property that meets these ... statutory

---

[2] The provisions of section 1611, addressing property held by a sovereign's central bank or used
by a sovereign in connection with military activity, are not applicable to this case.  *See* 28 U.S.C.
§ 1611.

criteria." *Id.* (internal citation omitted); *see also EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 481 (2d Cir. 2007).[3]

It is not disputed that Defendant Grenada, as a foreign sovereign, benefits from the protections of the FSIA. Nor is it disputed that the Funds at issue are property of Grenada. Therefore, unless an exception to sovereign immunity applies, the Funds are immune from attachment and execution by Ex-Im of China. *See EM Ltd.*, 473 F.3d at 480-81. No such exception can be satisfied, however, because the Funds unquestionably have not been "used for a commercial activity." 28 U.S.C. § 1610. Thus, the Funds are immune from attachment and execution.

Given the restraining notices issue by Ex-Im of China, and complied with by Grenada, Grenada has had no opportunity to use the Funds for any activity, commercial or otherwise. Phillip Decl. at ¶ 19. Where, as here, a sovereign has made <u>no use</u> of its property, that property is immune from attachment under the FSIA. As the United States Court of Appeals for the Second Circuit recently held, in a case where judgment-creditor bondholders were pursuing assets of the Argentine Republic:

> The Act is clear: "The property in the United States *of a foreign state*" must be "used for a commercial activity in *the United States*" before it is susceptible to attachment and execution. … Therefore, before the retirement and pension funds at issue could be subject to attachment, the funds *in the hands of the Republic* must have been "used for a commercial activity." Because the order attaching the assets of the Administration became effective immediately upon the passage of legislation transferring the assets from the private corporations to the Administration, neither the Administration nor the Republic had the opportunity to use the funds for any commercial activity whatsoever.

---

[3] Therefore, any waivers in the loan documents signed by Grenada and ExIm of China are not relevant to the present analysis. A waiver of sovereign immunity cannot, as a matter of law, relieve Ex-Im of China of the burden to prove that the Funds were used for a commercial activity. 28 U.S.C. § 1610; *Aurelius Capital Partners, LP*, 584 F.3d 120 (2d Cir. 2009).

*Aurelius Capital Partners, LP*, 584 F.3d at 131 (emphasis in original).  Further, it is insufficient that the property in the United States of a foreign state "'will be used' or 'could potentially be used' for a commercial activity in the United States . . . . [T]he property in the United States of a foreign state must be used for a commercial activity in the United States." *Id.* at 130; *see also EM Ltd.*, 473 F.3d at 484-85.  Here, the Funds have never been used for such a purpose.

Therefore, the Funds are immune from attachment pursuant to the FSIA and must be released to Grenada.  *Aurelius Capital Partners, LP*, 584 F.3d at 131 ("The Republic had not used the funds for any commercial activity at the time of attachment.  Under the plain language of 28 U.S.C. § 1610(a), the funds are immune from attachment.").

## II.

## IN THE ALTERNATIVE, FRESHFIELDS HAS A VALID CHARGING LIEN AGAINST THE FUNDS

If this Court finds that the Funds are not immune from attachment under the FSIA, Plaintiff is nevertheless not entitled to attachment or execution.  The Funds are the product of a favorable judgment for Grenada in an action in which Freshfields acted as counsel of record.  As Freshfields has not been paid for its legal services, Phillip Decl. at ¶ 20, the Funds are subject to an attorneys' charging lien in favor of Freshfields that is superior to the claims of any other claimant to the funds. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 449 (2d Cir.1998).

Section 475 of the New York Judiciary Law establishes an attorney's statutory charging lien.  N.Y. Judiciary Law § 475 (McKinney's 1997).  It provides, in relevant part:

> From the commencement of an action, special or other proceeding in any court ..., the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination.  The

8

court upon the petition of the client or attorney may determine and enforce the lien.

*Id.* Section 475 applies, and is enforceable, in a federal court sitting in New York. *Itar-Tass Russian News Agency*, 140 F.3d at 449.

The requirements for establishing a charging lien under Section 475 of the New York Judiciary Law have been summarized as follows:

(1) The attorney must appear as attorney of record;

(2) The fund out of which the attorney seeks to be paid must have been secured substantially by the attorney's services rendered in creating such fund;

(3) The lien relates back and takes effect from the time the attorney's services were commenced;

(4) The lien attached at the time a verdict, report, decision, judgment or final order is rendered, in the hands of whomsoever the proceeds may come;

(5) The attorney must not have evidenced any intent to waive the lien;

(6) Application must be made to the court to determine (according to the reasonable value of the services performed) and enforce said lien.

*In re E.C. Ernst, Inc.*, 4 B.R. 317, 320 (Bankr. S.D.N.Y. 1980). Moreover, an attorney is not required to give notice of the lien to any other party. *Itar-Tass Russian News Agency*, 140 F.3d at 450.

A statutory charging lien in favor of Freshfields satisfies these requirements. Freshfields appeared as the attorney of record on behalf of Grenada in the underlying ICSID arbitration under the Treaty and in the action to enforce the Award filed in this Court on February 18, 2011. Moreover, the Funds were secured through the efforts of Freshfields in the Arbitration and the subsequent enforcement action. Thus, the lien relates back and takes effect from the time that Freshfields' services were commenced. *In re E.C. Ernst, Inc.*, 4 B.R. at 320.

