UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

THE EXPORT-IMPORT BANK OF      :
THE REPUBLIC OF CHINA,      :
     :      **06 CV 2469 (HB) (AJP)**
     Plaintiff/Judgment Creditor,    :
     :
     -against-      :
     :
GRENADA,      :
     :
     Defendant/Judgment Debtor.   :

----------------------------------------------------------X

**PLAINTIFF/JUDGMENT CREDITOR THE EXPORT-IMPORT BANK OF THE
REPUBLIC OF CHINA'S OPPOSITION TO DEFENDANT/JUDGMENT DEBTOR
GRENADA'S MOTION FOR AN ORDER (1) DECLARING FUNDS IMMUNE FROM
ATTACHMENT OR (2) FIXING CHARGING LIEN AND DIRECTING MONEY
JUDGMENT FOR LEGAL SERVICES RENDERED BY FRESHFIELDS BRUCKHAUS
DERINGER; AND MEMORANDUM IN SUPPORT OF CROSS-MOTION
<u>FOR TURNOVER OF FUNDS TO PLAINTIFF/JUDGMENT CREDITOR</u>**

SULLIVAN & WORCESTER LLP
Paul E. Summit
Andrew T. Solomon
1290 Avenue of the Americas, 29th Floor
New York, NY 10104
T. 212.660.3000
F. 212.660.3001

*Attorneys for Plaintiff/Judgment Creditor*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS ............................................................................................................................... 2

ARGUMENT ...................................................................................................................... 4

I.   The Grynberg Funds Are Not Immune From Execution Under The Foreign Sovereign
     Immunities Act ........................................................................................................... 5

II.  Freshfields Does Not Have An Attorney's Lien Against The Grynberg Funds ...................... 8

CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Federal Cases**

Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.,
  875 F.2d 1174 (5th Cir. 1989) .................................................... 7, 8

Aurelius Capital Partners, LP v. Republic of Argentina,
  584 F.3d 120 (2d Cir. 2009) ...................................................... 5-6, 7

Connecticut Bank of Commerce v. Republic of Congo,
  309 F.3d 240 (5th Cir. 2002) ..................................................... 8, 9

Libancell S.A.L. v. Republic of Lebanon,
  No. 06 Civ. 2765 (HB), 2006 WL 1321328 (S.D.N.Y. May 16, 2006)..................................... 8

In re Manshul Construction Corp.,
  225 B.R. 41 (Bankr. S.D.N.Y. 1998)........................................... 9, 10

Petition of Rosenman & Colin,
  850 F.2d 57 (2d Cir. 1988).......................................................... 9

Rosewood Apartments Corp. v. Perpignano,
  No. 99 Civ. 4226 (NRB), 2005 WL 1084396 (S.D.N.Y. May 5, 2005).............................. 9, 10

United States v. J.H.W. & Gitlitz Deli & Bar, Inc.,
  499 F. Supp. 1010 (S.D.N.Y. 1980)............................................ 10

**State Cases**

Matter of Istim, Inc. v. Chemical Bank,
  78 N.Y. 2d 342 (1991) .............................................................. 9

**State Statutes**

N.Y. C.P.L.R. § 5225(a) ................................................................ 1, 5

N.Y. Jud. Law, § 475 (McKinney's 1997) .......................................... 9

**Federal Rules**

Fed. R. Civ. P. 69 ......................................................................... 12

Fed. R. Civ. P. 69(a) ...................................................................... 1

**Miscellaneous**

Foreign Sovereign Immunities Act § 1610 ........................................... *passim*

Plaintiff and Judgment Creditor The Export-Import Bank of the Republic of China ("Ex-Im Bank") hereby opposes Defendant/Judgment Debtor Grenada's ("Grenada's") Motion. Grenada has moved for an Order (1) Declaring Funds Immune from Attachment or (2) Fixing Charging Lien and Directing Money Judgment for Legal Services Rendered by Freshfields Bruckhaus Deringer ("Freshfields") (the "Motion for Funds"). This memorandum is also submitted in support of Ex-Im Bank's cross-motion for turnover of the funds to Ex-Im Bank.

