Paul E. Summit
Andrew T. Solomon
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Floor
New York, NY 10104
(212) 660-3000

*Attorneys for Plaintiff/Judgment Creditor*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THE EXPORT-IMPORT BANK OF
THE REPUBLIC OF CHINA,

      Plaintiff/Judgment Creditor,

   -against-

GRENADA,

      Defendant/Judgment Debtor.
-------------------------------------------------------------X

**06 CV 2469 (HB) (AJP)**

### DECLARATION OF PAUL E. SUMMIT IN SUPPORT OF PLAINTIFF/JUDGMENT CREDITOR THE EXPORT-IMPORT BANK OF THE REPUBLIC OF CHINA'S OPPOSITION TO DEFENDANT/JUDGMENT DEBTOR GRENADA'S MOTION FOR AN ORDER (1) DECLARING FUNDS IMMUNE FROM ATTACHMENT OR (2) FIXING CHARGING LIEN AND DIRECTING MONEY JUDGMENT FOR LEGAL SERVICES RENDERED BY FRESHFIELDS BRUCKHAUS DERINGER; AND IN SUPPORT OF CROSS MOTION FOR TURNOVER OF FUNDS TO PLAINTIFF/JUDGMENT CREDITOR

PAUL E. SUMMIT, pursuant to 28 U.S.C. § 1746, declares:

  1.  I am a partner with the law firm of Sullivan & Worcester LLP, attorneys for plaintiff, The Export-Import Bank of the Republic of China ("Ex-Im Bank"). I submit this Declaration in support of Ex-Im Bank's Opposition to Defendant/Judgment Debtor Grenada's Motion for an Order (1) Declaring Funds Immune from Attachment or (2) Fixing a Charging Lien and Directing Money Judgment for Legal Services Rendered By Freshfields Bruckhaus Deringer; and Cross-Motion for Turnover of Funds to Plaintiff/Judgment Creditor.

2. On November 17, 2011, Freshfields informed me that Grenada's Colorado counsel had demanded payment of $3,500 out of the Grynberg Funds. On November 18, 2011, my law firm informed Freshfields that Ex-Im Bank would not object to Grenada paying $3,500 out of those funds to its Colorado counsel.

3. Attached hereto as Exhibit 1 is Ex-Im Bank's Proposed Order of Execution Under § 1610(c) of the Foreign Sovereign Immunities Act.

4. Attached hereto as Exhibit 2 is a true and accurate copy of excerpts from the Transcript of the August 10, 2011 Conference before the Hon. Andrew J. Peck.

5. Attached hereto as Exhibit 3 is a true and accurate copy of the judgment entered in favor of Grenada and against RSM Production Corporation in the amount of $186,072.81 on January 23, 2012, by the Federal District Court of the Southern District of New York, in <u>Grenada v. RSM Production Corporation</u>, 1:11-cv-06591-JPO.

Signed under the pains and penalties of perjury this 27th day of February 2012.

_____
Paul E. Summit

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE EXPORT-IMPORT BANK OF　　　　　　　:
THE REPUBLIC OF CHINA,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff/Judgment Creditor,　 :　　**06 CV 2469 (HB) (AJP)**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　-against-　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
GRENADA,　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendant/Judgment Debtor. :
------------------------------------------------------------X

**[PROPOSED] ORDER OF EXECUTION
UNDER § 1610(C) OF THE FOREIGN SOVEREIGN IMMUNITIES ACT**

　　　　On March 16, 2007, this Court entered an Amended Judgment in favor of Plaintiff/Judgment Creditor The Export-Import Bank of the Republic of China ("Ex-Im Bank") and against Defendant/Judgment Debtor Grenada ("Grenada") in the amount of $21,586,057.38, plus prejudgment interest, attorneys' fees, and statutory interest.

　　　　Under the Foreign Sovereign Immunities Act ("FSIA"), no execution on property referred to in § 1610 (a) and (b) shall be permitted until the Court has ordered such execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e).

