UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE EXPORT-IMPORT BANK OF THE  :
REPUBLIC OF CHINA,             :
                               :   06 Civ. 2469 (HB) (AJP)
         Plaintiff/Judgment Creditor,  :
                               :
    -against-                  :
                               :
GRENADA,                       :
                               :
         Defendant/Judgment Debtor.  :
------------------------------------------------------------X

**REPLY IN FURTHER SUPPORT OF DEFENDANT/JUDGMENT DEBTOR GRENADA'S MOTION FOR ORDER (1) DECLARING FUNDS IMMUNE FROM ATTACHMENT, OR (2) FIXING CHARGING LIEN AND DIRECTING MONEY JUDGMENT FOR LEGAL SERVICES RENDERED BY FRESHFIELDS BRUCKHAUS DERINGER AND OPPOSITION TO PLAINTIFF/JUDGMENT CREDITOR THE EXPORT-IMPORT BANK OF THE REPUBLIC OF CHINA'S CROSS-MOTION FOR <u>TURN-OVER OF FUNDS</u>**

Brian E. Maas, Esq.
Khianna N. Bartholomew, Esq.
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue
New York, New York 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175
<u>bmaas@fkks.com</u>
<u>kbartholomew@fkks.com</u>

*Attorneys for Defendant/Judgment Debtor Grenada*

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 3 |
| I. THE FUNDS ARE IMMUNE FROM ATTACHMENT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT | 3 |
| II. IN THE ALTERNATIVE, FRESHFIELDS HAS A VALID CHARGING LIEN AGAINST THE FUNDS | 8 |
| CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro S.A.*,
  875 F.2d 1174 (5th Cir. 1989) .......................................................................................... 7

*Aurelius Capital Partners, LP v. Republic of Argentina*,
  584 F.3d 120 (2d Cir. 2009) ..................................................................................... 3, 4, 5

*Connecticut Bank of Commerce v. Republic of Congo*,
  309 F.3d 240 (5th Cir. 2002) ......................................................................................... 5, 7

*Corigliano v. Catla Constr. Co.*,
  231 F. Supp. 245 (S.D.N.Y. 1964) ................................................................................... 9

*EM Ltd. v. Republic of Argentina*,
  473 F.3d 463 (2d Cir. 2007) ............................................................................................ 5

*EM Ltd. v. The Republic of Argentina*,
  No. 06 CIV. 7792, 2010 WL 2399560 (S.D.N.Y. June 11, 2010) .................................. 4

*In re Manshul Constr. Corp.*,
  225 B.R. 41, 50 (Bankr. S.D.N.Y. 1998) ..................................................................... 9, 10

*Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*,
  No. 10 CIV. 5256 KMW, 2011 WL 4111504 (S.D.N.Y. Sept. 13, 2011) ....................... 3

*Libancell S.A.L. v. The Republic of Lebanon*,
  No. 06 Civ. 2765 (HB), 2006 WL 1321328 (S.D.N.Y. May 16, 2006) ........................... 8

*Liberian E. Timber Corp. v. Gov't of the Republic of Liberia*,
  659 F. Supp. 606 (D.D.C. 1987) ..................................................................................... 6

*Petition of Rosenman & Colin*,
  850 F.2d 57 (2d Cir. 1988) .............................................................................................. 9

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992) ........................................................................................................ 5

*Rosewood Apartments Corp. v. Perpignano*,
  No. 99 Civ. 4226 (NRB), 2005 WL 1084396 (S.D.N.Y. May 5, 2005) ........................ 10

*Walker Int'l Holdings Ltd. v. Republic of Congo,*
  395 F.3d 229 (5th Cir. 2004) ..................................................................................... 6

*Walters v. Indus. and Commercial Bank of China, Ltd.,*
  651 F.3d 280 (2d Cir. 2011).......................................................................................... 4

**State Cases**

*Cohen v. Cohen*
  160 A.D.2d 571 (1st Dep't 1990) .............................................................................. 10

*LMWT Realty Corp. v. Davis Agency,*
  649 N.E.2d 1183 (N.Y. 1995)...................................................................................... 9

