UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE EXPORT-IMPORT BANK OF THE
REPUBLIC OF CHINA,

               Judgment Creditor,

       -against-

GRENADA,

            Judgment Debtor.

06-CV-2469 (HB) (AJP)

# MEMORANDUM OF LAW IN SUPPORT OF
# JOINT MOTION TO VACATE RESTRAINING NOTICES

Brian E. Maas
Khianna N. Bartholomew
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue
New York, New York 10022
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
bmaas@fkks.com
kbartholomew@fkks.com

*Attorneys for Defendant/Judgment Debtor Grenada*

Steven D. Greenblatt
THE LAW OFFICE OF STEVEN D. GREENBLATT
480 Broadway, Suite 328
Saratoga Springs, New York 12866
Tel.:  (518) 824-1254
Fax:  (518) 824-5704
sgreenblatt@sdgesq.com

*Attorney for Interested Third Parties Grenada Airports
Authority, Aviation Services of Grenada Ltd., Grenada
Ports Authority, National Water and Sewage Authority
of Grenada, and Grenada Solid Waste Management
Authority*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS .............................................................................................................................. 2

ARGUMENT ..................................................................................................................... 8

   I.     THE RESTRAINING NOTICES MAY BE VACATED ON MOTION PURSUANT
        TO N.Y.C.P.L.R. § 5240 ............................................................................... 8

      A.    Both the Government of Grenada and the Statutory Corporations Have Standing
          to Move for Vacatur of the Restraining Notices ................................................... 9

      B.    If Necessary, the Statutory Corporations Should be Permitted to Intervene in
          These Proceedings to Seek Vacatur of the Restraining Notices ........................... 9

  II.    THE RESTRAINING NOTICES MUST BE VACATED OR MODIFIED BECAUSE
       THE STATUTORY CORPORATIONS ARE SEPARATE AND INDEPENDENT
       FROM JUDGMENT DEBTOR GRENADA ............................................................. 11

      A.    The Court Should Enforce the Independence of the Statutory Corporations from
          Judgment Debtor Grenada .................................................................................. 12

          1.    The Statutory Corporations are entitled to a presumption of separateness
               from Grenada ......................................................................................... 13

          2.    The Statutory Corporations are not "agents" of Grenada ........................ 14

          3.    Recognizing the separation between Grenada and the Statutory
               Corporations would not work fraud or injustice ...................................... 17

      B.    Grenada Has No Interest in Any Assets or Property Presently Held or to be in
          Future Held by the Restrained Entities ............................................................... 18

 III.    ALTERNATIVELY, EVEN IF THE STATUTORY CORPORATIONS ARE FOUND
       TO BE THE ALTER EGOS OF GRENADA, THEN THE RESTRAINING NOTICES
       ARE IMPROPER RESTRAINTS ON NON-COMMERCIAL PROPERTY
       PURSUANT TO THE FOREIGN SOVEREIGN IMMUNITIES ACT ..................... 19

      A.    Focus of "Commercial Activity" Inquiry is on Whether the Assets at Issue are
          Used for a Commercial or Public Purpose ........................................................... 21

      B.    The Restrained Assets are Used for Public, Non-Commercial Activities and are
          Thus Immune From Attachment or Restraint ...................................................... 21

      C.    The Restrained Assets are Not Used in the United States. .................................. 22

CONCLUSION ................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Bellomo v. Penn. Life Co.*, 488 F. Supp. 744 (S.D.N.Y. 1980) .................................................... 15

*EM Ltd. v. Republic of Argentina*, 2010 U.S. Dist. LEXIS 59527 (S.D.N.Y. 2010).................... 20

*First National City Bank v. Banco Para El Comercio Exterior De Cuba*,
   462 U.S. 611, 103 S. Ct. 2591, 77 L. Ed. 2d 46 (1983)...................................................... passim

*Gabay v. Mostazafan Found. Of Iran*, 968 F. Supp. 895 (S.D.N.Y. 1997) .................................. 14

*Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*,
   713 F. Supp. 2d 267 (S.D.N.Y. 2010) ....................................................................... 12, 13, 15, 18

*Hercaire Int'l Inc. v. Argentina*, 821 F.2d 559 (11th Cir. 1987) ................................................... 18

*Hester Int'l Corp. v. Fed. Republic of Nigeria*, 879 F.2d 170 (5th Cir. 1989) ............................. 15

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*,
   295 F. Supp. 2d 366 (S.D.N.Y. 2003) ........................................................................... 11, 18, 19

*Kalamazoo Spice Extraction Co. v. Provisional Military Gov't of Socialist Ethiopia*,
   616 F. Supp. 660 (W.D. Mich. 1985) .......................................................................................... 16

*Letelier v. Republic of Chile*, 748 F.2d 790 (2d Cir. 1984) ............................................... 1, 12, 13

*Liberian Eastern Timber Corp. v. Liberia*, 659 F. Supp. 606 (D.D.C. 1987) ........................ 21, 22

*Liz Claiborne v. Mademoiselle Knitwear*, 1996 U.S. Dist. LEXIS 8847 (S.D.N.Y. 1996).......... 11

*Louis Berger Group, Inc. v. State Bank of India*, 802 F. Supp. 2d 482 (S.D.N.Y. 2011) ............ 10

*McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346 (D.C. Cir. 1995) .............................. 15

*Minpeco S.A. v. Hunt*, 686 F. Supp. 427 (S.D.N.Y. 1988) .................................................... 14, 15

*Pravin Bankers Assocs., Ltd. V. Banco Popular del Peru*,
   9 F. Supp. 2d 300 (S.D.N.Y. 1998) ............................................................................................ 15

*Sumitomo Shoji New York, Inc. v. Chemical Bank New York Trust Co.*,
   263 N.Y.S.2d 354, 358, 47 Misc. 2d 741 ................................................................................... 19

*Texas Trading v. Federal Republic of Nigeria*, 647 F.2d 300 (2d Cir. 1981) ............................. 21

*Trans Commodities, Inc. v. Kazakstan Trading House, S.A.*,
   1997 U.S. Dist. LEXIS 23906 (S.D.N.Y. 1997).......................................................................... 20

*Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229 (5th Cir. Tex. 2004) ................ 20

**Statutes**

28 U.S.C. §§ 1603(b) ..................................................................................................................... 20

28 U.S.C. § 1603(d) ....................................................................................................................... 21

28 U.S.C. § 1609......................................................................................................................... 19, 20

28 U.S.C. § 1610(a) ....................................................................................................................... 20

