UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

THE EXPORT-IMPORT BANK OF THE : 
REPUBLIC OF CHINA, :

             :   06 Civ. 2469 (HB) (AJP)

         Plaintiff/Judgment Creditor, :

      :

   -against- :

      :

GRENADA, :

      :

         Defendant/Judgment Debtor. :

---------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO VACATE RESTRAINING NOTICES AND IN OPPOSITION TO CROSS MOTION FOR DISCOVERY AND TURNOVER OF RESTRAINED FUNDS

Brian E. Maas
Khianna N. Bartholomew
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue
New York, New York 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175
bmaas@fkks.com
kbartholomew@fkks.com

*Attorneys for Defendant/Judgment Debtor Grenada*

Steven D. Greenblatt
THE LAW OFFICE OF STEVEN D. GREENBLATT
480 Broadway, Suite 328
Saratoga Springs, New York 12866
Tel.: (518) 824-1254
Fax: (518) 824-5704
sgreenblatt@sdgesq.com

*Attorney for Interested Third Parties Grenada Airports Authority, Aviation Services of Grenada Ltd., Grenada Ports Authority, National Water and Sewage Authority of Grenada, and Grenada Solid Waste Management Authority*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.    THE RESTRAINING NOTICES HAVE BEEN IMPROPERLY ISSUED IN
      VIOLATION OF FEDERAL AND STATE LAW ...................................................... 3

      A.    EX-IM's Failure to Obtain the Court's Prior Permission to Issue
            Restraining Notices Requires Their Immediate Vacatur ......................................... 4

      B.    As a Matter of Law, EX-IM Cannot Satisfy its Threshold Burden to Prove
            the Restraints May Properly Issue ........................................................................ 8

            1.    Restraining Notices May Not Be Issued to Restrain the Assets of
                  Alleged Alter Egos of a Judgment Debtor Until After Judicial
                  Determination of Alter Ego Status ............................................................... 8

            2.    EX-IM Has Improperly Restrained Sovereign Assets Not Used In
                  Commercial Activities in the United States In Violation of the
                  Foreign Sovereign Immunities Act .............................................................. 12

II.   THE COURT SHOULD DENY THE CROSS MOTION IN ITS ENTIRETY .............. 15

      A.    EX-IM's Inability to Invoke the "Commercial Activity" Exception to
            Sovereign Immunity Obviates the Need for any Discovery ................................. 15

      B.    The Court May Not Order Turnover of the Restrained Funds Absent EX-
            IM's Full Satisfaction of its Burdens of Proof. .................................................. 16

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

Page

## Cases

*Aurelius Capital Partners, LP v. Republic of Argentina,*
   No. 07 Civ. 2715, 2010 U.S. Dist. LEXIS 3280 (S.D.N.Y. March 5, 2010)..............................7

*Behring Int'l, Inc. v. Imperial Iranian Air Force,*
   475 F. Supp. 383 (D.N.J. 1979) ..............................................................................................7

*Delizia Ltd. v. Eritrea,*
   No. 09 Civ. 3572, 2012 U.S. Dist. LEXIS 29011 (S.D.N.Y. March 5, 2012)..................6, 7, 15

*EM Ltd. V. Republic of Argentina,*
   720 F. Supp. 2d 273 (S.D.N.Y. 2010) .................................................................................7, 11

*First City, Texas-Houston, N.A. v. Rafidain Bank,*
   197 F.R.D. 250 (S.D.N.Y. 2000) ..............................................................................................4

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.,*
   295 F. Supp. 2d 366 (S.D.N.Y. 2003) ...........................................................................*passim*

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
   313 F.3d 70 (2d Cir. 2002) .......................................................................................................7

*LNC Invs., Inc. v. Nicaragua,*
   No. 96 Civ. 6360, 2000 U.S. Dist. LEXIS 7814) (S.D.N.Y. April 26, 2000) ........................13

*NML Capital, Ltd v. The Republic of Argentina,*
   ___ F.3d ___, 2012 WL 1059073 (2d Cir. March 30, 2012)............................................13, 14

*Republic of Argentina v. Weltover,*
   504 U.S. 607 (1992)................................................................................................................13

*Sales v. Republic of Uganda,*
   No. 90 Civ. 3972, 1993 U.S. Dist. LEXIS 14880,
   193 WL 437762 (S.D.N.Y. Oct. 23, 1993) ..............................................................................7

*Texas Trading & Mill Corp. v. Fed. Republic of Nigeria,*
   647 F.2d 300 (2d Cir. 1981) ...................................................................................................13

