UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| THE EXPORT-IMPORT BANK OF<br>THE REPUBLIC OF CHINA,<br><br>        Plaintiff/Judgment Creditor,<br><br> -against-<br><br>GRENADA,<br><br>        Defendant/Judgment Debtor. | :<br>:<br>:   06 CV 2469 (HB) (AJP)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

------------------------------------------------------------X

**SUPPLEMENTAL SUBMISSION IN FURTHER SUPPORT OF
PLAINTIFF/JUDGMENT CREDITOR THE EXPORT-IMPORT BANK OF THE
REPUBLIC OF CHINA'S CROSS-MOTIONS
<u>FOR TURNOVER OF FUNDS AND FOR DISCOVERY</u>**

SULLIVAN & WORCESTER LLP
Paul E. Summit
Andrew T. Solomon
Courtney Evanchuk
1290 Avenue of the Americas, 29th Floor
New York, NY 10104
T. 212.660.3000
F. 212.660.3001

*Attorneys for Plaintiff/Judgment Creditor*

Plaintiff and Judgment Creditor The Export-Import Bank of the Republic of China ("Ex-Im Bank") submits this supplemental memorandum in further support of its cross-motion for discovery and turnover of funds in connection with the Restraining Notices under N.Y. C.P.L.R. § 5222; and for turnover of the Grynberg Funds.[1]

Five years after obtaining a judgment against Grenada, Ex-Im Bank is finally on the verge of obtaining some recovery. Grenada and the Grenada Entities have made tortured arguments to try to convince this Court to lift the Restraining Notices now, during the period while discovery is taking place, and prior to an ultimate adjudication by this Court. They have no authority to warrant such an extraordinary action. Moreover, the funds that have now been restrained (some of which are on deposit with this Court) would then disappear forever: that is, with the (temporary) lifting of the Restraining Notices, the funds now restrained would be lost for good. That outcome would be both unprecedented under the case law; and grossly unfair to Ex-Im Bank.

## There Is No Basis To Vacate The Restraining Notices Pending Discovery

The Restraining Notices must remain in place during the brief discovery period.

1.  <u>Any delay is Grenada's fault</u>. The first Restraining Notices were served on October 6, 2011. Grenada and the Grenada Entities waited over six months, until March 20, 2012, to file their motion. Then they refused to participate in discovery. Had they participated in discovery, all matters would now be ripe for final adjudication by this Court. Thus there is no basis for Grenada and the Grenada Entities to argue any kind of "emergency" that would warrant vacating the Restraining Notices now. Ex-Im Bank is ready to cooperate in any reasonable way on an expedited discovery schedule.

---

[1] All defined terms are taken from those set forth in Ex-Im Bank's previously filed papers relating to the Grynberg Funds and the Joint Motion to Vacate (<u>see</u> Docket Entries # 73, 82, 86, and 91).

2.     <u>There is no authority under CPLR 5222 for requiring some initial "showing" by the Bank.</u>  As we pointed out in detail in Ex-Im Bank's prior briefs (<u>see</u> Docket Entries # 86 and 91), the sparse authorities proffered to this Court by the Grenada Entities for their argument that the Restraining Notices should be vacated pending discovery are easily distinguished.  <u>JSC Foreign Econ Ass'n Techno troy Export v. Int'l Dev. & Trade Servs., Inc</u>., 295 F.Supp. 2d 366 (S.D.N.Y. 2003), was a prejudgment case involving standards for a preliminary injunction, an utterly different procedural posture.  And there, the property at issue was N.Y. land.  As the Court noted:

> "The plaintiff has specifically identified certain real estate holdings that it is concerned might be transferred.  But… the Defendants are subject to continuing scrutiny in the course of discovery in this case.  The real estate… in the New York area, *will not disappear* and the proceeds of any sale will be subject to scrutiny."

<u>Id.</u> at 390 (emphasis added).

Here, if the Restraining Notices are temporarily vacated, *the Restrained Funds will be lost forever to Ex-Im Bank*.  The money will disappear into Grenada's coffers.  Grenada will in effect be rewarded for five years of defiance, and for its refusal to cooperate in expedited discovery on these motions.  There is absolutely no reason for such an outcome.[2]

3.     <u>Even if a *prima facie* showing now were required (and it is not), Ex-Im Bank has made such a showing.</u>  There is no authority requiring a threshold showing now in connection with the Restraining Notices.  Even if there were such authority, however, Ex-Im Bank has already made precisely such a showing.  For example, as to the Grenada Airports Authority (the "GAA"), we pointed out that the Government Minister "responsible for civil aviation" determines all <u>salaries</u>

---

[2] The Grenada Entities also argue, under Section 1610(c) of the Foreign Sovereign Immunities Act ("FSIA") governing "attachment" and "execution", that the Restraining Notices under C.P.L.R. § 5222 are covered, and thus required prior Court order.  As we demonstrated: a) they are neither attachments nor executions; and b) even if they were, the remedy for this Court would simply be authorization of the Restraining Notices, leaving the parties in precisely the same position anyway.

of the top officials of the GAA; sets <u>policy</u> for the GAA; sets <u>pension and benefits</u> for the GAA; approves all <u>borrowing</u> by the GAA; approves all <u>investments</u> of the GAA; supervises all <u>accounts</u> of the GAA; writes off <u>bad debts</u> of the GAA; approves all <u>regulations</u> for the management, control, and supervision of airports of the GAA; appoints <u>all members</u> of the <u>Board of Directors</u>; appoints the <u>Chairman</u> of the Board; and <u>can fire any Director</u> "if he <u>considers it expedient so do to</u>".  <u>See</u> Docket Entry # 86 at pp. 6-7.  It is hard to imagine greater control.

