UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THE EXPORT-IMPORT BANK OF THE REPUBLIC   :
OF CHINA,                                                                      :
                                                                                          :
                                  Plaintiff,                  :           06 Civ. 2469 (HB)
                                                                                          :
      against-                                                           :
                                                                                          :
                                                                                          :           OPINION &
                                                                                          :           ORDER
GRENADA,                                                                        :
                                 Defendant.              :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

       Before the Court are two motions brought by Defendant/ Judgment Debtor Grenada ("Grenada"). Grenada defaulted on four multimillion dollar loans totaling $21,586,057.38 made by the Plaintiff/ Judgment Creditor Export-Import Bank of China ("Ex-Im Bank") between 1990 and 2000. On March 16, 2007, I entered an amended judgment in favor of Ex-Im Bank and against Grenada in the amount of $21,586,057.38, plus prejudgment interest, attorneys' fees, and statutory interest. Ex-Im Bank has attempted to obtain satisfaction on this judgment ever since. Grenada's first motion seeks to prevent Ex-Im Bank from using an award of costs and fees to Grenada's attorneys following an unrelated arbitration to gain entry to an exception in the Foreign Sovereign Immunities Act ("FSIA"). Grenada's second motion seeks to vacate the restraining notices issued by Ex-Im Bank to various airlines, cruise lines and shipping companies. Grenada's motions are granted.

### I. Grenada's Motion for an Order (1) Declaring Funds Immune from Attachment or (2) Fixing A Charging Lien and Directing Money Judgment for Legal Services

**A. Overview of the Motion and Cross-Motion**

       On December 8, 2011, Grenada deposited $300,486.69 with the Clerk of the Court (the "Arbitration Funds"). Phillip Decl. ¶ 18. The Arbitration Funds represent the proceeds of an order entered in favor of Grenada following an international arbitration proceeding before the International Centre for the Settlement of Investment Disputes ("ICSID"), which was confirmed by the U.S. District Court for the Southern District of New York. *Id.* at ¶¶ 3-12. A judgment was

entered on April 29, 2011. *Id.* The arbitration proceeding was brought by claimants, RSM Production Corp. and U.S. citizens, alleging that Grenada breached a treaty between the United States and Grenada concerning Reciprocal Encouragement and Protection of Investment, and asserted claims against Grenada for breach of contract, requesting specific performance, declaratory relief and damages. *Id.* at ¶¶ 3-4; *see also* Phillip Decl. Ex. C, at ¶ 4. The tribunal dismissed the claims and granted Grenada its legal costs and fees to pay Grenada's counsel, Freshfields Bruckhaus Dringer ("Freshfields"). Phillip Decl. ¶ 10.

Grenada seeks an order that (1) the Arbitration Funds are immune from attachment under the FSIA, 28 U.S.C. §§ 1330, 1602-1611 or in the alternative, (2) fixing a charging lien pursuant to New York Judiciary Law § 475 in favor of, and directing judgment for, Freshfields. Ex-Im Bank cross-moves for turnover of the Arbitration Funds to Ex-Im Bank to help satisfy the unpaid loans.

**B. The Arbitration Funds Are Immune From Attachment**

Under the FSIA, 28 U.S.C. §§ 1602-1611, the property of a foreign sovereign within the United States is immune from attachment or execution to satisfy a judgment, 28 U.S.C. § 1609, unless the property is subject to one of the exceptions found in the FSIA, 28 U.S.C. § 1610. The sole relevant exception is:

> § 1610. Exceptions to the immunity from attachment or execution
>
> (a) The property in the United States of a foreign state…used for a commercial activity in the United States, shall not be immune from . . . execution, upon a judgment entered by a court of the United States . . . if--
>     (1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication. . . .

*Id.*(a)(1). Grenada waived sovereign immunity from attachment and execution in the loan agreement between Ex-Im Bank and Grenada. *See* Samuels Decl. Ex. 4, Loan Agreement § 9.06. Grenada does not dispute that the Arbitration Funds are in the United States; however, the parties dispute whether they were "used for a commercial activity in the United States." 28 U.S.C. § 1610.

The Arbitration Funds have not been disbursed for commercial or any other activity because before any disbursement was made, Ex-Im Bank restrained the Funds and the parties

stipulated to an order to deposit the Funds with the Court. Phillip Decl. ¶¶ 18-19; *see, e.g.*, *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 131 (2d Cir. 2009) (concluding that assets held in the United States and administered by private corporations for the benefit of Argentine pensioners that were to be transferred to Argentina's social security administration pursuant to Argentine legislation were immune where creditors attached the assets "effective immediately," and so "neither the Administration nor the Republic had any opportunity to use the funds for any commercial activity whatsoever").

