Paul E. Summit
Andrew T. Solomon
Courtney Evanchuk
SULLIVAN & WORCESTER LLP
1633 Broadway
New York, NY 10019
(212) 660-3000

*Attorneys for Plaintiff/Judgment Creditor*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THE EXPORT-IMPORT BANK OF  :
THE REPUBLIC OF CHINA,  :     06 CV 2469 (HB) (AJP)
  :
         Plaintiff/Judgment Creditor,  :
  :
    -against-  :
  :
GRENADA,  :
  :
         Defendant/Judgment Debtor.  :
-------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY VACATUR OF
RESTRAINING NOTICES AND DISBURSEMENT OF FUNDS PENDING APPEAL**

                SULLIVAN & WORCESTER LLP
                  Paul E. Summit
                  Andrew T. Solomon
                  Courtney Evanchuk
              1633 Broadway
              New York, NY 10019

              *Attorneys for Plaintiff/Judgment Creditor The
              Export Import Bank of the Republic of China*

**TABLE OF CONTENTS**

I. Background ..................................................................................................................2

    A.  The Grynberg Funds ..........................................................................................3

    B.  The Restraining Notices.....................................................................................4

II. Argument......................................................................................................................5

    A.  Ex-Im Bank Will Be Irreparably Harmed If The Court Does Not Issue A Stay ..............7

    B.  Ex-Im Bank Has A Substantial Possibility Of Success On Appeal.................................8

        i.  The Grynberg Funds...........................................................................................8

        ii. The Restraining Notices ...................................................................................10

    C.  Grenada Will Not Be Harmed By A Stay ......................................................11

    D.  The Public Interest Supports A Stay................................................................12

III. Conclusion..................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Brenntag International Chemicals, Inc. v. Bank of India*,
   175 F.3d 245 (2d Cir. 1999) ............................................................................................... 7

*Centauri Shipping Ltd. v. Western Bulk Carriers KS*,
   528 F. Supp. 2d 186 (S.D.N.Y. 2007) ............................................................................. 6, 7

*EM Ltd. v. Republic of Argentina*,
   473 F.3d 463 (2d Cir. 2007) ........................................................................................ 3, 4, 8

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
   150 F.3d 172 (2d Cir. 1998) ............................................................................................. 11

*LNC Investments, Inc. v. Republic of Nicaragua*,
   No. 96 Civ. 6360, 2000 U.S. Dist. LEXIS 7814 (S.D.N.Y. June 8, 2000) ......................... 5

*LNC Investments, Inc. v. Republic of Nicaragua*,
   No. 96 Civ. 6360, 2000 WL 729216 (S.D.N.Y. June 6, 2000) ........................................... 7

*Republic of Argentina v. Weltover, Inc.*,
   504 U.S. 607 (1992) .......................................................................................................... 10

*Rodriguez v. DeBuono*,
   175 F.3d 227 (2d Cir. 1999) ............................................................................................... 6

**Statutes**

28 U.S.C. § 1603(d) ................................................................................................................ 10

C.P.L.R. 5222(b) ....................................................................................................................... 2

**Rules**

Fed. R. App. P. 8(a) ................................................................................................................ 12

Fed. R. Civ. P. 62(c) ....................................................................................................... 1, 5, 6

Fed. R. Civ. P. 69(a) ................................................................................................................. 2

The Export-Import Bank of The Republic of China ("Ex-Im Bank") has moved the Court, pursuant to Fed. R. Civ. P. 62(c), to stay (1) vacatur of restraining notices issued by Ex-Im Bank and (2) disbursement of certain funds which are on deposit with the Clerk of this Court.  Ex-Im Bank requests the stay pending its appeal of the Court's June 22, 2012 Opinion and Order ("Order")[1] granting Defendant and Judgment Debtor Grenada's and the Statutory Authorities'[2] motion to vacate restraining notices and granting Grenada's motion for an order declaring the Grynberg Funds immune from attachment under the FSIA.

