UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE EXPORT-IMPORT BANK OF THE REPUBLIC OF CHINA,<br><br>Plaintiff/Judgment Creditor,<br><br>-against-<br><br>GRENADA,<br><br>Defendant/Judgment Debtor. | :<br>:<br>:<br>:<br>:    06-CV-2469 (HB) (AJP)<br>:<br>:<br>:<br>: |

## JOINT MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF/ JUDGMENT CREDITOR'S MOTION TO STAY VACATUR OF RESTRAINING NOTICES AND DISBURSEMENT OF FUNDS PENDING APPEAL

Brian E. Maas
Khianna N. Bartholomew
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue
New York, New York 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175
bmaas@fkks.com
kbartholomew@fkks.com

*Attorneys for Defendant/Judgment Debtor Grenada*

Steven D. Greenblatt
THE LAW OFFICE OF STEVEN D. GREENBLATT
480 Broadway, Suite 328
Saratoga Springs, New York 12866
Tel.: (518) 824-1254
Fax: (518) 824-5704
sgreenblatt@sdgesq.com

*Attorney for Interested Third Parties Grenada Airports Authority, Aviation Services of Grenada Ltd., Grenada Ports Authority, National Water and Sewage Authority of Grenada, and Grenada Solid Waste Management Authority*

# TABLE OF CONTENTS

Page

Table of Authorities ..................................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ...........................................................................................................3

ARGUMENT ................................................................................................................5

I.   NO ASPECT OF EX-IM'S APPEAL HAS A SUBSTANTIAL POSSIBLITY OF
     SUCCESS ........................................................................................................ 6

     A.   Ex-Im does not have a Substantial Possiblity of Success on its Appeal of the
          Court's Vacatur of Restraining Notices .................................................. 7

     B.   Ex-Im does not have a Substantial Possibility of Success on Appeal
          of the Court's Order Releasing the Grynberg Funds ........................... 10

II.  THE HARM TO GRENADA OF FREEZING THE RESTRAINED FUNDS
     AND THE GRYNBERG FUNDS FAR EXCEEDS ANY POSSIBILITY OF
     INJURY TO EX-IM FROM THE RELEASE OF THE FUNDS .................................. 12

     A.   The Potential Harm to Grenada From the Continuation of the Restraining Notices
          Far Outweighs Any Potential Harm to Ex-Im ....................................... 14

          1.   Ex-Im Will Not Suffer Irreparable Harm in the Absence of a stay .......... 14

          2.   The Joint Movants Face Substantial Harms Should the
               Restrained Funds Not be Released .......................................... 15

     B.   Ex-Im Cannot Show That Any Harm It Would Suffer From the Release of  the
          Grynberg Funds Outweighs the Potential Harm to Grenada. .............. 18

          1.   Ex-Im Has Failed to Demonstrate that it Will Suffer Irreparable Harm
               From the Release of the Grynberg Funds ................................. 18

          2.   Grenada Will Be Harmed if the Release of the Grynberg Funds is
               Stayed.................................................................................. 19

III. THE PUBLIC INTEREST IS BEST SERVED BY THE DENIAL OF
     EX-IM'S MOTION ............................................................................ 20

CONCLUSION................................................................................................22

# TABLE OF AUTHORITIES

Page

## Cases

*Aurelius Capital Partners, LP v. Republic of Argentina,*
    584 F.3d 120 (2d Cir. 2009)......................................................................................11

*Bickerstaff v. Vassar College,*
    196 F.3d 435 (2d Cir. 1999)...................................................................................8, 9

*Centauri Shipping Ltd. v. Western Bulk Carriers KS,*
    528 F. Supp. 2d 186 (S.D.N.Y. 2007) ...................................................5, 6, 12, 13

*E.E.O.C. v. Local 638,*
    No. 71 Civ. 2877, 1995 WL 355589, at *2 (S.D.N.Y. June 7, 1995).....................18

*EM Ltd. v. Republic of Arg.,*
    473 F.3d 463 (2d Cir. 2007).....................................................................................11

*General Transp. Servs. Inc. v. Kemper Ins. Co.,*
    No. 5:03-CV-620, 2003 U.S. Dist. LEXIS 12630 (N.D.N.Y. June 25, 2003).........13

*Hayes v. City University of New York,*
    503 F. Supp. 946 (S.D.N.Y. 1980) ..............................................................6, 12, 15

*In re "Agent Orange" Prod. Liab. Litig.,*
    517 F.3d 76 (2d Cir. 2008)........................................................................................9

*Liberian E. Timber Corp. v. Gov't of the Republic of Liber,*
    659 F. Supp. 606 (D.D.C. 1987)..............................................................................11

*LNC Invs., Inc. v. Republic of Nicar.,*
    96 Civ. 6360, 2000 U.S. Dist. LEXIS 7738 (S.D.N.Y. June 8, 2000)................15, 21

*Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,*
    964 F.2d 106 (2d Cir. 1992)......................................................................................9

*Nat'l Fed. of Independent Business et al. v. Sebelius, Secretary Of
Health and Human Services, et al.,*
    567 U. S. ____ (2012) [p. 33 of Slip Op] .........................................................9 – 10

*NML Capital, Ltd. V. Republic of Argentina,*
    No. 03 Civ 8845, 2011 WL 1533072 (S.D.N.Y. Apr. 22, 2011).............................11

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) .........................................................................................................7, 10

*Sampson v. Murray*,
    415 U.S. 61 (1974) ..........................................................................................................13, 18

*Thapa v. Gonzales*,
    460 F.3d 323 (2d Cir. 2006) ....................................................................................................5

## Rules & Statutes

FED. R. CIV. P. 62(c)........................................................................................................ Passim

FED. R. CIV. P. 58 ......................................................................................................................3

28 U.S.C. § 1610(c) .................................................................................................................14

## PRELIMINARY STATEMENT

On June 22, 2012, this Court issued its Decision and Order ("Order") granting both the Joint Motion to Vacate Restraining Notices, made jointly by Grenada and the Statutory Corporations,[1] and Grenada's separate Motion seeking release of certain funds seized by Grenada in the execution of an unrelated judgment ("Grynberg Funds" or "Arbitration Funds"). With respect to each motion, the Court found that the funds at issue were immune from restraint or seizure under the Foreign Sovereign Immunities Act ("FSIA"), as none of the funds at issue under either motion were used in commercial activities in the United States. In light of these findings, the Court also denied EX-IM's Cross Motions seeking turnover of each class of funds and discovery with respect to the funds restrained by its Restraining Notices. Ex-Im's last-minute motion to stay the release of the funds compelled by this Court's June 22, 2012 Decision and Order ("Order") pending the outcome of its appeal should now also be denied, as Ex-Im cannot meet any of its substantial burdens under FED. R. CIV. P. 62(c).

