UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE EXPORT-IMPORT BANK OF THE
REPUBLIC OF CHINA,

           Judgment Creditor,

-against-

GRENADA,

           Judgment Debtor.

06-CV-2469 (HB) (AJP)

**AFFIDAVIT OF LESLIE SCOTT IN OPPOSITION TO MOTION TO STAY VACATUR OF RESTRAINING NOTICES**

I, LESLIE SCOTT, state under penalty of perjury as follows:

1. I am the General Manager of Aviation Services of Grenada Ltd. ("ASG"). I make this affidavit from personal knowledge except as to statements made on information and belief, and as to such statements, I believe them to be true.

2. On March 16, 2012, I executed an affidavit in support of the Joint Motion to Vacate Restraining Notices in the above-captioned proceeding. In paragraph 10 of that affidavit, I stated that it was "imperative that any improper restraint" of funds due and owing to ASG "cease as soon as possible" because "interruption in the receipt of these payments would have a disastrous impact on ASG's ability to continue to function." The purpose of this new affidavit is to reaffirm these statements, and to describe for the Court the effect that the Restraining Notices have had on ASG's operations thus far, as well as the further harm that ASG would suffer in the event that the Court's June 22, 2012 decision vacating the Restraining Notices is stayed.

3. As I also stated in my previous affidavit, the payments made by airlines that utilize ASG's services are ordinarily ASG's only sources of revenue. The Restraining Notices have cut off this funding as the airlines that would normally be making payments to ASG have withheld such payments. The only way ASG has been able to operate in the months under which the Restraining Notices have been in effect is by obtaining high-interest (6% per year) private

1

loans to finance necessary expenditures, i.e., financing its operations entirely through the incursion of debt.

4. These loans are ordinary loans that must be repaid by ASG in full and under which ASG must presently make significant monthly payments that further cut into the amount of cash it has to devote to its operations. Moreover, because these loans require repayment with interest, even if the Restraining Notices were vacated effective today and ASG's ordinary payment streams were restored, ASG would still be saddled with significant debt as a result of the accumulation of interest that it would not have had to incur but for the vacated restraints. Should the Court grant Ex-Im's motion for a stay of the Court's previous Order, this interest burden will only get worse.

5. Furthermore, because every dollar presently spent by ASG causes ASG to go further into debt, ASG has been forced to radically and detrimentally scale back its operations and the level of service it can offer its customers (the airlines that fly into Grenada). For example, we have ceased keeping a full stock of spare parts to maintain or repair the equipment used in our operations. Rather, to limit expenditures, we presently order spare parts only on an as-needed basis for repairs, and even then, only for the most essential equipment. As a result, equipment is not being properly maintained, and when equipment breaks down, we are unable to repair it without considerable delay – if at all.

6. One result of this policy of frugality is that we have had to take our air conditioning unit off-line as it is in need of new parts but is not deemed an "essential" piece of equipment. The unit is used to provide air conditioning to planes while the planes are at the gate without their engines running (airplane air conditioning systems only work when the plane's engines are running). The direct result of the Restraining Notices is, therefore, that passengers

on planes sitting at the gate must do without air conditioning until normal funding of ASG's operations resumes and we can repair or replace the air conditioning unit.

7.  The lack of incoming revenues has also forced ASG to indefinitely table necessary expansions of its present facilities and services that are necessary to meet our clients' expectations. In particular, we have been forced to put on hold plans to construct a new and necessary maintenance facility for servicing our ground support equipment. Lack of funding has also prevented us from complying with a major airline's request that we hire a full time Human Resources Officer who, among other things, would ensure that deadlines for audits and employee training are met.

8.  The aforementioned problems are not small matters, but rather go to the core of our operations. Our clients have made clear to us that a poor level of service from us causes their passengers discomfort, which reflects poorly on them. It also reflects poorly on the nation of Grenada, which is being forced as a direct result of the Restraining Notices to provide a sub-par arrival and departure experience to the very tourists that are so essential to its overall economy.

9.  The Restraining Notices have thus directly prevented ASG from properly operating its business and from satisfying its clients and the people who must fly in and out of Grenada's airport. The continuation of these restraints on ASG's funding will mean that fewer services will be offered to the airlines and passengers that utilize Grenada's airport, that more equipment will break down and be taken out of service, and that more debt will accumulate, extending indefinitely the amount of time that ASG will be making unwarranted interest payments instead of investing in its operations. Grenada's airport is the first and last experience most travelers to the country have. As there is no other entity in Grenada that could provide the services ASG provides, any decline in the standard of ASG's operations – which are essential to

the continued functioning of the airport – will harm the country as a whole, damaging the impressions Grenada creates and leaves with its visitors, and in turn, damaging Grenada's tourist-dependent economy. It is, therefore, imperative that any improper restraint of these funds cease as soon as possible, and so I respectfully request that the Court deny Ex-Im's motion.

Dated: July 26, 2012

_____
Leslie Scott
General Manager, ASG Ltd.

Sworn to before me this
26 day of July, 2012

_____
Notary Public

SHEILA M. HARRIS
Notary Public
Lucas Street, St. George's
Grenada, W.I.
Tel: (473) 440-1627 / 3459
harris@grantjolawyers.com
Commission Expires 24/11/14