UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE EXPORT-IMPORT BANK OF THE REPUBLIC OF CHINA,                 Judgment Creditor, <br><br> -against- <br><br> GRENADA, <br>                Judgment Debtor. | 06-CV-2469 (HB) (AJP) <br><br> **AFFIDAVIT OF RODNEY GEORGE IN OPPOSITION TO MOTION TO STAY VACATUR OF RESTRAINING NOTICES AND DISBURSEMENT OF FUNDS PENDING APPEAL** |

I, RODNEY GEORGE, state under penalty of perjury as follows:

1. I am the Chairman of the Grenada Airports Authority ("GAA"). I make this affidavit from knowledge except as to statements made on information and belief, and as to such statements, I believe them to be true.

2. It is my understanding that EX-IM now seeks a stay of the Court's June 22, 2012 Order vacating the Restraining Notices it had previously issued in this matter, and that in part, EX-IM has argued that such a stay is appropriate because there is no evidence that Grenada will be harmed if the Restraining Notices remain in place. The purpose of this affidavit is to inform the Court of precisely how wrong and uninformed such an assertion is.

3. As I stated in my previously submitted affidavit in support of the Joint Motion to Vacate Restraining Notices, many if not all of the airlines that fly in and out of Grenada have complied with the restraining notices and have withheld from the GAA those payments they are obligated to make in conjunction with their Grenada-related business operations, and which comprise the GAA's primary source of revenue. More specifically, as of June 30, 2012, funds held in escrow or otherwise restrained and unpaid belonging to the Grenada Airports Authority, totaled approximately US$ 1.6 million – an amount comprising 37% of the GAA's entire expected 2012 income.

1

4. A 37% shortfall in revenue is not easily absorbed by an entity such as the GAA, which typically utilizes all of its revenues in a given year to fund its basic operations. Since the imposition of the Restraining Notices, the GAA has been forced to fund this cash shortfall by going ever deeper debt. Specifically, necessary operating cash sufficient to make up for the revenue lost as a result of the Restraining Notices has come from a short-term credit facility under which the GAA has been able to borrow required funds at 6.5% interest. The private lender through which this facility was obtained, however, has now placed the GAA on notice that the facility has expired and is due for immediate repayment. The GAA expects to be completely cut off from funding under this facility as of August 2012. Absent restoration of the Restrained Funds, the GAA will have no other funding options once it is cut off from the above-described short term lending facility. This includes government funding, which the GAA does not ordinarily receive, and which it cannot expect to receive on even an emergency basis under present economic conditions.

5. The effect of the Restraining Notices up to this point has been bad enough – the GAA has incurred significant debt it would not otherwise have had to incur, and is now saddled with repayment obligations which will divert significant amounts of cash away from its operations and towards repayment of the interest burden on this debt. Thus, even if the Restraints are vacated effective immediately and its normal revenue stream restored, the GAA will have already suffered considerable harm.

6. The effect of a stay of the Court's Order, however, would be disastrous for the GAA. First, the GAA has other financing repayment obligations entered into prior to the imposition of the Restraining Notices. Without restoration of the Restrained Funds and its regular income stream, the GAA will have no option but to default on these obligations. Such a default would have negative consequences for both the GAA and the small regional banks that have financed its operations.

7. More importantly, while thus far, the GAA has been able to keep Grenada's airport in operation, continued restraint of the Restrained Funds will force the GAA to drastically cut back on its operations, possibly even leading to the airport's closure. This statement is not hyperbole; cutting back on airport operations while maintaining essential services is not an easy task. Given the highly-trained and specialized work force of the airport (air traffic controllers, security officers, meteorologists, maintenance technicians, etc.), work force reductions cannot be accomplished without significant compromises to safety. Nor can the GAA reasonably be expected to eliminate or cut back on necessary, ongoing maintenance projects essential to the functioning of the airport such as the maintenance of runways, lighting and navigational aids. In 2012 alone, these necessary projects are expected to cost nearly US$ 800,000, funds which the GAA simply will not have available if the Court grants EX-IM's motion for a stay of its order.

8. In short, the continuation of the Restraining Notices will result in the serious degradation of the GAA's ability to service its debts, pay for critically necessary personnel, equipment and maintenance projects, and would in turn present safety and security challenges for the international flights operating into Grenada. Under such conditions, the airport would likely be downgraded to the point where it would not be permitted to accept international carriers. Should that occur, the entire nation, dependent as its economy is on tourism, would suffer tremendous negative consequences.

_____
Rodney George
Chairman, Grenada Airports Authority

Sworn to before me this
27th day of July, 2012

_____
Notary Public



SHEILA M. HARRIS
Notary Public
Lucas Street, St. George's
Grenada, W.I.
Tel: (473) 440-1627 / 3459
harris@grantjolawyers.com
Commission Expires 24/11/14

3