UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
THE EXPORT-IMPORT BANK OF              :
THE REPUBLIC OF CHINA,                 :          06 CV 2469 (HB) (AJP)
                                       :
                Plaintiff/Judgment Creditor,   :
                                       :
           -against-                   :
                                       :
GRENADA,                               :
                                       :
                Defendant/Judgment Debtor.  :
-----------------------------------------------------------X

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
MOTION TO STAY VACATUR OF RESTRAINING NOTICES AND
<u>DISBURSEMENT OF FUNDS PENDING APPEAL</u>**


(author block)

SULLIVAN & WORCESTER LLP
    Paul E. Summit
    Andrew T. Solomon
    Courtney Evanchuk
1633 Broadway
New York, NY 10019

*Attorneys for Plaintiff/Judgment Creditor The
Export-Import Bank of the Republic of China*

**TABLE OF CONTENTS**

I.      The Restraining Notices ...........................................................................................3

        A.      The Court's Ruling Denying All Discovery To Ex-Im Bank, While
                Simultaneously Relying On Affidavits, Cannot Be Sustained On Appeal ..............3

        B.      The Court Erred In Finding That The Restrained Funds, Which Are Commercial
                In Nature, Are Immune Under The FSIA ...............................................................5

II.     The Court Erred In Finding The Grynberg Funds Immune From Execution ......................7

        A.      The Grynberg Funds Were Designated For Commercial Activity ...........................7

        B.      The Funds Were Designated For Use In The United States ...................................8

III.    The Harm To Ex-Im Bank Absent A Stay Heavily Outweighs The Harm (If Any) That A
        Stay Would Cause Grenada ....................................................................................8

        A.      The Restrained Funds ........................................................................................9

        B.      The Grynberg Funds ..........................................................................................9

IV.     The Court Should At Least Grant A Temporary Stay So That Ex-Im Bank May Seek A
        Stay From The Second Circuit................................................................................10

i

# <u>TABLE OF AUTHORITIES</u>

## Cases

*In re Albicocco*, No. 06-CV-3409 (JFB),
    2006 WL 2620464 (E.D.N.Y. Sept. 13, 2006) .................................................................... 10

*In re Agent Orange Product Liability Litigation*,
    517 F.3d 76 (2d Cir. 2008) ................................................................................................... 5

*Centauri Shipping Ltd. v. Western Bulk Carriers KS*,
    528 F. Supp. 2d 186 (S.D.N.Y. 2007) ............................................................................... 10

*EM Ltd. v. Republic of Argentina*,
    473 F.3d 463 (2d Cir. 2007) ............................................................................................. 5, 7

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
    150 F.3d 172 (2d Cir. 1998) ................................................................................................ 4

*General Insurance Co. of America v. Mezzacappa Brothers, Inc.*,
    No. 01-CV-7394 (FB), 2003 WL 22244964 (E.D.N.Y. Oct. 1, 2003) .................................. 2

*Gibbs v. CIGNA Corp.*,
    440 F.3d 571 (2d Cir. 2006) ................................................................................................ 2

*Hayes v. City University of New York*,
    503 F. Supp. 946 (S.D.N.Y. 1980) ...................................................................................... 4

*National Federation of Independent Business v. Sebelius*,
    567 U.S. __ (2010) ............................................................................................................. 7

*Long Island Lighting Co. v. Barbash*,
    779 F.2d 793 (2d Cir. 1985) ............................................................................................. 4, 5

*Maresco v. Evans Chemetics, Division of W.R. Grace & Co.*,
    964 F.2d 106 (2d Cir. 1992) ................................................................................................ 4

*Plenum Financial & Investments Ltd. v. Bank of Zambia*,
    No. 95 CV 8350 (KMW), 1995 WL 600818 (S.D.N.Y. Oct. 11, 1995) ............................... 10

*Purgess v. Sharrock*,
    33 F.3d 134 (2d Cir. 1994) .................................................................................................. 2

*Republic of Argentina v. Weltover*,
    504 U.S. 607 (1992) .......................................................................................................... 5, 7