Under Section 475, a charging lien arises at the "commencement of an action, special or other proceeding in any court." N.Y. Judiciary Law § 475 (McKinney's 1997). While an

arbitration itself has been held not to be an action or proceeding within the meaning of the statute, courts have consistently held that a subsequent action taken to *confirm* an arbitration award does fall within the definition of Section 475. *See, e.g., Data-Stream AS/RS Techs., LLC v. China Int'l Marine Containers, Ltd.*, No. 02 CIV 6530 (JFK), 2004 WL 830062 at *4 (S.D.N.Y. Apr. 13, 2004) ("Although an arbitration proceeding is not 'an action, special or other proceeding' as contemplated by Section 475, the filing of a confirmation action in a district court brings the matter within the purview of the statute."); *Spielvogel v. Harkins & Maeger Ltd.*, 639 F. Supp. 1397, 1400 (S.D.N.Y. 1986) (granting summary judgment as to priority of attorneys' lien for attorney who represented judgment creditor in arbitration and related confirmation proceeding). Accordingly, the lien attached at the latest on February 18, 2011, when Freshfields filed an action to confirm the Award in this Court. *See* Phillip Decl., Ex. F.

New York law is also clear that the charging lien, once established, relates back and takes effect from the time that Freshfields' services were commenced in the underlying arbitration. Thus, all reasonable fees related to Freshfields' representation of Grenada in that proceeding fall within the lien. *See Data-Stream AS/RS Techs., LLC*, 2004 WL 830062 (granting a statutory charging lien in respect of attorney's fees incurred in an arbitration); *see also In re E.C. Ernst, Inc.*, 4 B.R. at 320 ("The lien relates back and takes effect from the time the attorney's services were commenced.").

The legal fees and costs incurred and billed by Freshfields in connection with the Award and its confirmation presently total $281,797.77. Phillip Decl., Ex. D; *id.* at ¶ 20. This amount was incurred in accordance with the Retainer Agreement between Grenada and Freshfields and the parties' conduct thereunder, Phillip Decl., Ex. B, and accurately reflects "the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at

issue, and the results obtained." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998).

Indeed, the amount of fees and costs incurred in connection with the arbitration was determined

to be "reasonable" by the tribunal that awarded it. *See* Phillip Decl., Ex. E at ¶ 8.3.5 ("The

Tribunal has reviewed with care [Grenada]'s statement of costs, and determines that its legal

costs in the amount of US\$ 205,126.83 are reasonable and should be reimbursed by Claimants.").

     Freshfields' charging lien takes priority over other claims against the funds, including the

claims of judgment creditors such as Plaintiff. *See, e.g., Beadwear, Inc. v. Media Brands, LLC.*,

No. 00 CIV 5483 (AGS), 2001 WL 1622207 (S.D.N.Y. Dec. 18, 2001); *Aetna Cas. and Sur. Co.*

*v. Atom Foreign Auto Parts, Inc.*, 455 N.Y.S.2d 531 (Sup. Ct. Nassau Cty. 1982). Indeed, the

Court of Appeals of New York has held that an attorney's charging lien even takes priority over

an earlier-perfected tax lien obtained by the City of New York. *LMWT Realty Corp. v. Davis*

*Agency*, 649 N.E.2d 1183, 1186 (N.Y. 1995); *see also Spielvogel*, 639 F. Supp. at 1399

(recognizing that attorney's statutory charging lien takes priority over a tax lien asserted by the

Internal Revenue Service); *Aetna Cas. and Sur. Co.*, 455 N.Y.S.2d at 532 ("[S]uch federal tax

lien is not superior to the attorney's lien.").

     An attorney's statutory lien is favored by courts on grounds of equity and public policy.

*See Corigliano v. Catla Const. Co.*, 231 F. Supp. 245, 249 (S.D.N.Y. 1964) ("The New York

courts have shown great reluctance to permit attorneys whose efforts have created the fund that

is the object of conflicting claims to be deprived of the fruits of their labors by mere technical

and time considerations."). Without the efforts of Freshfields, there would be no proceeds for

Ex-Im Bank of China to attach. Both equitable and legal considerations therefore dictate that

Freshfields' charging lien be satisfied in full. To apply the words of Judge Bryan, Ex-Im Bank

of China "has little cause to complain that it cannot appropriate the fund created by the attorneys

without allowing them to be compensated for their efforts which made it possible for him to

realize on it." *Corigliano*, 231 F. Supp. at 251; *see also LMWT Realty Corp.*, 649 N.E.2d at 1185 ("We agree with the attorneys that without their efforts, there would be no proceeds against which the City could enforce its special tax lien . . . Equitable considerations thus persuade us that the attorney's charging lien should be given priority.").

**CONCLUSION**

In view of the foregoing, Defendant Grenada respectfully asks this Court for an order (1) declaring the Funds immune from attachment under the Foreign Sovereign Immunities Act of 1976, or, in the alternative, (2) fixing a charging lien pursuant to New York Judiciary Law § 475 in favor of, and directing money judgment for, Freshfields Bruckhaus Deringer US LLP in the amount of $281,797.77.

Dated: New York, New York
      February 6, 2012

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: _____
     Brian E. Maas
     Khianna N. Bartholomew

488 Madison Avenue
New York, New York 10022
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
bmaas@fkks.com
kbartholomew@fkks.com

*Attorneys for Defendant/Judgment Debtor Grenada*