Grenada's motion should be denied in its entirety. The funds in question should be turned over to Ex-Im Bank in partial satisfaction of its judgment against Grenada, pursuant to Fed. R. Civ. P. 69(a) and N.Y. C.P.L.R. § 5225(a). To the extent necessary, this Court should also issue an order of execution under § 1610(c) of the Foreign Sovereign Immunities Act.[1]

## PRELIMINARY STATEMENT

Grenada defaulted on four multi-million dollar loans made to Grenada by Ex-Im Bank between 1990 and 2000. On March 16, 2007, this Court entered an Amended Judgment in favor of Ex-Im Bank and against Grenada in the amount of $21,586,057.38, plus prejudgment interest, attorneys' fees, and statutory interest.

Nearly five years have passed since the judgment, and Grenada still has not paid the first dollar to Ex-Im Bank in satisfaction.[2] And Grenada has, on numerous occasions, made a

---

[1] § 1610(c) of the Foreign Sovereign Immunities Act provides that no execution shall be permitted "until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter." As nearly five years have passed since this Court's entry of judgment against Grenada and the funds at issue are on deposit with the Clerk of Court, an order under § 1610(c) probably is unnecessary. However, to resolve any question of Ex-Im Bank's right to execute on the funds, Ex-Im Bank has submitted a proposed § 1610(c) order, attached as Exhibit 1 to the Declaration of Paul E. Summit ("Summit Decl."), submitted herewith.

[2] The only payment Grenada has made to Ex-Im Bank since the Amended Judgment was issued is $10,000.00 in attorney's fees. This Court ordered Grenada to pay that sum on March 24, 2009, as a sanction for forcing needless motion practice. See Docket Entry #22. For over two years, Grenada failed to pay. The Court reiterated its order on August 10, 2011. See Excerpts from the Transcript of August 10, 2011 Conference before Hon. Andrew Peck (attached to the Summit Decl. as Ex. 2), at pp. 49-50. Two and a half years after the Court's order, on September 22, 2011, Grenada finally paid the sanction to Ex-Im Bank.

shambles of the orderly court process: by failing to respond to lawful discovery requests, by "complying" at a snail's pace, by failing to follow court orders, and by failing to disclose its assets in the United States.

## **FACTS**

On July 20, 2011, after innumerable demands for information by Ex-Im Bank, Grenada informed this Court that Grenada "has no assets, liquid or illiquid, that could be used to satisfy the Ex-Im Bank judgment…."  Luckily, however, on July 27, 2011, Ex-Im Bank stumbled upon a remarkable finding: a substantial Grenadian asset (some $500,000) located in the United States that Grenada had not only failed to disclose, but was already trying to collect with the assistance of the federal courts of the Southern District of New York and the District of Colorado.

The history (as we now understand it) is this.  On January 15, 2010, Rachel S. Grynberg, Stephen M. Grynberg, Miriam Z. Grynberg (all United States citizens), and RSM Production Corporation ("RSM"), a United States corporation organized under the laws of Texas (the "Grynberg Parties"), filed a Request for Arbitration against Grenada in the International Centre for the Settlement of Investment Disputes ("ICSID") captioned Grynberg, et al. v. Grenada, ICSID No. ARB 10/6 (the "Arbitration").[3]  In the Arbitration, the Grynberg Parties contended that Grenada had denied them a petroleum exploration license in breach of a contract between RSM and Grenada.  Grenada, as Respondent, sought "an award ordering Claimants to pay all costs and fees" of the Arbitration, "including the administrative fees and costs of ICSID, the fees and expenses of the Tribunal and Grenada's legal and other costs."  Declaration of Rohan Phillip ("Phillip Decl.") (Docket Entry #69), Ex. E at p. 45.  Grenada was represented by Freshfields.

---

[3] A copy of the Arbitration Award is attached to the Declaration of Rohan Phillip ("Phillip Decl."), submitted by Grenada with the Motion for Funds, as Exhibit E.  (Docket Entry #69).