　　　　Upon a finding that a reasonable period of time has elapsed following the entry of judgment, and finding that no notice is required under § 1608(e),

-2-

It is hereby ORDERED, pursuant to § 1610(c) of the Foreign Sovereign Immunities Act, that:

An order of execution shall issue permitting Ex-Im Bank to execute on any and all property in Grenada's possession in the United States, including but not limited to the Grynberg Funds, that is not otherwise immune from execution under the FSIA.

Dated: New York, New York
        March __, 2012

                                                    _____
                                                    Hon. Harold Baer Jr., U.S.D.J.

# Exhibit 2

```
                                                                      1
     18adexpc
                             CONFERENCE
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   THE EXPORT-IMPORT BANK OF THE
 3   REPUBLIC OF CHINA,
 4
 4              Plaintiff/
 5              Judgment Creditor,      New York, N.Y.
 6
 6         v.                           06 Civ. 2469(HB)(AJP)
 7
 7   GRENADA,
 8
 8              Defendant/
 9              Judgment Debtor.
10
10   ------------------------------x
11
11                                      August 10, 2011
12                                      10:09 a.m.
12
13   Before:
13
14                 HON. ANDREW J. PECK,
14
15                                      District Judge
15
16                    APPEARANCES
16
17   SULLIVAN & WORCESTER LLP
17        Attorneys for Plaintiff
18   BY:  PAUL E. SUMMIT
18        ANDREW T. SOLOMON
19
19   FRANKFURT KURNIT KLEIN & SELZ PC
20        Attorneys for Defendant
20   BY:  BRIAN E. MAAS
21        KHIANNA BARTHOLOMEW
22            - also present -
23
23   FRESHFIELDS BRUCKHAUS DERINGER LLP
24   BY:  ELLIOT FRIEDMAN
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