**Statutes**

28 U.S.C. § 1330............................................................................................................*passim*
28 U.S.C. § 1602-6011 ..................................................................................................*passim*
28 U.S.C. § 1609..................................................................................................................... 3
28 U.S.C. § 1610(a) ............................................................................................................... 3

**Rules**

N.Y. Dom. Rel. Law. § 237 (McKinney's 2010) ................................................................ 11
New York Judiciary Law § 475 (McKinney's 1997) ................................................. 1, 8, 11

Pursuant to the Court's order dated January 25, 2011, Defendant and Judgment Debtor Grenada respectfully submits this reply in further support of its motion (the "Motion") for an order: (1) declaring funds immune from attachment under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602-1611 ("FSIA"); or, in the alternative, (2) fixing a charging lien pursuant to New York Judiciary Law § 475 (McKinney's 1997) in favor of, and directing money judgment for, Freshfields Bruckhaus Deringer US LLP ("Freshfields") for the legal services that it has provided to Grenada but which remain unpaid. Grenada also hereby opposes the cross-motion of Plaintiff and Judgment Creditor The Export-Import Bank of the Republic of China ("Ex-Im of China") for turnover of funds.[1]

## PRELIMINARY STATEMENT

The outstanding motion and cross-motion can both be fully resolved by answering a single mixed question of fact and law: have the Funds been "used for a commercial activity in the United States" within the meaning of Section 1610(a) of the FSIA? Grenada's opening brief explained why the answer to that question is no and Ex-Im of China's opposition papers do not provide either a legal or factual basis for this court to find otherwise. Specifically, Ex-Im of China had advanced three arguments to meet its burden of proving that the Funds have been so used. All three are contrary to well-settled authority, as follows:

1. Ex-Im of China claims that the funds were *derived from* a commercial activity, namely the abortive grant to RSM of exploration rights over Grenada's natural resources that underlay the arbitration that resulted in the award of attorney's fees to Grenada. This argument has two flaws: first, even if the subject matter of the arbitration involved "commercial activity", none of the activity took place in the United States. Moreover, for FSIA purposes, it does not matter where a sovereign's property comes from, but how it has been used and the Funds have not, in fact, been used at all at this point.

---

[1] Terms not otherwise defined herein have the meanings set forth in Grenada's Memorandum of Law in Support of the Motion (the "Memorandum").

2. Ex-Im of China claims that the Funds lose their immunity from execution because they *will be used* for a commercial activity, namely paying Freshfields' legal fees. As stated above, the possible future use of sovereign property is irrelevant to the FSIA analysis: the property must *have been used*, at the time of execution, for a commercial activity. For that reason, the Second Circuit has held that when the creditor's attempt at attachment or execution occurs before the sovereign has had the opportunity to use the property at all – as in this instance – the commercial activity exception is inapplicable by definition. Moreover, as discussed below, the payment of legal fees to Freshfields for its legal services to Grenada in the underlying arbitration which had no connection to the United States would not be a use of the Funds for a commercial activity in the United States.

3. Finally, Ex-Im of China contends that because Grenada's Colorado counsel was paid from the Funds that counsel's efforts helped bring into existence, the entirety of the Funds have been used for a commercial activity in the United States. However, this contention ignores the fact that Colorado counsel was only retained to secure the immune funds to which Grenada was entitled under the arbitration award so that any payment would not constitute "commercial activity in the United States." Moreover, the applicable case law is clear that a *de minimis* payment from a fund cannot deprive the entire fund of execution immunity. Here, the payment to counsel amounted to one percent of the total fund, well below the threshold held to characterize an entire fund as commercial for FSIA purposes.

Thus, the Funds at issue are immune from execution by Ex-Im of China. However, as shown in the moving papers, even were the funds not immune, Freshfields would have a charging lien against the Funds that has priority over Ex-Im of China's claim. On this issue, Ex-Im of China disputes Freshfields' right to assert a charging lien against the Funds, despite the fact that they result from an attorney's fee award in the arbitration in which Freshfields represented Grenada, because the Fund did not result from Grenada prevailing on an affirmative claim in a litigation. However, as shown below, the assertion of a charging lien against an attorney's fee award falls precisely within the language and logic of Judiciary Law Section 475 and Ex-Im of China cites no authority for the proposition that an attorney's fee award is not the sort of affirmative result that is subject to a charging lien by the attorney's whose fees were awarded. Thus, if the funds are found not to be immune from execution, then Freshfields is entitled to enforce its charging lien against the Funds.