28 U.S.C. § 1610(b) ....................................................................................................................... 20

28 U.S.C. § 1610(c) ................................................................................................. 20

N.Y.C.P.L.R. § 5222 ......................................................................................... passim

N.Y.C.P.L.R. § 5240 ........................................................................................... 8, 9

**Other Authorities**
H.R. Rep. No. 1487, 94th Cong. 2d Sess. 30,
   reprinted in 1976 U.S. Code Cong. & Admin. News 6604 .................................... 20

**Rules**
Fed R. Civ. P. 24(b) ............................................................................................ 10

Fed. R. Civ. P. 69(a)(1) .......................................................................................... 8

## PRELIMINARY STATEMENT

Since October 2011, judgment creditor Export-Import Bank of the Republic of China ("EX-IM") has issued multiple restraining notices pursuant to New York Civil Practice Law and Rules ("N.Y.C.P.L.R.") § 5222 in an attempt to enforce a 2007 judgment against the sovereign nation of Grenada. EX-IM has restrained at least five airlines, four cruise lines and one shipping company, each of which is required to pay taxes, fees and other charges in conjunction with their Grenada-related business operations. The payments due from these restrained entities, however, are not due to the government of Grenada; rather, in each instance, the payments are owed to independent corporate entities expressly created, pursuant to Grenadian law, as independent juridical entities entirely separate and apart from the Grenadian government. These "Statutory Corporations" own and are independently responsible for the facilities and services associated with Grenada's air and sea ports, and water, sewage, and waste disposal systems. Each Statutory Corporation relies on receipt of the now-restrained payments as a principal source of revenue used for the day-to-day operation and maintenance of the aforementioned public systems, facilities and services.

Under these circumstances, EX-IM's restraining notices must be modified or vacated. Unambiguous U.S. Supreme Court and Second Circuit precedent compels recognition and enforcement of the distinction between the Statutory Corporations and the government of Grenada. As the Supreme Court held almost thirty years ago, "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *First National City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 626-27, 103 S. Ct. 2591, 2600, 77 L. Ed. 2d 46, 59 (1983) (commonly and hereinafter referred to as the "*Bancec*" case). *See also, Letelier v. Republic of Chile*, 748 F.2d 790 (2d Cir. 1984) (noting that "both *Bancec* and the [FSIA] legislative history caution against too easily

1

overcoming the presumption of separateness").  The Affidavits submitted in support of this motion establish the separateness of each of the Statutory Corporations, and no reasons exist which would justify ignoring their independence.  Consequently, EX-IM's restraints on their property must be vacated (or, at a minimum, modified to expressly exclude such property).

Alternatively, even if their distinctiveness is ignored and the Statutory Corporations are deemed "alter egos" of Grenada, the restraining notices would still be improper violations of Grenada's sovereign immunity.  The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 – 1611 ("FSIA") expressly protects the assets of foreign states from attachment, arrest or execution by a judgment creditor unless the assets at issue are "used for a commercial activity in the United States."  Here, the restrained payments at issue are used in Grenada for the maintenance and provision of essential public facilities and services such as Grenada's sewage, waste and water systems, as well as its air and sea ports, and are thus immune from attachment.  Finally, even if the restrained entities maintain assets in the United States that they used to make the above-described payments to the Statutory Corporations, the payments are not used by Grenada or the Statutory Corporations for a "commercial activity *in the United States*" (emphasis added).  Consequently, EX-IM cannot overcome the FSIA's presumption of sovereign immunity that applies to payments made to the Statutory Corporations, and any restraining notice issued by EX-IM that restrains such payments must be vacated or, at a minimum, modified to expressly exclude such restraints.

**FACTS**

On March 29, 2006, EX-IM filed its Complaint with this Court in which it alleged that Grenada – the sole defendant – was in default of its payment obligations to EX-IM under four loan agreements.  EX-IM's motion for summary judgment was granted in default on February 6,

2

2007.  On March 16, 2007, the Court entered an amended judgment in favor of EX-IM against

Grenada in the amount $24,997,596.84.  Since 2007, EX-IM has engaged in a variety of post-

judgment enforcement efforts.

**EX-IM Issues Restraining Notices**

Beginning in October 2011, pursuant to N.Y.C.P.L.R. § 5222(b), EX-IM served

restraining notices on various entities operating in the State of New York that EX-IM alleged

"may owe a debt to the judgment debtor, Grenada, or [who] may be in possession or in custody

of property in which the judgment debtor has an interest[.]"[1]  As required by § 5222, each such

notice stated that the recipient was "forbidden to make or suffer any sale, assignment, transfer, or

interference with the judgment debtor's property that may be in [their] custody or possession, to

any person other than the sheriff or marshal except upon direction of the sheriff or marshal, or

pursuant to an order of the court, until the judgment is satisfied or vacated[.]"  Greenblatt Aff. at

Ex. A.  The restrained entities include but are not necessarily limited to the following airlines,

cruise lines, and shipping companies:[2]

---

[1] The quoted text is from a restraining notice dated October 6, 2011 which was served by EX-IM on Princess Cruise Lines, Ltd., a copy of which is attached as Exhibit A to the Affidavit of Steven D. Greenblatt dated March 20, 2012 made in Support of the Joint Motion to Vacate Restraining Notices ("Greenblatt Aff.") and filed herewith.

[2] The Restraining Notices served on the Restrained Entities listed in the table, above, (copies of which are attached as Exhibits A through L to the Greenblatt Aff.) are those that the Statutory Corporations and Grenada (together, "Movants") are, at present, aware of.  The grounds for modification or vacatur as stated herein, however, would apply to any Restraining Notice served on any Restrained Entity that owes payments to a Statutory Corporation. Movants, therefore, request that EX-IM confirm that the Restraining Notices attached to the Greenblatt Aff. are the only restraining notices that have been served in these proceedings, or, if not, that it provide Movants with a complete set of restraining notices served in this matter.  Movants seek modification or vacatur of any and all Restraining Notices of which they are not presently aware that similarly attempt to restrain any property or assets of the Statutory Corporations.

| Entity Served | Restraining Notice Date |
|---|---|
| Princess Cruise Lines, Ltd. | 10/6/2011 |
| Virgin Atlantic Airways | 10/11/2011 |
| Delta Air Lines, Inc. | 10/11/2011 |
| Caribbean Airlines Limited | 11/10/2011 |
| Cunard Cruise Line | 11/15/2011 |
| MSC Cruises | 11/15/2011 |
| Disney Cruise Line | 11/15/2011 |
| International Air Transport Association (Garden City, NY) | 12/9/2011 |
| International Air Transport Association (Washington D.C.) | 12/9/2011 |
| BWIA International Airways Limited | 12/15/2011 |
| Mediterranean Shipping Company (USA) Inc. | 12/15/2011 |
| British Airways PLC | 1/18/2012 |