*Walters v. Indus. & Commer. Bank of China, Ltd.,*
   651 F.3d 280 (2d Cir. 2011) .....................................................................................................5

*Doubet, LLC v. Trustees of Columbia Univ. in the City of New York,*
   32 Misc. 3d 1209A (N.Y. Sup. Ct. 2011) (unpublished)...........................................................8

## Rules

Foreign Sovereign Immunities Act § 1609 ......................................................................1, 2, 12

Foreign Sovereign Immunities Act § 1610 ..............................................................................*passim*

Foreign Sovereign Immunities Act § 1611 ...................................................................................6

N.Y.C.P.L.R. § 5222 ..................................................................................................... *passim*

Fed. R. Civ. P. 69 ................................................................................................... 7, 9

## PRELIMINARY STATEMENT

The Export-Import Bank of the Republic of China's ("EX-IM") Memorandum of Law in Opposition ("EX-IM Mem.") to Grenada and several the Statutory Corporations' ("Movants") Joint Motion to Vacate Restraining Notices ("Joint Motion")[1] relies on fundamental mischaracterizations of key aspects of the Foreign Sovereign Immunities Act ("FSIA"), and EX-IM's burdens of proof under both the FSIA and New York State law.  First, EX-IM erroneously contends that a judgment creditor may issue N.Y.C.P.L.R. § 5222 restraining notices against the alleged assets of a sovereign judgment debtor without regard for or compliance with the presumptive immunities and procedural protections afforded sovereign judgment debtors' assets under sections 1609 and 1610 of the FSIA (28 U.S.C. §§ 1609 and 1610).  *See* EX-IM Mem. at 11 – 15.  Pursuant to FSIA § 1610(c), however, a judgment creditor must obtain a court order prior to any "attachment" or "execution" on the assets of a sovereign, which, under the law of this Circuit and others, encompasses any interference with the assets or property rights of a sovereign, including § 5222 restraining notices.  On-point precedent in this Circuit unambiguously holds, therefore, that restraining notices issued without the judgment creditor having first obtained such prior permission – such as those at issue in this case – must be vacated.

EX-IM also asks the Court to overlook the fact that no determination has yet been made that the assets of the Statutory Corporations – which it concedes are being restrained by its Restraining Notices – are even available to be used in satisfaction of its judgment against Grenada.  EX-IM's cross motion is a concession that the issue of any such "alter ego" liability on the part of the Statutory Corporations has not been, and is not presently capable of being

---

[1] Capitalized terms used herein and not otherwise defined have the same meaning given to them in the Joint Motion.

adjudicated by this Court.  Absent such an adjudication, however, EX-IM has no legally cognizable interest in the property of the Statutory Corporations on which a restraining notice or any other form of judgment enforcement can be predicated.  EX-IM fails to refute on-point, binding precedent from this Court holding that N.Y.C.P.L.R. § 5222 requires the vacatur of restraints on the property of non-judgment debtors, such as the Statutory Corporations, until such time as the judgment creditor has obtained a judicial determination that it has some legal entitlement to reach such entities' property.

Therefore, at a minimum, due to EX-IM's conceded failure to comply with FSIA § 1610(c) and with the requirements of basic due process pursuant to N.Y.C.P.L.R. § 5222, the Restraining Notices must be immediately vacated, at least pending EX-IM's satisfaction of its burdens under both federal and state law to prove that they may be issued.

As a matter of law, however, EX-IM cannot satisfy these burdens because the restrained assets are not used in commercial activities in the United States, and are thus immune from restraint under FSIA § 1609.  The restrained payments are made in exchange for the Restrained Entities' rights to use Grenada's public facilities and services, and are thus akin to taxes and levies paid to a sovereign, not to payments made in a commercial transaction.  Under the test cited in EX-IM's own brief, because no private entity can provide access to these public services and facilities, or levy fees as a condition for access to such public resources, the restrained payments retain their sovereign execution immunity under the FSIA.  EX-IM's opposition brief completely ignores this analysis in Movants' original memorandum of law in support of the Joint Motion ("Joint Mem."), including Movants' citation to binding precedent in this Circuit under which similar payments made to a sovereign by airlines similar to those that have been restrained in this case have been held to be immune from execution.

EX-IM's cross-motion for discovery and turnover should, therefore, also be denied.  No discovery is needed on the issue of whether the Statutory Corporations are the alter egos of Grenada under the *Bancec* analysis discussed in each of the parties' briefs.  Whichever way the alter ego issue were to be ultimately resolved, the restrained payments would still not fall within the ambit of the "commercial activity" exception to sovereign execution immunity.  Consequently, discovery is unnecessary, and the Restraining Notices should simply be vacated now.  EX-IM's turnover motion should also be denied for the same reasons articulated above.