      The discovery should commence immediately; and the Restraining Notices should remain in place.

### Discovery Is Obviously Warranted In Connection With The Restraining Notices

      In support of their motion to vacate the Restraining Notices, the Grenada Entities chose to submit numerous contentious affidavits.  It would be extraordinary to deny Ex-Im Bank discovery.

      The Grenada Entities actually agreed to discovery back on March 21, 2012, but then tried to "condition it" on an agreement by Ex-Im Bank to vacate the Restraining Notices pending the discovery.  Ex-Im Bank did not yield to this unreasonable request.  Ex-Im Bank then served specific discovery requests,[3] which were ignored by the Grenada Entities.  *Had that discovery been complied with, discovery would now be complete*, and all would be ripe for final adjudication.  Instead, because of the intransigence of Grenada and the Grenada Entities, we are

---

[3] Those requests were attached as Exhibits D and E to the Summit Affidavit of April 3, 2012 (see Docket Entry # 87).

waiting to start discovery. Discovery can be completed rapidly (by approximately the end of July) if Grenada and the Grenada Entities cooperate this time.[4]

## The Grynberg Funds Should Be Awarded Now To Ex-Im Bank

Grenada and Freshfields make two arguments against turnover of those Funds to Ex-Im Bank. Each is frivolous.

First, they argue that, under Aurelius Capital Partners, L.P. v. Republic of Argentina, 584 F.3d 120 (2d Cir. 2009), the funds had to have already "been used for a commercial activity" at the time of attachment or execution. But here the Funds had indeed "been used" for a commercial purpose at the time they were attached. The Funds had been awarded in the underlying arbitration as attorneys' fees. Grenada and Freshfields had invoked the processes of the United States District Court for the Southern District of New York, and the courts of Colorado, based on the representation that the Funds were attorneys' fees. The Funds were then frozen by Grenada and Freshfields as attorneys' fees. Aurelius does not help Grenada and Freshfields at all.

Moreover, the Second Circuit has made it plain beyond dispute that the mere "designation" of funds for an intended use would be sufficient anyway. See E.M. Limited v. Republic of Argentina, 473 F.3d 463, 466 (2d Cir. 2007) ("specific designation for such use would be necessary...."). See Docket Entry # 73 at pp. 6-8; Docket Entry #82 at pp. 1-6.

As to the "in the United States" nexus (see Docket Entry # 73 at pp. 7-8; Docket Entry #82 at pp. 6-8), Ex-Im Bank has pointed out that the Restrained Entities are U.S.-based ships and airlines originating flights and cruises from US airports and ports to Grenada. Grenada has failed to point to a shred of evidence to establish a lack of a United States nexus.

---

[4] On Friday, May 18th, we served modified discovery requests on the Grenada Entities and on Grenada. We are in communication with Grenada and the Grenada Entities to set dates for depositions, and have tentatively reserved time for depositions in Grenada during the week of June 25, 2012.

In a final attempt to establish some claim to the Grynberg Funds, Grenada argues that Freshfields has an attorney's lien on the Funds. As Ex-Im Bank has pointed out, this argument fails because Freshfields did not put Grenada in a better position that it occupied prior to the underlying Arbitration, and thus did not obtain the affirmative recovery required for a valid attorney's lien. See Docket Entry # 73 at pp. 8-10; Docket Entry #82 at pp. 8-10.

## Conclusion

For the foregoing reasons, and as further set forth in its prior briefs, Ex-Im Bank respectfully requests that the Court:

1. Order Grenada to immediately turn over the Grynberg Funds to Ex-Im Bank;

2. Hold the Joint Motion to Vacate Restraining Notices (Docket #77) in abeyance pending reasonable discovery; and

3. Grant Ex-Im Bank's Cross-Motion for Discovery (Docket # 85) and set an expedited discovery and briefing schedule for resolution of the pending issues.

Dated: May 25, 2012                                        SULLIVAN & WORCESTER LLP


By: /s/ Paul E. Summit
    Paul E. Summit
    Andrew T. Solomon
    Courtney Evanchuk
1290 Avenue of the Americas, 29th Floor
New York, New York 10104
Tel: (212) 660-3000

*Attorneys for Plaintiff-Judgment Creditor*

5

TO:

Steven D. Greenblatt, Esq.
The Law Office of Steven D. Greenblatt
480 Broadway, Suite 328
Saratoga Springs, NY 12866

*Attorneys for Grenada Airports Authority, Grenada Ports Authority, Grenada National Water and Sewage Authority, Grenada Solid Waste Management Authority, and Aviation Services of Grenada Limited*

Brian E. Maas, Esq.
Frankfurt Kurnit Klein & Selz PC
488 Madison Avenue
New York, New York 10022

*Attorneys for Defendant/Judgment Debtor Grenada*