Ex-Im Bank responds that *Aurelius* is "unique" and not helpful to Grenada, however, the Second Circuit made it clear that the FSIA's plain language "does not say that the property in the United States of a foreign state that '*will* be used' or '*could potentially* be used' for a commercial activity in the United States is not immune from attachment or execution." *Id.* at 130.  The property "must be used for a commercial activity in the United States 'upon a judgment entered by a court of the United States or of a State.' " *Id.* (quoting 28 U.S.C. § 1610(a)); *see also EM Ltd. v. Republic of Arg.* (*EM Ltd. II*), No. 06 Civ. 7792, 2010 WL 2399560, at *4 (S.D.N.Y. June 11, 2010) ("[I]t is difficult to see how a sum of money frozen by stipulation and thereby entirely unavailable to defendants for more than four years has been 'used' for any activity at all, commercial or not.").  More recently, in *NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845, 2011 WL 1533072, at *6 (S.D.N.Y. Apr. 22, 2011), the Court wrote, "Section 1610(a) requires not that property 'will be used' or 'could potentially be used' for commercial activity, but that the property 'must be used' for commercial activity upon a judgment entered by a court."

Ex-Im Bank's other arguments are also without merit.  Ex-Im Bank argues that the Arbitration Funds were "used for a commercial activity" because "the underlying Arbitration was all about a clearly commercial venture: petroleum exploration by a United States company." Ex-Im Bank Opp. 7.  How the Arbitration Funds came into existence—*i.e.*, whether the underlying arbitration was about a commercial venture—is immaterial. *See Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 254 (5th Cir. 2002) ("That the property is revenue from or otherwise generated by commercial activity in the United States does not thereby render the property amenable to execution.").

Further, Ex-Im Bank argues that the Arbitration Funds have been put to a commercial use already since Grenada used a portion of the Arbitration Funds to pay its Colorado counsel in

3

connection with transferring the Arbitration Funds to this Court. Ex-Im Bank Opp. 7-8.[1]  The amount paid to Grenada's Colorado lawyers, $3,500, was about one percent of the total $303,986.69. Grenada Reply 5-6.[2]  The entire Arbitration Fund has not been put to commercial use. *See, e.g.*, *Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 236 (5th Cir. 2006) (concluding that the fact that "minor reimbursements," well less than fifty percent of the proceeds, had been used for "commercial activity," did not mean that all of the proceeds had been used for a commercial activity); *Liberian E. Timber Corp. v. Gov't of the Republic of Liber.*, 659 F. Supp. 606, 610 (D.D.C. 1987) ("The Court, however, declines to order that if any portion of a bank account is used for a commercial activity then the entire account loses its immunity.").

      Finally, Ex-Im Bank argues that the Arbitration Funds have been clearly designated for commercial use by Grenada because Grenada intends to use them to pay its attorneys. *Cf. EM Ltd. v. Republic of Arg.* (*EM Ltd. I*), 473 F.3d 463, 484-85 (2d Cir. 2007) ("[P]laintiffs presented no evidence to the District Court that the Republic or BCRA [Banco Central de la República Argentina] intended the FRBNY [Federal Reserve Bank of New York] Funds to be so designated [for commercial use]. . . . Even if actual use were not required, at least specific designation for such use would be necessary.").  Grenada correctly points out, however, that in *EM Ltd. I*, *id.* at 474-75, "the question was whether two governmental decrees had legally designated particular funds to be used only in a certain manner." Grenada Reply n.2.  The funds at issue here have not been legally designated for payment to Freshfields, and how the funds "*will* be used" or "*could potentially* be used" is irrelevant. *Aurelius*, 584 F.3d at 130; *see also EM Ltd. II*, 2010 WL 2399560, at *4 (rejecting Plaintiff's argument that frozen funds were used for commercial activity because the use of property "to provide security for potential liability in a civil suit, as here, is the type of commercial activity in which any private actor can engage and is

---

[1] The other cases cited by Ex-Im Bank are distinguishable.  In *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro S.A.*, 875 F.2d 1174, 1177 (5th Cir. 1989), the court concluded that a letter of credit had been used for a commercial activity where the sovereign posted the letter of credit as security for a commercial endeavor in the United States. My case, *Libancell S.A.L. v. Republic of Leb.*, No. 06 Civ. 2765, 2006 WL 1321328, at *3 (S.D.N.Y. May 16, 2006), merely concluded that a "sovereign debt offering is a commercial activity within the definition of the FSIA."

[2] Grenada also argues, without citation, that "[a] sovereign should be entitled to employ legal assistance to assert its rights to an otherwise immune fund without destroying the immunity of the very property that counsel has been hired to protect or secure." Grenada Reply 6.

therefore commercial activity for FSIA purposes"). The funds from the arbitration award are immune from attachment.[3]

## II. Grenada and Interested Third Parties Joint Motion to Vacate the Restraining Notices

### A. Overview of the Motion and Cross-Motion

Since October 2011, Ex-Im Bank has issued restraining notices pursuant to New York Civil Practice Law and Rules ("NYCPLR") § 5222 in an attempt to enforce the 2007 judgment. *See* Greenblatt Aff. Exs. A-L. The notices prevent airlines, cruise lines and shipping companies (the "Restrained Entities") from paying taxes, fees and other charges (the "Restrained Funds") in connection with Grenada-related business operations. *Id.*

Grenada and the corporate entities (the "Corporations")[4] move to vacate these restraining orders because (1) the Restrained Funds are due to the independent Corporations rather than to the Grenada government and, in the alternative, (2) even if the Corporations were deemed "alter egos" of Grenada, the notices would violate the FSIA, 28 U.S.C. §§ 1602-1611. Ex-Im Bank opposes Grenada's motion and cross-moves for discovery and turnover of the Restrained Funds.