Whether the Court should grant a stay of enforcement pending appeal is determined by several factors, and we address all of them below.  But the most important factor is irreparable harm and here that factor overwhelmingly favors a stay.  Simply put, if the Court permits the disbursement of funds presently held in the Court's registry, those funds may be lost forever.

How do we know this?  Because for seven years, since Grenada defaulted on its debts and for more than five years, since the entry of judgment in this action, Grenada has paid zero dollars to Ex-Im Bank (except a $10,000 discovery sanction).  And given the hurdles of collecting monies located abroad from sovereign debtors, if the funds presently held in a segregated account in the United States are released abroad to the custody of Grenada, or it its *alter egos*, or transferred free and clear to Grenada's counsel, Freshfields, they will be irretrievably lost to Ex-Im Bank.  And it is not as if Grenada will make restitution, if the Court's ruling is reversed.  Grenada has disclosed no other assets in the United States that are subject to execution, and, with history as a guide, Grenada has no intention of voluntarily paying its lawful debts.  In short, if the *status quo*

---

[1] Ex-Im Bank filed a Notice of Appeal of the Order on June 27, 2012 (Docket #102).

[2] Unless otherwise specified, Ex-Im Bank incorporates by reference the defined terms in its Memorandum of Law in Opposition to Joint Motion to Vacate Restraining Notices; And in Support of Cross-Motion for Discovery of Turnover of Restrained Funds ("Motion to Vacate Opp.") (Docket #85), and the defined terms in Ex-Im Bank's Opposition to Grenada's Motion for an Order (1) Declaring Funds Immune From Attachment or (2) Fixing Charging Lien and Directing Money Judgment For Legal Services Rendered by Freshfields Bruckhaus Deringer; and Memorandum in Support of Cross-Motion for Turnover of Funds ("Grynberg Opp.") (Docket #72).

is not maintained, Ex-Im Bank's appeal – which has real merit (*see* Section II.B. below) – may well be nothing more than an academic exercise.

**I.      Background**

Grenada defaulted on four multi-million dollar loans made to Grenada by Ex-Im Bank between 1990 and 2000.  On March 16, 2007, the Court entered an amended judgment in favor of Ex-Im Bank and against Grenada in the amount of $21,586,057.38, plus pre-judgment interest, attorney's fees and statutory interest.  With post-judgment interest, Ex-Im Bank's judgment against Grenada now stands in excess of $32,000,000.

Five years later, Grenada still has not paid anything to Ex-Im Bank in satisfaction of the judgment.  Instead, Grenada has, on numerous occasions, failed to respond to lawful post-judgment discovery requests, or "complied" at a snail's pace.  It has also failed to disclose assets located in the United States notwithstanding orders of this Court.[3]

Grenada's refusal to satisfy Ex-Im Bank's judgment, even in part, and its intransigence in the post-judgment discovery process have forced Ex-Im Bank to engage in expensive and time-consuming enforcement efforts.  These efforts finally appeared to bear fruit.  Ex-Im Bank located the Grynberg Funds, which were awarded to Grenada as attorney's fees as a result of a commercial arbitration.  Ex-Im Bank also successfully restrained payments destined for Grenada through the use of restraining notices issued pursuant to C.P.L.R. 5222(b) and Fed. R. Civ. P. 69(a), to airlines and cruise lines that make regular payments to Grenada in connection with their operations between the United States and Grenada (the "Restraining Notices").  *See* Motion to Vacate Opp., pp. 2-3.

---

[3] *See* Grynberg Opp., pp. 1-4.

**A. The Grynberg Funds**

After Ex-Im Bank discovered the existence of the Grynberg Funds (which Grenada failed to disclose in response to Ex-Im Bank's post-judgment discovery requests), the parties agreed to deposit them with the Clerk of this Court pending adjudication of their rights.  By order of this Court, Grenada deposited the Grynberg Funds, which total $300,436.69, with the Clerk of Court on December 14, 2011.  The Grynberg Funds remain on deposit.