Ex-Im has little possibility of successfully appealing either aspect of the Court's Order. Ex-Im's Stay Motion raises no new factual or legal arguments that the Court has not already considered and rejected after extensive briefing, oral argument and analysis. There is, therefore, little possibility, if any, that the Court's Order will be reversed on appeal, either on *de novo* review of the Court's legal conclusions, or for abuse of discretion on its factual conclusions and discovery rulings.

Nor does the balancing of equities favor the granting of Ex-Im's motion for a stay, which it must in order for the Court to grant the motion given the unlikelihood of Ex-Im's success on

---

[1] Grenada incorporated by reference the defined terms in its Memorandum of Law in Support of Defendant Grenada's Motion for an Order (1) Declaring Funds Immune from Attachment or (2) Fixing a Charging Lien and Directing Money Judgment for Legal Services ("Grynberg Funds Motion") and the Joint Motion to Vacate Restraining Notices ("Joint Motion").

appeal. As the heads of the Statutory Corporations attest in sworn affidavits submitted herewith, Ex-Im's Restraining Notices have already caused substantial, unwarranted hardships in Grenada that will have disastrous effects on public health and the Grenadian economy if Ex-Im is granted a stay of the Order. By contrast, Ex-Im's only claim of harm is that it will lose access to the Restrained Funds. This economic inconvenience is both outweighed by the Joint Movants' harms and, in actuality, no harm at all. The Restraining Notices restrain an ongoing stream of monthly payments made to the Statutory Corporations. Absent a stay, Ex-Im could prevail on its appeal and these payment streams would still be available for future restraint in perpetuity. Ex-Im's alleged "harm," however, also ignores the fact that it would have no immediate claim to these funds even if its appeal succeeds. Reversal of the Order would simply remand the matter back to the Court for discovery and continued litigation over the claim by the Statutory Corporations that they are independent of Grenada for judgment enforcement purposes.

The proper balancing of the relative harm to Grenada and Ex-Im from the release of the Grynberg Funds also favors Grenada. Ex-Im is correct that once the funds are released to Grenada, to whom the funds are owed, the Grynberg Funds themselves will no longer be available to Ex-Im as Grenada will certainly spend them on current and immediate financial obligations. However, Ex-Im, as a judgment creditor, does not have a specific claim to the Grynberg Funds; rather, as a creditor of Grenada, it has the right to levy on any non-exempt funds that it can locate to satisfy its almost $30 million judgment. While the Grynberg Funds are not insignificant, they only represent approximately 1% of the total judgment and Ex-Im as a determined creditor, will likely be able to substitute another $300,000 for the Grynberg Funds.

Finally, the underlying policy considerations strongly favor denial of Ex-Im's motion to stay the release of the funds. Any interest the public may have in seeing judgments and contracts

enforced is far outweighed by its interest in the enforcement of federal law and the promotion of international comity, both of which can only be served by a denial of Ex-Im's motion. This stay motion is merely another effort by Ex-Im to have this Court interfere in the internal affairs of Grenada and this Court should decline to prevent Grenada from receiving funds to which it is clearly entitled – and to which Ex-Im has, to date, shown no entitlement to

## BACKGROUND[2]

On June 22, 2012, the Court issued a Decision and Order ("Order") resolving four motions. Each motion related to efforts made by Ex-Im to enforce its judgment in this matter against Grenada by attaching and/or restraining funds in which Ex-Im alleged Grenada had interest. Following the parties' full briefing and oral argument, the Court found in favor of Grenada and/or the Joint Movants on each motion as follows: First, the Court granted the Grynberg Funds Motion and declared the funds at issue on such motion immune from attachment. Second, in light of its holding that Ex-Im could not attach the Grynberg Funds, the Court denied Ex-Im's Cross Motion for Turnover of said funds. Third, the Court granted the Joint Motion to Vacate Restraining Notices, brought jointly by Grenada and the Statutory Corporations. Finally, following on its holding with respect to the Joint Motion, the Court denied Ex-Im's Cross Motion for Turnover and Discovery.

On June 26, 2012, the Joint Movants first requested that the Court enter short-form judgment orders with respect to the Joint Motion and the Cross Motion for Turnover and Discovery in accordance with the requirements of FED. R. CIV. P. 58. The Court and all parties hereto received copies of the proposed orders, which were sent by ECF and physical mail. At

---

[2] The Joint Movants assume familiarity with the facts concerning the judgment obtained by Ex-Im in this matter, and those underlying Grenada's Motion for an Order (1) Declaring Funds Immune from Attachment or (2) Fixing a Charging Lien and Directing Money Judgment for Legal Services ("Grynberg Funds Motion") and the Joint Motion to Vacate Restraining Notices ("Joint Motion"), which are set forth in detail in Grenada's Memorandum in Support of the Grynberg Funds Motion and the Joint Movants Memorandum in Support of the Joint Motion.

the Court's request, the Joint Movants re-submitted their request for entry of judgment orders, and in response, on July 7, 2012, Joint Movants submitted a revised proposed judgment order encompassing both such Motions. The revised proposed order was sent by email to the Orders and Judgments Clerk of the Court, and to the Court and all parties via physically mailed letter. On July 19, 2012, the Court notified the parties by email ("July 19 email") that it was "about to sign the two Judgments and noticed that an appeal was pending. We presume all parties are aware that there has been no application for a stay."