*Schlesinger Investment Partnership v. Fluor Corp.*,
    671 F.2d 739 (2d Cir. 1982) ................................................................................................ 4

*Schoenbaum v. Firstbrook*,
    405 F.2d 215 (2d Cir. 1968) ................................................................................ 5

*Villante v. Department of Corrections of N.Y.C.*,
    786 F.2d 516 (2d Cir. 1986) ............................................................................ 4, 5

## Statutes

28 U.S.C. § 1603(d) .............................................................................................. 6

28 U.S.C. § 1610(a) .............................................................................................. 7

## Rules

Fed. R. App. P. 8(a) ............................................................................................ 10

Following review of the Joint Movants'[1] Memorandum in Opposition to Ex-Im Bank's Motion to Stay Vacatur of Restraining Notices and Disbursement of Funds Pending Appeal ("Stay Opp."), it is clearer than ever that Ex-Im Bank faces irreparable harm; that it has (at least) a "substantial chance" of prevailing on appeal; and that the stay should be granted.

The Joint Movants' legal positions are unsustainable, and they know it.  Their Stay Opp. is a welter of internal contradiction, attempts to evade prior statements, and desperate legal arguments.  Here are some illustrations:

1.      <u>Irreparable harm to Ex-Im Bank.</u>  For five years, Grenada has counted on its sovereign status and absence of US assets to evade its obligations.  The Grynberg and Restrained Funds are the only known Grenadian assets in the United States.  Without a stay, they will disappear.  The Joint Movants do not dispute that.  Yet Grenada actually states that Ex-Im Bank will suffer "no harm at all" if the stay is not granted.  Stay Opp., p. 2.  Grenada says there is "nothing unique" about these funds, and that "Ex-Im will have ample opportunity to seek the attachment of substitute Grenadian assets against which to levy."  *Id.*, p. 18.  But then, one page later, Grenada gives up the game, admitting that it "does not have assets outside Grenada that are subject to execution."  *Id.*, p. 19.  "No harm at all" to Ex-Im Bank?

2.      <u>The designation of the Grynberg Funds as attorney's fees.</u>  The use (or "designated use") of the Grynberg Funds for attorney's fees is a central issue.  On August 10, 2011, Grenada's counsel told this Court: "and this was, in a sense, a windfall that was to be used to pay the Freshfields law firm, I presume, and was not thought of in any other way."  *See* Grynberg Reply (Docket #82), p. 4.  And counsel from Freshfields' New York office stated, "We have not been paid, and the sums awarded to Grenada by virtue of the cost awards will inure to us for our legal

---

[1] Ex-Im Bank hereby incorporates the definitions in its Memorandum Of Law In Support Of Motion To Stay Vacatur Of Restraining Notices And Disbursement Of Funds Pending Appeal (Docket #105).

fees." *Id.*  And on March 19, 2012, as if to resolve any doubt whatever, Grenada said, in a brief

to this Court, "[i]t would be *absurd*[2] if Freshfields were not entitled to [the Grynberg Funds]."

Grenada's Reply in Support of Grynberg Memo (Docket #76), p. 11.  Now, Grenada takes the

position that it is not bound by any of these statements.  It says that counsel's "comments at oral

argument as to his understanding as to how Grenada intends to use the Grynberg Funds is (sic)

neither binding on Grenada nor does it constitute a legal designation that payment will be made

in a certain way…."  Stay Opp., p. 11 n.6.  Grenada cites no authority for this outlandish

proposition.  Attorneys are agents for their clients and officers of the Court, and their

representations *bind* their clients.[3]  By this point, it is Orwellian[4] to contend that the Grynberg

Funds were not designated as attorney's fees.

3.      The lien argument.  Grenada argued for an attorney's lien in its initial brief[5] to this Court

on Grynberg.  The facts it advocated are fatal to Grenada's Grynberg case, because they confirm

the designation of the Funds as attorney's fees years ago;[6] but the legal implications were not

---

[2] Unless otherwise indicated, all emphasis is supplied.