On December 10, 2010, the Tribunal denied all claims of the Grynberg Parties; and further ordered:

> (b)    Claimants shall pay to Respondent its legal and other costs of these proceedings in the amount of US$ 205,126.83
>
> (c)    Claimants shall pay to Respondent US$ 93,605.62, being its unrefunded share of the advance against costs paid to the Centre to cover the costs of the first phase of these proceedings.
>
> (d)    Each of the sums awarded in (b) and (c) above shall bear interest at a rate of 3.25%, compounded semi-annually from the date of this Award until the date of full payment.

Id. at p. 47.

Grenada did not advise Ex-Im Bank of this asset.

On February 18, 2011, without notice to Ex-Im Bank, Grenada brought an action in the Southern District of New York (1:11-misc-00045-DAB) (the "New York Grynberg Action") seeking to confirm the award of costs against the Grynberg Parties for $298,732.45, plus post-award interest at 3.25%. On April 29, 2011, Judge Batts entered judgment in the New York Grynberg Action in favor of Grenada and against the Grynberg Parties in the full amount, plus post-judgment interest. Phillip Decl., Ex. G. On July 1, 2011, Grenada restrained funds on deposit in the name of judgment debtor Miriam Grynberg at JP Morgan Chase ("Morgan") sufficient to satisfy the Grynberg Judgment.

On November 17, 2011, Morgan transferred the restrained funds to Grenada's counsel (the "Grynberg Funds"). On November 22, 2011, the parties submitted to the Clerk of this Court a Joint Proposed Order for Deposit of Funds Into Court. (Docket Entry #65). On December 1,

2011, the Court ordered Grenada to deposit $300,436.69 (the amount of the Grynberg Funds) with the Clerk.  Id.  Grenada deposited the Grynberg Funds on December 8, 2011.[4]

Until Ex-Im Bank discovered the asset, Grenada had failed to disclose both the award of costs and its initiation of the New York Grynberg Action, even though required to do so by a host of discovery demands and rulings by this Court.  On August 10, 2011, counsel for Grenada in this action advised the Court that he had been unaware of the Grynberg award of costs himself, and apologized to the Court on behalf of his client for Grenada's failure to disclose.  Unfortunately, Grenada's sometimes negligent, sometimes cavalier attitude toward the federal court process has been the rule, not the exception, over the years.  See Declaration of Paul Summit ("Summit Decl."), Ex. 2 at pp. 3-6.

## ARGUMENT

Grenada pays other creditors (see Summit Decl., Ex. 2 at 33-34); but has defied its Ex-Im Bank judgment.  Ex-Im Bank is now entitled to a turnover of the Grynberg Funds.  Grenada's arguments to the contrary are makeweight.

First, the Grynberg Funds are not immune from execution under the FSIA, because Grenada expressly waived execution immunity, the funds are located in the United States, and Grenada has used and/or designated the funds for a commercial purpose in the United States.

---

[4] In addition to the Grynberg Judgment, Grenada was awarded a judgment against RSM, one of the Grynberg Parties, in another, closely related arbitration.  Seeking to confirm that award as well, Grenada commenced a second case in the Southern District of New York captioned Application of Grenada v. RSM Production Corporation, 1:11-cv-06591-JPO.  On January 23, 2012, the Court entered an order and judgment in Grenada's favor against RSM for $186,072.81 (the "RSM Funds").  Summit Decl., Ex. 3.  While the Motion for Funds and this Opposition and Cross-Motion center on the parties' rights to the Grynberg Funds, the Court's decision on the parties' respective motions naturally will inform the parties' rights to the RSM Funds as well, which, in addition to the Grynberg Funds, total nearly $500,000.

Second, Freshfields has no attorney's lien.  The Grynberg Funds derive from the Grynberg

Judgment, which was an award of costs and fees to Grenada, not an affirmative recovery, the

*sine qua non* of an attorney's lien.

### I. The Grynberg Funds Are Not Immune From Execution Under The Foreign Sovereign Immunities Act

A judgment debtor must turn over funds in which it has an interest to a judgment creditor

upon a showing that the judgment debtor is in possession of such funds.  N.Y. C.P.L.R. §

5225(a).  It is undisputed that Grenada has an interest in the Grynberg Funds.