```
                                                                       3
     18adexpc
                              CONFERENCE
 1   because somebody has got to hold the money until those rights
 2   are resolved.  That was important for the Court to know.
 3             First, it is important for me to let the Court know
 4   that that was a complete surprise.  That was not something that
 5   I knew about.  I can explain why Grenada hadn't disclosed it to
 6   me.  I'm not sure that matters at this point.
 7             THE COURT:  It sort of does because while you are the
 8   one whose bar license is at -- you know, you are here in front
 9   of this Court, but it does raise the question of whether
10   Grenada is keeping you informed and is keeping up with its
11   obligations as a judgment debtor, which is all the more reason
12   why some discovery requests may well be appropriate here.
13             Neither of you have submitted to me what the discovery
14   document requests or interrogatories at issue actually are.
15   Hopefully, somebody has a copy of it and we'll get to that.
16             MR. MAAS:  May I take one minute, then, to give you a
17   little bit more of the background that I have learned?  And
18   Mr. Friedman can certainly amplify, if the Court has additional
19   questions.
20             THE COURT:  Yes.
21             MR. MAAS:  As I understand it, Mr. Grynberg has been
22   in litigation with Grenada for several years as a plaintiff
23   suing Grenada.  Grenada's position in these arbitrations was
24   always as a defendant.  They did not have -- I don't believe
25   they had claims against Grynberg.  In each of them -- there
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

```
                                                                  4
        18adexpc
                            CONFERENCE
 1      were, I think, two separate arbitrations.  In both of them
 2      Grenada prevailed at some point in 2010, I believe, and then
 3      applications were made by Grenada to recover their costs and
 4      legal fees.  And they obtained awards from both arbitration
 5      panels at different times for their costs and attorneys' fees,
 6      and that's when Freshfields then came to the Southern District
 7      to confirm the arbitration awards and obtain a judgment.
 8              As I understand it from people I deal with in Grenada,
 9      in their mind, they were defendants.  They got an award of
10      attorneys' fees, which is money that they owed their attorneys,
11      and it did not register.  It was just -- in terms of the
12      overall scheme of what are your assets, what are your
13      liabilities, what do I need to tell my lawyer in the Ex-Im Bank
14      case, it just didn't register for the Attorney General or the
15      Minister of Finance, who are the two primary contacts that I
16      have, that that would be an asset.
17              They have been extremely apologetic to me and want me
18      to express to the Court their apology for them not realizing
19      that that would have been an asset, or at least a potential
20      asset, that should have been disclosed, and there was no
21      intention to deceive.  They have been -- and we can discuss
22      both the history of the disclosures, but as you can see from
23      Grenada's -- from my letter on behalf of Grenada, this is a
24      country that's impoverished, and this was, in a sense, a
25      windfall that was to be used to pay the Freshfields law firm, I
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
```

```
                                                              5
     18adexpc
                          CONFERENCE
 1   presume, and was not thought of in any other way.
 2            And we've now moved very quickly to remedy that
 3   situation.  We've entered into this stipulation.  To the extent
 4   that there are legal issues to be debated over whether or not
 5   this judgment for costs is an asset of Grenada's that Ex-Im
 6   Bank can move against or the judgment is as asset that can be
 7   moved against, that is to be fought another day.  But we have
 8   preserved the asset.  And as I say, certainly my client is
 9   quite apologetic for any perception that has been created that
10   they have been withholding information.
11            There are no other proceedings of this sort.  There is
12   no other judgments that they've obtained.  And as we can
13   discuss further, we're making every effort to be as transparent
14   as possible, given the limitations on resources that Grenada
15   has.
16            THE COURT:  All right.  Let me hear from the movant.
17   Mr. Summit.
18            MR. SUMMIT:  Your Honor, I have absolutely no question
19   as to Mr. Maas' truthfulness when he says he learned of it just
20   the other day.  I have severe questions as to Grenada's good
21   faith in this whole process.  This case did not begin a couple
22   of weeks ago; this case began four years ago, and it has been a
23   sorry spectacle since then of transgression of the discovery
24   process.  And it has involved the court repeatedly in attempts
25   to get Grenada to comply with its obligations, including
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                      6
         18adexpc
                              CONFERENCE
    1    contempt sanctions by Judge Baer at a thousand dollars a day if
    2    they didn't cure within 14 days, including $10,000 in
    3    attorneys' fees that have never been paid, including dozens and
    4    dozens of misrepresentations to us about the state of affairs.
    5              And this has been a spectacle, your Honor, and it only
    6    got more aggravated the other day with these Grynberg
    7    judgments.  At the very time that Grenada was saying there's no
    8    need to update discovery, we had given you everything, there
    9    are no assets in the United States, we're broke, we're
   10    impoverished, during that very same time period Freshfields is
   11    filing in this courthouse judgments.  They have never paid a
   12    dollar -- Grenada has never paid us a dollar on the debt.  It's
   13    never paid a dollar of the $10,000 attorneys' fees.  It's paid
   14    lawyers to arbitrate and to defend itself in this courthouse.
   15    It has obtained judgments that have been undisclosed to us, but
   16    it has never paid us a dollar.
   17              We haven't even gotten yet to the 30(b)(6) spectacle,
   18    which we described in the letter.  I don't want to take up the
   19    Court's time with reiteration of what's in the letter.  But
   20    even today, a year and a half after we served a 30(b)(6)
   21    deposition notice, we can't get a witness who is knowledgeable
   22    on the most important subjects?
   23              Mr. Maas tells us on July 13th that the upcoming
   24    deposition of 30(b)(6) witness number two -- because deposition
   25    witness number one was a farce, with all due respect -- he
                          SOUTHERN DISTRICT REPORTERS, P.C.
                                    (212) 805-0300
```

```
                                                                33
       18adexpc
                              CONFERENCE
 1     produced were the budget books for Grenada I believe 2006
 2     through 2009 or '10, which set forth in painful detail all of
 3     the transactions engaged in by the government, all of its
 4     revenues in/payments out, foreign aid, all of that.  I don't
 5     know what is available now, but certainly that is a source of
 6     information on that both macro and micro level.
 7              Mr. Antoine will testify about -- like I said, he will
 8     be able to testify no material change; yes, material change for
 9     the worse.  That will provide that information.
10              You know, it is not a big secret in the international
11     community that Grenada's, and the rest of the eastern
12     Caribbean, but certainly Grenada's economic position has only
13     deteriorated during the worldwide recession.  And so it has not
14     gone on a spending spree --
15              THE COURT:  However, according to at least plaintiff's
16     letter, it is paying other creditors.
17              MR. MAAS:  What other -- I don't know what that refers
18     to.  It has gotten a judgment against Mr. Grynberg or against
19     the Grynberg entities.
20              THE COURT:  I thought what I read in Mr. Summit's
21     letter was that Grenada had reached agreements with other banks
22     somewhat equivalent to Ex-Im, but, you know, and is paying two
23     cents on the dollar very slowly, whatever it may be.
24              MR. MAAS:  I'm sorry.  Your Honor has not been
25     involved in the case.  But an underlying issue here, Grenada,
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