## ARGUMENT

### I.

### THE FUNDS ARE IMMUNE FROM ATTACHMENT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT

Ex-Im fundamentally misunderstands the nature of the FSIA when it contends that Grenada "seeks refuge" in the commercial activity exception. Opposition at 5. That is backwards. The FSIA provides that sovereign property located in the United States, such as the Funds at issue here, is immune from execution. 28 U.S.C. § 1609. Thus, in order for Ex-Im of China to execute on the Funds, it must prove that the commercial activity in the United States exception applies in this case. *See Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, No. 10 CIV. 5256 KMW, 2011 WL 4111504 (S.D.N.Y. Sept. 13, 2011); Memorandum at 6–7.

However, on the most basic level, this effort must fail: the Funds have not been used for any activity because they were immediately frozen by Ex-Im of China. *See* Memorandum at 7–8. *See Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 130 (2d Cir. 2009) ("Section 1610(a) does not say that the property in the United States of a foreign state that '*will* be used' . . . for a commercial activity in the United States is not immune from attachment or execution.") More fully, the Second Circuit explained:

> Thus, the property that is subject to attachment and execution must be "property in the United States of a foreign state" *and* must have been "used for a commercial activity" *at the time* the writ of attachment or execution is issued . . . . This clearly follows from the plain language of section 1610(a). Section 1610(a) does not say that the property in the United States of a foreign state that "*will* be used" or "*could potentially* be used" for a commercial activity in the United States is not immune from attachment or execution. More is required: the property in the United States of a foreign state must be used for a commercial activity in the United States "upon a judgment entered by a court of the United States or of a State." 28 U.S.C. § 1610(a). To conclude otherwise would render meaningless the provisions of §§ 1610(a) and (d), which subject to attachment property of a

3

>foreign state when the property is "used for a commercial activity" *and* when the foreign state "has waived its immunity from attachment."

*Aurelius Capital Partners, LP*, 584 F.3d at 130 (emphasis in original; internal citations omitted); *see also Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 297 (2d Cir. 2011) ("Section 1610(a) states that only sovereign property that is in fact 'used for a commercial activity in the United States' may be subject to execution."); *NML Capital v. Republic of Argentina*, No. 03 CIV. 8845, 2011 U.S. Dist. LEXIS 43753, at *36 (S.D.N.Y. April 22, 2011) ("Section 1610(a) requires not that property 'will be used' or 'could potentially be used' for commercial activity, but that the property 'must be used' for commercial activity . . . .").[2]

Ex-Im of China suggests that *Aurelius* does not govern here as its facts are somehow "unique." *See* Opposition at 6. But *Aurelius* is not unique: it is not uncommon for creditors to attempt to attach funds before a sovereign ever has an opportunity to use them, and other courts have recognized that the commercial activity exception cannot apply when the property has not been used at all. *See, e.g., EM Ltd. v. The Republic of Argentina*, No. 06 CIV. 7792, 2010 WL 2399560 (S.D.N.Y. June 11, 2010) ("[I]t is difficult to see how a sum of money frozen by stipulation and thereby entirely unavailable to defendants for more than four years has been 'used' for any activity at all, commercial or not.").

Ex-Im of China claims that the commercial activity in the United States exception applies because the events that underlay the arbitration related to "a clearly commercial venture: petroleum exploration." Opposition at 7. The most obvious flaw in this argument is that the venture that was the subject of the arbitration was not "commercial activity *in the United States*,"

---

[2] Ex-Im of China also argues that "Grenada has used and/or designated the funds for a commercial purpose in the United States." Opposition at 4. The "designation" concept may be taken from *EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007). In that case, however, the question was whether two governmental decrees had legally designated particular funds to be used only in a certain manner. *See id.* at 474-75.