Each of these entities is required to pay levies, fees and other charges to one or more Statutory Corporations, as described below, as a condition of their use of facilities and services in conjunction with their Grenada-related business operations.[3]

As a result of EX-IM's service of the Restraining Notices, many of the Restrained Entities have ceased making the payments they are required to make to the Statutory Corporations in conjunction with their Grenada-related business operations.  *See* Affidavit of Rodney George dated March 16, 2012 ("George Aff.") at ¶ 15 (payments due to Grenada Airports Authority ("GAA") being withheld); Affidavit of Terrance Smith dated March 16, 2012 ("Smith Aff.") at ¶ 5 (same for National Water and Sewage Authority ("NWSA")); Affidavit of Ambrose Phillip dated March 16, 2012 ("Phillip Aff.") at ¶ 7 (same for Grenada Ports Authority ("GPA")); Affidavit of Karen Roden-Layne dated March 16, 2012 ("Roden-Layne Aff.") at ¶ 4 (noting that payments due Grenada Solid Waste Management Authority are collected from airlines and cruise lines by the Grenada Airports Authority and the Grenada Ports Authority, both of which report payments not being made as noted, *supra*); and Affidavit of Leslie Scott

---

[3] Any entity that is required, like the listed entities, to make payments to a Grenadian Statutory Corporation and which was served with a restraining notice by EX-IM is hereinafter referred to as a "Restrained Entity."  Any restraining notice served by EX-IM on a Restrained Entity is hereinafter referred to as a "Restraining Notice."  As noted in footnote 2, *supra*, the Restrained Entities may or may not be limited to the entities listed in the table above.

dated March 16, 2012 ("Scott Aff.") at ¶ 9 (airlines are withholding payments from Aviation

Services of Grenada, Ltd.).[4]  To date, the restrained entities have continued to be allowed to avail

themselves of the facilities and services provided by the Statutory Corporations, creating

substantial financial difficulties for the Statutory Corporations.  Any restraint of these payments

creates great hardship for the Statutory Corporations, each of which depends on these revenues

to finance their operations.  *See*, George Aff. at ¶ 7 (GAA has pledged most of its right to receive

payments from airlines as part of a bond issue used to finance airport construction and

renovations);[5] Smith Aff. at ¶ 9 (Water Levies paid by cruise lines are a significant source of

NWSA revenue); Phillip Aff. at ¶¶ 11, 12 (fees paid by cruise lines are significant source of GPA

revenue); Roden-Layne Aff. at ¶¶ 4,9 (Environmental Levies collected from airlines and cruise

lines are a significant source of operating revenue for GSWMA); and Scott Aff. at ¶ 10

(payments from airlines are ASG's sole source of income).

**The Statutory Corporations**

Like other sovereign nations, Grenada has enacted legislation creating a number of

independent corporate entities in which it has vested responsibility for the management and

operation of certain traditional governmental functions.  Of these entities, those at issue with

respect to the present Motion (i.e., those affected by EX-IM's Restraining Notices) are the

Grenada Airports Authority ("GAA"), the National Water and Sewage Authority ("NWSA"), the

Solid Waste Management Authority ("GSWMA"), the Grenada Ports Authority ("GPA"), and

---

[4] Copies of these Affidavits are attached as Exhibits M – Q to the Greenblatt Aff.

[5] Under the terms of the pledge, these payments are not even made to the GAA anymore, but rather are sent directly to the trustee for use in servicing the GAA's obligations under the bond issue.  *See* George Aff. at ¶ 7.

Aviation Services of Grenada Ltd. ("ASG"), a wholly owned subsidiary of the GAA.[6]

Each of the Statutory Corporations is an independent juridical entity separate and apart from the government of Grenada.  *See* Affidavit of Dickon Mitchell dated March 15, 2012 ("Mitchell Aff.")[7] at ¶ 7; George Aff. at ¶¶ 11-12 (GAA); Smith Aff. at ¶¶ 6 – 7 (NWSA); Phillip Aff. at ¶ 8 (GPA); Roden-Layne Aff. at ¶¶ 3 – 4 (GSWMA); and Scott Aff. at ¶ 2.  Each Statutory Corporation is established as a corporate body with perpetual succession, and the abilities to sue and be sued, to acquire property, to collect revenues, and to borrow and lend monies.  *See* Mitchell Aff. at ¶ 7.  Responsibility for developing and administering the policies and affairs of each entity is given in each case to a board of individuals, referred to in the enabling legislation of the particular entity as either "members" or directors.  *See id.*  Each board is vested with the typical powers of a corporate board, including the ability to hire, fire and set compensation for executives and staff, and the responsibility for determining necessary services and facilities and then implementing policies and procedures to develop, operate and maintain such services and facilities.  *See id.*

The involvement of the government of Grenada in the affairs of each Statutory Corporation is minimal, and is largely a high-level oversight role with respect to general policy and macro-level finance matters.  *See* Mitchell Aff. at ¶ 8; George Aff. at ¶¶ 11-12 (GAA);

---

[6] The GAA incorporated ASG as an independent, private sector, corporation under the Companies Act of 1994.  *See* Scott Aff. at ¶ 2.  ASG is a wholly owned subsidiary of the GAA.  *See id.*  ASG provides, coordinates, and collects fees in conjunction with certain services typically provided to airplanes once they are on the ground at an airport, including gate-push back, taxi assistance, cleaning, re-stocking, and refueling.  *See id.* at ¶3.  ASG is managed by a board of directors who are elected by its shareholders.  *See id.* at ¶ 5.  Directors have the typical powers and protections accorded to the directors of any other corporate entity including the power to borrow money upon the credit of ASG, the power to vote at board meetings with respect to issues affecting the company, the power to appoint officers of the company, and limited liability for acts taken in the scope of their duties as directors.  *See id.*  ASG's revenues come entirely from the fees and charges it collects from airlines and other entities in exchange for ASG's provision of handling services at the airports of Grenada.  *Id.* at ¶ 10.

[7] Copies of the enabling statutes for the GAA, the NWSA, the GSWMA and the GPA are attached to the Mitchell Aff. as Exhibits A – D.  The by-laws for ASG are attached as Exhibit A to the Scott Aff.