## ARGUMENT

### I.

### THE RESTRAINING NOTICES HAVE BEEN IMPROPERLY ISSUED IN VIOLATION OF FEDERAL AND STATE LAW

EX-IM is simply wrong:  it may not restrain the assets of a sovereign judgment debtor without first complying with FSIA § 1610(c) and obtaining a court order permitting such restraints *in advance* of their issuance.  *See* EX-IM Mem. at 11 – 14.  EX-IM's so-called "plain language" interpretation of § 1610(c) – in which a judgment creditor need only obtain a court order prior to serving an "attachment" or "execution," but not any other kind of restraint on sovereign property – is (a) notably proffered without even a single citation to a supporting case or commentary; (b) contradicted by the procedure followed and the result in every single case from the Courts of this Circuit that has addressed the issue; and (c) inconsistent with both the language and purpose of the FSIA.

EX-IM is also wrong to assert that the "simple remedy" for its failure to obtain the requisite order "would be for the Court, now, to authorize the restraints prospectively" and allow EX-IM to "re-serve the restraints immediately and effectively restrain the same assets that are currently subject to the existing restraints."  EX-IM Mem. at 13.  The FSIA puts the burden of

proof on EX-IM to show that it is entitled to such an order, and EX-IM's cross motion for

discovery is a concession that at the very least, by its own estimation, there are myriad

unresolved questions of fact that must be answered before any such determination could be

made.  Unless and until these questions are resolved in EX-IM's favor, no order can issue

authorizing the Restraining Notices, and they must, therefore, be vacated for having been issued

in violation of the FSIA.  To hold otherwise would turn both the FSIA and due process on their

heads, disregarding the presumption of sovereign immunity, and, more generally, allowing a

party to restrain property in which it has not shown any entitlement or interest.[2]

**A.     EX-IM's Failure to Obtain the Court's Prior Permission to Issue Restraining
Notices Requires Their Immediate Vacatur**

In this Circuit, when judgment creditors issue restraining notices against the assets of

sovereign judgment debtors without first obtaining a court order pursuant to FSIA § 1610(c),

Courts uniformily order such restraining notices to be vacated to prevent the improper

impairment of sovereign property interests.  *See e.g., First City, Texas-Houston, N.A. v. Rafidain

Bank,* 197 F.R.D. 250, 256 (S.D.N.Y. 2000) ("As for the Restraining Notice served along with

the . . . [s]uboepoena, Rafidain argues that it must be vacated under § 1610(c) of the FSIA . . .

First City Concedes that it failed to seek such a court order before serving the Restraining Notice

. . . . Consequently, the Restraining Notice must be vacated, but without prejudice to its being

renewed upon appropriate motion to the Court."); *Trans Commodities, Inc. v. Kazakstan Trading

House, S.A.,* No. 96 Civ. 9782, 1997 U.S. Dist. LEXIS 23906, at *7 (S.D.N.Y. May 28, 1997)

---

[2] Movants absolutely concede that such vacatur is without prejudice to EX-IM's re-issuance of
restraining notices at a later date if it can meet its burden to prove they may, in fact, be issued.
However, as set forth in their original Memorandum of Law and herein, *infra,* Section I(B),
Movants submit this is an insurmountable burden for EX-IM.

(vacating N.Y.C.P.L.R. § 5222 restraining notices where judgment creditor lacked § 1610(c) order permitting restraint of particular assets).

EX-IM's disregard for this Court's holding in *Trans Commodities, Inc.* (*see* EX-IM Mem. at 13, n. 15) is not shared by the Second Circuit, which only last year expressly reaffirmed the case and its result. *See Walters v. Indus. & Commer. Bank of China, Ltd.*, 651 F.3d 280, 291-92 (2d Cir. 2011) (noting that, "§ 1610(c) not only ensures that no execution upon sovereign property can take place without notice to the sovereign, but it also requires a *prior judicial determination that the execution is warranted under one of the § 1610(a) or (b) exceptions and with respect to specifically identified property*," and citing as support, *inter alia*, *Trans Commodities*, described by the Court parenthetically as "vacating restraining notice because no court had specifically passed upon propriety of attaching funds for purposes of satisfying § 1610(c)") (emphasis added).