### B. Even if the Corporate Entities are Grenada's "Alter Egos," the Notices Violate the FSIA

Although discovery would likely be necessary to determine whether the Corporations are the alter egos of Grenada, I need not resolve the issue because assuming that the Corporations are Grenada's alter egos, the FSIA bars the notices. 28 U.S.C. § 1610(a).[5] The payments that the Corporations receive from these Restrained Entities are used as a source of revenue for carrying out public functions in Grenada. *See, e.g.*, *LNC Invs., Inc. v. Republic of Nicar.*, 2000 U.S. Dist. LEXIS 7814, at *15-*17 (S.D.N.Y. June 8, 2000) (taxes owed by airline to foreign sovereign "are non-commercial in nature and immune from attachment and execution under the FSIA"

---

[3] I need not address Grenada's alternative argument that Freshfields has a valid charging lien against the Arbitration Funds because I find that they are immune from attachment in any event.

[4] Grenada argues that both Grenada and the Corporations have standing to challenge the restraining notices. As a party in the underlying action, Grenada argues that it has standing to challenge the notices and the corporations have standing as "interested third parties." Grenada Mem. 9 (citing *LNC Invs., Inc. v. Republic of Nicar.*, 2000 U.S. Dist. LEXIS 7814 (S.D.N.Y. June 8, 2000)). Alternatively, Grenada argues that the Corporations should be permitted to intervene to seek vacatur of the restraining notices. *Id.* Ex-Im Bank does not address this argument.

[5] At oral argument, I directed the parties to submit supplemental submissions regarding the extent of discovery and what Ex-Im Bank needed to show to obtain discovery. Having now reviewed all of their submissions, I conclude that discovery is not warranted.

because "taxation is a uniquely governmental activity in which private persons cannot and do not engage").[6] Ex-Im Bank cites *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992), in which the Supreme Court concluded that "a foreign government's issuance of regulations limiting foreign currency exchange is a sovereign activity because such authoritative control of commerce cannot be exercised by a private party; whereas a contract to buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts." However, *Weltover* favors Grenada's position: the Restrained Funds are not involved in regular commercial transactions, but rather are collected as part of the Corporations regulation of and provision of access to Grenada's public facilities and services.[7] The restraining notices must be vacated.[8]

## Conclusion

I have considered the parties' remaining arguments and find that they are without merit. For the foregoing reasons, Grenada's motion for a declaration that the Arbitration Funds are immune from attachment is GRANTED and Ex-Im Bank's cross-motion for turnover of the Funds is DENIED. Further, Grenada's joint motion to vacate the restraining notices is GRANTED and Ex-Im Bank's cross-motion for discovery and turnover of the restrained funds is

---

[6] The Restrained Funds, all of which are used for the maintenance of facilities and services in Grenada, are also not "used in the United States" according to Grenada. Grenada Mem. 22.

[7] The other two cases cited by Ex-Im Bank are also distinguishable. In the recently issued Second Circuit decision in *NML Capital, Ltd. v. Republic of Argentina*, 2012 WL 1059073 (2d Cir. Mar. 30, 2012), the court held that funds earmarked by Argentina for purchase of scientific equipment in commercial transactions on the open market in the United States were not entitled to sovereign immunity. Similarly, in *Texas Trading & Mill Corp. v. Federal Republic of Nigeria*, 647 F. 2d 300, 310 (2d Cir. 1981), the court concluded that cement contracts and letters of credit qualified as commercial activity.

[8] In a footnote in its opening memorandum, Grenada argues that the Restraining Notices were improperly issued by Ex-Im Bank without, according Grenada, the procedural protections it is entitled to under the FSIA, particularly seeking a court order prior to issuing the notices. Grenada Mem. at n.12. Grenada is likely correct. *See, e.g., First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 256 (S.D.N.Y. 2000) (noting that First City "concedes that it failed to seek" a court order under § 1610(c) "before serving the Restraining Notice. . . [c]onsequently, the Restraining Notice must be vacated without prejudice to its being renewed upon appropriate motion to the Court"). However, because the notices are vacated on a different and broader basis, this argument is moot.

DENIED. The Clerk of the Court is directed to close these four open motions and remove them from my docket.

**SO ORDERED.**

New York, New York
June 22, 2012

/s/ Harold Baer

Hon. Harold Baer, Jr.
U.S.D.J.