Grenada and Ex-Im Bank filed cross-motions for turnover of the Grynberg Funds.  Ex-Im Bank argued that it was entitled to turnover of the funds because the funds are exempt from FSIA immunity under the "commercial activities" exception.  This is so because, as Ex-Im Bank demonstrated, Grenada had repeatedly used the Grynberg Funds in commercial activity in the United States (by freezing the funds in an effort to satisfy its arbitration award against a United States debtor, using the United States Courts to do so, and by depositing the funds with this Court) and had also clearly designated the Funds for commercial use, that is, to pay Grenada's New York-based counsel, Freshfields.[4]  Ex-Im Bank also cited Second Circuit precedent for the proposition that, contrary to Grenada's position, *actual use* is not necessary; rather, *designation* for use is enough, *see EM Ltd. v. Republic of Arg.*, 473 F.3d 463, 485 (2d Cir. 2007) – although Ex-Im Bank met both standards.

The Court, however, granted Grenada's motion, finding that the Grynberg Funds were immune from attachment under § 1610(a) of the FSIA, and denying Ex-Im Bank's cross-motion for turnover, because the funds had (in the Court's view) not yet been "used" for commercial

---

[4] Ex-Im Bank also argued that Freshfields had no attorney's lien on the Grynberg Funds.  The Court did not reach this argument.  In the event that the Court denies a stay and Grenada is permitted to disburse the Grynberg Funds to Freshfields, Ex-Im Bank reserves all of its rights to collect the Grynberg Funds, which are not entitled to immunity, from Freshfields.

3

activity – notwithstanding *EM Ltd.*, *id.* at 485 (holding that "actual use" in commercial activity is not required; designation for use is sufficient).

### B.  The Restraining Notices

In another attempt to collect on the judgment, Ex-Im Bank began serving the Restraining Notices in October 2011 on airlines and cruise lines that make regular payments to Grenada in connection with the transport of passengers between the United States and Grenada.  One of the airlines, Virgin Atlantic Airways, began depositing Restrained Funds with the Clerk of Court on March 14, 2012.  Virgin Atlantic Airways has deposited a total of $344,967.30 with the Clerk of Court (the "Virgin Atlantic Funds").

On March 20, 2012, Grenada and the Statutory Authorities (the "Joint Movants") moved the Court to vacate the Restraining Notices.  The Joint Movants submitted six substantive witness affidavits containing sweeping, unsupported statements about the nature and use of the Restrained Funds and the relationships between the Statutory Authorities and Grenada.

Ex-Im Bank opposed the motion to vacate and simultaneously filed a cross-motion for discovery into the claims made in the affidavits.  Ex-Im Bank asked the Court to uphold the Restraining Notices, or, at minimum, to keep them in place long enough for Ex-Im Bank to engage in crucial discovery into the claims made by the Joint Movants in the six substantive affidavits.

The Court, siding with the Joint Movants, characterized the Restrained Funds as a source of revenue for carrying out public functions in Grenada, declared them immune from execution, and denied Ex-Im Bank any discovery into the claims set forth in the affidavits on which the Joint Movants relied.  The Court did not reach the question of whether the Statutory Authorities

4

are *alter egos* of the Grenadian government, although it did indicate that discovery would be necessary to resolve the question. Opinion and Order, p. 5.

The Court analogized the Restrained Funds to a tax, citing to a single case, *LNC Invs., Inc. v. Republic of Nicar.*, No. 96 CIV. 6360 JFK, 2000 U.S. Dist. LEXIS 7814, at *15-17 (S.D.N.Y. June 8, 2000). But *LNC* actually supports Ex-Im Bank. There, the Court defined a "tax" as a "uniquely governmental activity in which private persons cannot and do not engage;" thus it found a "tax" to be non-commercial and immune from execution under the FSIA. *Id.*

But the restrained payments made to the Statutory Authorities do not represent the proceeds of uniquely governmental activity. And there was no basis in the record, other than self-serving conclusions offered by Grenada's affiants, for the Court to conclude that the restrained payments are akin to "taxes." The Court simply credited the unsupported statements in the Joint Movants' affidavits, while denying Ex-Im Bank any opportunity to test them through the discovery process.