Indeed, on June 27, 2012, Ex-Im filed its Notice of Appeal, announcing its intent to appeal the Court's Order, but in the month between the Court's Order and the July 19 email, Ex-Im did not file an application for a stay of the Court's Order. In response to the July 19 email, Ex-Im's attorneys still did not indicate a desire to file such a motion, instead asking by email for several days additional time to consider "whether plaintiff will be filing a motion for a stay." On July 20, 2012, counsel for the Statutory Corporations objected to allowing Ex-Im any additional time beyond the month it had already had, and requested that the Court enter the judgment orders that had been submitted. At 4:00 P.M. on Friday, July 20, 2012, Ex-Im emailed counsel for the Joint Movants and indicated that it intended to file a motion for stay on July 25, 2012, and that the Court had proposed a briefing schedule, which Ex-Im's counsel described. At present, the Court has not entered judgment orders with respect to any of the motions decided in its Order. In accordance with the above-referenced proposed schedule, Ex-Im filed the instant motion on July 25. That same day, in a letter to the Clerk of the Court of Appeals, Ex-Im also requested the maximum amount of time allowed per Local Rule 31.2 for submission of its appeal brief.

The Joint Movants oppose any further delay in the entry or effectiveness of the Court's Order, and therefore now respond to Ex-Im's Motion for Stay with this Memorandum in Opposition.

## ARGUMENT

In order to obtain a stay of this Court's Order vacating the Restraining Notices and releasing the Grynberg Funds, Ex-Im bears the burden of proof that the application of the judicially-created balancing test under Rule 62(c) favors the stay.  There is no dispute as to the four factors to be balanced; as stated in *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 186, 190 (S.D.N.Y. 2007) they are:

1) Whether the movant has demonstrated a "substantial possibility, although less than a likelihood of success" on appeal;

2) The risk of irreparable injury to the movant absent a stay;

3) The lack of substantial harm to the non-movant if the stay is granted; [and]

4) The public interests that may be affected.

It is also not disputed that these factors are to be assessed on a "sliding scale," where the strength of the showing that the moving party is required to make with respect to one factor "will vary according to the court's assessment of the other stay factors." *See Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 186, 190 (S.D.N.Y. 2007) (*quoting* Thapa v. Gonzales, 460 F.3d 323, 334 (2d Cir. 2006)).  See also Ex-Im's Memorandum of Law in Support of Motion to Stay Vacatur of Restraining Notices and Disbursement of Funds Pending Appeal (*"Ex-Im Mem."*) at 6 (*citing Centauri* and *Thapa*).

There is, however, no support for Ex-Im's contention that the "irreparable harm" factor should be considered the most significant in the balancing test under Rule 62(c). *See* Ex-Im

Mem. at 6.  Ex-Im cites no precedent under Rule 62(c) for this position[3] and, in fact, its attempt to buttress this position by analogizing the Rule 62(c) balancing test to that conducted on preliminary injunction motions is contrary to longstanding precedent.  As was held in *Hayes v. City University of New York*, 503 F. Supp. 946, 963 (S.D.N.Y. 1980), while the factors to be considered in adjudicating a Rule 62(c) stay motion "are identical to those used in other contexts, particularly in deciding applications for preliminary relief, . . . they should be applied somewhat differently in the post judgment context."

As discussed below, Ex-Im cannot sustain its burden of proof on any one of the Rule 62(c) factors, or that the overall balance of these factors, assessed on a sliding scale of importance, favors the stay of any portion of the Court's Order.  Thus, this Court should deny Ex-Im's stay motion.

## I.      NO ASPECT OF EX-IM's APPEAL HAS A SUBSTANTIAL POSSIBLITY OF SUCCESS

The movant seeking a stay under Rule 62(c) bears the burden of proving that it has a "substantial possibility, although less than a likelihood, of success" on the merits of its appeal.  *Centauri,* 528 F. Supp. 2d at 189.  In assessing whether the requisite showing has been made, the Court "should turn to external, preferably objective, indicia of the accuracy of [its] judgment," such as "the extent to which the challenged decision is supported by precedent [and] the standard of review that will govern the appeal."  *Hayes*, 503 F. Supp. 946.  Applying these criteria, Ex-Im has failed to show a substantial possibility of success on either prong of its appeal.

---

[3] *Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir. 1999) is simply a preliminary injunction decision in which the injury factor was emphasized. *See* Ex-Im Mem. at 6. *Rodriguez* doesn't mention Rule 62 or post-judgment stays pending appeal, or otherwise indicate its holding should be considered outside the preliminary injunction context.

**A.      Ex-Im does not have a Substantial Possibility of Success on its Appeal
of the Court's Vacatur of Restraining Notices**

Ex-Im cannot sustain its burden of showing a possibility of successfully appealing the

Court's vacatur of the Restraining Notices.  This Court's Order is based on its finding that the

Restrained Funds are immune from execution or attachment as they are not used in "commercial

activity in the United States," the only possibly available exception to sovereign execution

immunity under the FSIA.  In making this finding, this Court applied the test for such

"commercial activity" as set forth in *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614

(1992) – which all parties hereto agree is the proper standard.  *See* Order at 6.; Ex-Im Mem. at

10; and Joint Movants' Reply Brief at 12 – 13 (each *citing, inter alia, Weltover*).  In doing so, the

Court found that the activities for which the Restrained Funds are due are governmental in

nature, are not activities in which private persons would engage,  and that the Restrained Funds

are entitled to FSIA immunity.

On this stay motion, Ex-Im contends that this Court misapplied the *Weltover* test by

focusing on "the *purpose* to which the Restrained Funds are put," as opposed to the activity of

which they are a part, and claiming that "there was nothing in the record, and no analysis, to

support the conclusion that the Restrained Funds . . . were properly considered 'non-

commercial.'"  Ex-Im Mem. at 10 (emphasis original).  However, contrary to Ex-Im's

contention, this Court's Order clearly analyzed the *activity* of which the Restrained Funds are a

part to conclude that the commercial activity exception is inapplicable to the Restrained Funds:

> Ex-Im Bank cites *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614
> (1992), in which the Supreme Court concluded that "a foreign government's
> issuance of regulations limiting foreign currency exchange is a sovereign activity
> because such authoritative control of commerce cannot be exercised by a private
> party; whereas a contract to buy army boots or even bullets is a 'commercial'
> activity, because private companies can similarly use sales contracts."  However,
> *Weltover favors* Grenada's position: *the Restrained Funds are not involved in*

*regular commercial transactions, but rather are collected as part of the Corporations regulation of and provision of access to Grenada's public facilities and services.*

Order at 6 (emphasis added).