[3] *See e.g, Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) (facts admitted by a party bind the party throughout the litigation).  Grenada is bound both by written representations previously submitted to this Court in its briefs, and by its attorney's statements at oral argument.  *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact."); *Gen. Ins. Co. of Am. v. Mezzacappa Bros., Inc.*, No. 01-CV-7394 (FB), 2003 WL 22244964, at *5 (E.D.N.Y. Oct. 1, 2003) ("Statements made by an attorney during oral argument…constitute binding judicial admissions.").

[4] "The most grossly obvious facts can be ignored when they are unwelcome."

[5] Memorandum of Law in Support of its Motion for an Order (1) Declaring Funds Immune from Attachment or (2) Fixing Charging Lien and Directing money Judgment for Legal Services Rendered by Freshfields Bruckhaus Deringer (Docket #70) ("Grynberg Memo"), pp. 8-12.

[6] Here is how Grenada put it in its briefs: "[Freshfields'] lien relates back and takes effect from the time the attorney's services were commenced…."; "The funds were secured through the efforts of Freshfields in the Arbitration, and the subsequent enforcement action.  Thus, the lien relates back and takes effect from the time that Freshfield's services were commenced…."; "The lien attached at the latest on February 18, 2011, when Freshfields filed an action to confirm the Award in this court."  Grynberg Memo, pp. 9-10.  Grenada relied on the testimony of Attorney General Rohan Phillip, who swore a declaration in support of "fixing a charging lien …."  Declaration of Rohan Philip (Docket # 69), ¶ 1.  He attested to Freshfields' "extensive and valuable services", told of the efforts to restrain funds, and concluded with the statement that "Grenada has not paid Freshfields' fees in connection with the Treaty Arbitration…Freshfields' unpaid legal fees…amount to $281,797.77."  *Id.*, ¶ 9; 11-15; 20.

apparent to Grenada when it made the argument.  Grenada now says that… it didn't really mean it.  "The argument was presented *on Freshfields' behalf* as part of Grenada's brief as part of an agreement with Ex-Im's counsel to simplify the briefing on this issue."  Stay Opp., p. 11 n.6. And thus it "does not demonstrate a designation of use."  *Id.*  Does Grenada truly expect this Court to permit a party to argue a set of facts to the Court, and then, after the Court has ruled, say "never mind" when those facts turn out to be fatal to its cause?[7]

4.      The denial of discovery.   Grenada admits that this Court "made fact findings based on Affidavits provided by the heads of the Statutory Corporations affected by the Restraining Notices…."  Stay Opp., p. 8.  Those "fact findings" were central to the Order (for example, the Court's erroneous conclusion that the payments by the cruise lines and airlines to Grenada were akin to taxes.)   And yet the Court denied the Bank the opportunity to depose the affiants.

I.      **The Restraining Notices**

      A.      **The Court's Ruling Denying All Discovery To Ex-Im Bank, While Simultaneously Relying On Affidavits, Cannot Be Sustained On Appeal**

The Joint Movants based their motion to vacate the restraints on six detailed, tendentious fact affidavits.  Ex-Im Bank cross-moved for discovery, including discovery on the commercial transactions to which the Restrained Funds were being put, and the glaring inconsistencies between the affidavits and the so-called Authorizing Statutes.  The Court denied Ex-Im Bank any discovery; but "made fact findings based on Affidavits provided by the heads of the Statutory

---

[7] Regarding the "agreement with Ex-Im's counsel to simplify briefing on this issue": prior to the parties' Grynberg Fund submissions, in the context of working out a briefing schedule with Grenada, counsel for Ex-Im Bank asked for confirmation that Freshfields' and Grenada's arguments would not be made in piecemeal fashion. Elliot Friedman (from Freshfields) confirmed that Grenada and Freshfields would submit their arguments in one filing.  *See* Declaration of Paul E. Summit (submitted herewith), Ex. 1.  There was nothing approaching agreement that Grenada could represent a set of facts pertaining to the Grynberg Funds argument, and then walk away from those facts when they turned out to be fatal to its argument.