Grenada makes a half hearted argument that the Grynberg Funds are immune from

execution.  The argument fails.

Grenada relies on the Foreign Sovereign Immunities Act ("FSIA"), which states, in

relevant part:

> § 1610.  Exceptions to the immunity from attachment or execution
>
> (a)  The property in the United States of a foreign state…used for a commercial activity in the United States, shall not be immune from… execution, upon a judgment entered by a court of the United States…if--
>
>> (1)  the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication….

Grenada expressly waived sovereign immunity from attachment and execution.  <u>See</u>

Declaration of Emily Samuels in Support of Ex-Im Bank's Motion for Summary Judgment

(Docket Entry # 9), Ex. 4 at p. 19; Ex. 6 at p. 15; Ex. 8 at p. 16; Ex. 10 at p. 18.[5]  Grenada seeks

refuge in the provision requiring that the property be "used for a commercial activity in the

United States…."  It relies almost exclusively on a single case, <u>Aurelius Capital Partners, LP v.</u>

---

[5]Grenada acknowledges its waiver of execution immunity under the FSIA. Memorandum in Support of Motion for Funds (Docket #70), p. 7 n.3.

Republic of Argentina, 584 F.3d 120 (2d Cir. 2009); tellingly, it is does not refer to any of the facts of the case.

Aurelius offers no protection.

In Aurelius, the Second Circuit construed the immunity of assets constituting *social security benefits* of citizens of the Republic of Argentina ("Argentina").  Argentina's constitution requires that the government provide social security benefits to its citizens.  Aurelius, 584 F.3d at 124.  In 1993, Argentina had passed legislation establishing a social security option called the "Capitalization System"; in the words of the Second Circuit:

> Under the Capitalization System, workers made contributions to individual accounts managed by private corporations, which administered the retirement and pension funds and provided payments and benefits due to the pensioners in exchange for management fees.  *By law, the assets in the funds were only to be used to provide social security benefits, and the private corporations did not have property rights in the funds' assets.*  Some of the funds were held in New York, where the private corporations invested the funds to grow for the benefit of the pensioners.

Id.  (emphasis added).

In 2001, Argentina defaulted on payments on certain bonds, and many bondholders obtained judgments against Argentina ("the Bondholder Creditors").  Aurelius, 584 F.3d at 124.  On October 21, 2008, proposed legislation was introduced in Argentina that would have required all the assets in the Capitalization System to be transferred back to the main social security fund (the "Guarantee Fund"), and reaffirmed that assets in the Guarantee Fund could only be used to provide social security benefits for Argentine citizens.  Id. at 125.  On October 29, 2008, the Bondholder Creditors obtained an order of the District Court in the Southern District of New York restraining transfer of the funds in the Capitalization System back to Argentina.  Id.  Eventually the District Court held that the funds in the Capitalization System were being "used

for a commercial activity in the United States" because the funds were invested in the United

States, in the hope of profit, for the Argentine pensioners. Id. at 126.

On those unique facts, the Second Circuit reversed. After a lengthy discussion of the

legislation establishing Argentina's social security system, it emphasized that these were funds

"required by Argentine law to be used *solely to maintain the social security system…*" Aurelius,

584 F.3d at 126 (emphasis added). Indeed, it is hard to imagine a *less* commercial activity (or,

for that matter, a more purely "sovereign" function) than a governmentally mandated and

regulated social security system.

Contrast the facts here. A) The underlying Arbitration was all about a clearly

commercial venture: petroleum exploration by a United States company.[6] If oil drilling is not

commercial, what is? B) The Freshfields legal fees and the costs of the Arbitration all flowed

from the dispute about that purely commercial venture; C) There has never been any dispute

that the recovered funds would be used to pay the Freshfields legal fees used in this commercial

dispute. As Mr. Maas said candidly before Magistrate Judge Peck on August 10, 2011:

> "This was, in a sense, a windfall that was to be used to pay the
> Freshfields law firm, I presume, and was not thought of in any
> other way."