```
                                                                  34
        18adexpc
                              CONFERENCE
 1      like many other eastern Caribbean countries, went through
 2      economic devastation in the mid part of the previous decade
 3      because of the hurricanes and the like.  Under the auspices of
 4      the International Monetary Fund, Grenada restructured its
 5      public and private debt with all of its creditors, except the
 6      Ex-Im Bank, under which it is making payments under these
 7      restructured terms which eased the burden on Grenada, although
 8      for the most part kept the amount that was due the same.
 9               In those agreements, they have intercreditor
10      obligations which could void those other agreements if it
11      entered into a deal with a creditor that was better than that.
12      We've been trying to engage in settlement discussions, heading
13      towards an agreement with Ex-Im Bank, so that Ex-Im Bank can,
14      too, start collecting on its debt under those same terms.
15               So, no question, as I understand it, Grenada has been
16      meeting its obligations to the international creditor
17      community, public and private, under that deal that was
18      structured I believe in 2007 or maybe it was 2008, and would
19      welcome Ex-Im Bank into that fold, but it can't stop paying
20      those obligations and it can't pay $21 million to Ex-Im Bank
21      tomorrow, or at any point, but it certainly wants to begin
22      repaying this obligation on those same terms.
23               So to the extent that that's what your Honor was
24      referring to, yes.
25               THE COURT:  One can raise the question of why it isn't
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
```