4

as Section 1610(a) plainly requires. The agreement between Grenada and RSM was made in Grenada, subject to Grenadian law, and concerned potential exploration and development of petroleum in Grenada's territorial waters. Moreover, the granting of exploration rights over natural resources is a sovereign, regulatory activity rather than something a private party could do and is, therefore, not commercial activity. *See, e.g., Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) ("when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA"). Finally, the Funds were not generated by petroleum exploration but constitute an award of fees and costs to compensate Grenada for the cost of an arbitration in which the substantive claims arose under one international treaty (the Grenada-US BIT) and the procedure was provided by another (the ICSID Convention, to which 157 States are party). Even the venue of the hearing – the World Bank building in Washington – is the property of a multistate international organization.[3] *Cf. EM Ltd.*, 473 F.3d at 482-484 (discussing relevance of state's transactions with the other main Bretton Woods institution, the IMF).

As shown above, the Funds would not lose their immunity even if the Funds had come directly from unquestionably commercial activity by Grenada in the United States. The *source* of the property is immaterial; the inquiry is limited to how the sovereign has *used* the property. *See Aurelius Capital Partners, LP*, 584 F.3d at 130; *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 251 (5th Cir. 2002) ("Conversely, even if a foreign state's property has

---

[3] Even were Grenada to use some of the Funds to pay Freshfields for its legal services in defending Grenada in the ICSID case, such a payment would not constitute commercial activity in the United States. The Freshfields services were performed in defense of a sovereign against claims that the sovereign had violated a treaty. The proceedings were conducted under the auspices and on the premises of an international organization with immunity from United States judicial process.

5

been generated by a commercial activity in the United States, that property is not thereby subject to execution or attachment if it is not 'used for' a commercial activity within our borders. … What matters under the statute is not how the Congo made its money, but how it spends it.").

Ex-Im of China's remaining argument is that "a portion of the funds have actually been put to a commercial use *already*, the payment of legal fees" of Grenada's Colorado counsel, Freidel Dykes. Opposition at 7–8 (emphasis in original). Ex-Im of China's argument fails for two independent reasons.

First, the payment to Colorado counsel was solely for his services in securing immune funds to which Grenada was entitled. A sovereign should be entitled to employ legal assistance to assert its rights to an otherwise immune fund without destroying the immunity of the very property that counsel has been hired to protect or secure. Here, Friedel Dykes' sole role was to execute on the Grynberg property in Colorado and arrange for its transfer to this Court. Compensating Friedel Dykes out of the Funds does not constitute commercial activity of the sort that deprives an immune fund of its immunity.

Second, even if the payment to Freidel Dykes were a commercial use of the Funds, that single, *de minimis* payment would not render the entirety of the Funds amenable to execution. The cases are clear that the use to which sovereign property is put must be viewed holistically and in context: exceptional, singular, and/or *de minimis* commercial uses do not trigger the FSIA's commercial activity exception. *See, e.g., Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 236 (5th Cir. 2004) ("In addition, contextually and holistically, minor reimbursements would not reach this standard. In *Af-Cap*, the court found that at least fifty percent of the proceeds have been used for commercial activity. There is no evidence that the reimbursements would be anywhere near fifty percent.") (citation omitted); *Liberian E. Timber Corp. v. Gov't of the Republic of Liberia*, 659 F. Supp. 606, 610 (D.D.C. 1987) ("The Court,

6

however, declines to order that if any portion of a bank account is used for a commercial activity then the entire account loses its immunity. On the contrary, . . . funds used for commercial activities which are 'incidental' or 'auxiliary,' not denoting the essential character of the use of the funds in question, would not cause the entire bank account to lose its mantle of sovereign immunity.") (citations omitted). The amount paid to Freidel Dykes was $3,500, or one percent of the $303,986.69 restrained by Grenada – far less than the "at least fifty percent" referred to in *Walker Int'l Holdings*.