Smith Aff. at ¶¶ 6 – 7 (NWSA); Phillip Aff. at ¶ 9 (GPA); Roden-Layne Aff. at ¶¶ 3 – 4 (GSWMA); and Scott Aff. at ¶ 2.  As noted above, each Statutory Corporation's board is empowered to independently take all actions necessary to effectuate its mission.  Each entity is also specifically authorized to appoint a "chief executive officer" and such other executives as its board deems necessary, and it is to these managers that exercise day-to-day control over each entity.  *See* Mitchell Aff. at ¶ 8.  Relevant government Ministers typically appoint each entity's board members, but following such appointments, rarely if ever have any involvement in the day-to-day operations of any of the Statutory Corporations, which is attended to in each case by each entity's executives and managers.  *See id.*  Ministers, for example, are permitted to offer policy guidance to each Statutory Corporation, but each Statutory Corporation's board and executives are empowered to take all such actions as they in their own judgment determine will best effectuate their respective missions. *See id.*  Thus, although certain actions of the Statutory Corporations require the appropriate government Minister's approval, the power to take those actions in the first instance rests with each entity's board and executive managers.  *See id.*

Each Statutory Corporation is also financially independent of the government of Grenada and acts and collects revenue for its own financial benefit.  Each entity has its own independent revenue stream in the form of levies, fees and charges which it is empowered to collect and use for its operations and expenses.  *See* Mitchell Aff at ¶ 9.  Each Statutory Corporation also has the power to borrow and invest funds for its own use.  *See id.*  With respect to all of these activities, the government is involved, again, if at all, only in an oversight capacity.  *See id.*  *See also* George Aff. at ¶ 12 (GAA);  Smith Aff. at ¶ 6 (NWSA); Phillip Aff. at ¶ 9 (GPA); Roden-Layne Aff. at ¶ 3 (GSWMA); and Scott Aff. at ¶ 6.

In the case of each Statutory Corporation, the fees and charges they collect are used to fund their operations. *See* George Aff. at ¶ 14 (GAA); Smith Aff. at ¶ 9 (NWSA); Phillip Aff. at ¶ 11 (GPA); Roden-Layne Aff. at ¶ 8 (GSWMA); and Scott Aff. at ¶ 10. No fees or other charges are collected directly by the government of Grenada from any entity with respect to any facility or service under the control or management of a Statutory Corporation. *See* George Aff. at ¶ 10 (GAA); Smith Aff. at ¶ 5 (NWSA); Phillip Aff. at ¶ 7 (GPA); Roden-Layne Aff. at ¶ 4 (GSWMA); and Scott Aff. at ¶ 9. Each of the Statutory Corporations relies on these fees and charges as a significant source of its operating revenue. *See* George Aff. at ¶ 15 (GAA); Smith Aff. at ¶ 9 (NWSA); Phillip Aff. at ¶¶ 11-12 (GPA); Roden-Layne Aff. at ¶¶ 4, 9 (GSWMA); and Scott Aff. at ¶ 10. Continued restraint of these funds will thus, without justification, severely hamper their ability to operate and maintain the essential public services and facilities that have been placed in their charge. *See id.*

## ARGUMENT

### I.   THE RESTRAINING NOTICES MAY BE VACATED ON MOTION PURSUANT TO N.Y.C.P.L.R. § 5240

Pursuant to Fed. R. Civ. P. 69(a)(1), enforcement proceedings concerning money judgments are generally to be conducted in "accord with the procedure of the state where the court is located[.]" Here, EX-IM has, accordingly, invoked New York State enforcement procedures in aid of its attempts to enforce its judgment against the Government of Grenada, to wit, the use of restraining notices issued pursuant to N.Y.C.P.L.R. § 5222. In accord with New York State procedures governing judgment enforcement, such restraining notices are subject to challenge and may be vacated or modified upon an appropriate motion made by "any interested party[.]" *See* N.Y.C.P.L.R. § 5240.

**A.      Both the Government of Grenada and the Statutory Corporations Have Standing to Move for Vacatur of the Restraining Notices**

As a party to the underlying action, Grenada obviously has standing to make this Joint Motion.  The non-party Statutory Corporations also have standing, pursuant to N.Y.C.P.L.R § 5240, to move to vacate the Restraining Notices.  *See LNC Invs., Inc. v. Republic of Nicaragua*, 2000 U.S. Dist. LEXIS 7814 (S.D.N.Y. 2000) (motion to vacate restraining notices made, pursuant to § 5240, jointly by judgment debtor and restrained entities as "interested third parties").   Here, both the Government of Grenada and the Statutory Corporations are clearly interested parties with respect to EX-IM's Restraining Notices.  Each of the Restraining Notices seeks to restrain – and in many cases has successfully restrained – funds which otherwise would be (or would have been) paid from the Restrained Entities to one or more Statutory Corporations. These funds are required by each of the Statutory Corporations for the operation and maintenance of essential aspects of Grenada's public infrastructure, which the Statutory Corporations are responsible for.  The Restraining Notices, if left in place, will thus have an exceedingly negative impact on both the Statutory Corporations and their ability to operate and maintain essential Grenadian public services.  It is, therefore, indisputable that both the Statutory Corporations and Grenada have the requisite interest to move for vactur or modification of the Restraining Notices under N.Y.C.P.L.R. § 5240.

**B.      If Necessary, the Statutory Corporations Should be Permitted to Intervene in These Proceedings to Seek Vacatur of the Restraining Notices**

As noted, this Court has permitted non-parties to move for vacatur of restraining notices under N.Y.C.P.L.R. § 5240 in the past.  In the event, however, that the Court deems such a motion procedurally insufficient, the Statutory Corporations should be granted permissive

9

intervenor status in these post-judgment enforcement proceedings for the limited purpose of making this Joint Motion.

Pursuant to Fed R. Civ. P. 24(b), the Court may, in its discretion, "permit anyone to intervene . . . who has a claim or defense that shares with the main action a common question of law or fact."  The Joint Motion proposes to challenge EX-IM's right to reach the property of the Statutory Corporations in enforcement of its judgment against Grenada.  The Statutory Corporations thus clearly satisfy the threshold requirement for permissive intervention, namely, that they possess a "claim or defense" that shares a question of law or fact with the main action.