Beyond the reaffirmation of *Tran Commodities*, however, *Walters* also explains why the result is dictated by the language and structure of the FSIA – thus answering EX-IM's charge that the result in *Trans Commodities* must have been unexamined. *See* EX-IM Mem. at 13, n.15. As Judge Raggi explained, the FSIA is deliberately structured such that "the execution immunity afforded sovereign property is broader than the jurisdictional immunity afforded the sovereign itself . . . due to the fact that at the time the FSIA was passed, the international community viewed execution against a foreign state's property as a greater affront to its sovereignty than merely permitting jurisdiction over the merits of an action.'" *See Walters*, 651 F.3d at 289 (citations omitted). In using the word "execution," both the Court in its opinion and Congress in the FSIA meant to encompass the full range of enforcement actions and devices that might be employed by a judgment creditor to reach the assets of a sovereign entity. *Id.* (citing cases explaining the rationale for broad execution immunity under the FSIA, including *Republic of*

*Philippines v. Pimentel*, 553 U.S 851, 866 128 S.Ct. 2180, 171 L. Ed. 2d 131 (2008) ("[P]re-FSIA, common-law doctrine dictated that courts defer to executive determination of immunity because *the judicial seizure of the property of a friendly state* may be regarded as an affront to tis dignity and may . . . affect our relations with it.") (emphasis added), and *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1127-28 (9th Cir. 2010) ("Congress was aware that, although the restrictive theory of sovereign immunity from suit had become an accepted principle of international law by the time of the FSIA's enactment, *the enforcement of judgments* against foreign state property remain[ed] a somewhat controversial subject.") (emphasis added) (internal quotation marks and citations omitted)).

This understanding of "executions" and "attachments" under the FSIA as inclusive of all judgment enforcement mechanisms that would restrain, affect, or impair a sovereign's use of its property – including restraining notices – was most recently affirmed by this Court only last month.  In *Delizia Ltd. v. Eritrea*, No. 09 Civ. 3572, 2012 U.S. Dist. LEXIS 29011 (S.D.N.Y. March 5, 2012), the judgment creditor moved for permission to issue a restraining notice against a bank account into which real estate rental payments to the sovereign were made.  Finding that the petitioner had not carried its burden of proving that the default judgment was properly served on the sovereign, the Court denied the application subject to later renewal, and in an unmistakable reference to the sovereign immunity exemptions in FSIA §§ 1610 and 1611, advised the petitioner on such refilling to "consider and address provisions of the FSIA . . . that, depending on the nature and purpose of the Eritrean accounts . . . may arguably preclude the Court from authorizing the relief requested." *Delizia Ltd.*, *supra*, at *5 – 6.[3]  The Court's

---

[3] *Delizia* is also notable as an example of a judgment creditor following the procedure EX-IM has chosen to ignore in this case, namely, applying to the court for permission to issue a restraining notice against sovereign assets.  Based on a survey of the relevant case law in this Circuit, EX-IM may very well be the only such judgment creditor that has not complied with this

rationale for this admonishment was stated in a parenthetical to its citation of *Sales v. Republic of Uganda*, No. 90 Civ. 3972, 1993 U.S. Dist. LEXIS 14880, 193 WL 437762, *1 (S.D.N.Y. Oct. 23, 1993): "'Within the broad context of sovereign immunity as a form of deference to the governmental affairs of a foreign state,' *an application to restrain rental payments before they are paid into a state's bank account is no different from an application to attach funds held within the state's bank account*." *Delizia Ltd.*, supra, at *6 (emphasis added). *See also Behring Int'l, Inc. v. Imperial Iranian Air Force*, 475 F. Supp. 383 (D.N.J. 1979) (analyzing propriety of pre-judgment order temporarily restraining transfer of assets in anticipation of later grant of order of attachment under FSIA § 1610 "attachment" exemption).[4]

    *Delizia*'s conclusion demonstrates that the alleged differences between restraining notices and "attachments" and "executions," as those terms are used in commentary to New York State law,[5] as identified by EX-IM in its Opposition are just not relevant. *See* EX-IM Mem. at 12 –

---

procedure. *See e.g., Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 313 F.3d 70 (2d Cir. 2002) (noting that N.Y.C.P.L.R. § 5222 restraining notice not issued until after the district court authorized execution pursuant to a FSIA § 1610(c) order); *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715, 2010 U.S. Dist. LEXIS 3280 (S.D.N.Y. March 5, 2010) (judgment creditor with judgment against sovereign moved for an order pursuant to FSIA § 1610(c) allowing issuance of a C.P.L.R. § 5222 restraining notice); *EM Ltd. V. Republic of Argentina*, 720 F. Supp. 2d 273 (S.D.N.Y. 2010) (judgment creditor seeking to issue restraining notice on assets of alleged alter ego of judgment debtor first filed declaratory judgment action seeking to prove the target possessor of funds was the alter ego of Argentina so that the funds could be attached and restrained).