The Restraining Notices remain in place and have served to suspend payments from the Restrained Entities to Grenada and/or the Statutory Authorities. The Virgin Atlantic Funds, which represent a fraction of the disputed Restrained Funds, are currently on deposit with the Clerk of Court.

### II. Argument

Fed. R. Civ. P. 62(c) gives the Court discretion to grant a stay in order to prevent irreparable harm and to ensure that the appeal process is meaningful. The rule provides, "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Courts have applied Rule 62(c) in similar

5

circumstances, where a party has moved to stay vacatur of an attachment. *See, e.g., Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 186, 188-89 (S.D.N.Y. 2007) (applying Fed. R. Civ. P. 62(c) to determine motion to stay vacatur of attachment pending appeal).

In determining whether to grant a stay pursuant to Rule 62(c), courts consider the following factors:

1. Whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal;

2. The risk of irreparable injury to the movant absent a stay;

3. The lack of substantial harm to the non-movant if the stay is granted; and

4. The public interests that may be affected.

*Centauri*, 528 F. Supp. 2d at 189, (citing *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993)). These factors are considered on a sliding scale, where more of one factor excuses less of another. *Id.* at 190 n.2 (citing *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)). Because the standards for granting a stay are substantially similar to those for granting preliminary injunctive relief, a showing of irreparable harm should be given the most weight, as it is the single most important factor in the analysis. *See Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999).

An analysis of the factors clearly warrants a stay. As discussed below and for the reasons stated in Ex-Im Bank's original motion papers, Ex-Im Bank has a significant possibility of success on appeal, both with regard to the Grynberg Funds and the Restraining Notices. Public policy supports the issuance of a stay; debtors should pay their obligations. Most significantly, absent a stay, Ex-Im Bank will suffer serious irreparable harm, which outweighs harm (if any) to

Grenada. Indeed, Grenada can hardly complain about delay in getting "its" money, when it has unlawfully held and refused to repay more than $32 million due to Ex-Im Bank.

### A. Ex-Im Bank Will Be Irreparably Harmed If The Court Does Not Issue A Stay

Should the Court deny a stay, Ex-Im Bank will almost assuredly lose access to the Restrained Funds and the Grynberg Funds that it has secured in satisfaction of the judgment. Grenada's failure to pay anything toward the judgment for more than five years alone establishes that, without a stay, the funds will simply disappear. Ex-Im Bank will win what is probably a hollow victory should it prevail on appeal. Ex-Im Bank has spent substantial time and money in pursuing post-judgment enforcement efforts. With the Restraining Notices in place and with the Grynberg Funds and Virgin Atlantic Funds on deposit with the Clerk of Court, Ex-Im Bank has secured funds that could be used to pay a portion of the judgment should Ex-Im Bank prevail on appeal.

Grenada's history of non-payment and its claimed inability to pay the judgment warrants a stay. *See Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (upholding preliminary injunction where debtor was insolvent and, but for the grant of equitable relief, there was a substantial chance that parties could not be returned to the *status quo); cf. Centauri*, 528 F. Supp. 2d at 194 (denying motion for stay of vacatur of attachment pending appeal because movant failed to establish that judgment would otherwise be uncollectible). The contrast with *Centauri* is stark; unlike in that case, Grenada has an established track record of non-payment that all but assures that the judgment would be uncollectible if the Court does not grant a stay. If the Court is not inclined to grant a stay pending appeal, we respectfully request that it grant at least a temporary stay so that Ex-Im Bank may seek a stay from the Second Circuit Court of Appeals. *See LNC Invs., Inc. v. Republic of Nicar.*, No. 96 Civ. 6360, 2000 WL

7

729216, at *2 (S.D.N.Y. June 6, 2000) (denying motion for stay but granting temporary stay to afford movant opportunity to seek stay from Court of Appeals).