In finding that the Restrained Funds relate to governmental activities in Grenada, this Court made fact findings based on Affidavits provided by the heads of the Statutory Corporations affected by the Restraining Notices, as well as the text of the legislation creating the authorities. Ex-Im's suggestion that this Court abused its discretion in making this fact finding by characterizing the affidavits as mere "conclusory statements" is an inappropriate dismissal of properly submitted, credible evidence. Ex-Im Mem. at 10. In addition, the record before the Court also contained corroboration for the affiants' descriptions of the Restrained Funds and their place in the overall Grenadian regulatory scheme in the form of the enabling statutes for each Statutory Corporation, which the Joint Movants also submitted for the Court's consideration. Given the wide latitude and discretion given to District Courts in determining the weight of the evidence before them, Ex-Im will be unable to meet its burden on appeal of showing an abuse of discretion.[4] *See e.g., Bickerstaff v. Vassar College,* 196 F.3d 435, 449 (2d Cir. 1999) (noting that "disputes as to the weight of the evidence . . . are for the fact finder to resolve") (citations and internal quotation marks omitted).

The Court's Order also shows that it gave due consideration to the state of the record prior to reaching this conclusion. The Court's Order expressly refers to its direction to the parties at oral argument "to submit supplemental submissions regarding the extent of discovery and what Ex-Im Bank needed to show to obtain discovery." Order at 5, n. 5. The parties submitted the requested briefs, and the Court after "review[ing] all of their submissions,"

---

[4] This is particularly true here where it was entirely reasonable for the Court to credit the veracity of affidavits sworn to under penalty of perjury by a group of high-ranking Grenadian officials.

"conclude[d] that discovery is not warranted." *Id.* As with other aspects of this Court's Order, this determination as to the adequacy of the record is a matter left to this Court's discretion and is unlikely to be disturbed on appeal. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) ("A district court has wide latitude to determine the scope of discovery, and '[w]e ordinarily defer to the discretion of district courts regarding discovery matters.'") (*quoting Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992)).[5]

Ex-Im asserts on its present motion, as it presumably will on appeal, that the affiants' descriptions of the Restrained Funds as "fees" and "charges" is "clear evidence of the commercial nature of the Restrained Funds." Ex-Im Mem. at 10. However, this Court has already made a contrary finding that can only be reversed if found to have been an abuse of discretion. *See Bickerstaff, supra*, 196 F.3d at 449. No such abuse of discretion will be found here for two basic reasons: first, as the Supreme Court recently found, the labels given by a sovereign to the taxes it chooses to impose can hardly be described as "clear evidence" of whether or not the taxes are, in fact, taxes. *See e.g., Nat'l Fed. of Independent Business et al. v. Sebelius, Secretary Of Health and Human Services, et al.*, 567 U. S. ____, slip op. at 33 (2012)

[5] Under this "abuse of discretion" standard of review, Ex-Im also has little chance of succeeding on its appeal of the Court's denial of its Cross Motion for Discovery. In the discovery context, "[a] district court abuses its discretion only when the discovery is so limited as to affect a party's substantial rights [because a] . . . party must be afforded a meaningful opportunity to establish the facts necessary to support his claim." *In re "Agent Orange,"* 517 F.3d at 103 (citations and internal quotation marks omitted). Ex-Im must also contend with the Second Circuit's admonition that in assessing availability of sovereign execution immunity exceptions, "[d]iscovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination"). *EM Ltd. v. Republic of Arg.*, 473 F.3d 463, 486 (2d Cir. 2007). Throughout this litigation, including in its present Memorandum, Ex-Im has consistently argued that the factual record as it stands absent any discovery is sufficiently well developed to permit findings in its favor on the commercial activity exception. *See e.g.,* Ex-Im Mem. at 10 (noting that "the record supported the . . . conclusion . . . that the Restrained Funds are involved in commercial transactions," and describing the allegedly "clear evidence" of this conclusion to be found in the affidavits submitted by the Joint Movants in support of the Motion to Vacate Restraining Notices). Ex-Im thus concedes that the lack of additional discovery has not limited its ability to establish the facts that it believes are necessary to establish its claims. Nor can it reasonably expect to convince the Court of Appeals to allow discovery on the alter ego questions when, as the Court correctly noted in its Order, there is no need for such discovery if the commercial activity exception is inapplicable to the Restrained Funds. *See* Order at 5.

("It is of course true that the Act describes the payment as a 'penalty,' not a 'tax.' But . . . that label . . . does not determine whether the payment may be viewed as an exercise of Congress's taxing power."). Thus, the references to the Restrained Funds as "fees" and "charges" does not define the essential character of the payments. More importantly, this Court, after reviewing the evidence, held that the Restrained Funds are collected as part of an exercise of Grenada's exclusive, sovereign power to regulate and provide access to its public facilities and services, and that none of these revenue collections – no matter the label given to them or the purpose to which the funds are ultimately put – could be undertaken by any private party. *See* Order at 6. In reaching this conclusion, this Court reasonably relied on credible evidence in the record before it, and thus properly exercised its discretion to make a necessary factual finding as dictated by *Weltover*. Ex-Im will, therefore, not succeed in having this finding reversed on appeal.

### B.   Ex-Im does not have a Substantial Possibility of Success on Appeal of the Court's Order Releasing the Grynberg Funds

In its stay motion, Ex-Im insists that there is a substantial possibility that the Second Circuit, upon hearing Ex-Im's recycled and new arguments for why the Grynberg Funds are not attachable under the FSIA, will overturn this Court's decision. Ex-Im is mistaken. Having read four rounds of briefing and heard oral argument on the issue, this Court, following binding precedent, has rejected the primary arguments on which Ex-Im intends to rely on appeal. As to the other arguments, tried out for the first time on this motion, they are contrary to clear policies underlying the FSIA and the commercial activity exception and will also likely be rejected by the Second Circuit.