Corporations…."  Stay Opp., p. 8.  For this reason alone, the Order cannot be sustained on

appeal.[8]  District courts are afforded discretion in discovery matters, but within limits.

The federal rules encourage broad discovery.[9]  In a seminal case, *Long Island Lighting*

*Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985), the Court found that the District Court had

abused its discretion where it ordered plaintiff to examine a witness without the opportunity to

review newly produced documents.  The Court said:

> [a]lthough a district court has considerable latitude in determining
> the scope of discovery, it abuses its discretion when the discovery
> is so limited as to affect a party's substantial rights….[10]

Here, *all* the relevant facts were under the Joint Movants' control, making the ruling (in

the words of the Second Circuit) an "especially crippling blow" to Ex-Im Bank.  *Villante v.*

*Dep't of Corr. of N.Y.C.*, 786 F.2d 516, 521 (2d Cir. 1986).  In *Villante*, the Second Circuit held

that the District Court abused its discretion in denying plaintiff an opportunity to depose any of

---

[8] The Joint Movants cite *Hayes v. City University of New York*, 503 F. Supp. 946, 963 (S.D.N.Y. 1980) for the proposition that the Rule 62(c) factors "should be applied somewhat differently in the post judgment context." Stay Opp., p. 6.  What Joint Movants fail to reveal, as they deploy this short quote, is that *Hayes* favors Ex-Im Bank, not Grenada.  *Hayes* distinguished the pretrial from the post judgment context when it recognized the particular battle inevitably faced by a party seeking a stay after the Court has already ruled against it.  It held that "the party seeking a stay pending appeal should be required to show *only* that its arguments raise a substantial possibility, *although less than a likelihood*, of success…".  *Hayes*, 503 F. Supp. at 963.  The Court also noted that "a judge who has reached a final conclusion will inevitably lose some of the capacity for detachment that he might normally possess", and "[t]o counteract this tendency, the judge should turn to external, preferably objective, indicia of the accuracy of his judgment."  *Id.*  Ultimately, the Court in *Hayes* found that the movant demonstrated a substantial possibility of success on appeal, which weighed in favor of granting a stay, where, as here, there were relatively few cases dealing with the issues raised in the case and a subsequent lack of clear binding precedent.  *See id.*  The Joint Movants also fail to address *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 177 (2d Cir. 1998) (cited by Ex-Im Bank in its Memorandum in Support of Motion to Stay Vacatur of Restraining Notices and Disbursement of Funds Pending Appeal (p. 11)), in which the Second Circuit vacated the lower court's dismissal of the complaint for lack of jurisdiction in a case under the FSIA).

[9] *See Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (scope of discovery under Fed. R. Civ. P. 26(b) is very broad, encompassing any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case).

[10] *See also Schlesinger Inv. P'ship v. Fluor Corp.,* 671 F.2d 739, 743 (2d Cir. 1982) ("summary judgment should rarely be granted … when the plaintiff has not had an opportunity to resort to discovery procedures") (citing cases).

the defendant's witnesses before responding to defendant's motion for summary judgment. *Id.*[11] *See also Schoenbaum v. Firstbrook*, 405 F.2d 215, 218 (2d Cir. 1968) (summary judgment reversed because District Court denied discovery necessary to counter affidavits). Here, as in *Villante* and *Schoenbaum*, the facts central to the motion are solely in control of the Joint Movants.[12]

The record here consists of one side's self-serving, untested affidavits.[13] The Court credited and found facts from these affidavits, while depriving Ex-Im Bank of any opportunity to dispute their contents through discovery. This is exactly the type of discovery ruling that constitutes an abuse of discretion. *See Long Island Lighting*, 779 F.2d at 795. Significantly, in *Long Island Lighting*, the Second Circuit found an abuse of discretion where the District Court *limited* discovery by halting the questioning of a particular witness; here, the Court denied Ex-Im Bank an opportunity to conduct *any discovery at all*. Ex-Im Bank was denied the opportunity to establish the facts necessary to support its claim to the Restrained Funds.[14]

**B.    The Court Erred In Finding That The Restrained Funds, Which Are Commercial In Nature, Are Immune Under The FSIA**

The Court improperly applied *Republic of Argentina v. Weltover*, 504 U.S. 607 (1992).