Summit Decl., Ex. 2 at 4-5; D) Grenada and Freshfields used the United States federal courts in

NY and Colorado to first target, then freeze, and then collect these funds; and E) A portion of

the funds have actually been put to a commercial use *already*, the payment of legal fees: after

obtaining Ex-Im Bank's permission, Grenada paid a portion of the Grynberg Funds to its

---

[6] As set forth in Grenada's motion, the Arbitration concerned a written petroleum exploration agreement between Grenada and RSM, an American company, pursuant to which RSM was permitted to apply for, and Grenada to grant, a petroleum exploration license. Memorandum in Support of Motion for Funds at p. 2. Grenada calls the resources "sovereign" resources; their label does not change the fact that the underlying agreement was commercial, not sovereign, in nature. See, e.g., Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A., 875 F.2d 1174, 1177 (5th Cir. 1989) (contract between foreign sovereign and American company for the drilling of oil wells off the coast of Brazil was commercial, not sovereign, activity).

Colorado counsel in connection with the transfer of the Grynberg Funds from Morgan to this Court.  Summit Decl., ¶ 1; Memorandum in Support of Motion for Funds, p. 5.

Some cases under the "commercial activity in the United States" clause are hard.  This one is not.  The facts here stand on all fours with such well established precedents as Atwood Turnkey Drilling, Inc.v. Petroleo Brasileiro, S.A., 875 F.2d 1174 (5th Cir. 1989) (letter of credit in U.S. clearly served commercial purpose in connection with oil well drilling off the coast of Brazil); Libancell S.A.L. v. Republic of Lebanon, No. 06 Civ. 2765 (HB), 2006 WL 1321328, at *3 (S.D.N.Y. May 16, 2006) (sovereign debt offering is commercial activity under the FSIA); Conn. Bank of Commerce v. Republic of Congo, 309 F.3d 240, 253-54 (5th Cir. 2002) (remanding to determine if certain tax and license payments to the Congo will be used for a commercial purpose).

The FSIA was shaped to avoid disruption of classically sovereign functions.  In the words of the Fifth Circuit:

> "One of the chief motifs of the FSIA is to limit as much as possible disrupting the 'public acts' or 'jure imperii' of sovereigns, while restricting their purely commercial activity."

Conn. Bank of Commerce, 309 F.3d at 253.  Thus the outcome in Aurelius, where Argentina's social security was at stake.  No remotely comparable considerations exist here.

The Grynberg Funds arose from commercial activity, were targeted, frozen, and collected to pay for commercial activity, and Grenada has already used a portion of them to pay its American lawyers.  The Grynberg Funds are not immune from execution under the FSIA.

## II.     Freshfields Does Not Have An Attorney's Lien Against The Grynberg Funds

Freshfields argues in favor of its supposed attorney's lien by knocking down a series of strawmen. Thus Freshfields demonstrates that an arbitration (as opposed to litigation) can create an attorney's lien; that attorney's liens take priority over certain other liens; that an attorney's

lien, once established, dates back to the commencement of the proceeding in question, etc. etc. These are utterly irrelevant principles. Freshfields carefully avoids any mention of the real issue (and the fatal flaw) in its attorney's lien position.  Freshfields cannot establish the vital threshold requirement of an attorney's lien:  that is, that the attorneys created a fund that *bettered* the position of their client as a result of the litigation.

Under New York law,[7] an attorney's lien attaches only to a "client's cause of action, claim, or counterclaim, resulting in a judgment in favor of a client."  N.Y. Jud. Law, § 475 (McKinney's 1997).  It is settled that an attorney's lien exists only where an attorney in a particular action has obtained affirmative recovery on behalf of the client; that is: "money or property which [the client] *did not possess before the attack was made and repulsed*."  Petition of Rosenman & Colin, 850 F.2d 57, 61 (2d Cir. 1988) (emphasis added).  The underlying principle is that, where an attorney has obtained affirmative recovery for the client, the attorney has "created the fund out of which he is paid by his efforts."   In re Manshul Constr. Corp., 225 B.R. 41, 50 (Bankr. S.D.N.Y. 1998) (citing cases; internal quotation marks omitted). Conversely, an attorney who merely defends against a claim and restores his client to the "status quo ante," without obtaining affirmative recovery, does not have a valid attorney's lien:

> [a]n attorney who merely defends or protects his client's interest in
> property without obtaining an affirmative recovery is not entitled
> to a lien on the property that his client retains.