```
                                                                  49
       18adexpc
                              CONFERENCE
 1              MR. MAAS:  Having had my meeting yesterday with a
 2     member of the policy committee on firm receivables, the
 3     receivable from Grenada is substantial.  I have not received
 4     any payment from Grenada for many months.  I have been paid
 5     something over the course of the two years of this
 6     representation.  I hope to -- I candidly hope to receive
 7     something more against the receivable.
 8              You know, your Honor just raised an important point.
 9     Grenada, despite what you are hearing, really does want to
10     be -- participate appropriately in this proceeding.  But it is
11     a sovereign nation.  It needs to take care of its primary
12     obligations.  The $10,000 is, frankly, I think more than -- you
13     know, it was imposed before I got involved in the case on an
14     order from the failure to participate at the initial -- the
15     early stage of discovery.  We moved forward.  We answered
16     interrogatories.  We have litigated over various discovery
17     issues.  This $10,000 was part of the first settlement
18     proposal, but it got lost, in some ways, in the mix.  There
19     have been lots of other things that have been at issue.
20              I haven't pressed it --
21              THE COURT:  How about Mr. Antoine brings a check that
22     won't bounce for 10 grand?
23              MR. MAAS:  The check won't bounce, and I will make it
24     clear to him that that's something the Court has directed them
25     to do.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                  50
        18adexpc
                              CONFERENCE
 1              THE COURT:  Good.
 2              MR. MAAS:  Whether the resources --
 3              THE COURT:  If not, they should bring the largest
 4     check they can towards that and a payment plan for the rest.
 5              MR. MAAS:  I will inform them of the Court's order.
 6              THE COURT:  If not, you know, the next time around --
 7     you know, as I say, there is a limit to what one can do in
 8     post-judgment discovery.  Because they are not paying 21
 9     million, you know, if I said until they pay the 10,000, you
10     know, X accrues per day, it just adds more zeros to the
11     balance.  But to the extent that I am, you know, not just
12     saying all objections to discovery are overruled, etc., I would
13     strongly suggest you give them the message that payment of the
14     10,000, or as much as they can by the time of Mr. Antoine's
15     deposition in two weeks, would serve them in good stead.
16              MR. MAAS:  I will make that known.
17              THE COURT:  All right.  I take it that this clears up
18     the immediate problems.  And, frankly, I am not sure how much
19     Judge Baer wants my involvement to continue or whether this is
20     just a summer thing.  But why don't we leave it that for the
21     moment I will leave the reference open.  We'll see what happens
22     with the Antoine deposition and the Phillip deposition within
23     the next 30 days for Mr. Phillip, and let's do it this way:  By
24     September 15th, assuming that's -- yes, that is a business day,
25     it may be Rosh Hashanah -- no, it is much later.  By
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

# Exhibit 3

Case 1:06-cv-02469-HB   Document 74   Filed 02/27/12   Page 16 of 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



-----------------------------------------------------------x
In the matter of the Application of

GRENADA,

          Arbitration Award Creditor,

For Recognition and Enforcement of an
Arbitration Award

          -against-

RSM PRODUCTION
CORPORATION,

          Arbitration Award Debtor
-----------------------------------------------------------x

**ORDER AND JUDGMENT**

11 CV 6591 (JPO)

On considering the Declaration of Alexander A. Yanos, declared under the penalty of perjury pursuant to 28 U.S.C. § 1746, and the accompanying exhibits thereto, including a certified copy of the final order in Case No. ARB/05/14 (the "Award") issued by an annulment committee duly convened and constituted under the Convention on The Settlement of Investment Disputes Between States and Nationals of Other States, which came into force on October 14, 1966 ("ICSID Convention"), which Award was issued on April 28, 2011; and it appearing that Arbitration Award Creditor, Grenada, is entitled to immediate recognition and enforcement of the pecuniary obligations contained in the Award in accordance with the provisions of Articles 52(4), 53 and 54 of Chapter IV of the ICSID Convention, as implemented by 22 U.S.C. § 1650a;

Now upon the motion of Freshfields Bruckhaus Deringer US LLP, attorneys for Grenada, it is

Case 1:06-cv-02469-HB   Document 74   Filed 02/27/12   Page 18 of 18
Case 1:11-cv-06591-JPO   Document 2   Filed 01/23/12   Page 2 of 2
Case 1:11-mc-00188-P1   Document 1-1   Filed 06/03/11   Page 2 of 2

ORDERED that the pecuniary obligations contained in the Award, in favor of Grenada against Arbitration Award Debtor RSM Production Corporation, be recognized and entered as a judgment by the Clerk of this Court in the same manner and with the same force and effect as if the Award were a final judgment of this Court; and it is further

ORDERED, ADJUDGED, and DECREED that, in accordance with the pecuniary obligations contained in the aforementioned Award, Arbitration Award Creditor Grenada does recover from Arbitration Award Debtor RSM Production Corporation the principal sum of ONE HUNDRED EIGHTY-SIX THOUSAND SEVENTY-TWO and 81/100 DOLLARS ($186,072.81), and that following the provision of notice of this Order and Judgment to the Award Debtor, Grenada may proceed to execute this Judgment.

Dated: Jan. 23, 2012
New York, New York

_____
United States District Judge