In its effort to fit this situation within the commercial activity in the United States exception, Ex-Im of China asserts that this case "stand[s] on all fours" with two Fifth Circuit cases and an unpublished decision of this court. Opposition at 8. The first case, *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro S.A.*, 875 F.2d 1174 (5th Cir. 1989), held (unremarkably) that a sovereign had used a letter of credit for commercial activity when it posted the letter of credit as security for a commercial endeavor in the United States. *Atwood* does not, therefore, address the situation before this court, where the property has not been used for any activity (the payment to Freidel Dykes aside) and was generated from activity outside the United States. In a subsequent decision, the Fifth Circuit rejected the very argument now raised by Ex-Im of China, explaining that in *Atwood*, "Petrobras put the letter of credit in service of the commercial activity, it 'spent' the letter of credit on that activity. On the record before us, by contrast, the Congo has not put its intangible property in the service of any commercial activity in the United States." *Connecticut Bank of Commerce*, 309 F.3d at 258.

Oddly, Ex-Im of China selected that very decision – *Connecticut Bank of Commerce* – as another of its three supposedly decisive precedents. But that case stated:

> The statute means what it says: property of a foreign sovereign ... may be
> executed against only if it is "used for" a commercial activity. That the property

7

is revenue from or otherwise generated by commercial activity in the United
States does not thereby render the property amenable to execution.

309 F.3d at 254.[4]

Finally, Ex-Im of China cites this Court's decision in *Libancell S.A.L. v. The Republic of Lebanon*, No. 06 Civ. 2765 (HB), 2006 WL 1321328 (S.D.N.Y. May 16, 2006), but it is not clear why. *Libancell* held that a "sovereign debt offering is a commercial activity within the definition of the FSIA." *Id.* at *3. Since the Funds have nothing to do with a sovereign debt offering, the *Libancell* holding is inapposite.

Accordingly, Ex-Im of China's arguments against immunity of the Funds are meritless and must be rejected.

## II.

### IN THE ALTERNATIVE, FRESHFIELDS HAS A VALID CHARGING LIEN AGAINST THE FUNDS

In its Memorandum, Grenada established that, if the Funds were not immune from execution under the FSIA, then Ex-Im of China would still not be entitled to the Funds because Freshfields has a valid charging lien pursuant to Section 475 of the New York Judiciary Law.[5] N.Y. Judiciary Law § 475 (McKinney's 1997). Ex-Im of China's only response is to argue that a

---

[4] Ex-Im of China claims that the Fifth Circuit remanded "to determine if certain tax and license payments to the Congo will be used for a commercial purpose." Opposition at 8. The phrase "*will be used*" is the Plaintiff's own; the Fifth Circuit remanded to determine what the royalty and tax obligations "*are* 'used for'." *Connecticut Bank of Commerce*, 309 F.3d at 259 (emphasis added).

[5] Because the Funds are in fact immune under the FSIA, not only from execution but also from arrest or attachment, Freshfields could not assert a lien against them. The immunity of the Funds is the logically prior issue to be decided on both the motion and the cross-motion. Only if the court concluded that the Funds were not immune could the question of an attorney's lien arise. Obviously, it would be circular for Ex-Im of China to claim that the alleged existence of the lien constituted a commercial use depriving the Funds of immunity, for the lien would not exist unless one assumed the Funds were not immune.

8

charging lien does not arise because Freshfields did not "better" Grenada's position as a result of the Arbitration. Opposition at 9-11. That argument is misconceived.

Indeed, Ex-Im of China's argument could hardly be more directly contrary to the concept of an attorney's lien. According to Ex-Im of China, Freshfields cannot assert an attorney's lien over Funds that (*a*) were created through Freshfields' efforts, and (*b*) were awarded specifically to reimburse Grenada for Freshfields' fees. That result is not only illogical, it also contravenes the clear policy of New York courts in favor of the liberal enforcement of attorneys' liens over funds that attorneys' efforts have helped to create. *See, e.g., LMWT Realty Corp. v. Davis Agency*, 649 N.E.2d 1183, 1185 (N.Y. 1995) ("We agree with the attorneys that without their efforts, there would be no proceeds against which the City could enforce its special tax lien. ... Equitable considerations thus persuade us that the attorney's charging lien should be given priority."); *Corigliano v. Catla Constr. Co.*, 231 F. Supp. 245, 249 (S.D.N.Y. 1964) ("The New York courts have shown great reluctance to permit attorneys whose efforts have created the fund that is the object of controlling claims to be deprived of the fruits of their labors by mere technical and time considerations.").