The Statutory Corporations also satisfy all other considerations that relevant precedent in this Circuit holds the Court should consider in weighing whether or not to grant a request for permissive intervention.  With the Restraining Notices having only been recently issued, a request for intervenor status would be timely made and would cause neither delay nor prejudice of any kind in these proceedings.  *See Louis Berger Group, Inc. v. State Bank of India*, 802 F. Supp. 2d 482 (S.D.N.Y. 2011) (noting application for permissive intervention must be timely and the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights").  On the contrary, as described below, EX-IM is already required by the state laws governing its use of restraining notices and by the Foreign Sovereign Immunities Act ("FSIA") to address the issues the Statutory Corporations seek to raise in the accompanying motion.  *See*, *supra*, footnote 7 (party seeking to restrain property of a separate entity alleged to be the alter-ego of judgment debtor must first establish alter-ego relationship *prior* to issuing restraining notices) and footnote 11 (FSIA requires judgment creditor seeking attachment of assets in enforcement proceeding involving sovereign entity to obtain court order expressly permitting attachment of the assets in question).

Intervention by the Statutory Corporations will also promote factual development and resolution of the key legal issues in this matter. *See Liz Claiborne v. Mademoiselle Knitwear*, 1996 U.S. Dist. LEXIS 8847, 11 (S.D.N.Y. 1996) ("A further consideration is whether the intervention will a significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal question presented."). As demonstrated by the Affidavits submitted in support of the proposed Motion to Vacate, all facts and evidence necessary to assess the validity of EX-IM's restraining notices are known by or in the possession of the officers and directors of the Statutory Corporations.

Finally, permitting intervention is the only way to allow for a just and equitable adjudication of this matter. *See Liz Claiborne*, 1996 U.S. Dist. LEXIS 8847, 11 (court should consider whether intervention would contribute to the "just and equitable adjudication of the legal question presented"). EX-IM is seeking to restrain property the Statutory Corporations contend is their own. They should be allowed as a matter of equity to represent their own asserted interests in protecting such property.

## II.    THE RESTRAINING NOTICES MUST BE VACATED OR MODIFIED BECAUSE THE STATUTORY CORPORATIONS ARE SEPARATE AND INDEPENDENT FROM JUDGMENT DEBTOR GRENADA

Restraining notices issued pursuant to N.Y.C.P.L.R. § 5222, like those served on the Restrained Entities by EX-IM, "are effective against assets in which the judgment debtor has an 'interest,' and they 'only reach property and debts with such a connection to the judgment debtor." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*, 295 F. Supp. 2d 366, 391 (S.D.N.Y. 2003). Here, the government of Grenada, which is the only judgment debtor, lacks such a connection to the payments due from the Restrained Entities only to the independent Statutory Corporations, not to the government of Grenada and the Restraining

11

Notices must, therefore, be vacated or, at a minimum, modified to exclude any such payments (or other property of the Statutory Corporations).

A.    **The Court Should Enforce the Independence of the Statutory Corporations from Judgment Debtor Grenada**

In *First National City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 626-27, 103 S. Ct. 2591, 2600, 77 L. Ed. 2d 46, 59 (1983) (O'Connor, J.) (commonly and hereinafter referred to as "*Bancec*"), the United States Supreme Court held that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." This presumption of separateness is not easily rebuttable because, as the Supreme Court noted, "[f]reely ignoring the separate status of government instrumentalities would result in substantial uncertainty . . . [and] [a]s a result, the efforts of sovereign nations to structure their governmental activities in a manner deemed necessary to promote economic development and efficient administration would surely be frustrated." *Id.* at 626. *See also*, *Letelier v. Republic of Chile*, 748 F.2d 790 (2d Cir. 1984) (noting that "both Bancec and the [FSIA] legislative history caution against too easily overcoming the presumption of separateness"). Accordingly, courts should only disturb the presumption that government instrumentalities are independent of their sovereigns upon proof that "(1) 'a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created,' or (2) when recognition of the separate corporate form 'would work fraud or injustice.'" *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 713 F. Supp. 2d 267 (S.D.N.Y. 2010) (*quoting Bancec*, 462 U.S. at 629). The burden of proving one of these two exceptions to the

rule of corporate separateness is on the party seeking to "pierce the veil."  *See id.* at 274 (*citing*

*Letelier*, 748 F.2d at 795).[8]

> **1.    The Statutory Corporations are entitled to a presumption of separateness from Grenada**

In *Bancec*, the Court described the "typical government instrumentality" to which the

presumption of separateness applies:

> A typical government instrumentality, if one can be said to exist, is created by an enabling statute that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law.   The instrumentality is typically established as a separate juridical entity, with the powers to hold and sell property and to sue and be sued.  Except for appropriations to provide capital or to cover losses, the instrumentality is primarily responsible for its own finances.   The instrumentality is run as a distinct economic enterprise; often it is not subject to the same budgetary and personnel requirements with which government agencies must comply."

> *Bancec*, *supra*, 462 U.S. at 624.

The Statutory Corporations are each similar in form, function and genesis to this

"typical government instrumentality." Each, for example, was "created by an enabling statute

that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed

by a board selected by the government in a manner consistent with the enabling law."  *Bancec*,

462 U.S. at 624.  *See also* Mitchell Aff. at ¶ 7.  Each of the Statutory Corporations is also a

"separate juridical entity, with the powers to hold and sell property and to sue and be sued."

---

[8] EX-IM has, up to this point, failed to meet this burden since it simply issued the Restraining Notices in an apparent assumption that the assets of the independent Statutory Corporations could be used to satisfy its judgment against Grenada.  EX-IM's failure to precede issuance of the Restraining Notices with an adjudication of the Statutory Corporations' potential alter ego liability is an independent reason for immediately vacating the Restraining Notices. *See JSC Foreign Econ. Ass'n Technostroyexport*, 295 F. Supp. 2d at 392 – 93 (modifying § 5222 restraining notices to exclude property of individuals alleged to be alter egos of judgment debtor because the judgment creditor had not first "prove[n] . . . alter ego liability . . . as part of a judgment enforcement proceeding").   The Court reached this conclusion after noting that § 5222 restraining notices can only reach property in which the judgment debtor has an "interest," and absent proof that the assets of another are actually those of the judgment debtor, it could not be said that the judgment debtor had the requisite interest in the assets of its alleged alter egos.  *Id.* at 391 – 392.