[4] *Behring* is instructive insofar as it is an example of how courts broadly apply the protections of execution immunity embodied in FSIA § 1610 to both "attachments and executions" as EX-IM would define them, as well as to the full range of processes and procedures that precede and are an implicit part of such actions. This treatment is echoed in the language of Fed. R. Civ. P. 69, the procedural mechanism by which a judgment debtor proceeds in enforcing its judgment, which although titled "Executions," expressly also governs "proceedings supplementary to and in aid of judgment or execution."

[5] Movants also respectfully submit that there is no indication Professor Siegel's views or definitions were considered by Congress in drafting the FSIA, and EX-IM provides no analysis as to why they should be relied on now instead of stated Congressional policies concerning the

13. EX-IM's Restraining Notices have resulted in the inability of the Statutory Corporations to receive, access and use funds in which they undeniably have an interest. There is thus no practical difference in effect between these Restraining Notices and attachments or other restraints, and, as such, the propriety of their existence must be assessed under the FSIA to determine whether or not an exception to Grenada's sovereign execution immunity exists that would allow such restraints. *See Doubet, LLC v. Trustees of Columbia Univ. in the City of New York*, 32 Misc. 3d 1209A, at \*10 (N.Y. Sup. Ct. 2011) (unpublished) ("'The restraining notice operates like an injunction. Indeed, it is an injunction, issued by the attorney acting as an officer of the court.' Siegel, Practice Commentaries, McKinney's Cons. Laws of NY, Book 7B, CPLR C5222:4. Thus, the effect of a restraining notice is in the nature of a provisional remedy, like an injunction or an attachment; it is an assertion of . . . court jurisdiction over the garnishee.").

**B.     As a Matter of Law, EX-IM Cannot Satisfy its Threshold Burden to Prove the Restraints May Properly Issue**

*1.     Restraining Notices May Not Be Issued to Restrain the Assets of Alleged Alter Egos of a Judgment Debtor Until After Judicial Determination of Alter Ego Status*

EX-IM is just as inappropriately dismissive of its burdens of proof under New York State law as it is of its threshold burdens under the FSIA. *See* EX-IM Mem. at 13. *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*, 295 F. Supp. 2d 366, 391 (S.D.N.Y. 2003), cited in Movants' original Memorandum of Law, stands for the uncontroversial yet crucial proposition that N.Y.C.P.L.R. § 5222 restraining notices, like those served on the Restrained Entities by EX-IM, "are effective against assets in which the judgment debtor has an 'interest,' and they 'only reach property and debts with such a connection to the judgment debtor." *See* Joint Mem. at 11 – 12 and 13, n.8. Movants do not contend that *JSC* imposes a

---

protection of sovereign assets, and the numerous holdings of the Courts of this Circuit applying such protections in the context of judgment creditor's use of restraining notices.

threshold burden on all judgment creditors to prove the existence of such an interest prior to issuing a restraining notice in every case. Rather, *JSC* holds that if the judgment creditor wants to restrain the assets of a non-judgment debtor solely on the basis of an allegation that such entity is the alter ego of the judgment debtor, it cannot do so until after the judicial determination of such alter ego status. *See JSC*, 295 F. Supp. 2d at 391-92.

*JSC* is thus directly on point and, contrary to movant's suggestion, any differences in procedural posture from the present case are immaterial.[6] In *JSC*, the judgment creditor had arbitration judgments against a corporate entity but not the corporation's principals. *See id.* at 370-71. The judgment creditor then filed a complaint against the individuals seeking to hold them liable for the corporate debts on an alter ego theory. *See id.* at 371. The judgment creditor also moved for a preliminary injunction enjoining the individuals from transferring assets that might be used to satisfy the arbitration judgments, and it issued N.Y.C.P.L.R. § 5222 restraining notices upon entities holding the property of the individuals alleged to be alter egos of the corporate judgment debtor. *See id.*

Judge Koeltl denied the judgment creditor's motion for a preliminary injunction, finding, among other deficiencies, that the court could not restrain the property of a defendant prior to judgment where the plaintiff had no lien or other equitable interest in the property. *See JSC*, 295 F. Supp. 2d at 390-91. The Court then separately ordered that restraining notices be modified to exclude the property of the alleged alter ego individuals. *See id.* The Court employed the