### B. Ex-Im Bank Has A Substantial Possibility Of Success On Appeal

#### i. The Grynberg Funds

Ex-Im Bank has a substantial possibility of establishing on appeal that the Court applied the incorrect standard to determine whether the Grynberg Funds were immune under the FSIA. Moreover, even under the incorrect standard that was applied, Ex-Im Bank should have prevailed.

In finding the Grynberg Funds immune, the Court required a showing that the Funds had already been used in commercial activity in the United States to be exempt from the FSIA. The Court imposed this standard despite the fact that (a) the Funds had been frozen *by the debtor*, not the creditor, such that the fact that most of these funds had not yet been ultimately used for attorney's fees was Grenada's responsibility, a unique circumstance distinguishing this case from every other known reported case, and (b) the Second Circuit has clearly indicated that actual use is not (in any event) necessary; rather, *designation* for use is enough. *See EM Ltd.*, 473 F.3d at 485.

Under either standard, however, Ex-Im Bank should have prevailed and has a substantial possibility of success on appeal. Ex-Im Bank has shown that the Grynberg Funds were *actually used* by Grenada in commercial activity in the United States, as evidenced by the following "commercial" actions:

- The Grynberg Fund Arbitration Award was obtained based on Freshfields' New York office's assertion of unpaid legal fees;

- On February 18, 2011, Grenada, represented by Freshfields, invoked the process of the United States District Court for the Southern District of New York to confirm the Arbitration Award for the payment of the attorney's fees;

8

- On April 29, 2011, the United States District Court for the Southern District of New York (Hon. Deborah A. Batts) confirmed the Arbitration Award for the payment of attorney's fees;

- Grenada then invoked the processes of the United States District Court for the District of Colorado to enforce the Arbitration Award for the payment of attorney's fees, and froze the Grynberg Funds;

- After Ex-Im Bank discovered the effort to collect on the Grynberg Funds in Colorado, Grenada entered into a stipulation with Ex-Im Bank pursuant to which Grenada deposited the Grynberg Funds with the District Court; and

- Grenada used a portion of the Grynberg Funds to pay its Colorado counsel.

*See* Grynberg Opp. at pp. 7-8; Reply in Support of Turnover of Funds ("Grynberg Reply") (Docket #85), pp. 2-5.  Thus the Grynberg Funds had already been "used" in commercial activity in the United States.

But, under the "designated for use" standard, Ex-Im Bank also wins.  Grenada designated the Grynberg Funds for commercial use in the United States when it used two judicial systems in the United States for the collection of the Grynberg Funds to pay Freshfields' attorney's fees. This point is repeatedly confirmed in the record:

- Grenada's counsel said without equivocation, in a hearing before this Court, that the Grynberg Funds were a "windfall" to be used to pay Freshfields;

- One of the Freshfields attorneys who represented Grenada in the Arbitration confirmed that the Grynberg Funds would inure to Freshfields for the legal fees associated with the Arbitration;

- Before the Court, Grenada argued that Freshfields was entitled to an attorney's lien; and that the lien had attached as of the time that Freshfields commenced its representation of Grenada in the Arbitration, and in any event, no later than February 18, 2011, before Ex-Im Bank was even aware of the Arbitration Award.

*Id.*  With respect, to find that the Grynberg Funds were not "designated for use" as attorney's fees simply obliterates the meaning of the words "designated for use."

9

### ii. The Restraining Notices

Ex-Im Bank also has demonstrated a substantial possibility that it will succeed in appealing the Court's order vacating the Restraining Notices and denying its cross-motion for discovery. The Court's Order was based solely on the Joint Movants' conclusory statements that the Restrained Funds are akin to taxes and are not used in the United States. But the Supreme Court has made clear that the *purpose* to which the Restrained Funds are put is not relevant in determining whether an activity is "commercial" under the FSIA; rather, the nature of the course of conduct or particular transactions are the appropriate focus of inquiry. *See* 28 U.S.C. § 1603(d); *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) ("when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial'…."). Further, there was nothing in the record, and no analysis, to support the conclusion that the Restrained Funds (namely, the payments made to the Statutory Authorities by U.S. commercial airlines and cruise lines to facilitate their business of transporting passengers between the United States and Grenada) were properly considered "non-commercial" under the FSIA.