Ex-Im's first argument is that Grenada's use of the United States courts to collect the Grynberg Funds and its payment of a $3,500 fee to the lawyer in Colorado who secured the funds constitutes commercial activity of the entirety of the Grynberg Funds in the United States

so as to satisfy the commercial activity exception under the FSIA. Ex-Im Mem. at 9.   This

Court explicitly rejected Ex-Im's effort to extrapolate the payment of this fee to the entire fund

and there is no reason to believe that the Second Circuit will see this use of the funds any

differently. Order at 3-4 citing *Liberian E. Timber Corp. v. Gov't of the Republic of Liber*, 659 F.

Supp. 606, 610 (D.D.C. 1987).

Ex-Im cites to no statutory or judicial authority for its contention that the commercial

activity exception is applicable to these funds because Grenada availed itself of the processes of

the United States courts to collect its arbitration award of attorney's fees and costs.  In fact, it

would be contrary both to the purposes of the FSIA and the principles of comity to find that the

necessary use by a sovereign nation of the courts of another country to collect a debt that

otherwise has no connection to that country could convert otherwise exempt funds into funds that

could be subject to attachment by a creditor.  Given the lack of support for this new argument,

there is no basis for Ex-Im's claim that it has a substantial possibility of success on appeal.

Finally, Ex-Im's recycled argument that Grenada's purported intention to use some

portion of the Grynberg Funds to pay its attorneys in the arbitration satisfies some mythical

"designation for use" argument is unavailing.  This Court properly found that the question how

the funds "will be used" or "could potentially be used" is irrelevant to the application of the

commercial activity exception under the FSIA.  Order at 3-4 citing *Aurelius Capital Partners, LP*

*v. Republic of Argentina*, 584 F.3d 120, 131 (2d Cir. 2009)); *see also NML Capital, Ltd. V.*

*Republic of Argentina*, no. 03 Civ 8845, 2011 WL 1533072, at *6 (S.D.N.Y. Apr. 22, 2011). ;

also, *EM Ltd v. Republic of Arg. (EM Ltd. I)*, 473 Fed 463,484,85 (2d Cir 2007).[6]   Moreover,

---

[6] Counsel's comments at oral argument as to his understanding as to how Grenada intends to use the Grynberg
Funds is neither binding on Grenada nor does it constitute a legal designation that payment will be made in a certain
way.  Also, the fact that Grenada presented the Freshfields attorney lien argument as an alternative basis on which to
reject Ex-Im's claim to the funds does not demonstrate a designation of use.  Rather, the argument was presented on

this Court's recognition that the Grynberg Funds have not been legally designated for payment to Freshfield so that Ex-Im's "designation" standard has not been met will not be found to have been an abuse of discretion that could support a reversal.[7]

## II. THE HARM TO GRENADA OF FREEZING THE RESTRAINED FUNDS AND THE GRYNBERG FUNDS FAR EXCEEDS ANY POSSIBILITY OF INJURY TO EX-IM FROM THE RELEASE OF THE FUNDS

As noted above, Ex-Im has misstated the law in order to overstate the significance of the risk of "irreparable harm" to the movant seeking a Rule 62(c) stay. In fact, the post-judgment context of a Rule 62(c) motion substantially alters the equation as a decision has already been made that the party seeking the stay should be deprived of whatever property or right is at stake

> Courts seek to avoid irreparable injury prior to trial, not because an irreparable injury is necessarily unjust, but because the legality of its imposition has yet to be determined. After judgment is entered, the propriety of the injury however irreparable has been judicially determined, and its imposition without further delay is surely more acceptable than prior to judgment. What follows from this greater acceptability for permitting irreparable injury is a corresponding increase in the burden of justifying its continued deferral.

*Hayes*, 503 F. Supp. at 964.[8]

Moreover, the movant's demonstration of injury is not enough to support a stay; the injury must be irreparable, which has been held to require a showing of more than monetary damages or the present inability to enforce a money judgment. *See, e.g., Centauri*, 528 F. Supp. 2d at 193-95 (rejecting judgment creditor's claim that it would suffer "irreparable injury, since

---

Freshfields' behalf as part of Grenada's brief as part of an agreement with Ex-Im's counsel to simplify the briefing on this issue.

[7] Again Ex-Im relies in vain on *EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007), in support of its designation argument. However, in *EM Ltd.*, the Second Circuit found that *multiple executive decrees from Argentina's President* that permitted the funds at issue would be used to pay certain debt *did not* constitute "evidence that actual use or designation for use occurred." *See id.* at 484.

[8] *Hayes* recognizes that there may be some instances in which "the right to an appeal suggests suspension of any possible injury that would render the appeal meaningless," but notes that "in general, the losing side in a litigation should bear a heavier burden on this issue, when the injury alleged is not of the sort that would interfere with the appellate function." *Id.* at 964. As described herein, no injury that Ex-Im could possibly suffer if its Motion is denied could affect the meaningfulness of its appeal in any way. *See, infra*, Sections II(A) and II(B).

there is a reasonable chance that [defendant] may not be able to satisfy future money judgments obtained by plaintiff against defendant" and holding that "the monetary injury alleged by plaintiff is not the type of injury that may justify a stay of the vacatur pending appeal") (internal quotation marks and citations omitted).  While stays have been granted where the judgment debtor is deemed "insolvent," the exception has been narrowly applied and Ex-Im's general allegations of "Grenada's history of non-payment and its claimed inability to pay" are insufficient to bring this case within it.[9]  *See e.g., Centauri,*  528 F. Supp. 2d at 194 – 195 (declining to apply insolvency exception where judgment debtor was in possession of assets, generating pre-tax profits, and is not in danger of imminent insolvency); *General Transp. Servs. Inc. v. Kemper Ins. Co.*, No. 5:03-CV-620, 2003 U.S. Dist. LEXIS 12630, at *3-4 (N.D.N.Y. June 25, 2003) (declining to apply insolvency exception because "although Plaintiff arguably raises questions about [the defendant's] present financial condition, its assertions fall far short of establishing that [the defendant] is in 'imminent' danger of becoming insolvent," even where the defendant's credit rating had been downgraded, the defendant had defaulted on $700 million of its notes, and had laid off 1,000 of its 7,000 employees).[10]

---

[9] This is particularly the case where Ex-Im has ignored Grenada's settlement proposals under which Ex-Im will be repaid its principal in full and Grenada has made clear that it is precluded from making voluntary payments absent an agreement that preserves the inter-creditor equity required by Grenada's agreement with its other creditors.