---

[11] By contrast, in *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76 (2d Cir. 2008), on which Joint Movants primarily rely (Stay Opp., p. 9), the Court permitted the plaintiffs a significant amount of discovery; it did not deprive plaintiff entirely of the opportunity to conduct discovery, and thus it did not dispose of the case on a wholly one-sided record, as was the case here. *In re Agent Orange*, 517 F.3d at 102-03.

[12] Though Ex-Im Bank cross-moved for discovery, attached proposed discovery requests to its papers (which it later revised and re-served), and engaged in extensive communications with opposing counsel regarding scheduling depositions and document production, the Joint Movants are reduced to arguing that Ex-Im Bank somehow "conceded" that it did not require additional discovery. Stay Opp. p. 9 n.5.

[13] The Joint Movants' claim that it was "entirely reasonable" for the Court to credit the veracity of the affidavits because they were sworn to "by a group of high-ranking Grenadian officials" (Stay Opp., p. 8 n.4) would be unsustainable under almost any circumstances. Here, given Grenada's history in this litigation, it is frivolous.

[14] Joint Movants cite a sentence in *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) (Stay Opp., p. 9 n.5), to the effect that discovery in FSIA cases (though circumscribed) should be permitted "to verify allegations of specific facts crucial to an immunity determination." Precisely right, and precisely why the denial of discovery here cannot be sustained.

First: the Court analyzed the transactions of the Restrained Funds purely on the basis of the Joint Movants' self-serving affidavits.

Second: even on that incomplete record, there was no basis for the Court to conclude that the Restrained Funds were akin to taxes (Order, pp. 5-6) and therefore immune from execution under the FSIA.  The affidavits reveal substantial evidence that the transactions to which the Restrained Funds are put are "commercial" in nature:

- The General Manager of the Grenada Ports Authority states that the Restrained Funds were involved in the following activities: fees "charged for the *use of the wharf and its facilities*" and "*[o]vertime wages* paid to launch crews."  Reply Memorandum of Law in Further Support of Cross-Motion for Discovery (Docket # 91) ("Discovery Reply"), p. 8;

- The Chairman of the Grenada Airports Authority describes the Restrained Funds as "*parking fees*" and "*baggage screening charges.*"  *Id.*, pp. 8-9;

- The Chairman of the National Water and Sewage Authority ("NWSA"), affirms that the Restrained Payments are received in exchange for the NWSA's provision of a *water supply to ships* that use Grenada's ports.  *See* Affidavit of Steven D. Greenblatt (Docket #79), Ex. N, ¶ 3;

- The General Manager of Aviation Services of Grenada Ltd. ("ASG") explains that ASG collects Restrained Payments in exchange for the provision of "*passenger services, ramp handling services, cargo handling services, and aircraft cleaning services,*" as well as the provision of "*ground power, air conditioning, water and lavatory servicing, air start units, and gate pushback*" to airlines.  *Id.*, Ex. Q, ¶ 3.

The Restrained Payments, which are received in exchange for things like parking, air conditioning, and cleaning services, cannot remotely be characterized as "sovereign" and "non-commercial."  The only possible way that the Court could have concluded as much would be to look to the *underlying purpose* of the Statutory Authorities' activity (which the Court characterized as the regulation and provision of public facilities and services), as opposed to the particular *transactions* in which the Restrained Funds are involved.  Under the FSIA and *Weltover*, however, that is precisely the wrong focus of inquiry.  28 U.S.C. § 1603(d) ("the

commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, *rather than by reference to its purpose*"); *Weltover*, 504 U.S. at 614-15 ("[A] contract to buy army boots or even bullets is a 'commercial' activity….").[15]

## II.   The Court Erred In Finding The Grynberg Funds Immune From Execution

The Court found that the Grynberg Funds were exempt from collection because they had not been a) "used" for commercial activity, b) "in the United States."  28 U.S.C. § 1610(a). Respectfully, the Court was wrong on both counts, and the Stay Opp. reveals that starkly.