Rosenman & Colin, 850 F.2d at 61.; see also Rosewood Apartments Corp. v. Perpignano, No. 99 Civ. 4226 (NRB), 2005 WL 1084396, at *3 (S.D.N.Y. May 5, 2005).  Thus, put simply, a defendant's attorney cannot obtain an attorney's lien "unless the client asserts a counterclaim."

---

[7] Where, as here, the Grynberg Funds are in New York and the parties litigated the underlying case before this Court, New York attorney's lien law applies.  See Matter of Istim, Inc. v. Chem. Bank, 78 N.Y. 2d 342, 348-49 (1991) (applying New York attorney's lien law where the parties, settlement fund, and significant proceedings were all located in New York).

Manshul Constr. Corp., 225 B.R. at 50; see also United States v. J.H.W. & Gitlitz Deli & Bar, Inc., 499 F. Supp. 1010, 1014 (S.D.N.Y. 1980).

Throughout the Arbitration, Grenada was the Respondent, defending against claims brought by Petitioners.  See Phillip Decl., Exs. C, E.  Freshfields did not assert a counterclaim on Grenada's behalf.  Id.  For this reason alone, Freshfields does not have an attorney's lien against the Grynberg Funds.  In Rosewood Apartments Corp., for example, the Court ruled that a law firm did not have an enforceable attorney's lien where it represented a client in a declaratory judgment action that could not have resulted in a monetary judgment for the client, even though the client entered into a favorable settlement resulting in drastically reduced liability.  Rosewood Apartments Corp., 2005 WL 1084396, at *4.

Freshfields has no attorney's lien, because it merely defended Grenada in the Arbitration; and brought no claims on Grenada's behalf that could have resulted in a monetary judgment in favor of Grenada that would have put Grenada in a more favorable position than the one it occupied before the Arbitration began.

The Award simply does not constitute an affirmative recovery, which is a prerequisite to a valid attorney's lien.  In the Arbitration, Grenada requested "all costs and fees of this arbitration, including the administrative fees and costs of ICSID, the fees and expenses of the Tribunal and Grenada's legal and other costs."  Phillip Decl., Ex. E at p. 45.  The Award compensated Grenada for those costs, and nothing more.  Id. at pp. 45-47.  In awarding Grenada these costs, the Tribunal ordered that Claimants pay Grenada "its legal and other costs of these proceedings in the amount of $205,126.83," and "its unrefunded share of the advance costs paid to the Centre to cover the costs of the first phase of these proceedings" in the amount of

$93,605.62.  <u>Id.</u> at 47.  The Award merely restored Grenada to the *status quo ante*.  Thus,

Freshfields has no attorney's lien against the Grynberg Funds.

<u>**Conclusion**</u>

For the foregoing reasons, Ex-Im Bank requests that the Court:

      A.      Deny Grenada's Motion for Funds;

      B.      Grant Ex-Im Bank's Cross-Motion for Turnover of Funds and order the immediate turnover of the Grynberg Funds to Ex-Im Bank;

      C.      Issue a writ of execution pursuant to Fed. R. Civ. P. 69;

      D.      Order an execution under § 1610(c) of the Foreign Sovereign Immunities Act in the form of the Proposed Order submitted herewith; and

      E.      Grant such other relief as it deems proper.

Dated: New York, New York        SULLIVAN & WORCESTER LLP
       February 27, 2012

           By: <u>/s/                         </u>
              Paul E. Summit
              Andrew T. Solomon
           1290 Avenue of the Americas, 29th Floor
           New York, NY 10104
           T. 212.660.3000
           F. 212.660.3001

           *Attorneys for Plaintiff/Judgment Creditor*