In its Opposition, Ex-Im of China states that "[t]he underlying principle is that, when an attorney has obtained affirmative recovery for the client, the attorney has 'created the fund out of which he is paid by his efforts.'" Opposition at 9 (quoting *In re Manshul Constr. Corp.*, 225 B.R. 41, 50 (Bankr. S.D.N.Y. 1998)). That is precisely the point. There can be no question that Freshfields "created the fund out of which" it now seeks to be paid. *Id.* The decisions that hold that an attorney's lien cannot lie absent the assertion of a counterclaim deal with the situation – common in domestic litigation but not in international arbitration – where attorney's fees are not available, so that a successful defendant is not awarded any recovery in the litigation. Thus, in *Petition of Rosenman & Colin*, 850 F.2d 57 (2d Cir. 1988), the Second Circuit held that the

attorney's lien – by which the attorney sought to recover almost $400,000 – could only be satisfied from the client's total affirmative recovery, which amounted to $17,545. In rejecting the attorney's argument that the lien should be enforceable against the approximately $780,000 that the attorney *saved* his client by successfully defending the lawsuit, the Second Circuit held:

> Rather, an attorney is limited to a lien on the judgment "in his client's favor." The attorney may collect out of funds or property he obtains on behalf of his client, on the theory that "it is the attorney who has created the fund out of which he is paid by his efforts."

*Id.* at 61 (internal citations omitted). That is precisely the situation presented here: the Funds are the product of a judgment in Grenada's favor, obtained on behalf of Grenada by Freshfields.

Similarly, in *Manshul Constr. Corp.*, the attorney asserting the lien did not generate any affirmative recovery, 225 B.R. at 50, nor did the attorney in *Rosewood Apartments Corp. v. Perpignano*, No. 99 Civ. 4226 (NRB), 2005 WL 1084396 at *4 (S.D.N.Y. May 5, 2005) ("Rosewood's declaratory judgment action could not have resulted in a judgment yielding money or property against which a lien could be attached."). The court in *Rosewood Apartments Corp.* stated it plainly: "The principle underlying an attorney's lien is that the attorney's services have aided in creating the value to which the lien attaches." *Id.* That should be the end of the matter, and Ex-Im of China's arguments rejected.

Indeed, noticeably absent from Ex-Im of China's Opposition is any authority for the proposition that an attorney cannot enforce a lien against an award of attorney's fees. That is understandable, because the opposite is in fact true. In *Cohen v. Cohen*, the New York State Supreme Court, Appellate Division, First Judicial Department, affirmed the granting of an attorney's charging lien over any "counsel fees awarded to plaintiff-respondent or her subsequent counsel in the underlying matrimonial action." 160 A.D.2d 571, 571-2 (1st Dep't 1990). That case concerned a motion for maintenance and support arrears in a matrimonial action. *Id.* It is

10

worth noting that – like the arbitration rules under which the Funds were awarded to Grenada, *see* Memorandum at 4 – the New York Domestic Relations Law gives courts the right to award counsel fees. N.Y. Dom. Rel. Law. § 237 (McKinney's 2010).

The Funds at issue represent an affirmative recovery, created by the efforts of Freshfields, awarded in order to cover, among other things, what the Tribunal found to be Freshfields' reasonable fees for those efforts. It would be absurd if Freshfields were not entitled to them.

## CONCLUSION

Accordingly, Defendant/Judgment Debtor Grenada respectfully asks this Court for an order (1) declaring the Funds immune from attachment under the Foreign Sovereign Immunities Act of 1976, or, in the alternative, (2) fixing a charging lien pursuant to New York Judiciary Law § 475 in favor of, and directing money judgment for, Freshfields Bruckhaus Deringer US LLP in the amount of $281,797.77. Grenada also respectfully asks this Court to deny in full Plaintiff/Judgment Creditor's Cross-Motion.

Dated: New York, New York
       March 19, 2012

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: _____
    Brian E. Maas
    Khianna N. Bartholomew
    488 Madison Avenue
    New York, New York 10022
    Tel.: (212) 980-0120
    Fax: (212) 593-9175
    bmaas@fkks.com
    kbartholomew@fkks.com

*Attorneys for Defendant/Judgment Debtor Grenada*

11