*Bancec*, 462 U.S. at 624.  *See also* Mitchell Aff. at ¶ 7.  Apart from government appropriations to provide capital or cover losses or defaults, each Statutory Corporation is also "primarily responsible for its own finances."  *Bancec*, 462 U.S. at 624.  *See also* Mitchell Aff. at ¶ 9. Finally, the Statutory Corporations are "run as a distinct economic enterprise[s]" with separate budgets and personnel, and each possess independent powers to internally hire and fire staff. *Bancec*, 462 U.S. at 624.  *See also* Mitchell Aff. at ¶¶ 7, 8.

The Statutory Corporations should, therefore, be presumed independent from judgment debtor Grenada.  As shown below, EX-IM cannot overcome this presumption as the evidence shows neither a principal-agent relationship between Grenada and the Statutory Corporations, nor that recognition of the Statutory Corporations' separate juridical existences "would work fraud or injustice." *See Bancec*, supra. 462 U.S. at 629.  Consequently, the Restraining Notices must be vacated or, at a minimum, modified to expressly exclude any assets or property of the Statutory Corporations.

### 2.      The Statutory Corporations are not "agents" of Grenada

Government instrumentalities are only deemed "agents," in the sense of being "alter egos" of their creator governments, where the government is shown "to exert day-to-day control over the instrumentalit[ies'] operations." *Minpeco S.A. v. Hunt*, 686 F. Supp. 427, 435 (S.D.N.Y. 1988).  *See also Gabay v. Mostazafan Found. Of Iran*, 968 F. Supp. 895, 899 (S.D.N.Y. 1997) ("pivotal issue" in assessing existence of alter-ego relationship between government and instrumentality is whether government exercised "control over the [instrumentality's] day-to-day activities").  Absent such a finding of day-to-day control over an instrumentality's operations, *Bancec's* presumption of separateness will not be disregarded "even though an entity or instrumentality is wholly-owned by a foreign state[.]" *Pravin Bankers Assocs., Ltd. V. Banco*

14

*Popular del Peru*, 9 F. Supp. 2d 300, 306 (S.D.N.Y. 1998). *See also Minpeco S.A.*, 686 F. Supp. at 435 ("Clearly, any sole shareholder has a strong legitimate interest in the major decisions of a wholly-owned corporation. For the purposes of establishing an alter ego relationship the more significant question is whether the government exercised day-to-day control over the instrumentality's operations."); *Bellomo v. Penn. Life Co.*, 488 F. Supp. 744, 745 (S.D.N.Y. 1980) ("Control through 100% stock ownership does not does not in itself constitute a subsidiary the alter ego of the parent. Only day to day control by the parent so complete that the subsidiary is, in fact, merely a department of the parent will constitute the requisite control.").

The exercise of control necessary to transform a government instrumentality into the government's agent or alter-ego must be something well beyond government oversight of the instrumentalities operations, or "control" via its power to appoint the instrumentality's board of directors. *See e.g.*, *Gen. Star Nat'l Ins. Co.*, 713 F. Supp. 2d at 280 – 282. *See also Hester Int'l Corp. v. Fed. Republic of Nigeria*, 879 F.2d 170, 181 (5th Cir. 1989) (evidence that government "may have had a general supervisory role over the [corporation] do[es] not demonstrate that the Federal Government was involved in the day-to-day management" of the corporation). Rather, courts require extreme interference with the instrumentality's most prosaic operations before they will disregard its separate legal identity. For example, in *McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346 (D.C. Cir. 1995), the D.C. Circuit affirmed a lower court finding of an alter-ego relationship between an Iranian corporation and the Iranian government where the government-appointed board of directors caused the ostensibly separate corporation to "disregard its commercial mission and its duties" to its shareholders. The Court found that "Routine business decisions, such as declaring and paying dividends . . . and honoring contractual commitments, were dictated by Iran." *See also*, *Kalamazoo Spice Extraction Co. v. Provisional*

*Military Gov't of Socialist Ethiopia*, 616 F. Supp. 660, 666 (W.D. Mich. 1985) (corporation found to be government agent where government required all checks in excess of $25,000 be signed by a government director and that all shipments exceeding $13,000 be approved by the government).

As mandated by the enabling legislation, the government of Grenada's involvement with the operations of the Statutory Corporations is limited to powers of appointment, approval and oversight, which do not begin to approach the level of involvement necessary for an alter ego finding.  Day-to-day operational control of each Statutory Corporation is vested in and exercised by the Statutory Corporations and their executives, who operate largely without interference from the government.  *See* Mitchell Aff. at ¶ 8; George Aff. at ¶¶ 11 - 12 (GAA);  Smith Aff. at ¶ 7 (NWSA); Phillip Aff. at ¶¶ 8 – 9 (GPA); Roden-Layne Aff. at ¶ 3 (GSWMA); and Scott Aff. at ¶¶ 5 – 6.

The Government's powers of appointment, approval and oversight are nothing more than those powers typically exercised by parents over subsidiaries, or majority shareholders over their corporations, and thus do not permit a determination that the Statutory Corporations are agents of the government.  *See also* Mitchell Aff. at ¶¶ 10 - 11 (under Grenadian law, "[t]he Statutory Body is still not regarded as being the Minister's agent any more than a company is an agent of the shareholders.  In the eyes of the law, the Statutory Body is its own master, it is not the Crown, and has none of the immunities and privileges of the Crown.  It is a public authority but it is not a Government Department.") (*quoting Tamlin v. Hannaford* [1949] 2 All ER 327, 328  - 29).

16

### 3. Recognizing the separation between Grenada and the Statutory Corporations would not work fraud or injustice

The "fraud or injustice" exception to *Bancec* is reserved for those cases where, as in *Bancec*, a government attempts to unjustly misuse the corporate form of its instrumentality to achieve goals it otherwise could not. *See Bancec*, 462 U.S. at 632 ("We decline to adhere blindly to the corporate form where doing so would cause . . . an injustice."). In *Bancec*, the Court refused to recognize the separation between the Cuban government and a government-created banking corporation. After dissolving and appropriating the assets of the corporation, Cuba sought, as successor in interest, to assert a claim held by the defunct banking corporation against Citibank for monies owed on a letter of credit. Cuba then also attempted to defend against Citibank's asserted right of set-off (rooted in the Cuban government's illegal expropriation of property during the Cuban revolution) by relying upon the separation between the government and the former corporation and invoking sovereign immunity as a defense to Citibank's claim. *Id.* The Court held that Cuba's strategy was an abuse of the corporate form, and that such abuse justified disregarding the presumption of separateness ordinarily accorded to government instrumentalities. *See id.* ("Giving effect to *Bancec's* separate juridical status in these circumstances . . . would permit  . . . the Government of the Republic of Cuba, to obtain relief in our courts that it could not obtain in its own right without waiving its sovereign immunity and answering for the seizure of Citibank's assets[.]").