---

[6] It is irrelevant that *JSC* is not a case involving the FSIA. It is a federal court judgment enforcement matter, which, like all such matters, including those involving the FSIA, proceeds according to state law procedures and mechanisms. *See* Fed. R. Civ. P. 69. Moreover, *JSC* involves the exact same procedural scenario at issue in the present case: a judgment debtor attempting without any prior legal process to employ N.Y.C.P.L.R. § 5222 restraining notices to restrain the assets of entities alleged to be the alter egos of a judgment debtor.

language quoted by EX-IM in its brief, i.e., that restraining notices "may not be used as an end run around the requirements of the prejudgment attachment statutes," (*see* EX-IM Mem. at 14) as part of its holding that, just as a court cannot issue an injunction restraining property in which a plaintiff has no legally cognizable interest, restraining notices may not be issued to restrain the property of an entity merely *alleged* to be the alter ego of a judgment debtor:

> Th[e cases cited by the judgment creditor] . . . do not support the proposition that the assets of third parties may be restrained *in anticipation of a finding that those third parties are alter egos or hold assets of alleged alter egos of the judgment debtor*. Such a conclusion is not only unsupported by the text of N.Y.C.P.L.R. § 5222 or any of the cases cited by the plaintiff, but would also pose significant due process problems.

*JSC*, 295 F. Supp. 2d at 392 – 93 (emphasis added).

The due process problems alluded to by the Court are easy to imagine.  If the judgment creditor did not have a threshold burden to prove that a non-judgment debtor was an alter-ego of a judgment debtor, nothing would prevent EX-IM from pre-emptively restraining the assets of any entity it saw fit to accuse of being an alter ego, regardless of proof or even evidence.  Such restrained entities, despite having no judgment against them or other prior contact of any kind with EX-IM, would then be forced to prove that they are *not* alter egos of Grenada in order to regain control of their own assets.  Such a result is inconceivable, and runs completely counter to our entire civil judicial system, which without exception, places the burden of proof upon the claimant to prove its claims, not upon the accused to prove he is *not* liable.

With these principles in mind, the Court held that where an allegation of alter ego liability is the only basis for the restraint of the assets of a non-judgment debtor entity – whether by preliminary injunction or restraining notice – such restraint can only occur *after* an adjudication of the alter ego issue.  Only then can the judgment creditor claim that it has the requisite interest in the property at issue to support the issuance of the restraint.  *See JSC*, 295 F.

Supp. 2d at 393 ("Although the plaintiff may attempt to prove the alter ego liability of Reich and Jossem as part of a judgment enforcement proceeding, their assets may not be restrained pursuant to § 5222 until their alleged alter ego status has been adjudicated and their liability for the previous judgment determined.").

The *Bancec* decision and its progeny, and the factual arguments in the parties' briefs about the independence or lack thereof of the Statutory Corporations merely lay the framework for the adjudication of the alter ego issue within the context of this case: whether the Statutory Corporations, as instrumentalities of a sovereign nation, should have their presumed independence ignored and be deemed alter egos of Grenada for purposes of EX-IM's judgment enforcement efforts. EX-IM, however, cannot deny that the issue of the potential alter ego liability of the statutory corporations has not been adjudicated as of yet.[7] EX-IM's cross motion for discovery is a *de facto* concession on its part that the alter ego issue cannot be settled by the court, as a matter of law, based on the record of the case thus far.[8] Consequently, as in *JSC*, the restraining notices must now, at a minimum, be expressly modified to exclude from their scope the property of the Statutory Corporations – which are not judgment debtors, which were not

---

[7] Notably, similarly situated judgment debtors in this Circuit and District have chosen to proceed differently than did EX-IM, and to attempt to obtain such adjudication *before* issuing restraining notices against the assets of alleged alter ego entities. *See e.g.*, *EM Ltd. v. Republic of Argentina*, 720 F. Supp. 2d 273 (S.D.N.Y. 2010) (prior to attempting attachment and restraint, judgment creditor filed a declaratory judgment action seeking to prove the target possessor of funds was the alter ego of Argentina).

[8] Movants disagree. EX-IM does not even attempt to argue that the Statutory Corporations' corporate forms have been used to fraudulently shield recoverable assets from it. Nor does its attempt to parse the various enabling statutes for the Statutory Corporations counter the sworn testimony from the Statutory Corporations' principals that there is, in fact, no day-to-day control by Grenada of their operations. Consequently, for the reasons stated in their original Memorandum of Law, Movants contend the Court can rule now on the alter ego issue without further discovery.

party to EX-IM's suit or any of the underlying agreements at issue therein, and which can only, if at all, be forced to turnover their assets in satisfaction of EX-IM's judgment if they are, in fact, alter egos of the only judgment debtor, Grenada. Any other result is a violation of the Statutory Corporations' basic due process rights, which guarantee that their assets shall be free from restraints absent proof that they should be held liable as the alter egos of judgment debtor Grenada under *Bancec* and its progeny.