In fact, the record supported the opposite conclusion, that the Restrained Funds are involved in commercial transactions: the affidavits describe the Restrained Funds not as taxes, but as, among other things, "fees and charges," "parking fees," and "bagging screening charge[s]." *See* Grynberg Reply, pp. 8-9. Despite this clear evidence of the commercial nature of the Restrained Funds, the Court took the Joint Movants at their word, while denying Ex-Im Bank any opportunity to conduct discovery into the sweeping, unsupported claims made in the substantial affidavits submitted in support of their motion. This was, we respectfully submit, a denial of due process to Ex-Im Bank, and simply unfair.

Further, there is a substantial possibility that the Second Circuit will reverse the Court's denial of any discovery to Ex-Im Bank. Ex-Im Bank is entitled to complete discovery into the claims made by the Joint Movants. *See, e.g., First City, Tex.-Hous., N.A. v. Rafidain Bank*, 150 F.3d 172, 177 (2d Cir. 1998) (vacating district court's motion to dismiss complaint for lack of jurisdiction where court granted motion without permitting plaintiff discovery into facts that could support *alter ago* theory). Discovery into the Joint Movants' unsupported claims is crucial to a determination as to the nature of the Restrained Funds and the alter ego status of the Statutory Authorities. We respectfully contend that the Court erred in denying Ex-Im Bank any discovery. *Id.*

### C. Grenada Will Not Be Harmed By A Stay

While Ex-Im Bank will be irreparably and seriously harmed absent a stay, Grenada will not be significantly harmed. The only issue is delay, and Grenada has no cause to complain. After all, it has $32 million of Ex-Im Bank's money already. The amounts at issue here are but a tiny fraction of that unpaid indebtedness.

Moreover, most of the money is not even destined for Grenada. Grenada admits that the Grynberg Funds have been designated to pay Freshfields (that is why they are "commercial" in character). As to the Restrained Funds, apart from Grenada's unsupported claims of dire financial circumstances, there is no evidence that Grenada will be harmed if the Restraining Notices remain in place. Grenada's airports and ports have continued to operate while the Restraining Notices have been in place. *See* Memorandum of Law in Support of Joint Motion to Vacate Restraining Notices (Docket #78), p. 5. And Grenada took many months even to oppose the Restraining Notices, another important fact militating against some supposed emergency.

### D. The Public Interest Supports A Stay

The public interest favors the enforcement of valid contracts and the collection of valid judgments. If the Court declines to issue a stay of the vacatur and disbursement of funds pending appeal, Ex-Im Bank's chances of ever obtaining even partial satisfaction of its more than $30 million judgment will be drastically reduced, and public policy undermined.

### III.     Conclusion

For the foregoing reasons, Ex-Im Bank respectfully requests that the Court grant a stay of vacatur of the Restraining Notices and disbursement of the Grynberg Funds and the Virgin Atlantic Funds pending Ex-Im Bank's appeal of the Court's June 22, 2012 Opinion and Order. Alternatively, Ex-Im Bank requests that the Court issue a temporary stay so that it may seek relief from the Court of Appeals for the Second Circuit pursuant to Rule 8(a) of the Federal Rules of Appellate Procedure.

Dated: New York, New York			SULLIVAN & WORCESTER LLP
       July 25, 2012

						By: /s/ *Paul E. Summit*
						    Paul E. Summit
						    Andrew T. Solomon
						    Courtney Evanchuk
						1633 Broadway
						New York, NY 10019
						T. 212.660.3000
						F. 212.660.3001

						*Attorneys for Plaintiff/Judgment Creditor The Export Import Bank of the Republic of China*

12