[10] Ex-Im's desire to invoke the insolvency exception and distinguish this case from the result in *Centauri* is to no avail. Ex-Im Mem. at 7.  Like the debtor in *Centauri*, Grenada is in possession of assets and generates revenues – a fact which Ex-Im is undeniably aware of because it has restrained them!  Furthermore, while not minimizing the amounts at issue in this case, Grenada's failure to pay Ex-Im roughly $30 million is but a small fraction of the debtor's $700 million default in *General Transp. Servs. Inc.*, which the court still found an sufficient basis for invocation of the insolvency exception.  Finally, Grenada is a sovereign nation.  Unlike an imminently insolvent corporate entity, it is not going anywhere.  Ex-Im may not be able to collect on its judgment today, but there is no reason to believe that there is no possibility of collection on its judgment in the future, which in and of itself means Ex-Im's claimed injury is not irreparable.  *See Centauri*, 528 F. Supp. 2d at 195 ("Therefore, because '[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm,' *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974), the Court rejects plaintiff's alleged monetary injury as a basis for a stay of the vacatur pending appeal.").

**A.     The Potential Harm to Grenada From the Continuation of the Restraining Notices Far Outweighs Any Potential Harm to Ex-Im**

1.  Ex-Im Will Not Suffer Irreparable Harm in the Absence of a Stay

Ex-Im's claim to any risk of injury from a denial of a stay of the vacatur of the Restrained Funds is belied by the fact that at present, it has established no right to restrain these funds in the first place.  Ex-Im has yet to establish that the funds at issue even belong to Grenada, which it must do before it has any right to restrain the funds.  *See* Joint Movants' Reply Brief at 8 – 12; Joint Movants' Supplemental Brief on Discovery Scope at 4.  Even assuming, as the Court did for purposes of its Order, that the Statutory Corporations are the alter egos of Grenada, Ex-Im also never obtained the court order required under FSIA § 1610(c) that would have permitted the Restraining Notices to be issued in the first place.  Ex-Im thus has, as of now, no right to restrain any of these funds at all.  *See, e.g.*, Joint Movants' Reply Brief at 3 – 8; Joint Movants' Supplemental Brief on Discovery Scope at 2.  *See also* Order at 6 n. 8 (declining to rule on the issue in light of its vacatur of the Restraining Notices "on a different and broader basis," but noting that "Grenada is likely correct" that the Restraining Notices should be vacated as "improperly issued by Ex-Im Bank" under the procedures of the FSIA).

Furthermore, even if Ex-Im is at some point in the future able to establish its right to look to the Restrained Funds in execution of its judgment against Grenada, the denial of a stay pending appeal will not affect its ability to access the Restrained Funds at such time.  It is indisputable that the Restrained Funds are not a fixed amount of money collected in a one-off transaction.  Rather, these funds are collected on a monthly basis from the various entities required by law to pay them, and, absent the complete shut-down of all international transit into and out of Grenada, they will continue to be paid and collected for the foreseeable future.  Thus, were Ex-Im to prevail on its appeal, conduct the discovery it contends is necessary, convince the

14

Court that its Restraining Notices were properly issued, and prevail on its turnover motion, it will at that point be able to execute on a continuing stream of funds as they are paid by the Restrained Entities for as long as its judgment remains unpaid.  Therefore, Ex-Im's appeal of this prong of the Order will remain meaningful, Ex-Im cannot meet its burden of "justifying [the] continued deferral" of the Court's vacatur of the Restraining Notices, and its Motion should be denied.  *See Hayes*, 503 F. Supp. at 964; *see also LNC Invs., Inc. v. Republic of Nicar.*, No. 96 Civ. 6360, 2000 U.S. Dist. LEXIS 7738, at *4 (S.D.N.Y. June 8, 2000) (denying Rule 62(c) motion for stay pending appeal upon finding that even if the dispersal of Restrained Funds would cause movant to lose access to the dispersed funds, such injury was not irreparable).

### 2.   The Joint Movants Face Substantial Financial Harm Should the Restrained Funds Not be Released

Ex-Im contends without any basis that "Grenada will not be significantly harmed" by a stay of the Court's Order.  In fact, the Restraining Notices have already caused substantial harm to Grenada's public authorities, the Statutory Corporations, and as discussed in the Affidavits submitted from the heads of these entities, a stay of the Court's Order vacating the restraints would, in all likelihood, bring dire consequences to the Statutory Corporations and to the nation of Grenada.  The realistic possibility of these harms coming to pass manifestly outweighs any short-term harm Ex-Im may suffer from the release of the presently restrained funds.

Contrary to Ex-Im's assertion, the absence of the receipt of the Restrained Funds has caused substantial harm to the Grenada authorities.  *See* Ex-Im Mem. at 11.  The Grenada Airports Authority, alone, is presently due approximately $1.6 million from Restrained Entities that have been unable to make payments due to the Restraining Notices.  *See* Affidavit of Rodney George dated July 27, 2012 ("George Aff.") at ¶ 3.  This amount represents 37% of the GAA's 2012 budget, the deprivation of which has forced the GAA to incur massive amounts of

15

privately-funded, high-interest debt, and to forego critical updates and repairs to airport facilities essential to the continued operation of Grenada's airport. *Id.* at ¶¶ 4 – 5. The other Statutory Corporations have each been forced to react similarly to the absence of these funds, burdening themselves with high-interest debt and the corresponding repayment obligations, slashing services, and foregoing critical maintenance. *See* Affidavit of Leslie Scott dated July 26, 2012 ("Scott Aff.") at ¶¶ 3 – 9 (describing debt incurred, maintenance foregone, and services curtailed as a result of the Restraining Notices); Affidavit of Karen Roden-Layne dated July 26, 2012 ("Roden Layne Aff.") at ¶¶ 4 – 7 (same, and noting that "[t]he Restraining Notices have, in short, pushed the [Grenada Solid Waste Management Authority] to the brink of operational paralysis and financial insolvency"); Affidavit of Ambrose Phillip dated July 30, 2012 (Phillip Aff. at ¶¶ 3 – 8) (noting, *inter alia*, Grenada Ports Authority has relied on high interest loans for operational expenses and critical maintenance projects foregone as a result of the Restraining Notices); Affidavit of Terrence Smith dated July 30, 2012 ("Smith Aff." at ¶¶ 3 – 7) (same for National Water and Sewage Authority).