### A.   The Grynberg Funds Were Designated For Commercial Activity

A clear designation of the use of funds for a commercial activity (as opposed to the prior actual use of the funds) is sufficient in the Second Circuit.  *EM Ltd. v. Republic of Arg.*, 473 F.3d 463, 486 (2d Cir. 2007) ("specific designation for such use would be necessary….").  The designated use of these funds[16] is simply incontestable, and Grenada knows it.  That is why they are now running away from their statements in oral argument and in their briefs admitting the funds would be used to pay Freshfields; that is why they are now running away from their "lien" argument; that is why they have to make the desperate argument that the Grynberg Funds are just *accidentally* "equivalent" to the funds owed to Freshfields (Stay Opp., p. 20); that is why they now take the binding Second Circuit law of *EM Ltd.* and describe it as "mythical."  *Id.*, p. 11.

---

[15] In their desperate hunt for authority, Joint Movants cite to *National Federation of Independent Business, et al. v. Sebelius*, 567 U.S. __, slip op. at 33 (2010), the recent health care decision, for the proposition that the "fees" and "charges" are *necessarily* "taxes."  Stay Opp., pp. 9-10.  Following this logic, foreign sovereigns could call any payments they receive a "tax" to evade attempts by judgment creditors to collect on lawful judgments.  This result would obliterate the "commercial activity" exception to execution immunity under the FSIA; *Weltover* would be a one line opinion.  Further, as even the Joint Movants' single quotation from the case reveals, the health care decision merely evaluated whether a particular payment could be considered a tax under the taxing power of the United States Constitution; the case simply has no bearing on whether cleaning fees and other such charges imposed by the Grenadian Statutory Authorities constitute "taxes."

[16] Ex-Im Bank should have prevailed even under a "use" standard , as previously demonstrated, but space limitations preclude argument of that here.

All these hairpin turns and evasions are required by the simple fact that *the funds are designated for Freshfields*.  That is the elephant standing in the corner.  This case fits perfectly into *EM*'s holding, and no amount of twisting by Grenada can alter that.

### B.      The Funds Were Designated For Use In The United States

In numerous submissions, Ex-Im Bank has pointed out all the ways in which the Grynberg Funds represented "commercial activity in the United States" (and thus were not exempt from collection under the FSIA).  The Arbitration took place in Washington, D.C.; the parties to the underlying agreement with Grenada were Americans; Grenada and the Americans were represented by American counsel in the Arbitration; the Grynberg Funds were awarded to Grenada as compensation for attorney's fees incurred by Grenada's United States counsel, Freshfields NY; Grenada used the services of another American attorney to invoke the processes of the American courts to collect the funds from a United States bank; Grenada entered into an agreement with Ex-Im Bank to deposit the funds with the Clerk of this Court, where they remain. Grynberg Reply (Docket #82), pp. 6-7.

The Joint Movants' "response" to these particulars is to repeat (many times) that the Grynberg Funds have no connection to the United States.

### III.     The Harm To Ex-Im Bank Absent A Stay Heavily Outweighs The Harm (If Any) That A Stay Would Cause Grenada

The Joint Movants state blithely that Ex-Im Bank will suffer "no harm at all" from the denial of a stay.  Stay Opp., p. 2.  How preposterous.  Ex-Im Bank has finally identified, and restrained, Grenadian assets in the United States.  The Joint Movants do not dispute that, if a stay is denied, the funds will instantaneously depart the United States.