By contrast, neither Grenada nor the Statutory Corporations have attempted to use their separate juridical statuses to any improper end. Unlike in *Bancec*, the separate corporate existences of the Statutory Corporations are not being used for any nefarious purpose, such as an attempted end-run around the Foreign Sovereign Immunities Act. In fact, although several of the Statutory Corporations were already in existence at the time of the first EX-IM loan to Grenada,

and all had been created by the time of the final loan, none of the Statutory Corporations were counterparties to any of the loans made by EX-IM to Grenada, nor were any of them involved in any way with the servicing of these loans or with the payment defaults alleged by EX-IM in its action against Grenada.  *See* George Aff. at ¶ 13 (GAA);  Smith Aff. at ¶ 8 (NWSA); Phillip Aff. at ¶ 10 (GPA); Roden-Layne Aff. at ¶ 7 (GSWMA); and Scott Aff. at ¶ 8.[9]

This Court and others have expressly held that a government instrumentality's "lack of involvement in the underlying" government default "militates against piercing the corporate veil."  *Gen. Star Nat'l Ins. Co.*, 713 F. Supp. 2d at 283 – 84 (*citing Hercaire Int'l Inc. v. Argentina*, 821 F.2d 559, 561 (11th Cir. 1987) (holding that it would be "manifestly unfair to subject [the airline's] assets to" attachment where the airline "had no connection whatsoever with the underlying transaction which gives rise to Argentina's liability")).  Thus, far from working fraud or injustice, recognition of the separateness between the government of Grenada and the Statutory Corporations would in fact promote exactly the opposite.

> **B.    Grenada Has No Interest in Any Assets or Property Presently Held or to be in Future Held by the Restrained Entities**

The Restraining Notices should be vacated (rather than modified) because the Restrained Entities are not now nor will they ever be in possession of property in which Grenada has or will have any interest sufficient to support a § 5222 restraining notice.  As this court has held, "if third parties 'do not have property or debts in which the judgment debtor has an interest, the restraining notices are not effective.'"  *JSC Foreign Econ. Ass'n Technostroyexport*, 295 F. Supp. 2d at 391.  The requisite "interest" must be a "direct interest in the property itself which, while it may require a court determination, is leviable and not an indirect interest in the proceeds

---

[9] Nor are any of the EX-IM loans to Grenada collateralized by the revenue streams generated by the Statutory Corporations, further illustrating the separation between the Statutory Corporations and Grenada.

of the property." *Id.* (*citing Sumitomo Shoji New York, Inc. v. Chemical Bank New York Trust Co.*, 263 N.Y.S.2d 354, 358, 47 Misc. 2d 741 (N.Y. Sup. Ct. 1965)) (internal quotation marks omitted).

EX-IM cannot demonstrate that Grenada has any such interest in any property held or to be held by the Restrained Entities, which alone is a sufficient basis for the Court to vacate the Restraining Notices. *See infra*, footnote 8.  Nor will EX-IM be able to make such a showing in the future.  While each of the Restrained Entities is obligated to make a variety of payments in conjunction with their Grenada-related operations, all of these payments are due and owing to one or more Statutory Corporations or their agents, not to the government of Grenada or any of its agents, departments or ministries.  *See* George Aff. at ¶ 10 (GAA);  Smith Aff. at ¶ 5 (NWSA); Phillip Aff. at ¶ 7 (GPA); Roden-Layne Aff. at ¶ 6 (GSWMA); and Scott Aff. at ¶ 9. Thus, to the extent that the Statutory Corporations are independent juridical entities from the government of Grenada, the Restrained Entities are not now nor will they ever be in possession of any property in which Grenada possesses a restrainable interest.

## III.   ALTERNATIVELY, EVEN IF THE STATUTORY CORPORATIONS ARE FOUND TO BE THE ALTER EGOS OF GRENADA, THEN THE RESTRAINING NOTICES ARE IMPROPER RESTRAINTS ON NON-COMMERCIAL PROPERTY PURSUANT TO THE FOREIGN SOVEREIGN IMMUNITIES ACT

Under the FSIA, "the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter."  28 U.S.C. § 1609.  Pursuant to FSIA § 1610,[10] three conditions must be satisfied in order to overcome the general immunity from attachment or restraint accorded to a foreign state's assets under § 1609:  (1) the property is "in the United States;" (2) the foreign state has

---

[10] Section 1610 is the only exception to immunity relevant to the present case.  Section 1611 pertains only to the assets of or held by central banks, none of which are at issue with respect to the present Motion.

"waived its immunity from attachment in aid of execution;" and (3) the property at issue is "used for a commercial activity in the United States."  28 U.S.C. § 1610(a).  If the Statutory Corporations are adjudged to be the alter egos of Grenada, these same conditions would need to be met with respect to EX-IM's attempt to reach their assets through the Restraining Notices.[11] *See EM Ltd. v. Republic of Argentina*, 2010 U.S. Dist. LEXIS 59527, * 11 (S.D.N.Y. 2010) (prior determination that central bank was alter ego of foreign state permitted attachment of bank property only if permitted by standards applicable to foreign state under FSIA § 1610(a)).  *See also Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 237 (5th Cir. Tex. 2004) (referring to FSIA §§ 1609 and 1610(a) and noting, "[i]f SNPC is the ROC [Republic of Congo]'s alter ego, it would have to undergo the same immunity analysis as the ROC").[12]

Here, an alter ego determination will not save EX-IM's Restraining Notices from vacatur or modification because, as discussed below, the Restrained Assets are not "used for a commercial activity in the United States," and are thus immune from attachment.  *See LNC Invs.,*

---

[11] ASG is a wholly-owned subsidiary of the GAA.  Should the court determine that alter ego status applies only to GAA without including ASG, ASG reserves the right to argue in subsequent briefing that it, too, is entitled to protections under the FSIA as an "agency or instrumentality" of a foreign state, and that such protections would also compel vacatur of the Restraining Notices affecting it.  *See* 28 U.S.C. §§ 1603(b) (defining "agency or instrumentality" of a foreign state) and 1610(b) and (c) (applicable exception and procedural requirements for moving against assets of agencies or instrumentalities of a foreign state).