2.     *EX-IM Has Improperly Restrained Sovereign Assets Not Used In Commercial Activities in the United States In Violation of the Foreign Sovereign Immunities Act*

EX-IM's opposition brief mischaracterizes both Movants' arguments and the governing law concerning the "commercial activity" exception to sovereign execution immunity. *See* EX-IM Mem. at 14 -17. Movants have not asked the Court to uphold the presumption of immunity afforded to these assets under FSIA § 1609 because of the purposes to which the Statutory Corporations put the funds after they have been received. Rather, Movants argue that the Restrained Payments are collected as part of the Statutory Corporations' overall regulatory responsibility for public services and facilities in Grenada, and this regulatory activity is not "commercial activity in the United States" that would cause the payments to lose the protection of sovereign immunity. Joint Mem. at 21-22. Movants' ask the Court to focus – as the FSIA does – on the *activity* of which the payments are a part (the regulation of public facilities and services), and argue that such activity is akin to the taxation a sovereign government would levy for similar use of similarly public facilities and services. *Id.* The test Movants ask the Court to apply in assessing whether the Restrained Payments lose their presumed immunity as the products of "commercial activity in the United States" pursuant to FSIA § 1610 is whether "*the activity* is one in which a private person could engage, [in which case] it is not entitled to

immunity." *See* Joint Mem. at 21 (quoting *LNC Invs., Inc. v. Nicaragua*, No. 96 Civ. 6360, 2000 U.S. Dist. LEXIS 7814 at \*15) (S.D.N.Y. April 26, 2000) (emphasis added) (citations omitted).

Movants have thus not "ignored" *Republic of Argentina v. Weltover*, 504 U.S. 607 (1992). *See* EX-IM Mem. at 14. *Weltover* articulated the very same test. *See Weltover*, 504 U.S. at 614-15 ("Thus, a foreign government's issuance of regulations limiting foreign currency exchange is a sovereign activity, because such authoritative control of commerce cannot be exercised by a private party; whereas a contract to buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts."[9]

A finding by the Court that the restrained payments retain their sovereign immunity and are not used in a commercial activity in the United States would thus be entirely consistent with *Weltover* and its progeny. Unlike the funds at issue in *NML Capital, Ltd v. The Republic of Argentina*, ___ F.3d ___, 2012 WL 1059073 (2d Cir. March 30, 2012), or *Texas Trading & Mill Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300 (2d Cir. 1981) (the other cases cited by EX-IM in its Memorandum), the restrained payments are not involved in garden variety commercial transactions, but rather are collected as part of the Statutory Corporations' regulation of and provision of access to Grenada's public facilities and services. No private party is capable of providing these facilities and services to the Restrained Entities, and no private party could

---

[9] References to the use the restrained payments are put to in Movants' brief merely serve to illustrate how the payments are part of an overall public scheme for the regulation of Grenada's public facilities and services. That is precisely the context in which this Court stated that a foreign state's assets that are used "for the support and maintenance of government functions" are not "used for a commercial activity" and are thus immune from attachment under the FSIA. *LNC Invs., Inc.*, 2000 U.S. Dist. LEXIS 7814 at \*15 (quoting *Liberian Eastern Timber Corp. v. Liberia*, 659 F. Supp. 606, 610 (D.D.C. 1987)). Movants agree with EX-IM that the end use to which the payments are put does not, in and of itself, justify the execution immunity of these payments. However, as the Court found in *LNC*, such use is a relevant consideration in assessing the "activity" of which the funds are a part.

require the payment of the levies and fees represented by the restrained payments.  Certainly the result in the present case would be different if, as in *NML Capital*, the Restrained Payments were funds in a bank account earmarked by the Statutory Corporations for the purchase on the open market in the United States of equipment to be used for public purposes back in Grenada.  *See NML Capital, Ltd.*, *supra*, at *5 (holding that funds earmarked by Argentina for purchase of scientific equipment in commercial transaction on open market in U.S. not entitled to sovereign immunity no matter the purpose to which Argentina would later put such goods).  Here, however, there is no such commercial transaction, and EX-IM's Memorandum completely fails to address binding precedent cited by Movants holding that similar payments made in conjunction with and as a condition of use of a sovereign's public facilities and services are entitled to full execution immunity under the FSIA.  *See* Joint Mem. at 21 – 22 (citing *LNC Invs., Inc.*, 2000 U.S. Dist. LEXIS 7814 at 15-17 (taxes owed by airlines to foreign sovereign "are non commercial in nature and immune from attachment and execution under the FSIA" because "taxation is a uniquely governmental activity in which private persons cannot and do not engage")).  Consequently, the restrained payments are not employed in a "commercial activity in the United States" and are entitled to full execution immunity under FSIA § 1609.