This situation is the reality that underlies Ex-Im's flippant observation that "Grenada's airports and ports have continued to operate while the Restraining Notices have been in place." Ex-Im Mem. at 11. Should the Court grant Ex-Im's Motion and stay the vacatur of the Restraining Notices, the situation will likely deteriorate further. For instance, absent immediate vacatur of the Restraining Notices, the National Water and Sewage Authority will be unable to repair a major sewage conduit that it has recently discovered is dumping raw sewage into the near-shore marine environment, and which if not repaired will create a massive environmental and public health disaster. *See* Smith Aff. at ¶ 4. The Solid Waste Management Authority is also on the brink of being forced to shut down much of Grenada's solid waste collection systems

due to the funding crisis engendered by the Restraining Notices, which will cause yet more negative consequences for the health and safety of the people of Grenada. *See* Roden-Layne Aff. at ¶ 7. A stay would also risk bringing an end to the continued operation of the ports resulting from service interruptions and failures of essential operational and safety equipment and facilities. *See* George Aff. at ¶¶ 6- 8; Scott Aff. at ¶ 9 ("The continuation of these restraints on ASG's funding will mean that fewer services will be offered to the airlines and passengers that utilize Grenada's airport, that more equipment will break down and be taken out of service, and that more debt will accumulate, extending indefinitely the amount of time that ASG will be making unwarranted interest payments instead of investing in its operations."); Phillip Aff. at ¶ 6 (continued deferral of port maintenance may lead to inability to repair essential cargo handling equipment that the GPA cannot afford to replace). Needless to say, any diminishment or closure of the ports of Grenada would only deepen the country's financial troubles as tourism and cargo revenues would shrink, if not disappear, leading to even more contraction of the government's ability to maintain essential public services. *See* George Aff. at ¶ 8; Scott Aff. at ¶9.

The aforementioned harms are real, imminent and potentially devastating. The Joint Movants respectfully submit that the risk of such harms clearly outweighs any risk that Ex-Im will be unable to collect some portion of its judgment in the unlikely event that it is first able to convince the Court of Appeals to overturn the Court's Order and have another try at substantiating its right to look to the Restrained Funds to do so. Ex-Im's Motion should, therefore, be denied.[11]

---

[11] Moreover, given the imminence and severity of the harms that are likely to befall Grenada unless the Restraining Notices are vacated soon, the Joint Movants respectfully submit that no hearing on Ex-Im's Motion is necessary and, unless the Court has particular questions for the parties, urge the Court to render a swift decision on the papers alone following Ex-Im's submission of its reply brief. The parties have certainly and thoroughly briefed the substantive issues underlying the Court's Order and much of this Motion, and as the Movant, Ex-Im has two briefing opportunities to make its arguments clearly and comprehensively to the Court.

**B.      Ex-Im Cannot Show That Any Harm It Would Suffer From the Release of the Grynberg Funds Outweighs the Potential Harm to Grenada**

> 1.   Ex-Im has Failed to Demonstrate that it Will Suffer Irreparable Harm From the Release of the Grynberg Funds

Ex-Im contends on its stay motion that the release of the Grynberg Funds would cause irreparable harm should this Court's determination that the funds are exempt from execution subsequently be reversed.  First, as shown above, there is little likelihood of reversal so that Ex-Im's concerns over its access to the funds is misplaced.  Second, Ex-Im misstates the proper standard for this harm element.  Ex-Im focuses on its ability to access the Grynberg Funds should there be a reversal as though these funds were somehow unique.  In fact, as the Supreme Court has made clear, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm," *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974).  *E.E.O.C. v. Local 638*, No. 71 Civ. 2877, 1995 WL 355589, at *2 (S.D.N.Y. June 7, 1995) ("Irreparable injury means 'the kind of injury for which money cannot compensate,' and therefore '[a] monetary loss will not suffice unless the movant provides evidence of damage-that cannot be rectified by financial compensation.").

Thus, if Ex-Im will be able to receive an equivalent amount to the Grynberg Funds from another source, then the release of the Grynberg Funds cannot be considered to have harmed Ex-Im.  Here, there is nothing unique about the Grynberg Funds; they represent approximately one per cent (1%) of the judgment that Ex-Im seeks to collect and should this Court's finding that the funds are exempt be reversed, Ex-Im will have ample opportunity to seek the attachment of substitute Grenadian assets against which to levy.

More importantly, Ex-Im wrongly contends that Grenada's failure to date to make payment on the judgment is relevant to whether it will be irreparably harmed by the release of

the Grynberg Funds. In fact, Ex-Im's focus on Grenada's non-payment ignores totally the fact that Grenada has made clear for almost three years that it intends to satisfy its obligation to Ex-Im but that it is required by its agreements with other creditors to enter into a repayment schedule with Ex-Im that is no more favorable than its payment schedules with its other creditors. Consistent with this position, Grenada made its first settlement offer, promising an initial payment substantially in excess of the Grynberg Funds, at the time it served its initial Interrogatory Responses in September 2009 and has recently made a somewhat more generous offer.[12] These settlement overtures have been ignored.