### A.     The Restrained Funds

The Joint Movants have made clear that, if permitted access to the Restrained Funds, they will pay them immediately to cover their outstanding debts.[17]  Thus they will be forever lost to Ex-Im Bank.  And Grenada concedes that it "does not have assets outside Grenada that are subject to execution."  Stay Opp., p. 19.  It is disingenuous for the Joint Movants to suggest that Ex-Im Bank, if it prevails on appeal, will "be able to execute on a continuing stream of funds … for as long as its judgment remains unpaid."  Stay Opp., p. 15.  If Grenada's tourism industry is on the verge of collapse, as Joint Movants contend, the Restrained Funds currently frozen may well be the only funds that Ex-Im Bank will ever be able to collect.[18]

### B.     The Grynberg Funds

Grenada says Ex-Im Bank will have "ample opportunity to seek the attachment of substitute Grenadian assets against which to levy."  Stay Opp., p. 18.  Grenada has refused to pay, resisted discovery, and failed to reveal assets.  It is outrageous for Grenada, a debtor determined to evade collection efforts, to "reassure" the Court that "there is no reason to believe that there is no possibility of collection on [Ex-Im Bank's] judgment in the future…."  Stay Opp., p. 13 n.10.[19]

---

[17] Rodney George says that the Grenada Airports Authority ("GAA") would use the Restrained Funds in part to re-pay the "small regional banks" that have financed the GAA's operations, and that have experienced "negative consequences" as a result of the restraints.  *See* Affidavit of Rodney George (Docket #108), ¶ 6.  Leslie Scott expresses concern for the *airlines* served by Aviation Services of Grenada Ltd., to the extent that the Restraining Notices have caused a poor level of services that reflects poorly on the airlines.  *See* Affidavit of Leslie Scott (Docket # 107), ¶ 8.  These statements reflect Grenada's consistent sentiment that its debt to Ex-Im Bank is its lowest priority.

[18] The Court should also disregard the Joint Movants' new claims of harm.  The Joint Movants submitted *five additional substantive affidavits* from all but one of the previous affiants, containing new claims of supposed harm that the Joint Movants did not consider significant enough to include in their first round of affidavits.

[19] Grenada's two settlement offers are irrelevant.  First, by familiar principles, offers of settlement should have no bearing on the resolution in court of ongoing litigation.  Second, these two offers were woefully inadequate, and would have required Ex-Im Bank to forfeit millions in interest and to wait *twenty years* for full repayment.

In contrast to this clear harm to Ex-Im Bank, Grenada will suffer no harm at all, because it has no interest in the funds, which have always been designated for payment to Freshfields.

**IV.   The Court Should At Least Grant A Temporary Stay So That Ex-Im Bank May Seek A Stay From The Second Circuit**

Should the Court decline to grant Ex-Im Bank's motion, it should issue a temporary stay so that Ex-Im Bank may seek a stay from the Second Circuit Court of Appeals (Fed. R. App. P. 8(a)).  Where district courts decline to enter stays, they routinely grant temporary stays to permit movants to apply for a stay from the appeals court.  *See Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 186, 196 (S.D.N.Y. 2007) (listing such cases); *see also Plenum Fin. & Invs. Ltd. v. Bank of Zam.*, No. 95 CV 8350 (KMW), 1995 WL 600818, at *4 (S.D.N.Y. Oct. 11, 1995) (granting temporary stay of vacatur of restraining order prohibiting transfers from Zambia's New York bank accounts); *In re Albicocco*, No. 06-CV-3409 (JFB), 2006 WL 2620464, at *5 (E.D.N.Y. Sept. 13, 2006) (granting temporary stay where movant addressed only the possibility of success on the merits, with just "insinuations" of potential harm to the movant). Here, where Ex-Im Bank will be irreparably harmed absent a stay (because it will forever lose access to the secured funds and may not be able to secure additional funds to satisfy its judgment), and where the likelihood of success on appeal is high, the Court should, at minimum, grant Ex-Im Bank a temporary stay.

Dated:  New York, New York                    SULLIVAN & WORCESTER LLP
        August 6, 2012


                                              By: /s/ *Paul E. Summit*
                                                  Paul E. Summit
                                                  Andrew T. Solomon
                                                  Courtney Evanchuk
                                                  1633 Broadway
                                                  New York, NY 10019
                                                  T. 212.660.3000
                                                  F. 212.660.3001

                                                  *Attorneys for Plaintiff/Judgment Creditor The*
                                                  *Export-Import Bank of the Republic of China*