[12] Under any circumstances, the Restraining Notices were improperly issued by EX-IM without according Grenada the procedural protections it, as a sovereign nation, is entitled to under the FSIA with respect to judgment enforcement efforts.  Pursuant to § 1610(c) "[n]o attachment [of] or execution [on the property of a foreign state or its agencies or instrumentalities] . . . shall be permitted until the court has ordered such attachment and execution[.]"  *See also Trans Commodities, Inc. v. Kazakstan Trading House, S.A.*, 1997 U.S. Dist. LEXIS 23906, *7 (S.D.N.Y. 1997) (vacating N.Y.C.P.L.R. § 5222 restraining notices where judgment creditor lacked order permitting restraint of particular assets at issue).  This rule holds true even when the local laws on which the attempted enforcement is predicated would permit enforcement without such a specific endorsement from the Court.  *See id.* (noting that "local laws permitting attachment by applying to court clerk or local sheriff do not afford sufficient protection to a foreign state") (*citing* H.R. Rep. No. 1487, 94th Cong. 2d Sess. 30, reprinted in 1976 U.S. Code Cong. & Admin. News 6604, 6629).  EX-IM simply issued the Restraining Notices without first applying to the Court to do so.  Given that the only basis it could have for restraining the assets of these entities was its belief that they were in possession of property belonging to judgment debtor Grenada, EX-IM was required by the FSIA to precede their issuance with an application to the Court.  EX-IM's failure to meet this threshold burden necessitates immediate vacatur of the Restraining Notices, at least pending EX-IM's obtaining of an appropriate order from this Court allowing their issuance – which, for the reasons stated in this Memorandum, should not be issued.

*Inc.*, 2000 U.S. Dist. LEXIS 7814 (granting injunction vacating § 5222 restraining notices where restrained property of a foreign state was not used for commercial activity in the United States).

### A.    Focus of "Commercial Activity" Inquiry is on Whether the Assets at Issue are Used for a Commercial or Public Purpose

The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act," and notes that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).  The test in this Circuit for determining whether assets are used in an activity that is "commercial" (and thus exempt from immunity) as opposed to one that is of a "public nature" (and therefore immune from attachment or restraint), is "if the activity is one in which a private person could engage, it is not entitled to immunity."  *LNC Invs., Inc.*, 2000 U.S. Dist. LEXIS 7814 at * 15 (*quoting Texas Trading v. Federal Republic of Nigeria*, 647 F.2d 300, 309 (2d Cir. 1981)). Immunity, however, is the default assumption when it comes to the assets of foreign states, and the party seeking to invoke the "commercial activity" exception bears a heavy burden.  *See Id.* at * 15 ("[t]he concept of 'commercial activity should be narrowly defined 'because sovereign immunity remains the rule rather than the exception and because courts should be cautious when addressing areas that affect the affairs of foreign governments.'") (*quoting Liberian Eastern Timber Corp. v. Liberia*, 659 F. Supp. 606, 610 (D.D.C. 1987)).

### B.    The Restrained Assets are Used for Public, Non-Commercial Activities and are Thus Immune From Attachment or Restraint

A foreign state's assets that are used "for the support and maintenance of government functions" are not "used for a commercial activity" and are thus immune from attachment under the FSIA.  *LNC Invs., Inc.*, 2000 U.S. Dist. LEXIS 7814 at * 15 (*quoting Liberian Eastern*

*Timber Corp.*, 659 F. Supp. at 610).  Here, each of the Statutory Corporations is vested with the responsibility for operating and overseeing a variety of Grenada's essential public facilities and services.  *See* Mitchell Aff., Ex. A at § 4 (GAA charged with operating and maintaining Grenada's airports and related facilities); Ex. B at § 3 (NWSA charged with regulating and maintaining Grenada's water and sewage systems and facilities); Ex. C at Preamble (GSWMA responsible for regulation and maintenance of Grenada's systems and facilities for waste disposal); Ex. D at § 18 (GPA empowered to provide coordinated system of ports, lighthouses and port services).  The payments they each receive from the Restrained Entities are used by each Statutory Corporation as a principal source of revenue for carrying out these very public functions.  *See* George Aff. at ¶¶ 14 -15 (GAA);  Smith Aff. at ¶ 9 (NWSA); Phillip Aff. at ¶¶ 11 – 12 (GPA); Roden-Layne Aff. at ¶¶ 4, 8, 9 (GSWMA); and Scott Aff. at ¶ 10.  The regulation and operation of the public services and facilities provided by the Statutory Corporations are not activities in which a private party could engage, and so, even if the Statutory Corporations are Grenada's alter egos, the Restraining Notices must be vacated the revenues at issue are unrelated to any "commercial activities" of Grenada.  *See e.g., LNC Invs., Inc.*, 2000 U.S. Dist. LEXIS 7814 at * 15 – 17 (taxes owed by airlines to foreign sovereign "are non commercial in nature and immune from attachment and execution under the FSIA" because "taxation is a uniquely governmental activity in which private persons cannot and do not engage").

### C.     The Restrained Assets are Not Used in the United States.

Pursuant to § 1610, the assets of a sovereign may only be attached if they are used for a commercial activity "in the United States."  28 U.S.C. § 1610(b).  The Restrained Assets are all used for the maintenance of facilities and services in Grenada, not in the United States.  Consequently, EX-IM cannot avail itself of the § 1610 exception to sovereign immunity that

protects such assets from attachment or seizure, and as a result, the Restraining Notices must be vacated, or, at a minimum, modified to expressly exclude from restraint the property of the Statutory Corporations.

## CONCLUSION

For the foregoing reasons, the Statutory Corporations respectfully request that the Court grant their Joint Motion to Vacate or Modify Restraining Notices, and award such other and further relief as it may deem appropriate.

Dated:  New York, New York
         March 20, 2012

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By:   /s/Brian E. Maas
      Brian E. Maas
      Khianna N. Bartholomew
488 Madison Avenue
New York, New York 10022
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
bmaas@fkks.com
kbartholomew@fkks.com

*Attorneys for Defendant/Judgment
Debtor Grenada*

THE LAW OFFICE OF STEVEN D. GREENBLATT

By:   /s/ Steven D. Greenblatt
      Steven D. Greenblatt
480 Broadway, Suite 328
Saratoga Springs, New York  12866
Tel.:  (518) 824-1254
Fax:  (518) 824-5704

*Attorney for Interested Third Parties Grenada Airports
Authority, Aviation Services of Grenada Ltd., Grenada
Ports Authority, National Water and Sewage Authority
of Grenada, and Grenada Solid Waste Management
Authority*