Finally, as stated in Movants' original Memorandum of Law, the "activity" of which the funds are a part – namely, the regulation of the Restrained Entities use of and access to Grenadian public services and facilities – is not activity "in the United States," commercial or otherwise.  *See* Joint Mem. at 22-23.  EX-IM ignores the evidence in the record establishing this point of fact, namely, the language of the enabling statutes defining the collection, use and purpose of the collected funds, as well as by the supporting affidavits attesting to such use and purpose.  Instead, EX-IM only states, cryptically, that "a wealth of evidence will be adduced through discovery that the restrained funds themselves are 'used in the United States' and have a

14

substantial commercial nexus to the United States." EX-IM Mem. at 16.  EX-IM offers no basis

for this belief, and no citation as to why, even its hopes come to fruition, such evidence would

matter under the FSIA.

Therefore, even if the Statutory Corporations are deemed to be the alter egos of Grenada,

the Restraining Notices must be vacated as violations of Grenada's sovereign execution

immunity.

## II.

## THE COURT SHOULD DENY THE CROSS MOTION IN ITS ENTIRETY

**A.      EX-IM's Inability to Invoke the "Commercial Activity" Exception to Sovereign
        Immunity Obviates the Need for any Discovery**

EX-IM's cross motion seeks discovery in order to determine whether or not the Statutory

Corporations are, as Movants allege, in fact, the alter egos of Grenada.  *See* EX-IM Mem. at 5-

11.  Such discovery is completely unnecessary, however, because regardless of any ultimate alter

ego determination, as noted above, the Restrained Payments retain full execution immunity

under the FSIA.  As EX-IM forcefully concedes, the purposes to which the Restrained Payments

are put is immaterial to that determination, so no discovery need be taken on that issue.  Nor is

any discovery needed to determine whether or not the collection of the payments is part of a

"commercial activity in the United States."  That is a legal determination that can be made now

based on information already in the record, including but not limited to the statutes pursuant to

which each of the Statutory Corporations levies, collects and uses the Restrained Payments.

Alternatively, any discovery that is permitted in this matter must be expedited and

narrowly circumscribed.  *See Delizia Ltd.* 2012 U.S. Dist. LEXIS 29011 at *5 ("Limited initial

discovery to verify whether particular property is immune from broader discovery under the

FSIA 'should be ordered circumspectly and only to verify allegations of specific facts crucial to

an immunity determination.'") (quoting *Thai Lao Lignite v. Gov't of the Lao People's Democratic Republic*, No. 10 Civ. 5256, 2011 U.S. Dist. LEXIS 103378, *5 (S.D.N.Y. Sept. 13, 2011)).

**B.     The Court May Not Order Turnover of the Restrained Funds Absent EX-IM's Full Satisfaction of its Burdens of Proof.**

For the same reasons articulated above with respect to EX-IM's failure to sustain its burdens of proof entitling it to restrain the assets of the Statutory Corporations or Grenada, EX-IM's motion for turnover of these same assets must denied.

## CONCLUSION

For the foregoing reasons, the Statutory Corporations respectfully request that the Court grant their Joint Motion to Vacate Restraining Notices, and award such other and further relief as it may deem appropriate.

Dated: New York, New York
      April 17, 2012

                    FRANKFURT KURNIT KLEIN & SELZ, P.C.

                    By:   /s/Brian E. Maas
                         Brian E. Maas
                         Khianna N. Bartholomew
                    488 Madison Avenue
                    New York, New York 10022
                    Tel.:  (212) 980-0120
                    Fax:  (212) 593-9175
                    bmaas@fkks.com
                    kbartholomew@fkks.com

                    *Attorneys for Defendant/Judgment Debtor Grenada*

                    THE LAW OFFICE OF STEVEN D. GREENBLATT

                    By:   /s/Steven D. Greenblatt
                         Steven D. Greenblatt
                    480 Broadway, Suite 328
                    Saratoga Springs, New York 12866
                    Tel.:  (518) 824-1254
                    Fax:  (518) 824-5704
                    sgreenblatt@sdgesq.com

                    *Attorney for Interested Third Parties Grenada Airports Authority, Aviation Services of Grenada Ltd., Grenada Ports Authority, National Water and Sewage Authority of Grenada, and Grenada Solid Waste Management Authority*