> ### 2. Grenada Will be Harmed if the Release of the Grynberg Funds is Stayed

Despite its expressed desire to be repaid, Ex-Im has never even responded to Grenada's settlement overtures. Instead, it has engaged in time consuming and expensive discovery litigation, issuance of the Restraining Notices, and made its unfounded claim to the Grynberg Funds. This strategy has to date has only confirmed that Grenada is an impoverished debtor nation that does not have assets outside Grenada that are subject to execution. Thus, while Ex-Im may wish to deprive Grenada of the Grynberg Funds, there is no basis for its claim that it will be irreparably harmed by the release of the Funds. [13]

---

[12] Under both settlement proposals, Ex-Im would be paid the principal balance on the notes in full over a time period and at an interest rate consistent with the arrangements that were accepted by its other sovereign creditors in 2007-2008 when Grenada's severe financial problems necessitated the renegotiation of both its sovereign and private debt.

[13] That these funds are not significant to Ex-Im is confirmed by its leisurely pace on this appeal. First, it did not make a stay motion when this Court's decision was entered and did not even make the motion when Grenada submitted judgments to this Court for the release of funds held by Clerk of the Court. Instead, this motion was only made when the court notified the parties that it intended to sign the judgments and noted that no stay motion had been made. Then, when required by the Second Circuit Rules to set a schedule for the filing of the record and its initial brief, Ex-Im chose the longest available time for its filing—91 days—thereby delaying the full briefing and argument of its appeal until early next year. Thus, should a stay be entered as to the release of the Grynberg Funds, they will not be available to Grenada for many months, during which time the interest on Ex-Im's judgment will have grown by a greater amount. Thus, were Ex-Im truly interested in having its judgment satisfied, it would respond to Grenada's settlement proposal and resolve this matter without the delay and expense attendant to its current strategy.

This apparent unimportance of the Grynberg Funds to Ex-Im contrasts sharply with the importance of $300,000 to Grenada.  First, the fact that Grenada's counsel in the Grynberg Arbitration is owed an equivalent amount of money is not relevant to Grenada's right to receive these exempt funds as soon as possible.  Moreover, Grenada's ongoing budget crisis is well recognized and Grenada is free to utilize the Grynberg Funds as required to address its domestic financial needs.  Clearly, the receipt now by Grenada of $300,000 is far more important to Grenada than the preservation of a fund of $300,000 for Ex-Im in the unlikely event it wins a reversal of the Order sometime next year.[14]

## III.    THE PUBLIC INTEREST IS BEST SERVED BY THE DENIAL OF EX-IM'S MOTION

Without denying Ex-Im's contention that "the enforcement of valid contracts and the collection of valid judgments" are in the public interest, these interests cannot be protected at the expense of the rule of law, and the United States' reputation in the international community of nations, both of which would be harmed by a granting of any stay in this case.

As noted above, Ex-Im's failure to both obtain an adjudication of its right to look to the assets of the Statutory Corporations in enforcement of its judgment, and its failure to comply with the procedural protections afforded Grenada under the FSIA prior to issuing the Restraining Notices requires their immediate vacatur.  *See*, *supra*, Section II(A).  A stay of the vacatur of the Restraining Notices pending the outcome of Ex-Im's appeal would thus allow Ex-Im to illegally restrain alleged sovereign property in violation of both due process and the express provisions of the FSIA.  Not only would such a result offend the rule of law, generally, but it would

---

[14] As noted above, the interest on Ex-Im's judgment will have increased by an amount greater than the Grynberg Funds by the time the Second Circuit rules on Ex-Im's appeal next year.

understandably call into question the United States' commitment to basic principles of international comity among nations.

A continuing freeze on the release of the Grynberg Funds would similarly offend basic principles of international comity. Grenada won an award of attorney's fees and costs in an arbitration that had no connection with the United States. The obligor under the award happened to have assets in the United States and Grenada retained counsel to obtain judgment in this court and then to collect it's judgment from the debtor. These efforts were successful, but Ex-Im has so far succeeded in using this Court to prevent Grenada from repatriating its asset in violation of the FSIA. This proceeding is not a typical commercial dispute as Grenada is a foreign sovereign. Its rights in this country are expressly protected and governed by the FSIA, and it is entitled to the deference accorded foreign sovereigns when they appear in a United States court.

Finally, because any further continuance of the restraints on either the Restrained Funds or the Grynberg Funds would be in violation of these public interests, the Court should also deny Ex-Im's alternate request for a temporary stay of the vacatur to permit Ex-Im to seek a stay from the Court of Appeals. *See* Ex-Im Mem. at 7 – 8. This is especially so with respect to any stay of the Order vacating the Restraining Notices, as there is no indication that the continued effectiveness of the restraints at issue in *LNC Invs., Inc.,* which Ex-Im cites in support of its temporary stay request, was in literal violation of substantive, federal laws, as is the case with respect to the Restraining Notices in this case. *See, supra,* Section II(A). The public interest would thus be as offended by a temporary stay as it would be by a full blown stay pending appeal, and so Ex-Im's motion for stay should be denied in its entirety.

21

## CONCLUSION

For the foregoing reasons, the Joint Movants respectfully request that the Court deny Ex-Im's Motion for Stay Pending Appeal, enter judgments confirming its Order with respect to both the Joint Motion and the Grynberg Motion on the docket in this case, and award such other and further relief as it may deem appropriate.

Dated:  New York, New York
       July 30, 2012

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By:  /s/Brian E. Maas           
   Brian E. Maas
   Khianna N. Bartholomew
488 Madison Avenue
New York, New York 10022
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
bmaas@fkks.com
kbartholomew@fkks.com

*Attorneys for Defendant/Judgment Debtor Grenada*

THE LAW OFFICE OF STEVEN D. GREENBLATT

By:  /s/ Steven D. Greenblatt       
   Steven D. Greenblatt
480 Broadway, Suite 328
Saratoga Springs, New York  12866
Tel.:  (518) 824-1254
Fax:  (518) 824-5704
sgreenblatt@sdgesq.com

*Attorney for Interested Third Parties Grenada Airports*
*Authority, Aviation Services of Grenada Ltd., Grenada*
*Ports Authority, National Water and Sewage Authority*
*of Grenada, and Grenada Solid Waste Management*
*Authority*

22